No. 23-1082

_____

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

DAN HAMILTON, individually and on behalf of all others similarly situated,

Plaintiff-Appellant

v.

AMAZON.COM SERVICES LLC, a Delaware limited liability company,

Defendant-Appellee

_____

On Appeal from the United States District Court of the District of Colorado
Case No. 22-CV-00434-PAB-STV
The Honorable Phillip A. Brimmer, Chief United States District Court Judge

_____

**PLAINTIFF-APPELLANT'S APPENDIX VOLUME I, Pages 1 to 290**

**(ORAL ARGUMENT REQUESTED)**

_____

DAVID H. MILLER
VICTORIA E. GUZMAN
Wilhite & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
Telephone: (303) 551-7667
dhmiller@wilhitelawfirm.com
vguzman@wilhitelawfirm.com

*Attorneys for Plaintiff-Appellant*

## APPENDIX VOLUME I

## TABLE OF CONTENTS

Table of Contents………………………………………………………………….. 2

Certificate of Digital Submission ……………………………………………….. 4

Certificate of Service …………………………………………………………… 4

District Court Docket Sheet……………………………………………………... 5

Defendant's Notice of Removal…………………………………….………….... 13

Defendant's Corporate Disclosure Statement………………………………….. 90

Individual and Class Action Complaint (Exhibit A)……………………......… 92

Defendant Amazon.com Services LLC's Motion to Dismiss Plaintiff's
   Individual and Class Action Complaint…………………………………….... 116

Response in Opposition to Defendant Amazon.com Services LLC's
   Fed.R.Civ.P. 12(b)(6) Motion to Dismiss……………………………………... 127

Response (Preliminary) in Opposition to Defendant Amazon.com
   LLC's Motion for Expedited Briefing Schedule……………………………….. 138

Defendant Amazon.com LLC's Reply is Support of Motion
   to Dismiss Plaintiff's Individual and Class Action Complaint………………… 148

Motion to Certify Class Action…………………………………………………….. 157

Motion for Order Certifying Determinative Question of Colorado
   Law to the Colorado Supreme Court……………………………………………... 202

Proposed Scheduling Order………………………………………………………... 234

Defendant Amazon.com Services LLC's Opposition to Plaintiff's
Motion for Order Certifying Determinative Question of Colorado
Law to the Colorado Supreme Court……………………………………………… 245

Scheduling Order…………………………………………………....... 253

Plaintiff's Reply in Support of Motion for Order Certifying Determinative
  Question of Colorado Law to the Colorado Supreme Court…………………... 264

Defendant Amazon.com Services LLC's Opposition to Plaintiff's
  Motion to Certify Class Action…………………………………………...… 275

## CERTIFICATE OF DIGITAL SUBMISSION

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with the most recent version of a commercial virus scanning program _____Sentinel Agent_____ , updated daily and, according to the program, is free of viruses.

/s/ David H. Miller
David H. Miller, counsel for
Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2023 a true and correct copy of the foregoing Volumes 1 through 2 of Appellant's Appendix was served via the 10th Circuit Court's ECF program to all counsel of record.

/s/ David H. Miller
David H. Miller, counsel for
Appellant

APPEAL,JD1,MJ CIV PP,NDISPO,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:22–cv–00434–PAB–STV</u>

Hamilton v. Amazon.com Services LLC
Assigned to: Chief Judge Philip A. Brimmer
Referred to: Magistrate Judge Scott T. Varholak
Case in other court:  District Court of Arapahoe County,
                                    Colorado, 2022CV30070
                                U.S. Court of Appeals, 10th Circuit,
                                    23–01082
Cause: 28:1332 Diversity – Employment

Date Filed: 02/17/2022
Date Terminated: 03/06/2023
Jury Demand: Plaintiff
Nature of Suit: 790 Other Labor Litigation
Jurisdiction: Diversity

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Daniel Hamilton**<br>*Individually and on behalf of all others<br>similarly situated* | represented by | **David H. Miller**<br>Sawaya Law Firm<br>1600 North Ogden Street<br>Denver, CO 80218<br>303–839–1650<br>Fax: 303–720–1650<br>Email: <u>dhmiller@sawayalaw.com</u><br>*ATTORNEY TO BE NOTICED* |
| | | **Victoria Elizabeth Guzman**<br>The Wilhite Law Firm<br>1600 North Ogden Street<br>Denver, CO 80218<br>303–839–1650<br>Email: <u>vguzman@wilhitelawfirm.com</u><br>*ATTORNEY TO BE NOTICED* |

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Amazon.com Services LLC** | represented by | **Sarah Katelyn Watt**<br>Littler Mendelson P.C.<br>1900 16th Street<br>Suite 800<br>Denver, CO 80202<br>303–362–6200<br>Email: <u>swatt@littler.com</u><br>*ATTORNEY TO BE NOTICED* |
| | | **Jennifer S. Harpole**<br>Littler Mendelson P.C.<br>1900 16th Street<br>Suite 800<br>Denver, CO 80202 |

303–629–6200
Fax: 303–629–0200
Email: jharpole@littler.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/17/2022 | 1 | NOTICE OF REMOVAL by AMAZON.COM SERVICES LLC from District Court of Arapahoe County, Case Number 2022CV30070. (Filing fee $ 402, Receipt Number ACODC–8325873), filed by AMAZON.COM SERVICES LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Civil Cover Sheet)(Harpole, Jennifer) (Entered: 02/17/2022) |
| 02/17/2022 | 2 | CORPORATE DISCLOSURE STATEMENT identifying Corporate Parent Amazon.Com Services, Inc., Corporate Parent Amazon.Com, Inc. for AMAZON.COM SERVICES LLC. (Harpole, Jennifer) (Entered: 02/17/2022) |
| 02/17/2022 | 3 | FIRST AND FINAL NOTICE TO ALL ATTORNEY(S) AND UNREPRESENTED PARTIES IN REMOVED, TRANSFERRED, OR OTHER CASES. To receive any further notice in a case removed or transferred to this court, or special matters including discovery disputes, bankruptcy appeals, or withdrawals of reference, Multi–district litigation (MDL), etc., all attorneys and unrepresented parties must enter an appearance under D.C.COLO.LAttyR 5(a). An attorney must be an active member of this court's bar and be in good standing in accordance with D.C.COLO.LAttyR 3. A waiver of the fee for bar admission may apply in limited situations. (Text Only Entry) (jsalz, ) (Entered: 02/18/2022) |
| 02/17/2022 | 4 | Case assigned to Magistrate Judge Scott T. Varholak. Text Only Entry. (jsalz, ) (Entered: 02/18/2022) |
| 02/17/2022 | 5 | Individual and Class Action COMPLAINT against Amazon.com Services LLC, filed by Daniel Hamilton.(jsalz, ) (Entered: 02/18/2022) |
| 02/17/2022 | 6 | AFFIDAVIT/RETURN of Service of Summons and Complaint upon Amazon.com Services, LLC on 01/18/2022. (jsalz, ) (Entered: 02/18/2022) |
| 02/17/2022 | 7 | STATE COURT ORDER Granting Defendant's Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint. By John E. Scipione, District Court Judge, Arapahoe County on 02/08/2022. (jsalz, ) (Entered: 02/18/2022) |
| 02/17/2022 | 8 | Magistrate Judge consent form issued pursuant to D.C.COLO.LCivR 40.1, direct assignment of civil actions to full time magistrate judges. (jsalz, ) (Entered: 02/18/2022) |
| 02/18/2022 | 9 | ORDER SETTING DEADLINE FOR FILING ELECTION CONCERNING CONSENT/NON–CONSENT TO MAGISTRATE JURISDICTION FORM AND SETTING SCHEDULING CONFERENCE by Magistrate Judge Scott T. Varholak on 18 February 2022. Consent Form due by 4/13/2022. Proposed Scheduling Order due 4/20/2022. Scheduling Conference set for 4/27/2022 10:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. (cmadr, ) (Entered: 02/18/2022) |
| 02/18/2022 | 10 | NOTICE of Entry of Appearance by David H. Miller on behalf of Daniel Hamilton Attorney David H. Miller added to party Daniel Hamilton (pty:pla) (Miller, David) (Entered: 02/18/2022) |

| 02/18/2022 | 11 | NOTICE of Entry of Appearance *of Victoria Elizabeth Guzman* by Victoria Elizabeth Guzman on behalf of All Plaintiffs Attorney Victoria Elizabeth Guzman added to party Daniel Hamilton (pty:pla) (Guzman, Victoria) (Entered: 02/18/2022) |
|---|---|---|
| 02/22/2022 | 12 | NOTICE of Entry of Appearance by Sarah Katelyn Watt on behalf of Amazon.com Services LLCAttorney Sarah Katelyn Watt added to party Amazon.com Services LLC(pty:dft) (Watt, Sarah) (Entered: 02/22/2022) |
| 02/24/2022 | 13 | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond *to Plaintiff's Complaint* by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 02/24/2022) |
| 02/25/2022 | 14 | ORDER granting 13 Defendant's Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint until 3/3/2022, by Magistrate Judge Scott T. Varholak on 2/25/2022. Text Only Entry(stvlc1, ) (Entered: 02/25/2022) |
| 03/03/2022 | 15 | MOTION to Dismiss *Plaintiff's Individual and Class Action Complaint* by Defendant Amazon.com Services LLC. (Harpole, Jennifer) (Entered: 03/03/2022) |
| 03/24/2022 | 16 | RESPONSE to 15 MOTION to Dismiss *Plaintiff's Individual and Class Action Complaint* filed by Plaintiff Daniel Hamilton. (Miller, David) (Entered: 03/24/2022) |
| 03/28/2022 | 17 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiff Daniel Hamilton All parties do not consent.. (Miller, David) (Entered: 03/28/2022) |
| 03/28/2022 | 18 | CASE REASSIGNED pursuant to 17 Consent to Jurisdiction of Magistrate Judge. All parties do not consent. This case is randomly reassigned to Judge Lewis T. Babcock and drawn to Magistrate Judge Scott T. Varholak. All future pleadings should be designated as 22–cv–00434–LTB. (Text Only Entry) (cmadr, ) (Entered: 03/28/2022) |
| 03/29/2022 | 19 | MEMORANDUM RETURNING CASE by Senior Judge Lewis T. Babcock on 3/29/2022. This case is randomly reassigned to Chief Judge Philip A. Brimmer and drawn to Magistrate Judge Scott T. Varholak. All future pleadings should be designated as **22–cv–00434–PAB**. (trvo, ) (Entered: 03/29/2022) |
| 04/05/2022 | 20 | MOTION to Vacate *the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule* by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 04/05/2022) |
| 04/07/2022 | 21 | ORDER REFERRING CASE to Magistrate Judge Scott T. Varholak for **non–dispositive matters**. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non–dispositive motions, and (4) conduct a pretrial conference and enter a pretrial order. Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, this court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding, by Chief Judge Philip A. Brimmer on 4/07/2022. Text Only Entry (pabsec, ) (Entered: 04/07/2022) |
| 04/07/2022 | 22 | |

| | | |
|---|---|---|
| | | MEMORANDUM regarding <u>20</u> MOTION to Vacate *the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule* filed by Amazon.com Services LLC. Motion referred to Magistrate Judge Scott T. Varholak, by Chief Judge Philip A. Brimmer on 4/07/2022. Text Only Entry (pabsec, ) (Entered: 04/07/2022) |
| 04/07/2022 | <u>23</u> | RESPONSE to <u>20</u> MOTION to Vacate *the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule Preliminary as to Motion for Expedited Briefing Schedule* filed by Plaintiff Daniel Hamilton. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2)(Miller, David) (Entered: 04/07/2022) |
| 04/07/2022 | <u>24</u> | REPLY to Response to <u>15</u> MOTION to Dismiss *Plaintiff's Individual and Class Action Complaint* filed by Defendant Amazon.com Services LLC. (Harpole, Jennifer) (Entered: 04/07/2022) |
| 04/07/2022 | 25 | MINUTE ORDER This matter is before the Court on <u>20</u> Defendant's Motion to Vacate the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule (the "Motion to Stay"). When a motion to stay is filed prior to the scheduling conference, it is this Court's usual practice to vacate that scheduling conference to be reset after a ruling on the motion to stay and set the motion to stay for expedited briefing and hearing. The Court has reviewed <u>23</u> Plaintiff's preliminary response to the Motion to Stay and does not find any justification for the Court to dispose of its usual practice in this case. Plaintiff does not explain how he will be prejudiced by the small delay that would result if the scheduling conference is continued until after a ruling on the Motion to Stay and the Court does not perceive any. Nor does Plaintiff explain why he requires the full 21 days permitted under the standard briefing schedule to respond to the Motion to Stay. Accordingly, the Scheduling Conference set for 4/27/2022 10:30 AM, and associated deadlines, are VACATED to be reset after a ruling on the Motion to Stay and the Court sets the following expedited briefing schedule for the Motion to Stay: Plaintiff shall respond to the Motion to Stay on or before 4/19/2022, and Defendant may then file a reply on or before 4/22/2022. A Motion Hearing re: the Motion to Stay is set for 4/26/2022 01:00 PM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. SO ORDERED, by Magistrate Judge Scott T. Varholak on 4/7/2022. Text Only Entry (stvlc1, ) (Entered: 04/07/2022) |
| 04/14/2022 | <u>26</u> | MOTION to Certify Class by Plaintiff Daniel Hamilton. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4)(Miller, David) (Entered: 04/14/2022) |
| 04/14/2022 | <u>27</u> | MOTION for Order to *Certify Determinative Question of Colorado Law to the Colorado Supreme Court* by Plaintiff Daniel Hamilton. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2)(Miller, David) (Entered: 04/14/2022) |
| 04/19/2022 | <u>28</u> | RESPONSE to <u>20</u> MOTION to Vacate *the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule* filed by Plaintiff Daniel Hamilton. (Miller, David) (Entered: 04/19/2022) |
| 04/22/2022 | <u>29</u> | REPLY to Response to <u>20</u> MOTION to Vacate *the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule* filed by Defendant Amazon.com Services LLC. (Harpole, Jennifer) (Entered: 04/22/2022) |
| 04/26/2022 | <u>30</u> | MINUTE ENTRY for Motion Hearing held before Magistrate Judge Scott T. Varholak on 4/26/2022. <u>20</u> Defendant Amazon.Com Services LLCs Motion to Vacate |

| | | |
|---|---|---|
| | | theScheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule is DENIED. Scheduling Conference set for 5/11/2022 03:15 PM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Proposed Scheduling Order due on or before 5/4/2022. FTR: 402. (morti, ) (Entered: 04/26/2022) |
| 05/02/2022 | 31 | Joint MOTION for Extension of Time to *Brief Plaintiff's Motion to Certify Class Action* by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 05/02/2022) |
| 05/03/2022 | 32 | ORDER by Chief Judge Philip A. Brimmer on 5/3/2022 re: 31 Joint Motion for Extension of Time to Brief Plaintiff's Motion to Certify Class Action is GRANTED. Defendant shall respond to 26 MOTION to Certify Class Action on or before **June 2, 2022**. Plaintiff shall file any reply on or before **June 30, 2022**. Text Only Entry(pabsec, ) (Entered: 05/03/2022) |
| 05/04/2022 | 33 | Proposed Scheduling Order by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 05/04/2022) |
| 05/05/2022 | 34 | RESPONSE to 27 MOTION for Order to *Certify Determinative Question of Colorado Law to the Colorado Supreme Court* filed by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 05/05/2022) |
| 05/10/2022 | 35 | First MOTION to Stay *Briefing on Plaintiffs Motion To Certify Class Action Pending Disposition Of Its Motion To Dismiss And For Expedited Briefing Schedule* by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 05/10/2022) |
| 05/11/2022 | 36 | ORDER by Chief Judge Philip A. Brimmer on 5/11/2022. The portion of Docket No. 35 requesting expedited briefing is **GRANTED**. Plaintiff shall file a response to the remaining portion of Docket No. 35 on or before **May 17, 2022**. Defendant may file a reply on or before **May 20, 2022**. Text Only Entry(pabsec, ) (Entered: 05/11/2022) |
| 05/11/2022 | 37 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Scott T. Varholak: Scheduling Conference held on 5/11/2022. Liability Discovery due by 10/27/2022. Status Conference set for 12/14/2022 09:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: A–402. (amont, ) (Entered: 05/11/2022) |
| 05/11/2022 | 38 | SCHEDULING ORDER by Magistrate Judge Scott T. Varholak on May 11, 2022. (csarr, ) (Entered: 05/11/2022) |
| 05/12/2022 | 39 | RESPONSE to 35 First MOTION to Stay *Briefing on Plaintiffs Motion To Certify Class Action Pending Disposition Of Its Motion To Dismiss And For Expedited Briefing Schedule* filed by Plaintiff Daniel Hamilton. (Attachments: # 1 Exhibit 1)(Miller, David) (Entered: 05/12/2022) |
| 05/12/2022 | 40 | REPLY to Response to 27 MOTION for Order to *Certify Determinative Question of Colorado Law to the Colorado Supreme Court* filed by Plaintiff Daniel Hamilton. (Miller, David) (Entered: 05/12/2022) |
| 05/17/2022 | 41 | REPLY to Response to 35 First MOTION to Stay *Briefing on Plaintiffs Motion To Certify Class Action Pending Disposition Of Its Motion To Dismiss And For Expedited Briefing Schedule* filed by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 05/17/2022) |
| 05/23/2022 | 42 | MOTION for Protective Order by Defendant Amazon.com Services LLC. (Attachments: # 1 Stipulated Protective Order and Clawback Agreement)(Watt, Sarah) |

| | | (Entered: 05/23/2022) |
|---|---|---|
| 05/23/2022 | 43 | MEMORANDUM regarding 42 MOTION for Protective Order filed by Amazon.com Services LLC. Motion referred to Magistrate Judge Scott T. Varholak by Chief Judge Philip A. Brimmer on 05/23/2022. Text Only Entry (pablc3) (Entered: 05/23/2022) |
| 05/24/2022 | 44 | ORDER granting 42 Joint Motion for Protective Order. The Court will enter the protective order proposed by the parties with modifications to Paragraph 6.3 to conform to the requirements the Court's Civil Practice Standards. SO ORDERED, by Magistrate Judge Scott T. Varholak on 5/24/22. Text Only Entry(stvlc3, Andrew) (Entered: 05/24/2022) |
| 05/24/2022 | 45 | STIPULATED PROTECTIVE ORDER AND CLAWBACK AGREEMENT by Magistrate Judge Scott T. Varholak on 23 May 2022. (cmadr, ) (Entered: 05/24/2022) |
| 05/31/2022 | 46 | ORDER by Chief Judge Philip A. Brimmer on 5/31/2022, re: 35 Defendant's Motion to Stay Briefing on Plaintiff's Motion to Certify Class Action Pending Disposition of its Motion to Dismiss and for Expedited Briefing Schedule is **DENIED**. **ORDERED** that defendant's response to plaintiffs Motion to Certify Class Action 26 is due **June 9, 2022**. (sphil, ) (Entered: 05/31/2022) |
| 06/06/2022 | 47 | Unopposed MOTION for Extension of Time to File Response/Reply as to 26 MOTION to Certify Class by Defendant Amazon.com Services LLC. (Harpole, Jennifer) (Entered: 06/06/2022) |
| 06/06/2022 | 48 | ORDER by Chief Judge Philip A. Brimmer on 6/6/2022, re: 47 Defendant's Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion to Certify Class Action is **GRANTED**. Defendant shall respond to 26 MOTION to Certify Class Action by June 16, 2022. Text Only Entry(pabsec, ) (Entered: 06/06/2022) |
| 06/16/2022 | 49 | BRIEF in Opposition to 26 MOTION to Certify Class *Action* filed by Defendant Amazon.com Services LLC. (Watt, Sarah) (Entered: 06/16/2022) |
| 06/24/2022 | 50 | Unopposed MOTION for Extension of Time to *Respond to Plaintiff's First Set of Discovery Requests* by Defendant Amazon.com Services LLC. (Harpole, Jennifer) (Entered: 06/24/2022) |
| 06/24/2022 | 51 | MEMORANDUM regarding 50 Unopposed MOTION for Extension of Time to *Respond to Plaintiff's First Set of Discovery Requests* filed by Amazon.com Services LLC. Motion referred to Magistrate Judge Scott T. Varholak, by Chief Judge Philip A. Brimmer on 6/24/2022. Text Only Entry (pabsec, ) (Entered: 06/24/2022) |
| 06/27/2022 | 52 | ORDER granting 50 Defendant's Unopposed Motion for Extension of Time to Respond to Plaintiff's First Set of Discovery Requests. Defendant's deadline to respond to Plaintiff's First Set of Written Discovery Requests is EXTENDED to July 18, 2022. The parties are advised that when a request for an extension would be the proper subject of a stipulation under D.C.Colo.LCivR 6.1(a) and there is no basis for the non–movant to oppose, the parties are encouraged to conserve judicial and party resources by so stipulating. SO ORDERED, by Magistrate Judge Scott T. Varholak on 6/27/22. Text Only Entry(stvlc3, Andrew) (Entered: 06/27/2022) |
| 06/29/2022 | 53 | REPLY to Response to 26 MOTION to Certify Class filed by Plaintiff Daniel Hamilton. (Attachments: # 1 Exhibit 1)(Miller, David) (Entered: 06/29/2022) |
| 10/04/2022 | 54 | Unopposed MOTION to Amend/Correct/Modify 38 Order by Plaintiff Daniel Hamilton. (Miller, David) (Entered: 10/04/2022) |

| 10/04/2022 | 55 | MEMORANDUM regarding 54 Unopposed MOTION to Amend/Correct/Modify 38 Order filed by Daniel Hamilton. Motion referred to Magistrate Judge Scott T. Varholak, by Chief Judge Philip A. Brimmer on 10/04/2022. Text Only Entry (pabsec, ) (Entered: 10/04/2022) |
|---|---|---|
| 10/04/2022 | 56 | ORDER granting Plaintiff's 54 Unopposed Motion to Amend Scheduling Order. For good cause shown, the liability discovery cut–off date is EXTENDED to 11/9/2022, for the limited purpose of taking Defendant's 30(b)(6) deposition. SO ORDERED, by Magistrate Judge Scott T. Varholak on 10/4/22. Text Only Entry(stvlc3, Andrew) (Entered: 10/04/2022) |
| 11/03/2022 | 57 | MINUTE ORDER Pursuant to the request of the parties, this Matter is set for a Discovery Hearing on 11/8/2022 at 09:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. On or before 11/4/2022, the parties shall submit via email to Varholak_Chambers@cod.uscourts.gov a brief joint statement setting forth the issues to be resolved by the Court and the parties' respective positions on each issue. All parties that wish to participate in the 11/8/2022 Discovery Hearing by telephone may do so by calling 888.808.6929 at the scheduled time and utilizing access code: 2805116#. SO ORDERED, by Magistrate Judge Scott T. Varholak on 11/3/2022. Text Only Entry (stvlc4, ) (Entered: 11/03/2022) |
| 11/08/2022 | 58 | MINUTE ENTRY for Telephonic Discovery Hearing held before Magistrate Judge Scott T. Varholak on 11/8/2022. ORDERED: The court finds that the Defendant has put at issue the advice of counsel, as stated on the record. The court will permit the Defendant, consistent with the line of cases stated on the record by the court, to withdraw the Motion to Dismiss [ECF Doc. No. 15], should theychoose to do so, within seven (7) days of the courts order today. FTR: A402. (morti, ) (Entered: 11/08/2022) |
| 11/09/2022 | 59 | First MOTION to Clarify re 58 Discovery Hearing, by Defendant Amazon.com Services LLC. (Attachments: # 1 Exhibit Exhibit A)(Watt, Sarah) (Entered: 11/09/2022) |
| 11/09/2022 | 60 | MEMORANDUM regarding 59 First MOTION to Clarify re 58 Discovery Hearing, filed by Amazon.com Services LLC. Motion referred to Magistrate Judge Scott T. Varholak, by Chief Judge Philip A. Brimmer on 11/09/2022. Text Only Entry (pabsec, ) (Entered: 11/09/2022) |
| 11/09/2022 | 61 | MINUTE ORDER This matter is before the Court on 59 Defendant's Motion for Clarification. Plaintiff shall respond to the Motion not later than 11/14/2022. The Motion is set for a Hearing on 11/15/2022 at 10:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. It is FURTHER ORDERED that Defendant's leave to withdraw the filing, should they choose to do so, is EXTENDED to 11/22/2022. SO ORDERED, by Magistrate Judge Scott T. Varholak on 11/9/22. Text Only Entry (stvlc3, Andrew) (Entered: 11/09/2022) |
| 11/11/2022 | 62 | RESPONSE to 59 First MOTION to Clarify re 58 Discovery Hearing, filed by Plaintiff Daniel Hamilton. (Miller, David) (Entered: 11/11/2022) |
| 11/15/2022 | 63 | MINUTE ENTRY for Motion Hearing held before Magistrate Judge Scott T. Varholak on 11/15/2022. Defendant Amazon.com Services LLCs Motion for Clarification ofMinute Order (ECF Doc. No. 58) and for Expedited Ruling 59 is GRANTED. The court clarifies the Courtroom Minutes/Minute Order (ECF Doc. No. 58) and states that what put the attorney client privilege at issue was the response to the Motion for Class Certification [ECF Doc. No. 49]. Defendant shall have untilNovember 22, 2022, to file |

| | | a revised opposition that does not contest the issue the willfulness. FTR: A402. (morti, ) (Entered: 11/15/2022) |
|---|---|---|
| 11/21/2022 | 64 | RESPONSE to 26 MOTION to Certify Class *(Amended)* filed by Defendant Amazon.com Services LLC. (Harpole, Jennifer) (Entered: 11/21/2022) |
| 12/14/2022 | 65 | MINUTE ENTRY for Status Conference held before Magistrate Judge Scott T. Varholak on 12/14/2022. ORDERED: Status Conference set for 4/26/2023 11:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: A402. (morti, ) (Entered: 12/14/2022) |
| 03/03/2023 | 66 | ORDER. Defendant Amazon.com Services LLC's Motion to Dismiss Plaintiff's Individual and Class Action Complaint 15 is GRANTED. Plaintiff's Motion to Certify Class Action 26 and Motion for Order Certifying Determinative Question of Colorado Law to the Colorado Supreme Court 27 are DENIED as moot. Plaintiff's first claim is dismissed with prejudice. The case is closed, by Chief Judge Philip A. Brimmer on 3/3/23.(sgrim) (Entered: 03/06/2023) |
| 03/06/2023 | 67 | FINAL JUDGMENT re: 66 Order, by Clerk on 3/6/23. (sgrim) (Entered: 03/06/2023) |
| 03/15/2023 | 68 | NOTICE OF APPEAL as to 67 Clerk's Judgment, 66 Order on Motion to Dismiss,, Order on Motion for Order, by Plaintiff Daniel Hamilton (Filing fee $ 505, Receipt Number ACODC−8992452) (Miller, David) (Entered: 03/15/2023) |
| 03/17/2023 | 69 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 68 Notice of Appeal to the U.S. Court of Appeals. (Retained Counsel, Fee paid) (Attachments: # 1 Docket Sheet, # 2 Preliminary Record)(jtorr, ) (Entered: 03/17/2023) |
| 03/17/2023 | 70 | USCA Case Number 23−1082 for 68 Notice of Appeal filed by Daniel Hamilton. (jtorr, ) (Entered: 03/17/2023) |
| 03/29/2023 | 71 | TRANSCRIPT ORDER FORM re 68 Notice of Appeal by Plaintiff Daniel Hamilton (Miller, David) (Entered: 03/29/2023) |
| 03/31/2023 | 72 | LETTER TO USCA and all counsel certifying the record is complete as to 68 Notice of Appeal. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 23−1082) Text Only Entry. (jtorr, ) (Entered: 03/31/2023) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. ___

DAN HAMILTON,
Individually and on behalf of all others
similarly situated

      Plaintiff,

vs.

AMAZON.COM SERVICES, LLC,

      Defendant.

---

## DEFENDANT'S NOTICE OF REMOVAL

---

PLEASE TAKE NOTICE that Defendant Amazon.com Services LLC ("Defendant"), misidentified in the Individual and Class Action Complaint ("Complaint") as Amazon.com Services, LLC, through undersigned counsel, respectfully removes the state court action captioned *Dan Hamilton, Individually and on behalf of all others similarly situated v. Amazon.com Services, LLC*, Civil Action No. 2022CV30070, filed in the District Court of Arapahoe County, Colorado to the United States District Court for the District of Colorado pursuant to diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1446, 1453, and 1711-1715. As grounds therefore, Defendant states as follows:

## I.    THE STATE COURT CASE

1.    On January 18, 2022, Plaintiff Dan Hamilton served his Individual and Class Action Complaint (the "Complaint") on Defendant, which he filed in the State of Colorado,

District Court at Arapahoe County (Case No. 2022CV30070).[1] *See* **Exhibit A**, Complaint.

2.      The Complaint asserts violations of the Colorado Wage Act, C.R.S. 8-4-101 *et seq*., ("CWA") and alleges that Defendant paid time and a half based on Plaintiff's agreed upon rate for those hours worked on Company Holidays, but did not count hours worked on a Company Holiday toward weekly overtime and did not include Plaintiff's Holiday Incentive in the calculation of his regular rate for that week, resulting in the failure to pay Plaintiff all overtime earned under the Colorado Wage Act in any week he worked in excess of 40 hours and on a Company Holiday. *Id.* at ¶¶ 19, 20.

3.      The Complaint alleges Plaintiff was employed by Defendant at an Amazon warehouse in Aurora, Colorado and that Defendant employs hundreds or even thousands of hourly employees in Colorado. *Id.* at ¶¶ 7, 8, 9, 27(a), 28.

4.      The Complaint seeks "overtime, penalties, and the reasonable costs and attorney's fees of this litigation pursuant to the CWA." *Id.* at ¶ 47. The Complaint also seeks, *inter alia*, back wages reflecting the overtime compensation due to the Plaintiff and the class members; all applicable statutory damages and penalties provided under the CWA; a service payment to the Plaintiff for his services to the class members; reasonable attorney's fees incurred in bringing this action; the costs of this action; pre- and post-judgment interest. *Id.* at p. 7, Prayer for Relief.

5.      The Complaint alleges that the relevant period for this lawsuit is three years from the date of filing, *i.e.,* January 14, 2019 to the present. *Id.* at ¶ 26.

6.      A true and correct copy of the Complaint, District Court Civil (CV) Case Cover Sheet, Delay Reduction Order, Division 204 Delay Reduction Order and Order Regarding Plan for Settlement, District Court Civil Summons, Return of Service, Notice of Entry of Appearance of

---

[1] Defendant does not concede, and in fact, reserves the right to contest Plaintiff's allegations that this lawsuit properly can proceed as a class action.

Jennifer S. Harpole, Notice of Entry of Appearance of Sarah K. Watt, Defendant's Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, and file-stamped Order ("Granted by Court 02/08/2022) granting Defendant's Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint are attached hereto respectively as **Exhibits A-J**. Defendant has not been served with any other process, pleadings, or orders. Accordingly, **Exhibits A-J** constitute all pleadings, processes, and orders in this action and satisfy the requirements of 28 U.S.C. § 1446(a).

7.      Pursuant to D.C.COLO.L.Civ.R 81.1(b), a copy of the current docket from the District Court of the County of Arapahoe, Colorado is also attached as **Exhibit K**. There are no pending motions, petitions, or related responses, replies, or briefs before the District Court of the County of Arapahoe, Colorado.

## II.      <u>REMOVAL IS TIMELY</u>

8.      A notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b).

9.      As noted above, Defendant was served with the Complaint on January 18, 2022. *See* **Exhibit F**, Return of Service. Accordingly, Defendant is timely filing this Notice of Removal on or before February 17, 2022.

10.     No previous Notice of Removal has been filed with this Court for the relief sought herein.

### III.    GROUNDS FOR REMOVAL

11.    This action is removable pursuant to 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

12.    This Court's subject matter jurisdiction, and the basis for removal, is founded upon 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

### IV.    BASIS FOR ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

13.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), as codified in relevant part in 28 U.S.C. 1332(d)(2).

14.    CAFA allows for federal subject matter jurisdiction over any civil class actions in which: (a) any member of a class of plaintiffs is a citizen of a State different from any defendant; (b) the aggregate number of putative class members in all proposed plaintiff classes is at least 100; and (c) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A); 1332(d)(5).

15.    To be clear, Defendant denies Plaintiff's claims and allegations in the Complaint, the legal theories upon which they are purportedly based, his request for monetary and other relief, and any notion that this case may proceed as a class action. However, all requirements for jurisdiction under CAFA have been met, as explained below. As such, this Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d)(2).

#### A.    Diversity Exists Between Plaintiff and Defendant

16.    Under CAFA, diversity is established for purposes of removal where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

17.     The Complaint alleges that Plaintiff resides in Denver County, Colorado and further alleges that he performed all services and work for Defendant in Arapahoe County, Colorado **Exhibit A**, Complaint, ¶ 1. Indeed, business records indicate that his last known home address is 6964 E Ohio Dr., Denver, Colorado 80224. **Exhibit L**, Declaration of Jennifer Johnston, ¶ 4. Therefore, Plaintiff should be considered a citizen of Colorado.

18.     Pursuant to 28 U.S.C. §§ 1332(c) and 1332(d)(10), a corporation or unincorporated association is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is incorporated or organized. Thus, for purposes of a CAFA removal, a limited liability company's citizenship is treated in the same manner as a corporation's citizenship under traditional diversity standards.

19.     To determine a corporation's principal place of business, the courts apply the "nerve center test," which deems the principal place of business to be the state where a corporation's officers "direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). In practice, the principal place of business is "where the corporation maintains its headquarters." *Id.* at 92-93. In other words, Defendant's principal place of business is where its officers direct, control, and coordinate its activities. *Id.*

20.     The Complaint accurately alleges that Defendant is a Delaware limited liability company with its principal place of business in Washington state. ***See* Exhibit A,** Complaint, ¶ 3.

21.     Defendant Amazon.com Services LLC, is a limited liability company organized and existing under the laws of the State of Delaware. It is headquartered in Seattle, Washington. ***See* Exhibit M**, Declaration of Zane Brown, ¶ 4.

22.     Based on the foregoing, diversity exists between Plaintiff and Defendant. *See* 28 U.S.C. §§ 1332(d)(2)(A) and 1453.

**B.**     **Plaintiff's Proposed Class Contains More Than 100 Members**

23.     The CAFA requirement of 100 or more putative class members is met in this case. *See* 28 U.S.C. § 1332(d)(5)(B).

24.     Plaintiff purports to assert claims on behalf of a putative class of "[a]ll classes of U.S. non-exempt hourly employees who worked in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a Company Holiday, dating back three years from the date of filing." **Exhibit A**, Complaint, ¶ 26. The Complaint alleges Defendant employs hundreds or even thousands of hourly employees across "at least" five warehouses Colorado. **Exhibit A**, Complaint, ¶¶ 8, 9, 27(a). Accordingly, Plaintiff's own allegations indicate that there would be more than 100 putative class members.

25.     Based on a preliminary review of employment records, Defendant believes that since January 14, 2019, Amazon has employed approximately 10,006 non-exempt hourly employees in Colorado who worked more than 40 hours in a workweek in which they also worked on a Company Holiday as "Holiday O/T." **Exhibit L**, Declaration of Jennifer Johnston, ¶ 5.

26.     Accordingly, CAFA's requirement of 100 or more putative class members is easily satisfied in this case.

**C.**     **The Amount in Controversy Exceeds $5,000,000**

27.     CAFA authorizes the removal of class actions in which the amount in controversy for all class members exceeds $5,000,000.00. *See* 28 U.S.C. § 1332(d).

28.     The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

29.     The United States Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in

controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 553.

30.    Congress has stated that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." *See* S. REP. 109-14, at 42-43 (2005) ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly[.]").

31.    Although the Complaint does not state a total amount in controversy, Plaintiff's allegations alone are enough to show that the amount in controversy at issue in this case exceeds the jurisdictional minimum of $5,000,000[2] and the failure of the Complaint to specify the total amount of damages or other monetary relief sought does not deprive this Court of jurisdiction. *See Frederick v. Hartford Underwriters Ins. Co.*, No. 11-cv-02306-WJM-KLM, 2012 WL 4511242, at *3 (D. Colo. Oct. 1, 2012) ("Regardless of the plaintiff's pleadings, federal jurisdiction is proper if a defendant proves jurisdictional facts by a 'preponderance of the evidence' such that the amount in controversy **may** exceed $5,000,000.") (citation omitted) (emphasis added). In this action, there is more than a reasonable probability that the amount in controversy in this case exceeds the jurisdictional minimum based on the claims for relief in the Complaint and Plaintiff's own allegations. *See Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911-12 (10th Cir. 2016) ("As historically used, the term 'in controversy' has never required a party seeking to invoke federal

---

[2] Defendant disputes, and reserves the right to contest, that any amount is owed either to Plaintiff or to the putative class members that he seeks to represent. However, Plaintiff's allegations in the Complaint satisfy the amount in controversy requirement for the purpose of removal under CAFA.

jurisdiction to show that damages 'are greater' or will likely prove greater 'than the requisite amount' specified by statute. Instead, the term has required a party seeking federal jurisdiction to show only and much more modestly that 'a fact finder **might** legally conclude' that damages exceed the statutory amount.") (citations omitted) (emphasis added).

32.     While Defendant denies Plaintiff's claims and his requests for relief, the facial allegations in the Complaint and the total amount of wages and attorneys' fees at issue in this action is in excess of this Court's jurisdictional minimum. *See Hammond*, 844 F.3d at 914 ("It is our judgment . . . that '[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.'") (citation omitted). Plaintiff contends Defendant violated the CWA because, in the weeks that Plaintiff worked on a Company Holiday and worked more than 40 hours, Defendant allegedly failed to include the Holiday Incentive pay in the calculations for the regular rate for the purposes of calculating the overtime premium due and failed to include hours worked on a Company Holiday in the total calculation of overtime hours. **Exhibit A**, Complaint, ¶ 43. Plaintiff alleges that he and the Class Members did not receive all the overtime pay to which they were entitled under the law. *Id.* at ¶ 43.

33.     Plaintiff seeks penalties under the CWA, which are included for purposes of calculating the amount in controversy. Under CRS § 8-4-109, penalties are the greater of (1) 125% of that amount of such wages or compensation up to and including $7,500; and 50% of that amount of such wages or compensation that exceed $7,500, or (2) the employee's average daily earnings for each day, not to exceed 10 days, whichever is greater. Here, with the volume of employees and small amount each would be owed under Plaintiff's theory, the average daily wage for 10-day calculation is appreciably greater.

34.     For purposes of calculating the Plaintiff's alleged penalties, they are as follows:

- From January 14, 2019 to the present, there were 10,006 non-exempt hourly employees in Colorado who worked more than 40 hours in a workweek in which they also worked on a Company Holiday as "Holiday O/T".

- The average monthly wage for all full-time non-exempt employees in Colorado from January 14, 2019 to the present is $2,754.48.

- Conservatively estimating that each employee worked an average of 30 days in a month (which serves to reduce the amount in controversy by reducing the average daily earnings), the calculation is $91.80 a day or $918 per 10 days. 10,006 * $918 = **$9,185,508** in alleged penalties alone.

**Exhibit L**, Declaration of Jennifer Johnston, ¶¶ 5, 6.

35.     Plaintiff also seeks recovery of attorneys' fees. **Exhibit A**, Complaint, Prayer for Relief, p. 7. It is well-settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages as well as attorneys' fees. *See, e.g.*, *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933) (stating that attorneys' fees may be used in calculating jurisdictional amount if statute allows such recovery). Based on publicly available information regarding attorney's fees in class action settlements, if Plaintiff prevailed in this case, his attorney could be awarded attorney's fees equal to 25 percent of an award of damages. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Though the monetary amount of fees is significant, the percentage of fees requested (24.7% of the Settlement Fund) falls within the norm for these types of cases. *See* Stuart J. Logan *et al.*, *Attorney Fee Awards in Common Fund Class Actions,* 24 Class Action Rep. 167, 167 (2003) (reporting that the median award of attorney fees was 31.6% based on a survey of 1,200

class action settlements); *Nilsen v. York Cty.,* 400 F.Supp.2d 266, 281 (D.Me.2005) (collecting cases and finding that the median for attorneys' fees awards in class action settlements was around 27%).").

36.     Here, 25% of an award of penalty damages would yield potential attorneys' fees in the amount of approximately **$2,296,377**. This amount adds to the amount in controversy for this case, and further supports Defendants' argument that the $5,000,000 threshold is unequivocally met for this matter.

## V.     ALL REMAINING PREREQUISITES FOR REMOVAL ARE SATISFIED

37.     Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §§ 85, 1391, 1441, and 1446 because the State of Colorado, District Court at Arapahoe County, where Plaintiff filed the Complaint, is a state court within this federal district and division.

38.     Defendant is a private business entity, not a State, State official, or other governmental entity exempt from CAFA. 28 U.S.C. § 1332(d)(5).

39.     The local controversy exception under CAFA does not apply, as Defendant is not a citizen of the State of Colorado. *See* 28 U.S.C. § 1332(d)(4)(A).

40.     Promptly after the filing of this Notice of Removal, Defendant will give written notice of the filing to Plaintiff's counsel and will file a copy of the Notice of Removal with the clerk of the State of Colorado, District Court at Arapahoe County, in accordance with 28 U.S.C. § 1446(d).

41.     A completed Federal Civil Cover Sheet accompanies this Notice of Removal.

42.     If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present both briefing and oral argument in support of its position that

the case is properly removable.

       **WHEREFORE**, for the reasons set forth above, Defendant respectfully requests that all further proceedings in the State of Colorado, District Court at Arapahoe County be discontinued and that this action be removed to the United States District Court for the District of Colorado.

Dated: February 17, 2022

                                                  */s/ Jennifer S. Harpole*
                                                  Jennifer S. Harpole, # 38634
                                                  Littler Mendelson, P.C.
                                                  1900 Sixteenth Street, Suite 800
                                                  Denver, CO 80202
                                                  Telephone: 303.629.6200
                                                  Facsimile: 303.629.0200
                                                  Email: jharpole@littler.com

                                                ***ATTORNEYS FOR DEFENDANT***

## CERTIFICATE OF SERVICE

       I hereby certify that on this 17th day of February, 2022, the foregoing document was filed electronically using the CM/ECF system and will be sent electronically to all counsel of record via electronic mail, including Plaintiff's counsel of record as follows:

                           David H. Miller, Atty Reg. 8405
                           Victoria E. Guzman, Atty Reg. 55401
                           THE SAWAYA & MILLER LAW FIRM
                           1600 Ogden Street
                           Denver, CO 80218
                           Telephone: (303) 551-7667
                           dhmiller@sawayalaw.com
                           vguzman@sawayalaw.com
                           *Attorneys for Plaintiff*

                           */s/ Elisabeth L. Egan*
                           Elisabeth L. Egan

4859-7904-2574.5 / 096748-1008

# EXHIBIT A

| | |
|---|---|
| District Court, Arapahoe County, Colorado<br>7325 S. Potomac St.<br>Centennial, CO 80112 | DATE FILED: January 14, 2022 1:50 PM<br>FILING ID: D3F6494D70F3D<br>CASE NUMBER: 2022CV30070 |
| DAN HAMILTON,<br>Individually and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | COURT USE ONLY |
| David H. Miller, Atty Reg. 8405<br>Victoria E. Guzman, Atty Reg. 55401<br>THE SAWAYA & MILLER LAW FIRM<br>1600 Ogden Street<br>Denver, Colorado 80218<br>Phone: (303) 551-7667<br>Facsimile : (303) 832-7102<br>dhmiller@sawayalaw.com<br>vguzman@sawayalaw.com<br>*Attorneys for the Plaintiff* | Case No:<br><br>Division: |
| INDIVIDUAL AND CLASS ACTION COMPLAINT | |

The Plaintiff, Dan Hamilton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned counsel from the Sawaya & Miller Law Firm, pursuant to the Colorado Wage Act, C.R.S. 8-4-101 et seq., ("CWA"), as his Individual and Class Action Complaint against the Defendant, Amazon.com Services, LLC, a Delaware Limited Liability Corporation ("Amazon" or "Defendant"), states as follows:

## PARTIES

1.     At all times relevant to this complaint, Plaintiff performed all services and work for the Defendant in Arapahoe County, Colorado. Plaintiff resides in Denver County, Colorado.

1

2.      Plaintiff's counsel, the Sawaya & Miller Law Firm, is located at 1600 Ogden Street, Denver, Colorado 80218.

3.      The Defendant is a Delaware limited liability company, with its principal place of business in Washington state.

4.      At all times relevant to this complaint, Defendant was registered with the Colorado Secretary of State to do business in Colorado and in fact did do business in Colorado. The Defendant's registered agent is located at 1900 W. Littleton Boulevard, Littleton, CO 80120.[1]

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this civil action pursuant to Article 6 § 9(1) of the Colorado Constitution.

6.      Venue is proper under C.R.C.P. 98 (b) and (c) because the Defendant conducts their business within this District, all services and all work from Plaintiff that are the subject matter of this Complaint were provided in this District, and the Plaintiff seeks a penalty under the C.R.C.P. Rule 98(b)(1).

## STATEMENT OF FACTS

7.      In or about November of 2017, the Plaintiff was hired by the Defendant as a temporary hourly employee at one of Defendant's warehouse locations situated in Aurora, Colorado, called DEN5.

8.      Defendant operates several such warehouses employing hundreds or even thousands of hourly employees in Colorado that are part of its widespread fulfillment network that conducts a shopping business throughout the U.S. and the world.

9.      The Defendant currently runs at least the following warehouses in Colorado:

    a.  DEN5 – 19799 E. 36th Dr., Aurora, Arapahoe County, CO 80011

    b.  DDV5 – 2889 Himalaya Rd, Aurora, Arapahoe County, CO 80011

    c.  DEN2 – 22205 E. 19th Ave., Aurora, Adams County, CO 80019

    d.  DEN3 – 14601 Grant St., Thornton, Adams County, CO 80023

    e.  DCS3 – 4304 Grinnell Blvd., Colorado Springs, El Paso County, CO 80925

---

[1] Defendant has changed its registration name four times in the last four years, but is currently registered as Amazon.com Services, LLC.

2

10.     The Plaintiff became a permanent employee on March 25, 2018.

11.     Throughout his employment, the Defendant offered the Plaintiff various incentive payment structures to encourage him to work additional shifts, stay late during his scheduled shifts, etc.

12.     These incentive payments included daily incentive payments, such as Surge Premium payments for working on certain days and time and a half for working on designated Company Holidays ("Holiday Incentive").

13.     The Surge Premium payments ranged from approximately an additional $2 per hour to approximately an additional $7.50 per hour for every hour worked on the designated day.

14.     On information and belief, the Defendant's Company Holidays are New Year's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. The Defendant offered to pay time and a half for all hours worked on a Company Holiday, regardless of how many hours the employee worked each week.

15.     Both the Surge Premium payments and the Holiday Incentive payments functioned as shift differentials under Colorado law.

16.     Colorado law follows the FLSA definition and overtime calculation method of "shift differentials."

17.     . In the Defendant's Holiday Pay Policies, the Defendant acknowledged that "[o]nly hours that are actually worked on a company holiday are considered 'hours worked' in the calculation of overtime pay." Exhibit 1: Amazon's Policy: Holiday Pay – US.

18.     Despite this, the Defendant labelled time worked on Company Holidays as "Holiday O/T" regardless of how many hours the Plaintiff had worked during a particular work week.

19.     The Defendant paid time and a half based on the Plaintiff's agreed upon rate for those hours worked on Company Holidays, but did not count hours worked on a Company Holiday toward weekly overtime and did not include the Plaintiff's Holiday Incentive in the calculation of the Plaintiff's regular rate for that week. See Exhibit 2: The Plaintiff's Holiday Paystubs.

20.     As a result, the Defendant failed to pay the Plaintiff all overtime earned under the CWA in any week he worked in excess of 40 hours and on a Company Holiday.

21.     It appears that the Defendant did calculate Surge Premium payments as shift differentials when the Plaintiff worked overtime, but the method of calculation is confusing and impossible to verify without complex math. For example, when the Plaintiff worked 59.95 hours in one week, with 9.75 of those hours at a Surge Premium of $3 per hour, the Defendant paid the Plaintiff time and a half for 19.95 hours, plus an additional $0.244 per hour for those 19.95 hours.

3

22.     As such, the Defendant was aware that it was required to include additional payments, such as shift differentials, in its calculations for overtime, and yet it failed to do so for Holiday Incentive shift differentials.

23.     On information and belief Defendant's pay policy described above was uniform with respect to all classes of U.S. non-exempt hourly employees who worked in AMZL Workplaces and Fulfillment Centers throughout Colorado.

24.     The Plaintiff brings this action on his own behalf and on behalf of all such Amazon hourly workers who worked overtime during weeks they worked on Company Holidays.

CLASS ALLEGATIONS

25.     The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

26.     In addition to bringing his claims individually, the Plaintiff also brings this case as a class action under C.R.C.P. 23 on behalf of the following Class Members:

> All classes of U.S. non-exempt hourly employees who worked in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a Company Holiday, dating back three years from the date of filing.

27.     The Class satisfies the prerequisites and requirements of C.R.C.P. 23 because:

   a.  The Class consists of at least hundreds if not thousands of employees, and individual joinder of all such employees is impracticable but easily determinable through the employment records of the Defendant;

   b.  There are questions of law and fact that are common to the Class, which questions predominate over issues affecting only individual Class Members, including:

      i.  Whether Amazon had a policy or practice of failing to properly compensate hourly employees for overtime worked during weeks they worked on a Company Holiday;

      ii.  Whether Amazon's policies or practices violated the CWA;

      iii.  The nature of the damages due to Class Members for Amazon's violations of the CWA; and

      iv.  Whether Amazon's violations of the CWA were willful.

4

     c. The Plaintiff's claims are typical of the Class Members' claims in that, like all other members of the purported class, and for the same reasons, he was not properly paid overtime during weeks he worked on Company Holidays.

     d. The Plaintiff will fairly and adequately protect the interests of the Class. He has retained counsel that is experienced in wage and hour class litigation. The Plaintiff and his counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class.

28.    The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Amazon and potentially conflicting results for up to thousands of individual workers in matters involving relatively small individual amounts of damages.

29.    Adjudications with respect to individual Class Members would as a practical matter be dispositive to the interests of the other Class Members or substantially impair or impede their ability to protect their interests.

30.    Moreover, Amazon has acted on grounds generally applicable to the Class.

31.    On information and belief, no Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

32.    Because of the uniformity of claims alleged in this Complaint and the fact that the class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

**COUNT I:**
**OVERTIME COMPENSATION**
**Failure to Include Holiday Incentives in the Regular Rate**

33.    The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

34.    When paying time and a half, the employer must take in consideration all payments received for work completed that week, and cannot simply pay time and a half of the employee's agreed upon rate if the employee receives additional compensation such as shift differentials.

35.    The Defendant offered the Plaintiff and the Class Members time and a half for all hours worked on a Company Holiday, regardless of whether the Plaintiff or the Class Members worked overtime that week.

5

36.     The Holiday Incentive payments were shift differentials paid at the rate of time and a half of the Plaintiff and Class Members' agreed upon rate.

37.     In weeks that the Plaintiff worked on a Company Holiday and worked more than 40 hours, the Defendant failed to include the Holiday Incentive pay in the calculations for the regular rate for the purposes of calculating the overtime premium due, and failed to include hours worked on a Company Holiday in the total calculation of overtime hours.

38.     Using the same method of calculation for each week, the Defendant failed to properly calculate the Plaintiff's overtime and thus failed to pay all wages owed during three separate weeks.

39.     During the week of November 24, 2019, the Plaintiff worked 46 hours, 8.98 of which were spent working on Thanksgiving Day. The Plaintiff additionally spent 3.75 hours working a Surge Premium shift. Despite this, only 3 hours of overtime were accounted for in calculating the Plaintiff's overtime payments for the Surge Premium shift differential and the Holiday Incentive shift differential was not accounted for at all.

40.     During the week of September 6, 2020, the Plaintiff worked 53.72 hours, 11.3 of which were spent working on Labor Day. The Plaintiff additionally spent 10.93 hours working a Surge Premium shift. Despite this, only the Surge Premium shift differential was accounted for in calculating the Plaintiff's overtime payments.

41.     During the week of November 22, 2020, the Plaintiff worked 59.93 hours, 10.55 of which were spent working on Thanksgiving Day. The Plaintiff additionally spent 9.32 hours working a Surge Premium shift. Despite this, only 9.38 hours of overtime were contemplated in calculating the Plaintiff's overtime payments for the Surge Premium shift differential and the Holiday Incentive shift differential was not accounted for at all.

42.     Under the CWA, the Plaintiff's overtime rate should have been calculated by first determining his regular rate of pay based on the total compensation paid (including the Holiday Incentive payments and the Surge Premium payments) divided by the total hours worked.

43.     Each of the weeks the Plaintiff worked in excess of 40 hours and on a Company Holiday, the Defendant erroneously failed to properly calculate the Plaintiff's total compensation, and as such failed to pay the Plaintiff all overtime compensation earned.

44.     The Plaintiff and the Class Members were not exempt from having to be paid overtime when working over 40 hours per week. The Plaintiff and the Class Members, however, did not receive all the overtime pay to which they were entitled under the law.

45.     The Plaintiff worked overtime and on a Company Holiday during the weeks of November 24, 2019, September 6, 2020, and November 22, 2020, but was not paid properly for the various shift differentials offered to him, resulting in lost overtime wages of at or approximately $143.54.

46.     The Class Members are owed similar amounts.

47.     Plaintiff and the Class Members are owed their overtime, penalties, and the reasonable costs and attorney's fees of this litigation pursuant to the CWA.

## DEMAND FOR JURY TRIAL

48.     The Plaintiff demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

        WHEREFORE, the Plaintiff, individually and on behalf of the Class Members, respectfully asks that the Court enter judgment against the Defendant and award the Plaintiff and the Class Members:

A. As soon as practicable, certification of this case as a class action under C.R.C.P. 23, appointment of the Plaintiff as class representative and the undersigned attorneys from the Sawaya & Miller Law as class counsel, and notice of the action to all Class Members;

B. A declaratory judgment condemning the Defendant's willful violations of the CWA;

C. A preliminary injunction prohibiting the Defendant from continuing any illegal wage and hour policies and practices of failing to pay proper compensation for overtime work;

D. A permanent injunction prohibiting the Defendant from continuing any illegal wage and hour policies and practices of failing to pay proper compensation for overtime work;

E. Back wages reflecting the overtime compensation due to the Plaintiff and the Class Members;

F. A finding that Defendant's behavior was willful;

G. All applicable statutory damages and penalties provided under the CWA;

H. A service payment to the Plaintiff for his services to the Class Members;

I. Reasonable attorney's fees incurred in bringing this action;

J. The costs of this action;

K. Pre- and post-judgment interest;

7

L.  An order requiring the Defendant to pay the costs of administering any and all payments awarded to the Class Members by the Court; and

M.  Any other and further relief that may be equitable and just.

Respectfully submitted,

*/s/ David H. Miller*

David H. Miller (8405)
Victoria Guzman (55401)
**Sawaya & Miller Law Firm**
1600 Ogden Street
Denver, Colorado 80218
303-551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com

*Attorneys for Plaintiff Dan Hamilton, individually and on behalf of all others similarly situated*

8

## Amazon Policies

Policies home

EXHIBIT 1

# Amazon policies

DATE FILED: January 14, 2022 1:50 PM
FILING ID: D3F6494D70F3D
CASE NUMBER: 2022CV30070

Welcome to the Amazon A to Z policies homepage. This page provides off-network access to select policies for employees.

Amazon believes that easy access to the policy information you need is important. Therefore, policies will be continually added to this page. If you don't find the policy you need, explore Inside Amazon: Policies (available while on the Amazon network only.)

| | |
|---|---|
| Employee conduct | > |
| Hours and pay | > |
| Leave and time off benefits | > |
| Safety and health | > |

## Amazon Policies     Home

Policies home  >  Hours and pay  >  Policy: Holiday Pay - US

# Policy: Holiday Pay - US

Last Revised: 07/21/2021

Amazon observes 7 days as paid company holidays, dependent on employee class. This policy describes how Amazon pays employees for holidays, including holidays that are not worked and holidays that are worked.

## Applicability

This policy applies to all employees based in the US, across all lines of business. Check the eligibility section for further information.

## Policy Contents

Eligibility

Company holidays

Holiday pay

Working on holidays

Exceptions

## Eligibility

Eligibility for holiday pay depends on employee class.

These classes of employees are eligible for holiday pay:

- Regular full-time employees (Class F)
- Reduced-time employees who work 30-39 hours (Class R)
- Part-time employees who work 20-29 hours (Class H)
- Salaried interns (I)

These classes of employees are not eligible for holiday pay. These classes are only eligible for pay when working on a company holiday, which is paid at time and a half.

- Seasonal employees (S)
- Flex-time employees who work less than 20 hours per week (Class X)
- Part-time field employees who work 20-29 hours per week (Class Q)
- In-house temporary staffing employees (ITS) (Class M)
- Hourly interns (I)

## Company holidays

Our paid holidays at Amazon include the following days:

- New Year's Day (January 1)
- Martin Luther King Jr. Day (January – third Monday)
- Memorial Day (May – last Monday)
- Independence Day (July 4)
- Labor Day (September – first Monday)
- Thanksgiving Day (November – fourth Thursday)
- Christmas Day (December 25)

For corporate employees, when a holiday falls on a weekend, the company holiday will be observed on a different calendar day. If the holiday falls on a Saturday, the company holiday will be observed 1 day prior, on Friday. If the holiday falls on a Sunday, the company holiday will be observed 1 day later, on Monday.

For corporate employees working in California, the following day is also a paid holiday: Christmas Eve (December 24).

## Holiday pay

Eligible employees are paid their regular pay rate on company holidays regardless of whether or not they work on the holiday. Your schedule type determines how many hours of holiday pay you receive for each company holiday.

- Full-time, regular employees (Class F) receive 8 hours of holiday pay.
- Reduced-time employees (Class R) receive 6 hours of holiday pay.
- Part-time employees (Class H) receive 4 hours of holiday pay.

Holiday hours are not considered "hours worked" and are not used in the calculation of overtime. Only hours that are actually worked on a company holiday are considered "hours worked" in the calculation of overtime pay.

## Working on holidays

Employees may be scheduled to work on company holidays. If you are an eligible hourly employee and your shift starts on a company holiday, you will receive holiday pay plus time and a half for the hours worked.

- Example: Jordan starts their 8-hour shift at 10 p.m. on Monday (Memorial Day) and works until 6 a.m. on Tuesday. They are paid holiday pay, plus time and a half for the 8 hours they worked on the company holiday.

Salaried, exempt employees (including salaried interns), do not receive time and a half pay for working on a company holiday.

## Exceptions

If you wish to recognize holidays that are not included in this policy, you may request to use one

of your time off options. Examples of time off options include, but are not limited to, Paid

Personal Time, Vacation, or Unpaid Time off. These requests must adhere to the expectations described in those policies. Time off options may vary based on your employee class, and where you live and work. To understand your time off options, speak with your HR representative or contact the Employee Resource Center at 1-888-892-7180.

You will not receive holiday pay while on any Leave of Absence (LOA), but you will receive your approved paid leave benefit. Examples of paid benefits include Short-term Disability (STD) or Parental Leave.

This policy will be applied in a way that is consistent with applicable laws, including those laws that pertain to leave and accommodation. This policy may change from time to time, with or without advance notice, and Amazon reserves the right to depart from the policy when deemed appropriate.

> This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate.

## Feedback

Was this article helpful?   ( Yes )   ( No )

Policy: Extra Time (FC and AMZL)- US                                        Page 1 of 3

## Amazon Policies    Home

Policies home  >  Hours and pay  >  Policy: Extra Time (FC and AMZL)- US

# Policy: Extra Time (FC and AMZL) - US

Last Revised: 08/06/2021

Amazon sometimes experiences increases in customer demand or other business conditions that affect operations.  When our business requires extra time, we meet our customer needs by offering our employees Voluntary Extra Time (VET) and requiring Mandatory Extra Time (MET).

## Applicability

This policy is applicable in the US, for AMZL workplaces and Fulfillment Centers. Check the eligibility section for further information.

## Policy Contents

Eligibility

Overview

Voluntary Extra Time (VET)

Mandatory Extra Time (MET)

## Eligibility

All classes of US non-exempt, hourly employees who work in AMZL and Fulfillment Centers are eligible.

## Overview

When Amazon faces an extra time need in order to meet customer expectations, we attempt to meet those needs through offering VET to employees. Even with these efforts, you may be required to work MET.

Amazon pays overtime according to federal and state regulations. Hourly associates generally receive overtime pay at a rate of one and a half times their regular hourly rate. Unless otherwise required by state or local law, holiday pay credit, vacation, and paid personal time are not "hours worked" for the purposes of calculating overtime.

Your health and safety are important. We have limitations on how many hours you work each workweek, and this applies to both mandatory and voluntary work. The workweek begins on Sunday and ends on Saturday. You cannot work more than 60 hours in 1 workweek, or 12 hours in 1 day, regardless of your shift. Hours beyond these limits require Vice President approval. These cases are reviewed on an individual basis.

Policy: Extra Time (FC and AMZL)- US                                                          Page 2 of 3

## Voluntary Extra Time (VET)

### Notice

We provide notice of VET in different ways based on the options available at your work location.
We may use Labor Scheduling, in-person communication, message boards or TVs in the workplace,
email, or text message.

If your work location uses Labor Scheduling:

- Managers use Labor Scheduling to create a VET opportunity and offer it to eligible employees
  based on business rules.
- You may sign up on a first come, first serve basis, either onsite or offsite in these ways:
    - Onsite: Sign up through scanners, MyTime kiosks, workstations, and Amazon A to Z zones.
    - Off-site: If you are eligible and opted in for Amazon A to Z notifications, you will get a
      text or email alert about the VET opportunity. Accept the opportunity through Amazon A
      to Z.

If your work location does not use Labor Scheduling:

- Managers offer extra time to their entire team and make a list of Amazon volunteers.
- If there are more volunteers than needed, a random selection process is followed and regular
  Amazon employees are prioritized.

### Attendance

When you sign up for a VET opportunity, you commit to work that time. All expectations described
in the attendance policy apply to VET. Missed VET must be covered with one of your applicable
time off options to avoid consequences under the attendance policy. VET is treated like all other
scheduled work time and you are expected to adhere to the start time, break, and lunch schedule of
the shift.

To ask for an exception to the VET attendance expectations, contact your HR representative or the
Employee Resource Center (ERC) at 1-888-892-7180.

## Mandatory Extra Time (MET)

### Notice

We provide notice of MET in different ways based on the options available at your work location.
We may use in-person communication, message boards or TVs in the workplace, email, or text
message. To help everyone plan ahead, we try hard to provide MET notice as far in advance as
possible. MET notice will be given by no later than the start of your lunch break on the scheduled
shift prior to the day in which MET is required . For example, if MET is being scheduled for Friday,
you will be notified by the start of your lunch break on Thursday.

### Attendance

Policy: Extra Time (FC and AMZL)- US                                          Page 3 of 3

All expectations described in the attendance policy apply to MET. Missed MET must be covered with
one of your applicable time off options to avoid consequences under the attendance policy.
Examples of time off options include Vacation and Paid Personal Time (PPT). MET is treated like all
other scheduled work time and you are expected to adhere to the start time, break, and lunch
schedule of the shift.

Exceptions

You are not required to work MET in these situations:

- You are not at work from the time the MET is called to the time of the scheduled MET.
- Prior to the MET announcement, you were approved for a time off option such as Vacation or
  Paid Personal Time (PPT) for the day before or after MET.

If you are unable to work the MET shift due to a prescheduled conflict, notify your manager and HR
representative as soon as reasonably possible to request an exception or the application of an
available time off option.

---

This policy may change time to time, with or without advance notice and Amazon reserves the right to
depart from the policy when deemed appropriate.

---

## Feedback

Was this article helpful?   ( Yes )   ( No )



Search...

Welcome, Dan Hamilton        UNITED STATES | ENGLISH

**About Amazon**   **Employment**   **Libraries**   **My Workplace**   **Services**   **Toolkit**

English  >  Employment – US  >  Policies – US

## Policies – US   ✉   Managed by: Global HR
Edited on: 08/16/2021

Welcome to the US Policies and Guidelines homepage. To begin, review the Policy: Owner's Manual and Guide to Employment. You can then visit the applicable individual policies listed below.

Visit Getting HR Help for answers to common questions and contact information for the Employee Resource Center.

n this page
- US policies
- US Customer Service (CS) policies
- US Virtual Customer Service (VCS) policies
- US Fulfillment Center (FC) policies
- Seasonal associate policies
- Global Specialty Fulfillment (GSF) policies
- Amazon Physical Stores policies
- Amazon Field Sales policies
- Amazon Smart Home Services policies
- Amazon Air policies
- Amazon Devices
- Related resources

## US policies

- Accident Reports
- Background Check
- Bereavement
- Code of Business Conduct and Ethics
- Dogs at Work
- Damage or Loss to Employees' Personal Property While at Work or Traveling
- Dress and Grooming Standards for Non-Customer Facing Roles (WW Ops) Policy
- Dress and Grooming Standards for Non-Customer Facing Roles (WW Ops) SOP
- Dress and Grooming Standards for Customer-Facing Roles (Ops) Policy
- Equal Employment Opportunity
- Employment Reference
- Flexible Work Arrangements
- Global Anti-Harassment
- Holiday Pay
- Insider Trading
- Internal Corporate Communications: Amazon Posters
- Jury and Witness Duty
- Labor and Employment Workplace Posters
- Lactation Accommodation Policy
- Large Email List
- Leave: includes Medical Leave, Parental Leave, Personal Leave, and all other leave types.
  - Visit Accommodation Resources for policy information on accommodations due to an employee medical restriction or limitation.
- Mechanical Turk
- Medical Accommodations
- Off Duty
- Paid Personal Time Off Policy
- Paid Time Off: includes bereavement, jury and witness duty, sick time, personal time, vacations and holiday pay, and state-specific policies.
- Part Time Work Arrangements

https://inside.hr.amazon.dev/us/en/employment/policies.html

8/31/2021

Policies - US    Page 2 of 6

- Use of Amazon Facilities
- Voting Time-Off
- Weapons in the Workplace
- Work from Home Outage
- Working Hours (Non-Exempt/Hourly)

## US Customer Service (CS) policies

- Attendance
- Bereavement (Regular CS)
- Bereavement (Seasonal CS)
- Consensual Relationship
- Cell Phone Standards
- Computer Use
- Customer and Account Phone Security Adherence
- Drugs and Alcohol
- Employee Referral
- Extra Time
- Good Standing and Warning Timeline
- Holiday Blockout
- Holiday Pay Guidelines
- Internal Transfer and Promotion
- Language Premium
- Physical Locations Associate Outage Guidelines
- Physical Locations Outage Policy
- Seasonal and Reserves Associate Bonus – US (CS)
- Secure Workspace Policy
- Shift Differential Guidelines
- Tobacco Use
- Vacation – California
- Voluntary Time Off
- Work from Home

Visit Policies (CS) for additional policies and information.

## US Virtual Customer Service (VCS) policies

- Attendance
- Extra Time
- Paid Time Off
- VCS Outage
- Voluntary Time Off
- Work From Home

Visit Policies (VCS) ⤢ for more information on policies, benefits, pay, and additional resources for VCS employees.

Policies - US

## US Fulfillment Center (FC) policies

- Appeals
- Attendance
- Cell Phone Use
- Computer Use
- Consensual Relationship
- Drugs and Alcohol
  - Department of Transportation Drug and Alcohol Policy
- Extra Time
- Holiday Blockout
- Holiday Pay Guidelines
- Internal Hourly Transfer/Promotion
- MyFlex Pay
- NAFC Security Standards of Conduct
- Off-Site Parking and Commuting
- Specialty Operations: Surge Shift Premium
- Temporary Schedule Adjustments
- Travel Time
- Vacation – California
- US, Canada, and Mexico Ops Temp Location Closure Pay
- US, Canada, and Mexico Ops Temp Location Closure Pay SOP
- Variable Compensation Plan Eligibility
- Voluntary Time Off

Visit Policies (FC) for more information.

## Seasonal associate policies

- Approved Time-Off
- FC Seasonal Attendance
- Paid Personal Time Policy for Internal Temporary Solutions Employees (applicable only to these employees)
- Seasonal Attendance Policy (Fixed Schedule)

## Global Specialty Fulfillment (GSF) policies

- Ready Attendance Policy
- Progressive Discipline
- Standard Work and Progressive Discipline (Prime Now Shopper Network)

### Locker+ policies

- Amazon Campus: Drug and Alcohol Policy
- Amazon Campus: Furlough
- Attendance Guide
- Cell Phone Use
- Code of Business Conduct and Ethics
- Consensual Relationship
- Computer Use

https://inside.hr.amazon.dev/us/en/employment/policies.html

8/31/2021

App. Vol. I 42

- Equal Employment Opportunity
- Extra Time
- Holiday Blockout
- NAFC Security Standards of Conduct
- Tobacco
- Voluntary Time Off
- Workplace Global Anti-Harassment Policy

### Prime Now shopper network (3P/Copperfield)

- Standard Work and Progressive Discipline Policy
- WFM Shopper Code of Conduct

## Amazon Physical Stores policies

Amazon Physical Stores include Books, Go, 4-star, Presented by Amazon, and more.

- Visit Amazon Policy for all other Physical Stores policies. Expand the **Amazon Books** folder on the left-hand side and select **HR Policies**.

## Amazon Field Sales policies

Visit Amazon Field Sales ↪ for additional policies applicable to Field Sales employees.

## Amazon Smart Home Services policies

- ASHS Introductory Probationary Period
- Dress and Grooming
- Drug and Alcohol
- Gratuity
- Overtime Guidelines
- Time and Attendance
- Vehicle Code of Conduct
- Introductory Probationary Period
- Inclement Weather
- Code of Conduct ↪

## Amazon Air policies

- Seasonal Associates
- Building Closures
- Employee Screening
- Flexible Scheduling
- Internal Transfers
- Attendance Policy
- Open Door Policy
- Drug and Alcohol
- Safety Standards of Conduct ↪

Policies - US

- SIDA Badging

## Amazon Devices

- Time and Attendance (AMDS)
- Time and Attendance (ADS)

## Related resources

- COVID-19 Ordinances
- Compliance
- Getting Started
- Onboarding
- Travel for Work
- Welcome New Hires

## Feedback

Was this article helpful?   ( Yes )   ( No )

 amazon

**HELP**

**Employee Resource Center**

Please contact the Employee Resources Center (ERC) to get HR help with policy or any employment related questions or use our self-service resources.

Phone: +1-888-892-7180 (toll-free)

**Code of Conduct Reporting**

Amazon employees should always act lawfully, ethically, and in the best interests of Amazon in performing their job duties. To report violations of the Code of Conduct and Ethics, contact Amazon's Ethics Line.

Phone: +1-877-781-2414

**Inside Amazon Help**

New Inside Amazon Features

**SECURITY QUESTIONS OR ISSUES**

**Emergencies**
Call 911 or your local emergency number

**Business Assurance Center**

Please contact the Business Assurance Center (BAC); to report security, safety and business continuity issues for all Corporate sites, as well as all business traveler safety related events regardless of location:

Phone +1 (206) 740-SAFE (7233)

Toll Free: +1 (800) 929-1896

Email: BAC@amazon.com

**Global Security Operations Center (GSOC)**

Please contact the Global Security Operations Center (GSOC); to report security, safety or business continuity issues for Operations Sites-Fullfillment Centres (FC's) and Customer Service Centers (CS's)

Phone: (206) 266-6066(x66066)

Toll Free: +1 (877) 426-2966

Email: GSOC@amazon.com

**Amazon Web Service Security Operations Center (AWS SOC)**

Please contact the Amazon Web Services (AWS) Security Operations Center (AWS SOC); to report security issues for all AWS data centre locations:

Phone +1 (206) 740-4812

Email: aws-soc@amazon.com or aws-soc-eu@amazon.com

Page last updated Amazon.com Confidential

https://inside.hr.amazon.dev/us/en/employment/policies.html

8/31/2021

App. Vol. I 44

| CO.  | FILE   | DEPT.  | CLOCK | VCHR. NO. |   |
|------|--------|--------|-------|-----------|---|
| Y1K  | 185931 | 118200 | 1085  | 0000502900 | 1 |

7833-0003

**Earnings  Statement**

ADP®

*AMAZON.COM  SERVICES  INC*
*ATTN:  AMAZON  PAYROLL*
*202  WESTLAKE  AVE  N*
*SEATTLE,  WA  98109*

Period  Beginning:     11/24/2019
Period  Ending:          11/30/2019
Pay  Date:                  12/06/2019

**EXHIBIT 2**

DATE FILED: January 14, 2022 1:50 PM
FILING ID: ~~CBC9D64CCCF3D~~
CASE NUMBER: 2022CV30070

Taxable  Marital  Status:     Single
Exemptions/Allowances:
     Federal:          0
     CO:                0

**DAN  HAMILTON**
~~XXX XXXXX~~
**DENVER  CO  80224**

| **Earnings** | rate | hours | this  period | year  to  date |
|--------------|------|-------|--------------|----------------|
| Regular | 15.0000 | 34.02 | 510.30 | 19,232.70 |
| Overtime | 22.5000 | 3.00 | 67.50 | 67.50 |
| Health Pay | | | 9.62 | 471.38 |
| Holiday O/T | 22.5000 | 8.98 | 202.05 | 884.93 |
| Holiday Pay | 15.0000 | 4.00 | 60.00 | 360.00 |
| O/T Premium | 0.2200 | 3.00 | 0.66 | 0.66 |
| O/T Premium 2 | 0.1046 | 3.00 | 0.31 | |
| Surge Prm@$5 | 5.0000 | 3.75 | 18.75 | 18.75 |
| Gift Gross Up | | | | 91.30 |
| Pd Suspension | | | | 60.00 |
| **Gross Pay** | | | **$869.19** | 21,187.53 |

Your  federal  taxable  wages  this  period  are  $869.19

**Other  Benefits  and
Information**              this  period       total  to  date
Tot Work Hours          46.00

**Important  Notes**
YOUR  COMPANY  PHONE  NUMBER  IS  888-892-7180

BASIS OF PAY: HOURLY

LEGAL  ADDR  410  TERRY  AVE  NORTH  SEATTLE  WA  98109

@ THE  SHIFT  PAY  RATE  MAY  NOT  DISPLAY  CONSISTENTLY
DUE  TO  CALCULATION   METHOD  AND  ROUNDING.

| **Deductions** | **Statutory** | | |
|----------------|---------------|---|---|
| | Federal Income Tax | -95.51 | 1,942.65 |
| | Social Security Tax | -53.89 | 1,313.63 |
| | Medicare Tax | -12.60 | 307.22 |
| | CO State Income Tax | -36.86 | 820.52 |
| | Aurora Income Tax | | 22.00 |
| | **Other** | | |
| | Roth | -34.38 | 785.14 |
| | Gift Cert | | 60.00 |
| | **Net Pay** | **$635.95** | |
| | Checking Dep. | -635.95 | |
| | **Net Check** | **$0.00** | |

Correction: 3.00 OT Hours for 11/24/19 - 11/30/19

© 2000 ADP, LLC

AMAZON.COM SERVICES  INC
ATTN: AMAZON  PAYROLL
202 WESTLAKE  AVE  N
SEATTLE, WA  98109

**Advice number:**        00000502900
Pay date:                   12/06/2019

THIS IS NOT A CHECK

**Deposited  to  the  account  of**          account  number     transit  ABA              amount
**DAN  HAMILTON**                                 xxxxxxxx2899        xxxx  xxxx              $635.95

**NON-NEGOTIABLE**

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|---|---|---|---|---|---|
| Y1K | 185931 | 118200 | 1085 | 0000387554 | 1 |

710-0003

AMAZON.COM  SERVICES  LLC
ATTN: AMAZON  PAYROLL
202 WESTLAKE  AVE N
SEATTLE,  WA 98109

**Earnings  Statement**

ADP®

Period Beginning:      09/06/2020
Period Ending:         09/12/2020
Pay Date:              09/18/2020

Taxable Marital Status:   Single
Exemptions/Allowances:
   Federal:        0
   CO:             0

**DAN  HAMILTON**

**DENVER  CO  80224**

**Earnings**

| | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 15.0000 | 28.70 | 430.50 | 15,589.05 |
| Overtime | 22.5000 | 13.72 | 308.70 | 884.71 |
| Health Pay | | | | 9.62 | 365.56 |
| Holiday O/T | 22.5000 | 11.30 | 254.25 | 693.46 |
| O/T Premium | 0.5087 | 13.72 | 6.98 | 323.85 |
| Surge Prm@$5 | 5.0000 | 10.93 | 54.65 | 649.45 |
| Additionalpay | | | | 1,091.86 |
| Double Time | | | | 3,940.20 |
| Gift Gross Up | | | | 483.82 |
| Holiday Pay | | | | 120.00 |
| Personal Time | | | | 600.00 |
| Surge Prm@$3 | | | | 16.26 |
| **Gross Pay** | | | **$1,064.70** | 25,097.25 |

Net Check                          $0.00

Correction: 13.72 OT Hours for 09/06/20 - 09/12/20

Your federal taxable wages this period are
$1,064.70

**Other Benefits  and
Information**

| | this period | total to date |
|---|---|---|
| Personal | 7.26 | |
| Tot Work Hours | 53.72 | |

**Deductions**

**Statutory**

| | | |
|---|---|---|
| Federal Income Tax | -137.20 | 3,019.15 |
| Social Security Tax | -66.01 | 1,556.03 |
| Medicare Tax | -15.44 | 363.91 |
| CO State Income Tax | -45.73 | 1,027.90 |
| Aurora Income Tax | | 18.00 |

**Other**

| | | |
|---|---|---|
| Roth | -42.20 | 916.23 |
| Ach Same Day | | 11.43 |
| Gift Cert | | 317.99 |
| **Net Pay** | | **$758.12** |
| Checking Dep. | -758.12 | |

**Important  Notes**

YOUR COMPANY  PHONE  NUMBER  IS 888-892-7180

BASIS OF PAY: HOURLY

LEGAL ADDR 410 TERRY  AVE NORTH  SEATTLE  WA 98109

@ THE SHIFT  PAY RATE  MAY NOT DISPLAY  CONSISTENTLY
DUE TO CALCULATION  METHOD  AND ROUNDING.

© 2000 ADP, LLC

AMAZON.COM SERVICES LLC
ATTN: AMAZON PAYROLL
202 WESTLAKE AVE N
SEATTLE, WA 98109

Advice number:        00000387554
Pay date:             09/18/2020

THIS IS NOT A CHECK

| Deposited  to the account  of | account  number | transit  ABA | amount |
|---|---|---|---|
| DAN HAMILTON | xxxxxxxx2899 | xxxx  xxxx | $758.12 |

**NON-NEGOTIABLE**

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|---|---|---|---|---|---|
| AAK | 276438 | 118200 | 1085 | 0000506015 | 1 |

16274-0003

# Earnings Statement

*AMAZON.COM SERVICES LLC*
*PO BOX 80726 SEATTLE, WA 98108*

Period Beginning:   11/22/2020
Period Ending:      11/28/2020
Pay Date:           12/04/2020

ADP®

Taxable Marital Status:   Single
Exemptions/Allowances:
  Federal:   0
  CO:        0

**DAN HAMILTON**

**DENVER CO 80224**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 16.7500 | 40.00 | 670.00 | 3,354.31 |
| Overtime | 25.1250 | 9.38 | 235.67 | 718.19 |
| Holiday O/T | 25.1250 | 10.55 | 265.07 | 265.07 |
| Holiday Pay | 16.7500 | 8.00 | 134.00 | 134.00 |
| O/T Premium | 0.2333 | 9.38 | 2.19 | 17.30 |
| Surge Prm@$3 | 3.0000 | 9.32 | 27.96 | 27.96 |
| Personal Time | | | | 271.18 |
| Surge Prm@$5 | | | | 139.50 |
| Voting Time | | | | 33.50 |
| **Gross Pay** | | | **$1,334.89** | 4,961.01 |

Your federal taxable wages this period are
$1,334.89

**Other Benefits and Information**

| | this period | total to date |
|---|---|---|
| Personal Balnce | 8.25 | |
| Tot Work Hours | 59.93 | |
| Vacation | 11.90 | |

**Important Notes**
206-266-1000

BASIS OF PAY: HOURLY

LEGAL ADDR 410 TERRY AVE NORTH SEATTLE WA 98109

@ THE SHIFT PAY RATE MAY NOT DISPLAY CONSISTENTLY
DUE TO CALCULATION METHOD AND ROUNDING.

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -196.64 | 595.13 |
| | Social Security Tax | -82.76 | 307.58 |
| | Medicare Tax | -19.35 | 71.93 |
| | CO State Income Tax | -58.24 | 204.77 |
| | Aurora Income Tax | | 4.00 |
| | **Other** | | |
| | Roth | -53.40 | 1,150.65 |
| | **Net Pay** | **$924.50** | |
| | Checking Dep. | -924.50 | |
| | **Net Check** | **$0.00** | |

Correction: 9.38 OT Hours for 11/22/20 - 11/28/20

© 2000 ADP, LLC

AMAZON.COM SERVICES LLC
PO BOX 80726 SEATTLE, WA 98108

Advice number:   00000506015
Pay date:        12/04/2020

THIS IS NOT A CHECK

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| DAN HAMILTON | xxxxxxxx2899 | xxxx xxxx | $924.50 |

**NON-NEGOTIABLE**

# EXHIBIT B

☐ **FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED: January 14, 2022 1:30 AM
FILING ID: D3F6494D70F3D
CASE NUMBER: 2022CV30070

| | |
|---|---|
| District Court, Arapahoe County, Colorado<br>Arapahoe County Justice Center<br>7325 South Potomac Street<br>Centennial, Colorado 80112<br><br>Plaintiff(s): Dan Hamilton, individually and on behalf of all others similarly situated,<br>v.<br>Defendant(s): AMAZON.COM SERVICES, LLC. | ▲ COURT USE ONLY ▲ |
| David H. Miller, Atty Reg. 8405<br>Victoria E. Guzman, Atty Reg. 55401<br>THE SAWAYA & MILLER LAW FIRM<br>1600 Ogden Street<br>Denver, Colorado 80218<br>Phone: (303) 551-7667<br>Facsimile : (303) 832-7102<br>dhmiller@sawayalaw.com<br>vguzman@sawayalaw.com<br>Attorneys for the Plaintiff | Case Number:<br><br><br><br><br>Division          Courtroom |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☒ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

App. Vol. I 49

☐ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

01/14/2022                          */s/ David H. Miller*

**Date:** _____         _____
                                   **Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

# EXHIBIT C

<table>
<tr><td>

DISTRICT COURT, ARAPAHOE COUNTY,
STATE OF COLORADO
7325 South Potomac Street
Centennial, Colorado 80112
_____

Plaintiff(s): DAN HAMILTON, Individually and on
behalf of all others similarly situated,

v.

Defendant(s): AMAZON.COM SERVICES, LLC

</td><td>

DATE FILED: January 14, 2022 3:44 PM
CASE NUMBER: 2022CV30070


▲  COURT USE ONLY  ▲
_____

Case Number:  22CV30070
Div. 204

</td></tr>
</table>

**DELAY REDUCTION ORDER**
(FOR CASES FILED ON OR AFTER JULY 1, 2015)

This Court is on a delay reduction docket.

A.   For all civil actions, the following deadlines must be met:

1.   <u>Service of Process</u>:  Returns of service on all defendants shall be filed within **63 days** after the date of the filing of the complaint.

2.   <u>Default Judgment</u>:  Application for default judgment shall be filed within **35 days** after default has occurred.

3.   <u>Case Management</u>:   Whether a Case Management Conference is required is determined by each Division.

4.   <u>Trial Setting</u>: Parties shall comply with the procedure for setting trial as determined by the Judge presiding over the Division to which the case has been assigned.

   a.   Actions governed by C.R.C.P. 16 shall be set for trial within **49 days** of the "at issue" date and generally trial will be set within **1 year** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

   b.   Actions governed by C.R.C.P. 16.1 shall be set for trial within **42 days** of the "at issue" date and generally trial will be set within **6 months** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

B.   A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

C.    Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

D.    Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E.    If an attorney or self-represented party failed to comply with the Order, the Court may dismiss the case without prejudice.

Date:  January 14, 2022

BY THE COURT:
ASSIGNED JUDGE

# EXHIBIT D

<table>
<tr><td>

ARAPAHOE COUNTY COMBINED COURTS
DISTRICT COURT, ARAPAHOE COUNTY,
COLORADO
7325 South Potomac Street
Centennial, Colorado 80112

</td><td>

DATE FILED: January 18, 2022 8:46 AM
CASE NUMBER: 2022CV30070

</td></tr>
</table>

**Plaintiffs:** DAN HAMILTON, Individually and on behalf of all others similarly situated

**v.**

**Defendants:** AMAZON.COM SERVICES, LLC,

▲ **COURT USE ONLY** ▲

**Case No: 2022CV30070**
**Courtroom: 204**

## DIVISION 204 DELAY REDUCTION ORDER AND ORDER REGARDING PLAN FOR SETTLEMENT

All civil courtrooms are on a delay reduction docket and the Clerk's office automatically generates a "Delay Reduction Order/Order – Case Management". If there are any differences between that document and this Order, the Division 204 Delay Reduction Order shall control.

**IF AN ATTORNEY OR *PRO SE* PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE. THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(b)(2).**

In all civil actions, the following deadlines must be met:

**Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

**Replevin and FED Cases**: In any replevin or FED matter, proof of service on Defendant(s) must be filed at least 48 hours PRIOR to a scheduled hearing on possession. If proof of service is not filed at least 48 hours prior to the hearing, the hearing is subject to being vacated and reset.

**Default:** Application for entry of default under C.R.C.P. 55(a) must be filed within **14 days** after default has occurred.

If all defendants are in default, a motion for entry of default judgment under C.R.C.P. 55(b) must be filed with the application for entry of default. Motions for entry of default judgment must comply with C.R.C.P. 121 § 1-14. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

**Trial Setting for All Cases:** The Responsible Attorney as defined in C.R.C.P. 16(b)(2) must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **28 days from the date the case is at issue**. (Note: this is a shorter timeframe than would otherwise be required by C.R.C.P. 16.1(g)). A case is "at issue" when: (a) all parties have been served and have filed all pleadings permitted by C.R.C.P. 7; or (b) defaults or dismissal have been entered against all non-appearing parties; or (c) at such other time as the Court directs.

Trial settings may only be obtained upon the filing of a Notice to Set.  No case will be set for more than 7 days without prior approval of the Court.  No case will be set beyond one year after the case is filed without prior approval of the Court.  **The Court adheres to the provisions of Chief Justice Directive (CJD) 08-08 which requires that 90% of all civil actions filed shall be concluded within one year of filing.**

Trial settings may be obtained by contacting the Division 204 Judicial Assistant at karita.geist@judicial.state.co.us or 303-645-6634.

Cases filed under **C.R.C.P. 16:**

**Case Management Conference:** A Case Management Conference will not be set so long as there are no disputed issues as to the Case Management Order.  Pursuant to C.R.C.P. 16(d)(3), all parties represented by counsel may, no later than **28 days** from the date the case is at issue, file a proposed Case Management Order in compliance with C.R.C.P. 16(b) for the Court to review. The parties must file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections. The Court will grant the Case Management Order as long as there are no disputed issues within it. Note that this required timeframe to file a proposed Case Management Order is the same as required for the filing of the Notice to Set Trial, as this allows parties to set all trial dates by making only one phone call to the Division 204 Clerk.

**Case Management Conference:**  The Court may set a Case Management Conference at its discretion.

Cases filed under **C.R.C.P. 16.1:**

**Certificate of Compliance:**  Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h).  No Case Management Order or Case Management Conference is required.

Additionally, in all civil actions, the following provisions apply:

> **Service of this Order:**  The Plaintiff or Responsible Attorney must send a copy of this order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

2

**Related Cases**:  An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) informing the Court of the related case(s) and stating whether consolidation is appropriate.

## ORDER REGARDING PLAN FOR SETTLEMENT PURSUANT TO C.R.C.P. 16(b)(7) and C.R.S. § 13-22-311, 313

1.  This Order applies to all civil cases filed at this Court.

2.  No later than 35 days after the case is at issue, the parties shall explore the possibility of a prompt settlement or resolution of the case.

3.  No later than 42 days after the case is at issue, the parties shall submit a document entitled "Stipulated Plan Regarding Settlement" setting forth their plans for future efforts to settle the case to the Court. Unless notified otherwise by the Court, the Stipulated Plan Regarding Settlement is automatically adopted as an Order of the Court.

The Stipulated Plan Regarding Settlement (ADR Plan) must include the following:

    a.  Specification of the selected form of ADR. The parties may select any form of ADR defined in C.R.S. § 13-22-302.

    b.  Designation of a provider who has been contacted and has agreed to provide ADR services to the parties. The parties may select any provider available in the community including Office of Dispute Resolution (ODR). ODR offers moderately priced mediation and other ADR services. ODR can be scheduled at www.ColoradoODR.org or call 720-625-5940.

4.  If no stipulated plan is submitted within 42 days of the case being at issue, the Court-ordered plan shall be that the parties must participate in mediation with ODR no later than 63 days prior to the trial date.

5.  Failure to comply with this Order may result in sanctions including, but not limited to, loss of trial date.

6.  The parties must certify in the proposed Trial Management Order (due 7 days before the date of Pre-Trial Conference) that they have complied with the Stipulated Plan Regarding Settlement or with ODR pursuant to paragraph 3 above.

7.  Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

3

**If an attorney or pro se party fails to comply with this Order, the Court may dismiss the case without prejudice.**

Date:   January 18, 2022                    BY THE COURT:

                                            _____
                                            John E. Scipione
                                            District Court Judge

4

# EXHIBIT E

District Court, Arapahoe County, Colorado
Arapahoe County Justice Center
7325 South Potomac Street
Centennial, Colorado 80112

DATE FILED: January 14, 2022 1:50 PM
FILING ID: D3F6494D70F3D
CASE NUMBER: 2022CV30070

**DAN HAMILTON,**
**Individually and on behalf of all others**
**similarly situated,**

**Plaintiff,**

**v.**

**AMAZON.COM SERVICES, LLC,**

**Defendant.**

COURT USE ONLY

David H. Miller, Atty Reg. 8405
Victoria E. Guzman, Atty Reg. 55401
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Phone: (303) 551-7667
Facsimile : (303) 832-7102
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
*Attorneys for the Plaintiff*

Case No:

Division:

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT: Amazon.com Services, LLC,** c/o
Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120 Matthew Kent
Justice, 5295 DTC Parkway, Greenwood Village, Colorado, 80112, its Registered Agent.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer
or other response to the attached Complaint. If service of the Summons and Complaint was made
upon you within the State of Colorado, you are required to file your answer or other response
within 21 days after such service upon you. If service of the Summons and Complaint was made
upon you outside of the State of Colorado, you are required to file your answer or other response

1

within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: _____  01/14/2022

/s/ David H. Miller, Counsel for Plaintiffs

_____
Signature of Plaintiff

Sawaya Law Firm, 1600 Ogden Street, Denver CO 80218

_____
Address of Plaintiff

303.551.7667

_____
Plaintiffs' Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

# EXHIBIT F

**Return of Service**

DATE FILED: January 28, 2022 9:36 AM
FILING ID: F57315EBD54F7
CASE NUMBER: 2022CV30070

Dan Hamilton, Individually and on
behalf of all others similarly situated

v.

Amazon.com Services, LLC

District Court, Arapahoe County
State of Colorado
Case No.: # 2022CV30070

I Jesse James Casias the affiant, being duly sworn, say that I am over the age of eighteen years old and am not a party to the within action; and that I have personally served Amazon.com Services, LLC by serving Registered Agent Corporation Service Company Cole Stender Clerk at his usual place of business. Served was a true and correct copy of District Court Civil Summons, Individual and Class Action Complaint, District Civil (CV) Case Cover Sheet for Initial Pleading of Complaint, Counterclaim, Cross-Claim or Third Party Complaint and Jury Demand. January 18, 2022 at 11:40am at 1900 W. Littleton Blvd., City of Littleton, Zip Code of 80123, County of Arapahoe, State of Colorado..

_____
Jesse James Casias
Private Process Server

CHRISTINE M. THOMSEN
NOTARY PUBLIC - STATE OF COLORADO
NOTARY ID 20204004300
MY COMMISSION EXPIRES JAN 30, 2024

(official seal here)

Subscribed and Sworn before me _January 25, 2022_

_____
Notary Public

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 64

# EXHIBIT G

| | |
|---|---|
| District Court, Arapahoe County, Colorado<br><br>Court Address:<br>Arapahoe County Justice Center<br>7325 South Potomac Street<br>Centennial, Colorado 80112 | DATE FILED: February 8, 2022 12:05 PM<br>FILING ID: F7D84B9E16C5C<br>CASE NUMBER: 2022CV30070 |
| Dan Hamilton<br><br>Plaintiff,<br><br>v.<br><br>Amazon.com Services, LLC,<br><br>Defendant. | ▲ **COURT USE ONLY** ▲<br><br>Case Number: 2022CV30070<br><br>Division/Courtroom: |
| ***Attorneys for Defendant:***<br>Jennifer S. Harpole, # 38634 (jharpole@littler.com)<br>LITTLER MENDELSON, P.C.<br>1900 Sixteenth Street, Suite 800<br>Denver, CO  80202<br>Phone: 303.629.6200 | Fax:  303.629.0200 | |

### NOTICE OF ENTRY OF APPEARANCE OF JENNIFER S. HARPOLE

Please take notice that Jennifer S. Harpole, of the law firm Littler Mendelson, P.C., enters her appearance on behalf of Defendant Amazon.com Services, LLC.  Ms. Harpole certifies that she is a member in good standing of the bar of this Court.

Dated: February 8, 2022.

*/s/ Jennifer S. Harpole*
Jennifer S. Harpole, # 38634

***ATTORNEYS FOR DEFENDANT***

1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of February, 2022, a true and correct copy of the foregoing NOTICE OF ENTRY OF APPEARANCE OF JENNIFER S. HARPOLE was filed via the Colorado Courts E-Filing System (ICCES) and served upon the following:

David H. Miller, Atty Reg. 8405
Victoria E. Guzman, Atty Reg. 55401
THE SAWAYA & MILER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com

*/s/ Elisabeth L. Egan*
Elisabeth L. Egan

4887-8303-8476.1 / 096748-1008

2

# EXHIBIT H

| | |
|---|---|
| District Court, Arapahoe County, Colorado<br><br>Court Address:<br>Arapahoe County Justice Center<br>7325 South Potomac Street<br>Centennial, Colorado 80112 | DATE FILED: February 8, 2022 12:05 PM<br>FILING ID: F7D84B9E16C5C<br>CASE NUMBER: 2022CV30070 |
| Dan Hamilton<br><br>Plaintiff,<br><br>v.<br><br>Amazon.com Services, LLC,<br><br>Defendant. | ▲   **COURT USE ONLY**   ▲<br><br>Case Number: 2022CV30070<br><br>Division/Courtroom: |
| ***Attorneys for Defendant:***<br>Jennifer S. Harpole, # 38634 (JHarpole@littler.com)<br>Sarah K. Watt, # 53073 (SWatt@littler.com)<br>LITTLER MENDELSON, P.C.<br>1900 Sixteenth Street, Suite 800<br>Denver, CO  80202<br>Phone: 303.629.6200 | Fax:  303.629.0200 | |
| **NOTICE OF ENTRY OF APPEARANCE OF SARAH K. WATT** | |

Please take notice that Sarah K. Watt, of the law firm Littler Mendelson, P.C., enters her appearance on behalf of Defendant Amazon.com Services, LLC. Ms. Watt certifies that she is a member in good standing of the bar of this Court.

Dated: February 8, 2022.

*/s/ Sarah K. Watt*
Sarah K. Watt, # 53073

***ATTORNEYS FOR DEFENDANT***

1

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February, 2022, a true and correct copy of the foregoing NOTICE OF ENTRY OF APPEARANCE OF SARAH K. WATT was filed via the Colorado Courts E-Filing System (ICCES) and served upon the following:

David H. Miller, Atty Reg. 8405
Victoria E. Guzman, Atty Reg. 55401
THE SAWAYA & MILER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com

/s/ Elisabeth L. Egan
Elisabeth L. Egan

4893-6493-2876.1 / 096748-1008

# EXHIBIT I

District Court, Arapahoe County, Colorado

Court Address:
Arapahoe County Justice Center
7325 South Potomac Street
Centennial, Colorado 80112

DATE FILED: February 8, 2022 12:05 PM
FILING ID: F7D84B9E16C5C
CASE NUMBER: 2022CV30070

---

Dan Hamilton

Plaintiff,

v.

Amazon.com Services, LLC,

Defendant.

▲  **COURT USE ONLY**  ▲

Case Number: 2022CV30070

Division/Courtroom:

**Attorneys for Defendant:**
Jennifer S. Harpole, # 38634 (JHarpole@littler.com)
Sarah K. Watt, # 53073 (SWatt@littler.com)
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone: 303.629.6200 | Fax:  303.629.0200

**DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO
ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Amazon.com Services, LLC. ("Defendant"), by through its undersigned attorneys, respectfully requests that the Court grant it a two (2) week extension of time within which to file its answer or other responsive pleading to Plaintiff's Complaint. Plaintiff does not oppose the relief requested. In support of this Motion, Defendant states as follows:

1.     On January 14, 2022, Plaintiff Dan Hamilton filed his Complaint.

2.     Plaintiff served Defendant with the Summons and Complaint on January 18, 2022.

App. Vol. I 71

3.      Pursuant to Rule 12(a) of the Colorado Rules of Civil Procedure, Defendant's responsive pleading is currently due on February 8, 2022.

4.      The Parties have agreed to a two (2) week extension of time from the date the response was initially due (February 8, 2022), which will result in a due date for Defendant's response of February 22, 2022. This additional time will allow counsel for Defendant time to investigate and further explore the allegations in Plaintiff's Complaint, to ensure Defendant has sufficient background information to properly respond to the Complaint, and to investigate whether this action was filed in the proper court.

5.      This is Defendant's first extension of time with respect to its response to Plaintiff's Complaint.

6.      This short enlargement of time will not prejudice any party and will not result in undue delay.

7.      Pursuant to Local Rule 1-121, §1-11, Colorado Rules of Civil Procedure, the undersigned certifies that a copy of this Motion is being served on the moving attorneys' client, Amazon.com Services, LLC.

8.       Pursuant to Local Rule 1-121, §1-15(8), Colorado Rules of Civil Procedure, Defendant's counsel conferred with Plaintiff's counsel regarding the contents of this Motion. Plaintiff does not oppose the relief requested in this Motion.

2

WHEREFORE, Defendant Amazon.com Services, LLC, respectfully requests that the Court grant an extension of time of two (2) weeks, up to and including February 22, 2022, in order for Defendant to answer or otherwise respond to Plaintiff's Complaint.

Dated: February 8, 2022.

/s/ Sarah K. Watt
Jennifer S. Harpole, # 38634
Sarah K. Watt, # 53073
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone: 303.629.6200
Fax:  303.629.0200
JHarpole@littler.com
SWatt@littler.com
**_ATTORNEYS FOR DEFENDANT_**

### CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February, 2022, a true and correct copy of the foregoing UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT was filed via the Colorado Courts E-Filing System (ICCES) and served upon the following:

David H. Miller, Atty Reg. 8405
Victoria E. Guzman, Atty Reg. 55401
THE SAWAYA & MILER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com


                                        /s/ Elisabeth L. Egan
                                        Elisabeth L. Egan


4861-2004-9164.1 / 096748-1008

# EXHIBIT J

GRANTED BY COURT
02/08/2022
DATE FILED: February 8, 2022 3:32 PM
CASE NUMBER: 2022CV30070

JOHN E SCIPIONE
District Court Judge

| | |
|---|---|
| District Court, Arapahoe County, Colorado<br><br>Court Address:<br>Arapahoe County Justice Center<br>7325 South Potomac Street<br>Centennial, Colorado 80112 | |
| Dan Hamilton<br><br>Plaintiff,<br><br>v.<br><br>Amazon.com Services, LLC,<br><br>Defendant. | ▲   COURT USE ONLY   ▲<br><br>Case Number: 2022CV30070<br><br>Division/Courtroom: |
| *Attorneys for Defendant:*<br>Jennifer S. Harpole, # 38634 (JHarpole@littler.com)<br>Sarah K. Watt, # 53073 (SWatt@littler.com)<br>LITTLER MENDELSON, P.C.<br>1900 Sixteenth Street, Suite 800<br>Denver, CO  80202<br>Phone: 303.629.6200 | Fax:  303.629.0200 | |

**DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Amazon.com Services, LLC. ("Defendant"), by through its undersigned attorneys, respectfully requests that the Court grant it a two (2) week extension of time within which to file its answer or other responsive pleading to Plaintiff's Complaint. Plaintiff does not oppose the relief requested. In support of this Motion, Defendant states as follows:

1.    On January 14, 2022, Plaintiff Dan Hamilton filed his Complaint.

2.    Plaintiff served Defendant with the Summons and Complaint on January 18, 2022.

1

3.    Pursuant to Rule 12(a) of the Colorado Rules of Civil Procedure, Defendant's responsive pleading is currently due on February 8, 2022.

4.    The Parties have agreed to a two (2) week extension of time from the date the response was initially due (February 8, 2022), which will result in a due date for Defendant's response of February 22, 2022. This additional time will allow counsel for Defendant time to investigate and further explore the allegations in Plaintiff's Complaint, to ensure Defendant has sufficient background information to properly respond to the Complaint, and to investigate whether this action was filed in the proper court.

5.    This is Defendant's first extension of time with respect to its response to Plaintiff's Complaint.

6.    This short enlargement of time will not prejudice any party and will not result in undue delay.

7.    Pursuant to Local Rule 1-121, §1-11, Colorado Rules of Civil Procedure, the undersigned certifies that a copy of this Motion is being served on the moving attorneys' client, Amazon.com Services, LLC.

8.     Pursuant to Local Rule 1-121, §1-15(8), Colorado Rules of Civil Procedure, Defendant's counsel conferred with Plaintiff's counsel regarding the contents of this Motion. Plaintiff does not oppose the relief requested in this Motion.

WHEREFORE, Defendant Amazon.com Services, LLC, respectfully requests that the Court grant an extension of time of two (2) weeks, up to and including February 22, 2022, in order for Defendant to answer or otherwise respond to Plaintiff's Complaint.

Dated: February 8, 2022.

/s/ Sarah K. Watt
Jennifer S. Harpole, # 38634
Sarah K. Watt, # 53073
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone: 303.629.6200
Fax:  303.629.0200
JHarpole@littler.com
SWatt@littler.com
**_ATTORNEYS FOR DEFENDANT_**

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of February, 2022, a true and correct copy of the foregoing UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT was filed via the Colorado Courts E-Filing System (ICCES) and served upon the following:

David H. Miller, Atty Reg. 8405
Victoria E. Guzman, Atty Reg. 55401
THE SAWAYA & MILER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com


/s/ Elisabeth L. Egan
Elisabeth L. Egan


4861-2004-9164.1 / 096748-1008

# EXHIBIT K

**Register of Actions**        Appellate Case: 23-1082    Document: 010110874661    Date Filed: 06/16/2023    Page: 81

|   | | Case Number: 2022CV030070 | | | Division: 204 | | |
|---|---|---|---|---|---|---|---|
| | **Filed by Plaintiff/Petitioner** | | | | | | |
| | **Filed by Defendant/Respondent** | **Case Type:** Wages | | | **Judicial Officer:** John E Scipione | | |
| | **Filed by Court** | **Case Caption:** Hamilton, Dan v. Amazoncom Services LLC | | | **Court Location:** Arapahoe County | | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 6E5B1DB9698DB | 02/15/2022 12:16 PM | David H Miller, Victoria Elizabeth Guzman | Sawaya Rose McClure and Wilhite PC | Dan Hamilton | Certificate *(Related Document)* | Certificate of Service of Delay Reduction Order | Public |
| | | | | | Filing Other *(Related Document)* | Delay Reduction Orders | Public |
| N/A (Details) | 02/08/2022 3:32 PM | John E Scipione | Arapahoe County | N/A | Order *(Related Document)* | Order: Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint- Granted | Public |
| F7D84B9E16C5C | 02/08/2022 12:05 PM | Jennifer S Harpole Esq. | Littler Mendelson PC | Amazoncom Services Llc | Entry of Appearance | Notice of Entry of Appearance of Jennifer S. Harpole | Public |
| | | | | | Entry of Appearance | Notice of Entry of Appearance of Sarah K. Watt | Public |
| | | | | | Motion *(Related Document)* | Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint | Public |
| F57315EBD54F7 | 01/28/2022 9:36 AM | David H Miller | Sawaya Rose McClure and Wilhite PC | Dan Hamilton | Return of Service | Return of Service on Amazon.com Services, LLC to Cole Stender Reg Agent on 1 28 22 | Public |
| N/A (Details) | 01/18/2022 8:46 AM | John E Scipione | Arapahoe County | N/A | Order | Division 204 Delay Reduction Order | Public |
| N/A (Details) | 01/14/2022 3:44 PM | John E Scipione | Arapahoe County | N/A | Order - Case Management | Order - Case Management | Public |
| D3F6494D70F3D | 01/14/2022 1:50 PM | David H Miller | Sawaya Rose McClure and Wilhite PC | Dan Hamilton | Complaint w/Jury Demand | Individual and Class Action Complaint | Public |
| | | | | | Civil Case Cover Sheet | District Court Civil Case Cover Sheet | Public |
| | | | | | Summons | Summons to Amazon.com Services LLC | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 1 to Individual and Class Action Complaint | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 2 to Individual and Class Action Complaint | Protected |

## Party Information

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| Amazoncom Services Llc | Defendant | Active | JENNIFER S HARPOLE (Littler Mendelson PC) SARAH KATELYN WATT |
| Dan Hamilton | Plaintiff | Active | DAVID HUNTER MILLER (Sawaya Rose McClure and Wilhite PC) VICTORIA ELIZABETH GUZMAN (Sawaya Rose McClure and Wilhite PC) |

# EXHIBIT L

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

DAN HAMILTON,
Individually and on behalf of all others
similarly situated

       Plaintiff,

vs.

AMAZON.COM SERVICES, LLC,

       Defendant.

### **DECLARATION OF JENNIFER JOHNSTON**

I, Jennifer Johnston, declare as follows:

1.     I am employed as an HR Director, NA Sort Centers for Amazon, where I have been employed for approximately 19 months. In this position, I provide the full range of human resources support for Amazon facilities in Colorado.

2.     I have personal knowledge of the facts set forth in this declaration, and/or I have knowledge of such facts based on personnel business records and files, which I have reviewed. I am authorized to make this declaration on behalf of the correct defendant, Amazon.com Services LLC, and if called as a witness, I could and would testify competently to such facts contained herein.

3.     I have access to and am familiar with the records of the Plaintiff in this action, Dan Hamilton.

4.     Mr. Hamilton's payroll and personnel records indicate that he was employed by Amazon.com Services LLC in Aurora, Colorado beginning March 25, 2018, after working as a temporary employee starting in 2017. Mr. Hamilton has been on leave of absence since November

28, 2021 but has not worked since November 25, 2021. His most recent rate of pay was $16.75 per hour. Mr. Hamilton's records reflect that his last known home address is 6964 E Ohio Dr., Denver, Colorado 80224.

5.      Based on my preliminary review of Amazon.com Services LLC's records, since January 14, 2019, it has employed approximately 10,006 non-exempt hourly employees in Colorado who worked more than 40 hours in a workweek in which they also worked on a Company Holiday, receiving "Holiday O/T."

6.      The average monthly wages for all full-time non-exempt employees in Colorado since January 14, 2019 is $2,754.48.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 17, 2022, in Lemont, Illinois.

Jennifer Johnston
HR Director, NA Sort Centers

4863-1878-1198.2 / 096748-1008

2

# EXHIBIT M

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

DAN HAMILTON,
Individually and on behalf of all others
similarly situated

      Plaintiff,

vs.

AMAZON.COM SERVICES, LLC,

      Defendant.

## <u>DECLARATION OF ZANE BROWN</u>

I, Zane Brown, declare as follows:

1.      I am employed as Vice President & Associate General Counsel for Amazon, where I have been employed since May 2001. In this position, I am responsible for overseeing labor and employment matters relating to the global subsidiaries (collectively, the "Subsidiaries") of Amazon.com Services, LLC. ("Amazon").

2.      I have personal knowledge of the facts set forth in this declaration, and/or I have knowledge of such facts based on business records and files, which I have reviewed. I am authorized to make this declaration on behalf of Defendant Amazon.com Services LLC and, if called as a witness, I could and would testify competently to such facts contained herein.

3.      I am familiar with the corporate structure of Defendant Amazon.com Services LLC. I also have access to the corporate governance records of the Subsidiaries maintained and generated in the ordinary course of business. I have access, either directly or indirectly, to these records and in the ordinary course of business, I periodically refer to them on an as-needed basis.

4.      Defendant Amazon.com Services LLC is a limited liability company organized and existing under the laws of the State of Delaware. It is headquartered in Seattle, Washington where it has its principal place of business.

5.      Defendant Amazon.com Services LLC is a private business entity, not a State, State official, or other governmental entity exempt from the Class Action Fairness Act of 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February _____, at Seattle, Washington.


_____
DocuSigned by:
*Zane Brown*
DDF214FDD377494...
Zane Brown
Vice President & Associate General Counsel

4884-5301-6335.1 / 096748-1008

2

JS 44 (Rev. 10/20) District of Colorado

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dan Hamilton, individually and on behalf of all others similarly situated

**DEFENDANTS**

Amazon.com Services, LLC

**(b)** County of Residence of First Listed Plaintiff   Denver County, CO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David H. Miller/Victoria Guzman
Sawaya & Miller Law Firm | 303-551-7667
1600 Ogden Street, Denver, CO 80218

Attorneys *(If Known)*
Jennifer S. Harpole/Sarah K. Watt
Littler Mendelson, P.C. | 303.629.6200
1900 Sixteenth Street, Ste 800, Denver, CO 80202

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [x] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332(d)

Brief description of cause:
Class Action Complaint under the Colorado Wage Act

- [ ] AP Docket

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   2/17/2022

SIGNATURE OF ATTORNEY OF RECORD
*/s/ Jennifer S. Harpole*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 89

### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
   United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
   Original Proceedings.  (1) Cases which originate in the United States district courts.
   Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
   Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
   Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
   Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

DAN HAMILTON,
Individually and on behalf of all others
similarly situated,

     Plaintiff,

vs.

AMAZON.COM SERVICES, LLC,

     Defendant.

---

## DEFENDANT'S CORPORATE DISCLOSURE STATEMENT

---

     Pursuant to Federal Rule of Civil Procedure 7.1, Defendant Amazon.com Services LLC states that it is a non-governmental party to this proceeding. It is a limited liability company organized and existing under the laws of the State of Delaware. Its sole member is Amazon.com Sales, Inc. Amazon.com Sales, Inc. is a wholly owned subsidiary of parent company Amazon.com, Inc. Amazon.com, Inc. is a publicly-traded company formed and existing under the laws of the State of Delaware. Amazon.com, Inc. has no parent company, and no other publicly-held company owns 10% or more of Amazon.com, Inc.'s stock.

Dated:  February 17, 2022

                                */s/ Jennifer S. Harpole*
                                Jennifer S. Harpole, # 38634
                                Littler Mendelson, P.C.
                                1900 Sixteenth Street, Suite 800
                                Denver, CO 80202
                                Telephone: 303.629.6200
                                Facsimile: 303.629.0200
                                Email: jharpole@littler.com

                                ***ATTORNEYS FOR DEFENDANT***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of February, 2022, the foregoing document was filed electronically using the CM/ECF system and will be sent electronically to all counsel of record via electronic mail, including Plaintiff's counsel of record as follows:

> David H. Miller, Atty Reg. 8405
> Victoria E. Guzman, Atty Reg. 55401
> THE SAWAYA & MILLER LAW FIRM
> 1600 Ogden Street
> Denver, CO 80218
> Telephone: (303) 551-7667
> dhmiller@sawayalaw.com
> vguzman@sawayalaw.com
> *Attorneys for Plaintiff*

> */s/ Elisabeth L. Egan*
> Elisabeth L. Egan

4864-7469-4670.1 / 096748-1008

# EXHIBIT A

| District Court, Arapahoe County, Colorado<br>7325 S. Potomac St.<br>Centennial, CO 80112 | DATE FILED: January 14, 2022 1:50 PM<br>FILING ID: D3F6494D70F3D<br>CASE NUMBER: 2022CV30070 |
|---|---|
| DAN HAMILTON,<br>Individually and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | COURT USE ONLY |
| David H. Miller, Atty Reg. 8405<br>Victoria E. Guzman, Atty Reg. 55401<br>THE SAWAYA & MILLER LAW FIRM<br>1600 Ogden Street<br>Denver, Colorado 80218<br>Phone: (303) 551-7667<br>Facsimile : (303) 832-7102<br>dhmiller@sawayalaw.com<br>vguzman@sawayalaw.com<br>*Attorneys for the Plaintiff* | Case No:<br><br>Division: |
| INDIVIDUAL AND CLASS ACTION COMPLAINT | |

The Plaintiff, Dan Hamilton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned counsel from the Sawaya & Miller Law Firm, pursuant to the Colorado Wage Act, C.R.S. 8-4-101 et seq., ("CWA"), as his Individual and Class Action Complaint against the Defendant, Amazon.com Services, LLC, a Delaware Limited Liability Corporation ("Amazon" or "Defendant"), states as follows:

## PARTIES

1.      At all times relevant to this complaint, Plaintiff performed all services and work for the Defendant in Arapahoe County, Colorado. Plaintiff resides in Denver County, Colorado.

2.      Plaintiff's counsel, the Sawaya & Miller Law Firm, is located at 1600 Ogden Street, Denver, Colorado 80218.

3.      The Defendant is a Delaware limited liability company, with its principal place of business in Washington state.

4.      At all times relevant to this complaint, Defendant was registered with the Colorado Secretary of State to do business in Colorado and in fact did do business in Colorado. The Defendant's registered agent is located at 1900 W. Littleton Boulevard, Littleton, CO 80120.[1]

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this civil action pursuant to Article 6 § 9(1) of the Colorado Constitution.

6.      Venue is proper under C.R.C.P. 98 (b) and (c) because the Defendant conducts their business within this District, all services and all work from Plaintiff that are the subject matter of this Complaint were provided in this District, and the Plaintiff seeks a penalty under the C.R.C.P. Rule 98(b)(1).

## STATEMENT OF FACTS

7.      In or about November of 2017, the Plaintiff was hired by the Defendant as a temporary hourly employee at one of Defendant's warehouse locations situated in Aurora, Colorado, called DEN5.

8.      Defendant operates several such warehouses employing hundreds or even thousands of hourly employees in Colorado that are part of its widespread fulfillment network that conducts a shopping business throughout the U.S. and the world.

9.      The Defendant currently runs at least the following warehouses in Colorado:

   a.  DEN5 – 19799 E. 36th Dr., Aurora, Arapahoe County, CO 80011

   b.  DDV5 – 2889 Himalaya Rd, Aurora, Arapahoe County, CO 80011

   c.  DEN2 – 22205 E. 19th Ave., Aurora, Adams County, CO 80019

   d.  DEN3 – 14601 Grant St., Thornton, Adams County, CO 80023

   e.  DCS3 – 4304 Grinnell Blvd., Colorado Springs, El Paso County, CO 80925

---

[1] Defendant has changed its registration name four times in the last four years, but is currently registered as Amazon.com Services, LLC.

10.     The Plaintiff became a permanent employee on March 25, 2018.

11.     Throughout his employment, the Defendant offered the Plaintiff various incentive payment structures to encourage him to work additional shifts, stay late during his scheduled shifts, etc.

12.     These incentive payments included daily incentive payments, such as Surge Premium payments for working on certain days and time and a half for working on designated Company Holidays ("Holiday Incentive").

13.     The Surge Premium payments ranged from approximately an additional $2 per hour to approximately an additional $7.50 per hour for every hour worked on the designated day.

14.     On information and belief, the Defendant's Company Holidays are New Year's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. The Defendant offered to pay time and a half for all hours worked on a Company Holiday, regardless of how many hours the employee worked each week.

15.     Both the Surge Premium payments and the Holiday Incentive payments functioned as shift differentials under Colorado law.

16.     Colorado law follows the FLSA definition and overtime calculation method of "shift differentials."

17.     In the Defendant's Holiday Pay Policies, the Defendant acknowledged that "[o]nly hours that are actually worked on a company holiday are considered 'hours worked' in the calculation of overtime pay." Exhibit 1: Amazon's Policy: Holiday Pay – US.

18.     Despite this, the Defendant labelled time worked on Company Holidays as "Holiday O/T" regardless of how many hours the Plaintiff had worked during a particular work week.

19.     The Defendant paid time and a half based on the Plaintiff's agreed upon rate for those hours worked on Company Holidays, but did not count hours worked on a Company Holiday toward weekly overtime and did not include the Plaintiff's Holiday Incentive in the calculation of the Plaintiff's regular rate for that week. *See* Exhibit 2: The Plaintiff's Holiday Paystubs.

20.     As a result, the Defendant failed to pay the Plaintiff all overtime earned under the CWA in any week he worked in excess of 40 hours and on a Company Holiday.

21.     It appears that the Defendant did calculate Surge Premium payments as shift differentials when the Plaintiff worked overtime, but the method of calculation is confusing and impossible to verify without complex math. For example, when the Plaintiff worked 59.95 hours in one week, with 9.75 of those hours at a Surge Premium of $3 per hour, the Defendant paid the Plaintiff time and a half for 19.95 hours, plus an additional $0.244 per hour for those 19.95 hours.

3

22.     As such, the Defendant was aware that it was required to include additional payments, such as shift differentials, in its calculations for overtime, and yet it failed to do so for Holiday Incentive shift differentials.

23.     On information and belief Defendant's pay policy described above was uniform with respect to all classes of U.S. non-exempt hourly employees who worked in AMZL Workplaces and Fulfillment Centers throughout Colorado.

24.     The Plaintiff brings this action on his own behalf and on behalf of all such Amazon hourly workers who worked overtime during weeks they worked on Company Holidays.

## CLASS ALLEGATIONS

25.     The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

26.     In addition to bringing his claims individually, the Plaintiff also brings this case as a class action under C.R.C.P. 23 on behalf of the following Class Members:

> All classes of U.S. non-exempt hourly employees who worked in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a Company Holiday, dating back three years from the date of filing.

27.     The Class satisfies the prerequisites and requirements of C.R.C.P. 23 because:

   a.   The Class consists of at least hundreds if not thousands of employees, and individual joinder of all such employees is impracticable but easily determinable through the employment records of the Defendant;

   b.   There are questions of law and fact that are common to the Class, which questions predominate over issues affecting only individual Class Members, including:

      i.   Whether Amazon had a policy or practice of failing to properly compensate hourly employees for overtime worked during weeks they worked on a Company Holiday;

      ii.   Whether Amazon's policies or practices violated the CWA;

      iii.   The nature of the damages due to Class Members for Amazon's violations of the CWA; and

      iv.   Whether Amazon's violations of the CWA were willful.

4

      c.   The Plaintiff's claims are typical of the Class Members' claims in that, like all other members of the purported class, and for the same reasons, he was not properly paid overtime during weeks he worked on Company Holidays.

      d.   The Plaintiff will fairly and adequately protect the interests of the Class. He has retained counsel that is experienced in wage and hour class litigation. The Plaintiff and his counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class.

28.     The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Amazon and potentially conflicting results for up to thousands of individual workers in matters involving relatively small individual amounts of damages.

29.     Adjudications with respect to individual Class Members would as a practical matter be dispositive to the interests of the other Class Members or substantially impair or impede their ability to protect their interests.

30.     Moreover, Amazon has acted on grounds generally applicable to the Class.

31.     On information and belief, no Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

32.     Because of the uniformity of claims alleged in this Complaint and the fact that the class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

**COUNT I:**
**OVERTIME COMPENSATION**
**Failure to Include Holiday Incentives in the Regular Rate**

33.     The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

34.     When paying time and a half, the employer must take in consideration all payments received for work completed that week, and cannot simply pay time and a half of the employee's agreed upon rate if the employee receives additional compensation such as shift differentials.

35.     The Defendant offered the Plaintiff and the Class Members time and a half for all hours worked on a Company Holiday, regardless of whether the Plaintiff or the Class Members worked overtime that week.

5

36.     The Holiday Incentive payments were shift differentials paid at the rate of time and a half of the Plaintiff and Class Members' agreed upon rate.

37.     In weeks that the Plaintiff worked on a Company Holiday and worked more than 40 hours, the Defendant failed to include the Holiday Incentive pay in the calculations for the regular rate for the purposes of calculating the overtime premium due, and failed to include hours worked on a Company Holiday in the total calculation of overtime hours.

38.     Using the same method of calculation for each week, the Defendant failed to properly calculate the Plaintiff's overtime and thus failed to pay all wages owed during three separate weeks.

39.     During the week of November 24, 2019, the Plaintiff worked 46 hours, 8.98 of which were spent working on Thanksgiving Day. The Plaintiff additionally spent 3.75 hours working a Surge Premium shift. Despite this, only 3 hours of overtime were accounted for in calculating the Plaintiff's overtime payments for the Surge Premium shift differential and the Holiday Incentive shift differential was not accounted for at all.

40.     During the week of September 6, 2020, the Plaintiff worked 53.72 hours, 11.3 of which were spent working on Labor Day. The Plaintiff additionally spent 10.93 hours working a Surge Premium shift. Despite this, only the Surge Premium shift differential was accounted for in calculating the Plaintiff's overtime payments.

41.     During the week of November 22, 2020, the Plaintiff worked 59.93 hours, 10.55 of which were spent working on Thanksgiving Day. The Plaintiff additionally spent 9.32 hours working a Surge Premium shift. Despite this, only 9.38 hours of overtime were contemplated in calculating the Plaintiff's overtime payments for the Surge Premium shift differential and the Holiday Incentive shift differential was not accounted for at all.

42.     Under the CWA, the Plaintiff's overtime rate should have been calculated by first determining his regular rate of pay based on the total compensation paid (including the Holiday Incentive payments and the Surge Premium payments) divided by the total hours worked.

43.     Each of the weeks the Plaintiff worked in excess of 40 hours and on a Company Holiday, the Defendant erroneously failed to properly calculate the Plaintiff's total compensation, and as such failed to pay the Plaintiff all overtime compensation earned.

44.     The Plaintiff and the Class Members were not exempt from having to be paid overtime when working over 40 hours per week. The Plaintiff and the Class Members, however, did not receive all the overtime pay to which they were entitled under the law.

45.     The Plaintiff worked overtime and on a Company Holiday during the weeks of November 24, 2019, September 6, 2020, and November 22, 2020, but was not paid properly for the various shift differentials offered to him, resulting in lost overtime wages of at or approximately $143.54.

6

46.    The Class Members are owed similar amounts.

47.    Plaintiff and the Class Members are owed their overtime, penalties, and the reasonable costs and attorney's fees of this litigation pursuant to the CWA.

## DEMAND FOR JURY TRIAL

48.    The Plaintiff demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of the Class Members, respectfully asks that the Court enter judgment against the Defendant and award the Plaintiff and the Class Members:

A. As soon as practicable, certification of this case as a class action under C.R.C.P. 23, appointment of the Plaintiff as class representative and the undersigned attorneys from the Sawaya & Miller Law as class counsel, and notice of the action to all Class Members;

B. A declaratory judgment condemning the Defendant's willful violations of the CWA;

C. A preliminary injunction prohibiting the Defendant from continuing any illegal wage and hour policies and practices of failing to pay proper compensation for overtime work;

D. A permanent injunction prohibiting the Defendant from continuing any illegal wage and hour policies and practices of failing to pay proper compensation for overtime work;

E. Back wages reflecting the overtime compensation due to the Plaintiff and the Class Members;

F. A finding that Defendant's behavior was willful;

G. All applicable statutory damages and penalties provided under the CWA;

H. A service payment to the Plaintiff for his services to the Class Members;

I. Reasonable attorney's fees incurred in bringing this action;

J. The costs of this action;

K. Pre- and post-judgment interest;

7

L. An order requiring the Defendant to pay the costs of administering any and all payments awarded to the Class Members by the Court; and

M. Any other and further relief that may be equitable and just.

Respectfully submitted,

*/s/ David H. Miller*

David H. Miller (8405)
Victoria Guzman (55401)
**Sawaya & Miller Law Firm**
1600 Ogden Street
Denver, Colorado 80218
303-551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com

*Attorneys for Plaintiff Dan Hamilton, individually and on behalf of all others similarly situated*

8

Policies home

Amazon Policies

EXHIBIT 1

Policies home

# Amazon policies

DATE FILED: January 14, 2022 1:50 PM
FILING ID: D3F6494D70F3D
CASE NUMBER: 2022CV30070

Welcome to the Amazon A to Z policies homepage. This page provides off-network access to select policies for employees.

Amazon believes that easy access to the policy information you need is important. Therefore, policies will be continually added to this page. If you don't find the policy you need, explore Inside Amazon: Policies (available while on the Amazon network only.)

| | |
|---|---|
| Employee conduct | > |
| Hours and pay | > |
| Leave and time off benefits | > |
| Safety and health | > |

## Amazon Policies    <u>Home</u>

Policies home  >  Hours and pay  >  Policy: Holiday Pay - US

# Policy: Holiday Pay - US

Last Revised: 07/21/2021

Amazon observes 7 days as paid company holidays, dependent on employee class. This policy describes how Amazon pays employees for holidays, including holidays that are not worked and holidays that are worked.

## Applicability

This policy applies to all employees based in the US, across all lines of business. Check the eligibility section for further information.

## Policy Contents

Eligibility

Company holidays

Holiday pay

Working on holidays

Exceptions

## Eligibility

Eligibility for holiday pay depends on employee class.

These classes of employees are eligible for holiday pay:

- Regular full-time employees (Class F)
- Reduced-time employees who work 30-39 hours (Class R)
- Part-time employees who work 20-29 hours (Class H)
- Salaried interns (I)

These classes of employees are not eligible for holiday pay. These classes are only eligible for pay when working on a company holiday, which is paid at time and a half.

- Seasonal employees (S)
- Flex-time employees who work less than 20 hours per week (Class X)
- Part-time field employees who work 20-29 hours per week (Class Q)
- In-house temporary staffing employees (ITS) (Class M)
- Hourly interns (I)

## Company holidays

Our paid holidays at Amazon include the following days:

https://content.hr.amazon.dev/atoz/us/en/policies/hours-pay/holiday-pay.html          8/31/2021

. Policy: Holiday Pay - US

Page 2 of 3

- New Year's Day (January 1)
- Martin Luther King Jr. Day (January - third Monday)
- Memorial Day (May - last Monday)
- Independence Day (July 4)
- Labor Day (September - first Monday)
- Thanksgiving Day (November - fourth Thursday)
- Christmas Day (December 25)

For corporate employees, when a holiday falls on a weekend, the company holiday will be observed on a different calendar day. If the holiday falls on a Saturday, the company holiday will be observed 1 day prior, on Friday. If the holiday falls on a Sunday, the company holiday will be observed 1 day later, on Monday.

For corporate employees working in California, the following day is also a paid holiday: Christmas Eve (December 24).

## Holiday pay

Eligible employees are paid their regular pay rate on company holidays regardless of whether or not they work on the holiday. Your schedule type determines how many hours of holiday pay you receive for each company holiday.

- Full-time, regular employees (Class F) receive 8 hours of holiday pay.
- Reduced-time employees (Class R) receive 6 hours of holiday pay.
- Part-time employees (Class H) receive 4 hours of holiday pay.

Holiday hours are not considered "hours worked" and are not used in the calculation of overtime. Only hours that are actually worked on a company holiday are considered "hours worked" in the calculation of overtime pay.

## Working on holidays

Employees may be scheduled to work on company holidays. If you are an eligible hourly employee and your shift starts on a company holiday, you will receive holiday pay plus time and a half for the hours worked.

- Example: Jordan starts their 8-hour shift at 10 p.m. on Monday (Memorial Day) and works until 6 a.m. on Tuesday. They are paid holiday pay, plus time and a half for the 8 hours they worked on the company holiday.

Salaried, exempt employees (including salaried interns), do not receive time and a half pay for working on a company holiday.

## Exceptions

If you wish to recognize holidays that are not included in this policy, you may request to use one

of your time off options. Examples of time off options include, but are not limited to, Paid

Personal Time, Vacation, or Unpaid Time off. These requests must adhere to the expectations described in those policies. Time off options may vary based on your employee class, and where you live and work. To understand your time off options, speak with your HR representative or contact the Employee Resource Center at 1-888-892-7180.

You will not receive holiday pay while on any Leave of Absence (LOA), but you will receive your approved paid leave benefit. Examples of paid benefits include Short-term Disability (STD) or Parental Leave.

This policy will be applied in a way that is consistent with applicable laws, including those laws that pertain to leave and accommodation. This policy may change from time to time, with or without advance notice, and Amazon reserves the right to depart from the policy when deemed appropriate.

> This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate.

## Feedback

Was this article helpful?    ( Yes )    ( No )

Policy: Extra Time (FC and AMZL)- US                                           Page 1 of 3

## Amazon Policies    <u>Home</u>

Policies home  >  Hours and pay  >  Policy: Extra Time (FC and AMZL)- US

# Policy: Extra Time (FC and AMZL) - US

Last Revised: 08/06/2021

Amazon sometimes experiences increases in customer demand or other business conditions that
affect operations.  When our business requires extra time, we meet our customer needs by offering
our employees Voluntary Extra Time (VET) and requiring Mandatory Extra Time (MET).

## Applicability

This policy is applicable in the US, for AMZL workplaces and Fulfillment Centers. Check the
eligibility section for further information.

## Policy Contents

Eligibility

Overview

Voluntary Extra Time (VET)

Mandatory Extra Time (MET)

## Eligibility

All classes of US non-exempt, hourly employees who work in AMZL and Fulfillment Centers are
eligible.

## Overview

When Amazon faces an extra time need in order to meet customer expectations, we attempt to
meet those needs through offering VET to employees. Even with these efforts, you may be required
to work MET.

Amazon pays overtime according to federal and state regulations. Hourly associates generally
receive overtime pay at a rate of one and a half times their regular hourly rate. Unless otherwise
required by state or local law, holiday pay credit, vacation, and paid personal time are not "hours
worked" for the purposes of calculating overtime.

Your health and safety are important. We have limitations on how many hours you work each
workweek, and this applies to both mandatory and voluntary work. The workweek begins on
Sunday and ends on Saturday. You cannot work more than 60 hours in 1 workweek, or 12 hours in
1 day, regardless of your shift. Hours beyond these limits require Vice President approval. These
cases are reviewed on an individual basis.

Case 1:22-cv-00434-PAB-STV   Document 5   Filed 02/17/22   Page 15 of 24

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 106
Policy: Extra Time (FC and AMZL)- US                                    Page 2 of 3

## Voluntary Extra Time (VET)

### Notice

We provide notice of VET in different ways based on the options available at your work location. We may use Labor Scheduling, in-person communication, message boards or TVs in the workplace, email, or text message.

If your work location uses Labor Scheduling:

- Managers use Labor Scheduling to create a VET opportunity and offer it to eligible employees based on business rules.
- You may sign up on a first come, first serve basis, either onsite or offsite in these ways:
  - Onsite: Sign up through scanners, MyTime kiosks, workstations, and Amazon A to Z zones.
  - Off-site: If you are eligible and opted in for Amazon A to Z notifications, you will get a text or email alert about the VET opportunity. Accept the opportunity through Amazon A to Z.

If your work location does not use Labor Scheduling:

- Managers offer extra time to their entire team and make a list of Amazon volunteers.
- If there are more volunteers than needed, a random selection process is followed and regular Amazon employees are prioritized.

### Attendance

When you sign up for a VET opportunity, you commit to work that time. All expectations described in the attendance policy apply to VET. Missed VET must be covered with one of your applicable time off options to avoid consequences under the attendance policy. VET is treated like all other scheduled work time and you are expected to adhere to the start time, break, and lunch schedule of the shift.

To ask for an exception to the VET attendance expectations, contact your HR representative or the Employee Resource Center (ERC) at 1-888-892-7180.

## Mandatory Extra Time (MET)

### Notice

We provide notice of MET in different ways based on the options available at your work location. We may use in-person communication, message boards or TVs in the workplace, email, or text message. To help everyone plan ahead, we try hard to provide MET notice as far in advance as possible. MET notice will be given by no later than the start of your lunch break on the scheduled shift prior to the day in which MET is required . For example, if MET is being scheduled for Friday, you will be notified by the start of your lunch break on Thursday.

### Attendance

Policy: Extra Time (FC and AMZL)- US                                           Page 3 of 3

All expectations described in the attendance policy apply to MET. Missed MET must be covered with one of your applicable time off options to avoid consequences under the attendance policy. Examples of time off options include Vacation and Paid Personal Time (PPT). MET is treated like all other scheduled work time and you are expected to adhere to the start time, break, and lunch schedule of the shift.

Exceptions

You are not required to work MET in these situations:

- You are not at work from the time the MET is called to the time of the scheduled MET.
- Prior to the MET announcement, you were approved for a time off option such as Vacation or Paid Personal Time (PPT) for the day before or after MET.

If you are unable to work the MET shift due to a prescheduled conflict, notify your manager and HR representative as soon as reasonably possible to request an exception or the application of an available time off option.

---

This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate.

---

## Feedback

Was this article helpful?    ( Yes )    ( No )

Policies - US



Search...

Welcome, Dan Hamilton          UNITED STATES | ENGLISH

About Amazon        Employment        Libraries        My Workplace        Services        Toolkit

English  >  Employment - US  >  Policies - US

## Policies - US ✉

Managed by: Global HR

Edited on: 08/16/2021

Welcome to the US Policies and Guidelines homepage. To begin, review the Policy: Owner's Manual and Guide to Employment. You can then visit the applicable individual policies listed below.

Visit Getting HR Help for answers to common questions and contact information for the Employee Resource Center.

n this page
- US policies
- US Customer Service (CS) policies
- US Virtual Customer Service (VCS) policies
- US Fulfillment Center (FC) policies
- Seasonal associate policies
- Global Specialty Fulfillment (GSF) policies
- Amazon Physical Stores policies
- Amazon Field Sales policies
- Amazon Smart Home Services policies
- Amazon Air policies
- Amazon Devices
- Related resources

## US policies

- Accident Reports
- Background Check
- Bereavement
- Code of Business Conduct and Ethics
- Dogs at Work
- Damage or Loss to Employees' Personal Property While at Work or Traveling
- Dress and Grooming Standards for Non-Customer Facing Roles (WW Ops) Policy
- Dress and Grooming Standards for Non-Customer Facing Roles (WW Ops) SOP
- Dress and Grooming Standards for Customer-Facing Roles (Ops) Policy
- Equal Employment Opportunity
- Employment Reference
- Flexible Work Arrangements
- Global Anti-Harassment
- Holiday Pay
- Insider Trading
- Internal Corporate Communications: Amazon Posters
- Jury and Witness Duty
- Labor and Employment Workplace Posters
- Lactation Accommodation Policy
- Large Email List
- Leave: includes Medical Leave, Parental Leave, Personal Leave, and all other leave types.
  - Visit Accommodation Resources for policy information on accommodations due to an employee medical restriction or limitation.
- Mechanical Turk
- Medical Accommodations
- Off Duty
- Paid Personal Time Off Policy
- Paid Time Off: includes bereavement, jury and witness duty, sick time, personal time, vacations and holiday pay, and state-specific policies.
- Part Time Work Arrangements

Policies - US

- Use of Amazon Facilities
- Voting Time-Off
- Weapons in the Workplace
- Work from Home Outage
- Working Hours (Non-Exempt/Hourly)

## US Customer Service (CS) policies

- Attendance
- Bereavement (Regular CS)
- Bereavement (Seasonal CS)
- Consensual Relationship
- Cell Phone Standards
- Computer Use
- Customer and Account Phone Security Adherence
- Drugs and Alcohol
- Employee Referral
- Extra Time
- Good Standing and Warning Timeline
- Holiday Blockout
- Holiday Pay Guidelines
- Internal Transfer and Promotion
- Language Premium
- Physical Locations Associate Outage Guidelines
- Physical Locations Outage Policy
- Seasonal and Reserves Associate Bonus – US (CS)
- Secure Workspace Policy
- Shift Differential Guidelines
- Tobacco Use
- Vacation – California
- Voluntary Time Off
- Work from Home

Visit Policies (CS) for additional policies and information.

## US Virtual Customer Service (VCS) policies

- Attendance
- Extra Time
- Paid Time Off
- VCS Outage
- Voluntary Time Off
- Work From Home

Visit Policies (VCS) ⤷ for more information on policies, benefits, pay, and additional resources for VCS employees.

https://inside.hr.amazon.dev/us/en/employment/policies.html

8/31/2021

Policies - US                                                                 Page 3 of 6

## US Fulfillment Center (FC) policies

- Appeals
- Attendance
- Cell Phone Use
- Computer Use
- Consensual Relationship
- Drugs and Alcohol
  - Department of Transportation Drug and Alcohol Policy
- Extra Time
- Holiday Blockout
- Holiday Pay Guidelines
- Internal Hourly Transfer/Promotion
- MyFlex Pay
- NAFC Security Standards of Conduct
- Off-Site Parking and Commuting
- Specialty Operations: Surge Shift Premium
- Temporary Schedule Adjustments
- Travel Time
- Vacation – California
- US, Canada, and Mexico Ops Temp Location Closure Pay
- US, Canada, and Mexico Ops Temp Location Closure Pay SOP
- Variable Compensation Plan Eligibility
- Voluntary Time Off

Visit Policies (FC) for more information.

## Seasonal associate policies

- Approved Time-Off
- FC Seasonal Attendance
- Paid Personal Time Policy for Internal Temporary Solutions Employees (applicable only to these employees)
- Seasonal Attendance Policy (Fixed Schedule)

## Global Specialty Fulfillment (GSF) policies

- Ready Attendance Policy
- Progressive Discipline
- Standard Work and Progressive Discipline (Prime Now Shopper Network)

### Locker+ policies

- Amazon Campus: Drug and Alcohol Policy
- Amazon Campus: Furlough
- Attendance Guide
- Cell Phone Use
- Code of Business Conduct and Ethics
- Consensual Relationship
- Computer Use

https://inside.hr.amazon.dev/us/en/employment/policies.html

8/31/2021

Policies - US

- Equal Employment Opportunity
- Extra Time
- Holiday Blockout
- NAFC Security Standards of Conduct
- Tobacco
- Voluntary Time Off
- Workplace Global Anti-Harassment Policy

## Prime Now shopper network (3P/Copperfield)

- Standard Work and Progressive Discipline Policy
- WFM Shopper Code of Conduct

## Amazon Physical Stores policies

Amazon Physical Stores include Books, Go, 4-star, Presented by Amazon, and more.

- Visit Amazon Policy for all other Physical Stores policies. Expand the **Amazon Books** folder on the left-hand side and select **HR Policies**.

## Amazon Field Sales policies

Visit Amazon Field Sales ⏏ for additional policies applicable to Field Sales employees.

## Amazon Smart Home Services policies

- ASHS Introductory Probationary Period
- Dress and Grooming
- Drug and Alcohol
- Gratuity
- Overtime Guidelines
- Time and Attendance
- Vehicle Code of Conduct
- Introductory Probationary Period
- Inclement Weather
- Code of Conduct ⏏

## Amazon Air policies

- Seasonal Associates
- Building Closures
- Employee Screening
- Flexible Scheduling
- Internal Transfers
- Attendance Policy
- Open Door Policy
- Drug and Alcohol
- Safety Standards of Conduct ⏏

Policies - US

- SIDA Badging

## Amazon Devices

- Time and Attendance (AMDS)
- Time and Attendance (ADS)

## Related resources

- COVID-19 Ordinances
- Compliance
- Getting Started
- Onboarding
- Travel for Work
- Welcome New Hires

## Feedback

Was this article helpful?    ( Yes )    ( No )

 amazon

**HELP**

**Employee Resource Center**

Please contact the Employee Resources Center (ERC) to get HR help with policy or any employment related questions or use our self-service resources.

Phone: +1-888-892-7180 (toll-free)

**Code of Conduct Reporting**

Amazon employees should always act lawfully, ethically, and in the best interests of Amazon in performing their job duties. To report violations of the Code of Conduct and Ethics, contact Amazon's Ethics Line.

Phone: +1-877-781-2414

**Inside Amazon Help**

New Inside Amazon Features

**SECURITY QUESTIONS OR ISSUES**

**Emergencies**
Call 911 or your local emergency number

**Business Assurance Center**

Please contact the Business Assurance Center (BAC); to report security, safety and business continuity issues for all Corporate sites, as well as all business traveler safety related events regardless of location:

Phone +1 (206) 740-SAFE (7233)

Toll Free: +1 (800) 929-1896

Email: BAC@amazon.com

**Global Security Operations Center (GSOC)**

Please contact the Global Security Operations Center (GSOC); to report security, safety or business continuity issues for Operations Sites-Fullfillment Centres (FC's) and Customer Service Centers (CS's)

Phone: (206) 266-6066(x66066)

Toll Free: +1 (877) 426-2966

Email: GSOC@amazon.com

**Amazon Web Service Security Operations Center (AWS SOC)**

Please contact the Amazon Web Services (AWS) Security Operations Center (AWS SOC); to report security issues for all AWS data centre locations:

Phone +1 (206) 740-4812

Email: aws-soc@amazon.com or aws-soc-eu@amazon.com

Page last updated Amazon.com Confidential

https://inside.hr.amazon.dev/us/en/employment/policies.html

8/31/2021

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|-----|------|-------|-------|-----------|---|
| Y1K | 185931 | 118200 | 1085 | 0000502900 | 1 |

7833-0003

# Earnings Statement

ADP

AMAZON.COM SERVICES INC
ATTN: AMAZON PAYROLL
202 WESTLAKE AVE N
SEATTLE,  WA 98109

| | |
|---|---|
| Period Beginning: | 11/24/2019 |
| Period Ending: | 11/30/2019 |
| Pay Date: | 12/06/2019 |

**EXHIBIT 2**

DATE FILED: January 14, 2022 1:50 PM
FILING ID: ~~NUMBER:~~ ~~F3D~~
CASE NUMBER: 2022CV30070

DAN HAMILTON
DENVER  CO  80224

Taxable Marital Status:    Single
Exemptions/Allowances:
Federal:    0
CO:    0

## Earnings

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 15.0000 | 34.02 | 510.30 | 19,232.70 |
| Overtime | 22.5000 | 3.00 | 67.50 | 67.50 |
| Health Pay | | | 9.62 | 471.38 |
| Holiday O/T | 22.5000 | 8.98 | 202.05 | 884.93 |
| Holiday Pay | 15.0000 | 4.00 | 60.00 | 360.00 |
| O/T Premium | 0.2200 | 3.00 | 0.66 | 0.66 |
| O/T Premium 2 | 0.1046 | 3.00 | 0.31 | |
| Surge Prm@$5 | 5.0000 | 3.75 | 18.75 | 18.75 |
| Gift Gross Up | | | | 91.30 |
| Pd Suspension | | | | 60.00 |
| **Gross Pay** | | | **$869.19** | 21,187.53 |

## Deductions

| Deductions | Statutory | | | |
|------------|-----------|---|---|---|
| | Federal Income Tax | -95.51 | 1,942.65 | |
| | Social Security Tax | -53.89 | 1,313.63 | |
| | Medicare Tax | -12.60 | 307.22 | |
| | CO State Income Tax | -36.86 | 820.52 | |
| | Aurora Income Tax | | 22.00 | |
| | **Other** | | | |
| | Roth | -34.38 | 785.14 | |
| | Gift Cert | | 60.00 | |
| | **Net Pay** | | **$635.95** | |
| | Checking Dep. | -635.95 | | |
| | **Net Check** | | **$0.00** | |

Correction: 3.00 OT Hours for 11/24/19 - 11/30/19

Your  federal  taxable  wages  this  period  are  $869.19

**Other  Benefits  and**
**Information**          this period          total to date
Tot Work Hours          46.00

**Important  Notes**
YOUR  COMPANY  PHONE  NUMBER  IS 888-892-7180

BASIS OF PAY: HOURLY

LEGAL  ADDR  410  TERRY  AVE  NORTH  SEATTLE  WA  98109

@ THE  SHIFT  PAY  RATE  MAY  NOT  DISPLAY  CONSISTENTLY
DUE  TO CALCULATION  METHOD  AND  ROUNDING.

© 2000  A.D.P., LLC

---

AMAZON.COM SERVICES INC
ATTN: AMAZON PAYROLL
202 WESTLAKE AVE N
SEATTLE, WA 98109

| Advice number: | 00000502900 |
|----------------|-------------|
| Pay date: | 12/06/2019 |

**THIS IS NOT A CHECK**

| Deposited  to the account  of | account  number | transit  ABA | amount |
|-------------------------------|-----------------|--------------|--------|
| DAN HAMILTON | xxxxxxxx2899 | xxxx  xxxx | $635.95 |

**NON-NEGOTIABLE**

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|-----|------|-------|-------|-----------|---|
| Y1K | 185931 | 118200 | 1085 | 0000387554 | 1 |

710-0003

**Earnings   Statement**   ADP®

AMAZON.COM   SERVICES   LLC
ATTN: AMAZON   PAYROLL
202 WESTLAKE   AVE  N
SEATTLE,   WA 98109

Period Beginning:   09/06/2020
Period Ending:   09/12/2020
Pay Date:   09/18/2020

Taxable Marital Status:   Single
Exemptions/Allowances:
Federal:   0
CO:   0

**DAN  HAMILTON**

**DENVER  CO  80224**

| Earnings | rate | hours | this  period | year  to date |
|----------|------|-------|--------------|---------------|
| Regular | 15.0000 | 28.70 | 430.50 | 15,589.05 |
| Overtime | 22.5000 | 13.72 | 308.70 | 884.71 |
| Health Pay | | | 9.62 | 365.56 |
| Holiday  O/T | 22.5000 | 11.30 | 254.25 | 693.46 |
| O/T  Premium | 0.5087 | 13.72 | 6.98 | 323.85 |
| Surge  Prm@$5 | 5.0000 | 10.93 | 54.65 | 649.45 |
| Additionalpay | | | | 1,091.86 |
| Double  Time | | | | 3,940.20 |
| Gift  Gross Up | | | | 483.82 |
| Holiday  Pay | | | | 120.00 |
| Personal  Time | | | | 600.00 |
| Surge  Prm@$3 | | | | 16.26 |
| **Gross  Pay** | | | **$1,064.70** | 25,097.25 |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Income Tax | -137.20 | 3,019.15 |
| | Social Security Tax | -66.01 | 1,556.03 |
| | Medicare Tax | -15.44 | 363.91 |
| | CO State Income Tax | -45.73 | 1,027.90 |
| | Aurora Income Tax | | 18.00 |
| | **Other** | | |
| | Roth | -42.20 | 916.23 |
| | Ach Same Day | | 11.43 |
| | Gift Cert | | 317.99 |
| | **Net Pay** | | **$758.12** |
| | Checking Dep. | -758.12 | |

Net Check   $0.00

Correction: 13.72 OT Hours for 09/06/20 - 09/12/20

Your  federal  taxable  wages  this period  are
$1,064.70

**Other  Benefits  and**
**Information**       this period       total  to date
Personal       7.26
Tot Work Hours       53.72

**Important  Notes**
YOUR  COMPANY  PHONE  NUMBER  IS 888-892-7180

BASIS  OF PAY: HOURLY

LEGAL  ADDR 410 TERRY  AVE NORTH  SEATTLE  WA 98109

@ THE SHIFT  PAY RATE  MAY NOT DISPLAY  CONSISTENTLY
DUE TO CALCULATION   METHOD  AND ROUNDING.

© 2000 ADP, LLC

AMAZON.COM SERVICES  LLC
ATTN: AMAZON PAYROLL
202 WESTLAKE  AVE N
SEATTLE , WA 98109

**Advice  number:**       00000387554
Pay  date:       09/18/2020

THIS IS NOT A CHECK

**Deposited   to the  account  of**
**DAN  HAMILTON**

| | account  number | transit  ABA | amount |
|---|-----------------|--------------|--------|
| | xxxxxxxx2899 | xxxx  xxxx | $758.12 |

**NON-NEGOTIABLE**

App. Vol. I 114

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|---|---|---|---|---|---|
| AAK | 276438 | 118200 | 1085 | 0000506015 | 1 |

16274-0003

**Earnings  Statement**  ADP®

*AMAZON.COM  SERVICES  LLC*
*PO  BOX  80726  SEATTLE,  WA  98108*

Period  Beginning:     11/22/2020
Period  Ending:          11/28/2020
Pay  Date:                   12/04/2020

Taxable Marital Status:   Single
Exemptions/Allowances:
  Federal:              0
  CO:                      0

**DAN  HAMILTON**

**DENVER  CO  80224**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 16.7500 | 40.00 | 670.00 | 3,354.31 |
| Overtime | 25.1250 | 9.38 | 235.67 | 718.19 |
| Holiday O/T | 25.1250 | 10.55 | 265.07 | 265.07 |
| Holiday Pay | 16.7500 | 8.00 | 134.00 | 134.00 |
| O/T Premium | 0.2333 | 9.38 | 2.19 | 17.30 |
| Surge Prm@$3 | 3.0000 | 9.32 | 27.96 | 27.96 |
| Personal Time | | | | 271.18 |
| Surge Prm@$5 | | | | 139.50 |
| Voting Time | | | | 33.50 |
| **Gross Pay** | | | **$1,334.89** | 4,961.01 |

| Deductions | | | this period | |
|---|---|---|---|---|
| **Statutory** | | | | |
| Federal Income Tax | | | -196.64 | 595.13 |
| Social Security Tax | | | -82.76 | 307.58 |
| Medicare Tax | | | -19.35 | 71.93 |
| CO State Income Tax | | | -58.24 | 204.77 |
| Aurora Income Tax | | | | 4.00 |
| **Other** | | | | |
| Roth | | | -53.40 | 1,150.65 |
| **Net Pay** | | | **$924.50** | |
| Checking Dep. | | | -924.50 | |
| **Net Check** | | | **$0.00** | |

Your  federal  taxable  wages  this  period  are
$1,334.89

**Other  Benefits  and Information**
| | this period | total to date |
|---|---|---|
| Personal Balnce | 8.25 | |
| Tot Work Hours | 59.93 | |
| Vacation | 11.90 | |

**Important  Notes**
206-266-1000

BASIS OF PAY: HOURLY

LEGAL ADDR 410 TERRY AVE NORTH SEATTLE WA 98109

@ THE SHIFT PAY RATE MAY NOT DISPLAY CONSISTENTLY DUE TO CALCULATION METHOD AND ROUNDING.

Correction: 9.38 OT Hours for 11/22/20 - 11/28/20

© 2000 ADP, LLC

AMAZON.COM SERVICES LLC
PO BOX 80726 SEATTLE, WA 98108

Advice number:        00000506015
Pay date:                 12/04/2020

THIS IS NOT A CHECK

Deposited  to  the  account  of | account number | transit ABA | amount
DAN HAMILTON | xxxxxxxx2899 | xxxx xxxx | $924.50

**NON-NEGOTIABLE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-00434-STV

DAN HAMILTON, Individually and on behalf of
all others similarly situated,

        Plaintiff,

v.

AMAZON.COM SERVICES LLC,

        Defendant.

---

**DEFENDANT AMAZON.COM SERVICES LLC'S MOTION TO DISMISS
PLAINTIFF'S INDIVIDUAL AND CLASS ACTION COMPLAINT**

---

Plaintiff Dan Hamilton invites this Court to make new state law. Rather than accept the invitation, the Court should dismiss Plaintiff Dan Hamilton's novel and wholly unsupported claim that Colorado employers must include voluntary premiums paid to employees for working on holidays in the regular rate of pay for overtime calculations. The federal Fair Labor Standards Act ("FLSA") unequivocally states the opposite. Specifically, it provides that if employees are paid one-and-a-half their base rate of pay for working on holidays, that premium pay may be *excluded* from the regular rate calculation. There is no law, regulation, agency guidance or interpretation, or case law finding, or even suggesting, that Colorado law requires anything different. To the contrary, state regulations specifically state that holiday pay may be excluded from the regular rate. Therefore, Defendant Amazon.com Services LLC ("Amazon" or "Defendant"), misidentified in the complaint as Amazon.com Services, LLC, respectfully requests that the Court dismiss Plaintiff's Individual and Class Action Complaint (Dkt. 1) under Fed. R. Civ. P. 12(b)(6).

## I.      INTRODUCTION

Plaintiff's allegation that Amazon failed to properly pay overtime wages to him and the putative class under Colorado law fails to state a claim as a matter of law.  As is apparent from the Complaint and exhibits attached thereto, Amazon properly paid him and its non-exempt employees at time-and-a-half for every hour of overtime that he or they worked.  That Amazon paid its non-exempt workers at a time-and-a-half rate for all hours worked on holidays (denoted on its pay stubs as "Holiday O/T") does not change the regular rate calculation for overtime wages under either Colorado or federal law.  Amazon was not legally required to include either of its two types of holiday pay when calculating the regular rate for overtime—that is, holiday pay for *not* working on a holiday, and holiday pay *for* working on a holiday.  Amazon correctly treated the Holiday O/T that it paid to these employees as covering any overtime pay that might be due for those hours of work.  Therefore, Plaintiff fails to state a claim and his lawsuit should be dismissed.

## II.     STATEMENT OF FACTS[1]

In or about November of 2017, Amazon hired Plaintiff Dan Hamilton as a temporary hourly employee at one of its warehouse locations. Amazon converted him to a regular employee on March 25, 2018.  (Dkt. 1, ¶¶ 7, 10).  Plaintiff's pay included incentive payments such as "Surge Premium" payments for working certain days. (*Id.*, ¶ 12).  Amazon included the "Surge Premium" in calculating the overtime that it paid to Plaintiff.  (*Id.*, ¶ 21).

Amazon paid its non-exempt employees time-and-a-half for working on designated holidays ("Holiday O/T").  (*Id.*, ¶ 12, Exs. 2-4).  Further, Amazon provided Plaintiff and its non-

---

[1] For purposes of this Motion only, all well pleaded *facts* in Plaintiff's Complaint, Dkt. 1, are accepted as true.

exempt employees with four, six, or eight hours of pay for holidays irrespective of whether they worked on the holiday.  (*Id.*, Ex. 1).  Amazon included *all* of the hours that Plaintiff worked, including those worked on holidays, in determining whether he worked overtime.  (*Id.*, Exs. 2-4).[2] Amazon paid Plaintiff an overtime premium, at time-and-a-half, for each week in which he worked overtime.  (*Id.*).  Amazon did not include Holiday O/T when calculating the regular rate of pay from which the overtime premium paid to Plaintiff was derived.  (*Id.*, ¶ 37).  Three times over the course of his employment, Plaintiff worked on a holiday and worked overtime in the same week. (*Id.*, ¶ 38).  Plaintiff claims $143.54 in lost wages from those three workweeks.  (*Id.*, ¶ 45).

## III.   ARGUMENT

Plaintiff makes the meritless claim that, under Colorado law, Amazon failed to properly calculate the regular rate of pay for him and the purported class members, by failing to include in that rate the Holiday O/T premium it paid to workers who worked on holidays.  But Colorado law does not require that holiday pay, and thus Holiday O/T premium pay, to be included in the regular rate.  Amazon therefore did not violate the law, and the Court should dismiss Plaintiff's complaint as it fails to state a claim as a matter of law.

---

[2] Although the body of the Complaint asserts that Amazon did not include the hours worked on holidays in determining whether Plaintiff worked overtime (*Id.*, ¶ 19), Plaintiff errs as that assertion is not supported by the Exhibits he attached to his Complaint.  Exhibit 2 shows a total of 46 work hours which is made up of 34.02 "Regular" hours, 3.00 "Overtime" hours, and 8.98 "Holiday O/T" hours. (*Id.*, Exs. 3-4). Likewise, Exhibit 3 shows a total of 53.72 work hours, made up of 28.70 "Regular" hours, 13.72 "Overtime" hours, and 11.30 "Holiday O/T" hours.  In both of these workweeks, if Amazon did not count Holiday O/T hours toward hours worked for overtime purposes, no overtime would have been paid.  But instead, the pay records show that when Regular hours plus Holiday O/T hours equal or exceed 40, Amazon paid Overtime for any additional hours worked in the workweek.

### A.    Legal Standard.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint because it fails to state a claim upon which relief can be granted.  The Court should dismiss claims in a complaint "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief."  *Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1151-52 (10th Cir. 2005) (internal quotations omitted).  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  *Neitzke v. Williams,* 490 U.S. 319, 326 (1989).

> This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

*Id.* at 326-27, quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In considering a motion to dismiss, a court accepts "all well-pleaded allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff."  *Id.* at 1152.  The Court deciding a motion to dismiss "may consider not only the complaint itself, but also attached exhibits."  *Straub v. BNSF Railway Company,* 909 F.3d 1280, 1287 (10th Cir. 2018).  In order to survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level. . . .").  A complaint must "nudge[] claims across the line from conceivable to plausible," *id.* at 570, and Fed.

R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Colorado Law Does Not Require Amazon to Include Holiday Pay in Calculating the Overtime Premium.

The Court should dismiss Plaintiff's Complaint because Colorado's wage and hour regulations have clearly instructed throughout the relevant period that holiday pay can be excluded from the regular rate. Both in substance and in name, Amazon's Holiday O/T premium is clearly a type of holiday pay—extra compensation provided for work on a holiday. The Court should interpret Colorado law harmoniously with the FLSA and consistently with the treatment of holiday premium pay throughout the entire United States and reaffirm, as a matter of law, that holiday premium pay does not need to be included in the regular rate.

#### 1. *Colorado Regulations Exclude Holiday Pay from the Regular Rate*

The Complaint generally asserts that Plaintiff's claim is brought under the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, ("CWA"). (Dkt. 1, Introduction). The CWA "does not itself create any substantive right to compensation for labor and services performed." *Barnes v. Van Schaak Mortg. a Div. of Van Schaack and Co.*, 787 P.2d 207, 210 (Colo. App. 1990). Therefore, in order to recover under the CWA, "a plaintiff must first show that he or she is legally entitled to unpaid compensation under an employment agreement or some other, independent statutory scheme." *Bachanov v. Fedex Ground Package System, Inc.,* No. 20-cv-0601-WJM-SKC, 2020 WL 7074794 at *8 (D. Colo. Dec. 3, 2020).

Notably, the Complaint does not identify what law or regulation Plaintiff claims Amazon has violated. Plaintiff presumably will claim that Amazon violated the Colorado Overtime and

Minimum Pay Standards ("COMPS") Orders and/or their predecessor Colorado Minimum Wage

Order ("CMWO"). The current COMPS Order # 38 states:

> 1.8 "Regular rate of pay" means the hourly rate actually paid to employees for a standard, nonovertime workweek. …
>
> > 1.8.1 Pay included in regular rate. The regular rate includes all compensation paid to an employee, including set hourly rates, shift differentials, minimum wage tip credits, nondiscretionary bonuses, production bonuses, and commissions used for calculating hourly overtime rates for non-exempt employees. Business expenses, bona fide gifts, discretionary bonuses, employer investment contributions, vacation pay, **holiday pay**, sick leave, jury duty, or other pay for non-work hours **may be excluded from regular rates.**

(emphasis added). 7 CCR 1103-1 (effective Jan. 1, 2022).[3]

This is the only mention of holiday pay in the applicable COMPS Orders and CMWO, and

the Colorado regulations do not define the term holiday pay.  There is no indication in those

regulations that holiday *premium* pay is excluded from the definition of holiday pay or should be

treated differently for purposes of regular rate calculations than pay for not working on a holiday.

---

[3] COMPS Order #38 is available at https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20COMPS%20Order%20ADOPTED%20%28Clean%29.pdf.   Each of the prior COMPS Orders and Minimum Wage Orders in the three-year limitations period alleged by Plaintiff contained the same language, aside from grammatical changes necessitated by changing the reference from pay to "employees" to pay to "an employee."  *See* COMPS Order #37 (effective calendar year 2021), *available at https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20COMPS%20Order%20%2337.pdf*; COMPS Order #36 (effective March 16, 2020-December 31, 2020), *available at* https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20ADOPTED%20COMPS%20Order%20%2336_Clean_0_0.pdf; Colorado Minimum Wage Order          #35          (effective          calendar          year          2019), https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20Amended%20Minimum%20Wage%20Order%2035_0.pdf, at II. Definitions, "Regular Rate of Pay" *and as amended* (effective Jan. 1, 2020 – March 15, 2020) https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20Amended%20Minimum%20Wage%20Order%2035_0.pdf.

The only rational conclusion Colorado employers can draw from the applicable regulations is that holiday pay, including what Amazon calls Holiday O/T, need not be included in the regular rate. Moreover, there is no Colorado case law or agency interpretation or guidance suggesting otherwise.  Thus, Plaintiff's claim for relief that holiday premium pay must be included in the regular rate is not plausible on its face and should be dismissed.

> 2. *The Court Should Interpret Colorado Law Regarding Holiday Premium Pay Harmoniously With the FLSA*

The Court should also interpret Colorado law consistently with the FLSA, as Colorado employers have always done, and find as a matter of law that Amazon's Holiday O/T pay may be excluded from the regular rate.

The FLSA states that the regular rate, which is used to calculate the overtime rate, "shall *not* be deemed to *include* . . . (6) extra compensation provided by a *premium rate paid for work by the employee on* Saturdays, Sundays, *holidays* . . . where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days." 29 U.S.C. § 207(e)(6) (emphasis added).  The FLSA further holds that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section."  29 U.S.C. § 207(h)(2).  The regulations reiterate that extra compensation provided for work on a holiday,[4] "(if such rate is at least one and one-half times the bona fide rate established for like work during nonovertime hours on other days) may be treated as an overtime premium and thus need not be included in computing

---

[4] The federal regulations define "holiday" as "those days customarily observed in the community in celebration of some historical or religious occasion."  29 CFR § 778.203(c).

the employee's regular rate of pay and may be credited toward overtime payments due…" 29 CFR § 778.203(c).  On the face of the complaint, Amazon's payment of Holiday O/T comports with federal law as it is paid at time-and-a-half, and the Court should find this approach compliant under Colorado law as well.

"Courts are to read exemptions under the FLSA and Colorado law 'harmoniously' because many of the Colorado Wage Order provisions are patterned largely after the FLSA." *Ott v. Chacha in Art LLC,* 506 F.Supp.3d 1133, 1141 (D. Colo. 2020), citing *Deherrera v. Decker Truck Line, Inc.,* 820 F.3d 1147, 1161 (10th Cir. 2016) ("where a state law is patterned after a federal law or designed to implement its policies, federal constructions of the law 'should be accorded great weight.'), *but see Brunson v. Colo. Cab Co*., 433 P.3d 93, 97–98 (Colo. App. 2018) (finding federal and state overtime exemptions were not "identical or substantially so" and, therefore, declining to 'accord great weight' to federal construction of the relevant exemption) (citation omitted). Reading COMPS Order No. 38 "harmoniously" with federal law compels dismissal of this action.

The assertion in COMPS Order No. 38 that its provisions should be "liberally construed, with exceptions and exemptions accordingly narrowly construed" (*see* § 8.7(A), citing C.R.S. § 8-6-102 as authority for that construction) is of no moment.  As the Tenth Circuit, addressing C.R.S. § 8-6-102 among other authorities, has stated: "this maxim of liberal construction is of little use in concrete cases such as this where interpretive direction from the Colorado General Assembly as to the intended reach of the Wage Order provisions is lacking." *Combs v. Jaguar Energy Services, LLC,* 683 Fed.Appx. 704, 706 (10th Cir. 2017), citing *Deherrera,* 820 F.3d at n.6 (describing the maxim as "useless in deciding concrete cases. Every statute is remedial in the sense that it alters the law or favors one group over another. … Knowing that a law is remedial does not tell a court

8

how far to go. Every statute has a stopping point, beyond which, [the legislative branch] concluded, the costs of doing more are excessive—or beyond which the interest groups opposed to the law were able to block further progress. A court must determine not only the direction in which a law points but also how far to go in that direction.").

   If the Colorado legislature or the Colorado Department of Labor and Employment ("CDLE") intended to make Colorado the only state in the country that requires employers to include holiday premium pay in its regular rate calculation, while exempting holiday pay, they would have said so.   Instead, the CDLE published a series of regulations excluding holiday pay from the regular rate.   Those regulations are all employers have to rely on for the agency's interpretation of this requirement, and there is nothing in the Minimum Wage Orders or COMPS Orders that would put employers on notice that Colorado deviated from federal law and required inclusion of holiday premium pay (but not other types of holiday pay) in the regular rate. Thus, Plaintiff's claim for relief is simply not plausible and the Court should not allow it to move forward.

   Plaintiff's attempt to recast Amazon's Holiday O/T pay as a shift differential is a red herring.   Again, while Colorado law does not define "holiday" or "shift differential," the FLSA regulations specifically treat premium pay for working on a holiday differently than shift differential pay:

> (a) Overtime premiums are those defined by the statute. The various types of premium payments which provide extra compensation qualifying as overtime premiums to be excluded from the regular rate (under sections 7(e)(5), (6), and (7) and credited toward statutory overtime pay requirements (under section 7(h)) have been described in §§ 778.201 through 778.206. …

(b) Nonovertime premiums. The Act requires the inclusion in the regular rate of such extra premiums as *nightshift differentials* (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work.

29 C.F.R. § 778.207 (emphasis added).

Amazon clearly and properly distinguished between these two types of pay as well, including "Surge Premiums" in the regular rate of pay as a type of shift differential, while excluding Holiday O/T for time worked on a holiday as a holiday premium. This was clearly the proper treatment under federal law and again, Colorado law is completely devoid of any indication that different treatment would be required to comport with state wage and hour requirements. The Court should reject Plaintiff's attempt to create new law out of whole cloth and dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## IV.    CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and award Amazon its reasonable costs and attorney's fees incurred in defending this action pursuant to C.R.S. § 8-4-110.

Dated: March 3, 2022                              Respectfully submitted,

                                                 */s/ Jennifer S. Harpole*
                                                 Jennifer S. Harpole
                                                 Sarah K. Watt
                                                 LITTLER MENDELSON, P.C.
                                                 1900 Sixteenth Street, Suite 800
                                                 Denver, CO  80202
                                                 jharpole@littler.com
                                                 swatt@littler.com
                                                 Telephone:   303.629.6200
                                                 Facsimile:    303.629.0200

                                                 **Attorneys for Defendant**
                                                 **Amazon.com Services LLC**

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of March, 2022, I electronically filed the foregoing **DEFENDANT AMAZON.COM SERVICES LLC'S MOTION TO DISMISS PLAINTIFF'S INDIVIDUAL AND CLASS ACTION COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
*Attorneys for Plaintiff*

/s/ *Elisabeth L. Egan*
Elisabeth L. Egan

4855-7024-5644.5 / 096748-1008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 22-cv-00434-STV**

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

      **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

      **Defendant.**

---

**RESPONSE IN OPPOSITION TO DEFENDANT AMAZON.COM SERVICES
LLC'S FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS**

---

      Plaintiff Dan Hamilton ("Hamilton"), through the undersigned counsel, hereby responds to the Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 15) filed by Defendant Amazon.com Services LLC ("Amazon") and states as follows:

<u>**INTRODUCTION**</u>

      This is a simple wage and hour case brought *solely* under state—not federal—law. Colorado has clear statutory and regulatory law that Amazon has breached by failing to include holiday premiums for all hours actually worked on a holiday within the calculation of the regular rate of pay for overtime purposes. Amazon starts out its argument with a misstatement: That "Plaintiff . . . invites this Court to make new state law." ECF Doc No. 15, Motion to Dismiss at 1. Its whole argument is premised on this misstatement as it goes on to argue that Colorado, like the federal Fair Labor Standards

Act ("FLSA"), permits Amazon to exclude time worked on a holiday at a premium rate from its weekly calculation of overtime. Amazon is wrong.

Colorado law in this regard is nothing like the federal law. Having removed this case to federal court perhaps, to invite such a misapplication and conflation of the law, Amazon ignores Colorado law that prohibits Amazon from relying on an inapplicable FLSA rule in its attempt to rake into its own pockets millions of dollars a year in overtime pay guaranteed to its Colorado workers under state law. The Court should accept the constitutional principles of federalism and states' rights and reject this attempted theft of wages protected under Colorado state law.

Amazon argues that Hamilton's claims brought pursuant to Colorado law should be dismissed because, under both state and federal law, premium pay that is offered for working on a holiday may be excluded from the calculation of the regular rate of pay in the same manner as holiday pay given simply because it is a holiday. Furthermore, Amazon argues that because the FLSA precludes Hamilton's claim, and that as there is no state law specifically on point, the FLSA should control. However, Amazon attempts to conflate a premium rate offered for services performed with pay that is offered simply because it is a certain day on the calendar by claiming that they fall under the same categories of payment. Such a characterization is improper under not only Colorado law, but also the FLSA. Moreover, Amazon incorrectly assumes that the FLSA controls and fails to acknowledge the ample case law holding that Colorado law has and continues to offer broader protections than the FLSA to Colorado employees. *See e.g. Brunson v. Colo. Cab Co., LLC*, 2018 COA 17, ¶ 23, 433 P.3d 93, 97 (Colo. App. 2018) (Colorado

"promulgate[s] a wage order independent of the FLSA, expressly stating that the Wage

Order shall apply instead of the FLSA when it provides greater protection than the FLSA

affords."); *Redmond v. Chains, Inc.*, 996 P.2d 759, 764 (Colo. Ct. App. 2000) (FLSA does

not preempt the CMWA because the CMWA provides relief that is not available under

the FLSA); *Jordan v. Maxim Healthcare Servs., Inc.*, No. 15-CV-01372-KMT, 2018 WL

1535507, at *5 (D. Colo. Mar. 29, 2018), *rev'd and remanded*, 950 F.3d 724 (10th Cir.

2020)[1] ("[T]he FLSA's relationship to the CWA is a protective floor — not a ceiling —

for employee rights. States can, therefore, through statutory verbiage (*or no verbiage at

all*), use their police powers to add to worker protections above and beyond the federal

right") (emphasis added).

## FACTUAL BACKGROUND

Hamilton began working for Amazon as a temporary employee at one of its Aurora,

CO warehouses in November of 2017, and remains employed as a permanent employee

to date. ECF No. 5, State Court Complaint and Attached Exhibits at ¶¶ 7, 10.[2] Throughout

---

[1] While the initial holding by the district court in *Jordan* was reversed and remanded by the 10th Circuit, Circuit Judge Bacharach has since stated that if the 10th Circuit "were addressing the issue [discussed in *Jordan*] on a blank slate, I would have adopted [the Plaintiff's] interpretation of the minimum wage order.*" Kennett v. Bayada Home Health Care, Inc.*, 845 F. App'x 754, 764 (10th Cir. 2021) (Bacharach, J., concurring) (noting that the canons of interpretation supported a narrow interpretation of the minimum wage order exemption, but that the 10th Circuit was bound by the precedent established in *Jordan* regarding the specific exemption at issue.) Following *Bayada*, the Denver District Court adopted Circuit Judge Bacharach's analysis of Colorado law. *See, e.g.,* Order on Appeal at 18–19, *Brennan v. The Broadmoor Hotel, Inc. and CDLE, DLSS*, No. 2020CV31154 (Colo. Dist. Ct. Nov. 8, 2021) ("[T]he General Assembly passed Order No. 36, successor to the Wage Orders, which pointedly instructs a liberal construction for the rules and narrow construction for the exemptions, after the *Jordan* court.").

[2] Because the Plaintiff's Complaint and attached exhibits were filed in federal court as a single document, rather than as separate documents, the Plaintiff cites to the paragraphs

his employment, he has been paid an hourly rate, plus various incentive payments to encourage him to work additional shifts, stay late, or work on less appealing days. *Id.* at ¶¶ 7, 11. One of these incentives is the offer to be paid time and a half for working on a designated company holiday ("Holiday Incentive Pay"), even though he would get paid for *not* working on that holiday under Amazon's policies. *Id.* at ¶¶ 11–12.  If an employee works on one of those seven holidays, Amazon pays the employee their holiday pay, plus time and a half of their agreed upon rate for all hours worked on that holiday, irrespective of overtime. *Id.* at p. 12. At all times relevant to this Complaint, Amazon improperly failed to include the Holiday Incentive Pay in the calculation of the regular rate of pay for overtime purposes. *Id.* at ¶ 19.

Hamilton brought this action in state court alleging that Amazon violated Colorado Wage and Hour Law by failing to pay him and other, similarly situated Colorado employees all overtime mandated by state law. *Id.* at ¶¶ 20, 23, 24. Amazon removed the case to this Court and filed a Motion to Dismiss in which it argues:(1) neither federal nor Colorado law require holiday pay to be included in the regular rate of pay, and the Holiday Incentive Pay is a type of holiday pay; and (2) an FLSA exemption related to the calculation of the regular rate of pay for premiums paid for working on holidays (and other less desirable workdays) should be read into, and affectively amend, Colorado Wage and Hour law. ECF No. 15 at 5–10. As both arguments lack merit, Hamilton requests this Court to deny Amazon's Motion to Dismiss.

---

contained in the Complaint with "¶" and cites to the exhibits by referencing the page number the pertinent parts appear on within the entire document with "p".

## STANDARD OF REVIEW

"To survive a 12(b)(6) motion to dismiss, the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bracamontes v. Bimbo Bakeries U.S.A. Inc., No. 15-CV-02324-RBJ, 2016 WL 5791202*, at *2 (D. Colo. Sept. 30, 2016) (citing *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007)). "A plausible claim is a claim that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, purely conclusory allegations are not entitled to be presumed true." *Id.* (citing *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002) and *Iqbal,* 556 U.S. at 681). "However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard." *Id.*

## ARGUMENT

### A. THE COURT SHOULD DISREGARD AMAZON'S IMPROPER CONFLATION OF HOLIDAY PAY AND PREMIUM PAY EARNED FOR WORK ON A HOLIDAY.

In deciding Amazon's Motion, the Court must focus on the allegations in the Complaint, and construe those allegations in the light most favorable to the Plaintiff. *See Iqbal,* 556 U.S. at 681. Amazon spends a large portion of its 12(b)(6) Motion focused on why holiday pay should not be included in the calculation of the regular rate of pay, thus seeking to confuse the Court by labelling two different types of payments as one. *See* ECF No. 15 at 5–7, 9–10. Indeed, there is no debate that holiday pay should not be included in the regular rate of pay, and that is not what Hamilton seeks in his Complaint. Rather, Hamilton avers that Holiday Incentive Pay earned for work performed on holidays

should be included in the regular rate of pay for overtime purposes under Colorado law, because the Holiday Incentive Pay is a "shift differential." ECF No. 5 at ¶¶ 15, 19.

While "holiday pay" is not specifically defined in Colorado law, it is clear that "holiday pay" is payment received as a benefit simply because it is a certain calendar day and *not* compensation for work performed. First, in both the Colorado Minimum Wage Order(s) ("MWO(s)") and all applicable Colorado Overtime and Minimum Pay Standards Order(s) ("COMPS Order(s)") it is clear that holiday pay is payment for *non-work* hours. 7 C.C.R. 1103-1, Section 2 (2019); 7 C.C.R. 1103-1, Rule 1.8 (2020–2022) ("Business expenses, bona fide gifts, discretionary bonuses, employer investment contributions, vacation pay, *holiday pay*, sick pay, jury duty, *or other pay for non-work hours* may be excluded from regular rates."). (Emphases added). Moreover, the Colorado Department of Labor and Employment ("CDLE") has specifically stated that "[w]hen an employee is paid for a non-work holiday, the holiday hours do not count towards overtime unless actual work was performed on the holiday." Wage and Hour Law, *Holiday, Severance, and Sick Pay*, CDLE (last visited Mar. 15, 2022), https://cdle.colorado.gov/wage-and-hour-law/holiday-severance-and-sick-pay.   Furthermore, Amazon's own holiday pay policy draws a distinction between "holiday pay" and payments received for working on holidays. ECF No. 5 at pp. 11–12. Finally, even federal law, which Amazon relies upon, draws a distinction between "holiday pay" and premium payments made for work performed on a holiday. *See* U.S. Dept. of Labor, *Fact Sheet #56A* at 2–3 ("In the case where an employee reports to work on the holiday and is paid for hours worked plus the holiday payment,

6

the holiday payment is excludable from the regular rate, *because it is not considered a payment for hours worked*.") (emphasis added).[3]

Indeed, despite Amazon's attempt to characterize Hamilton's claim that the "Holiday Incentive Pay" is a shift differential as "a red herring," the only federal case on point interpreting the FLSA exemption that Amazon relies upon addresses the premium payments made pursuant to the FLSA exemption as "shift differentials". *See Bell v. Iowa Turkey Growers Cooperative*, 407 F. Supp. 2d 1051, 1056–1062 (S.D. Iowa 2006). Moreover, it is clear from the language of the FLSA, that the premium payments contemplated in the exemption cannot be considered a type of holiday pay. The FLSA allows an employer to exclude from the calculation of the regular rate:

> [E]xtra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days.

29 U.S.C. § 207(e)(6). As holidays are included with a list of other workdays that are not tied to specific calendar days, it is clear that premium payments received pursuant to 29 U.S.C. § 207(e)(6) were not meant to be considered as a subset of "holiday pay." Moreover, as this exemption requires a certain rate to be paid in order for the exemption to apply, any other premium rates paid for work performed on these specific days would be required to be included in the regular rate of pay, just as any other shift differential. *See* 29 C.F.R. § 778.203 ("If the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in

---

[3] Available at https://www.dol.gov/sites/dolgov/files/WHD/fact-sheets/56a-regular-rate.pdf

determining the employee's regular rate of pay and cannot be credited toward statutory overtime due, unless it qualifies as an overtime premium under section 7(e)(5).").

Accordingly, Amazon's arguments that holiday pay need not be included in the regular rate of pay are completely irrelevant to whether the Plaintiff has stated claims that are plausible on their face. *See Iqbal,* 556 U.S. at 681; ECF No. 15 at 5–7. Hamilton objects to Amazon's attempt to confuse the Court and obtain dismissal through improper conflation of a payment that is immaterial to the Colorado Wage and Hour Law claims alleged in his Complaint. Because the "holiday pay" arguments made by the Defendant are irrelevant, the Court should disregard them.

## B. THE FLSA SHOULD NOT BE APPLIED TO THE PLAINTIFF'S COLORADO OVERTIME CLAIM

In seeking dismissal of Hamilton's Complaint, Amazon claims that an FLSA exemption—29 U.S.C. § 207(e)(6)—should be read into Colorado law, "as Colorado employers have always done." ECF No. 15 at 7. This grossly misstates the application of the FLSA to Colorado law.

The FLSA sets a floor of basic rights that states cannot abridge, but which they are free to exceed in their own wage and hour laws and regulations. *See Bowe v. SMC Elec. Prod., Inc.*, 935 F. Supp. 1126, 1134 (D. Colo. 1996). In most instances, Colorado Wage and Hour Law provides rights that are greater than those provided by the FLSA. *See e.g.* 7 C.C.R. 1103-1, Rule 3.1; *compare* 29 U.S.C. § 206(a)(1); *see also* Colo. Dept. of Labor and Employment, *Statement of Basis, Purposes, Authority, and Findings* at 22[4]

---

[4] Available at https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20Statement%20of%20Basis%2C%20Purpose%2C%20Authority%2C%20and%20Findings_0.pdf

("the FLSA, is no rationale for removing coverage in an order that provided many more rights than the FLSA") ("CDLE Statement"); 7 C.C.R. 1103-1, Rule 3.2 ("If an employee is covered by multiple minimum or overtime wage requirements, the requirements providing a higher wage, or otherwise setting a higher standard, shall apply").

A review of Rule 1.2 and the CDLE's Statement that was published with the COMPS Order #36 demonstrate that the Defendant's argument is entirely baseless. 7 C.C.R. 1103-1, Rule 1.2; *see supra CDLE Statement* at 11–13, 22, 52–55. Amazon cites outdated law interpreting the application of the FLSA to the MWO and fails to acknowledge that the CDLE expressly rejected Amazon's very argument when it enacted the COMPS Order. *See supra CDLE Statement* at 32–33, and notes 110–111 (expressly rejecting the precedent established in *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1161 (10th Cir. 2016) and *Combs v. Jaguar Energy Services, LLC*, 683 Fed. App'x. 704, 705–07 (10th Cir. 2017) in favor of the precedent established in *Brunson*, 2018 COA 17 ¶¶ 17–45. The COMPS Order explicitly lists the specific statutes and regulations that were incorporated into Colorado Wage and Hour Law—"20 C.F.R. §§ 655.210, 655.1304; 29 C.F.R. Part 541 Subpart G." 7 C.C.R. 1103-1, Rule 1.2. The CDLE has also identified specific FLSA principles that have been incorporated in the Colorado Wage and Hour Law. *See generally, CDLE Statement supra*. Contrary to the Defendant's assertions, neither the COMPS Order nor the *Statement* incorporates 29 U.S.C. § 207(e)(6), 29 U.S.C. §207(h)(2), 29 C.F.R. § 778.203(c), or 29 C.F.R. § 778.207.

Moreover, this Court has held that it is the employer's burden to establish that a certain exemption applies, and the Defendant has failed to do so given the ample case law and rules

discussed above stating that exemptions from Colorado Wage and Hour law should be construed narrowly. *See Bowe*, 935 F. Supp. at 1134.

Because Colorado Wage and Hour Law—and specifically the law related to overtime—is more protective than the FLSA, and includes requiring time actually worked during holidays at Amazon's premium rate/shift differential to be included in calculating the regular rate of pay during the week for the purposes of paying overtime correctly, the Court should reject Amazon's attempt to obtain dismissal based on inapplicable federal regulations and a misreading of Colorado law.

## **CONCLUSION**

WHEREFORE, the Plaintiff respectfully asks the Court to deny the Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 15), and to grant the Plaintiff any other and further relief as the Court may deem to be just and appropriate.

Respectfully Submitted on this 24th day of March, 2022.

/s/ David H. Miller
_____
David H. Miller
Victoria E. Guzman
SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
303.839.1650
DHmiller@sawayalaw.com
vguzman@sawayalaw.com

10

## CERTIFICATE OF SERVICE

     I certify that on this 24th day of March, 2022, I filed the foregoing document through the CM/ECF system, generating a true and accurate copy of the document to all counsel of record.

*/s/ Leroy Moya*

_____

Leroy Moya

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-00434-PAB-STV**

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

      **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

      **Defendant.**

---

### RESPONSE (PRELIMINARY) IN OPPOSITION TO DEFENDANT AMAZON.COM SERVICES LLC'S MOTION FOR EXPEDITED BRIEFING SCHEDULE

---

Plaintiff Dan Hamilton ("Hamilton"), through the undersigned counsel, hereby partially responds to the Motion to Vacate the Scheduling Conference, Stay Discovery Pending Disposition of Its Motion to Dismiss, and for Expedited Briefing Schedule filed by Defendant Amazon.com Services LLC ("Amazon") and states as follows:

1.    Defendant certification that its counsel conferred with the Plaintiff's counsel on the relief requested in the motion is inaccurate as Defendant's counsel failed to confer on the request for an expedited briefing schedule.

2.    Defendant's counsel did confer on the request to vacate the scheduling conference and stay discovery and Plaintiff's counsel responded the following day, noting counsel's belief that such a motion would be frivolous.

3.      This conferral occurred more than a month prior to the Defendant's filing of its motion requesting such relief. Exhibit 1, March conferral email chain.

4.      Had Defendant filed its Motion shortly after conferral, the Motion would have been fully briefed prior to the Scheduling Conference that is currently set for April 27, 2022.

5.      Now the Defendant, due to its own delay, requests the Court to force the Plaintiff to research and respond within seven days, when the Defendant allotted itself more than a month to conduct the necessary research.

6.      While the Plaintiff believes, as this Court has recently stated in a similar request, that the Defendant's Motion should be denied, the Plaintiff would like to be able to respond to all of the issues addressed by the Defendant in its Motion, using the time allotted by the federal rules of procedure. *See* Order at 3–4, *Graesser v. IQVIA RDS Inc.*, No. 21-cv-01337-PAB-KLM (D. Colo. Dec. 14, 2021) (attached as Exhibit 2).

7.      If allowed the full time to respond as granted by D.C.COLO.LCivR 7.1, the Plaintiff's Response will be due two days prior to the set Scheduling Conference.

8.      While this allots little time for the Defendant to submit a reply, such reduction in time is the direct result of Defendant's own delay in filing.

WHEREFORE, the Plaintiff respectfully asks the Court to deny the Defendant's request for an expedited briefing schedule and allow the Plaintiff until and including April 25, 2022 to submit his response to the Defendant's Motion to Vacate the Scheduling Conference and Stay Discovery Pending Disposition of Its Motion to Dismiss.

Respectfully Submitted on this 7th day of April, 2022.

*/s/ David H. Miller*

2

David H. Miller
Victoria E. Guzman
SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
303.839.1650
DHmiller@sawayalaw.com
vguzman@sawayalaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 7th day of April, 2022, I filed the foregoing document through the CM/ECF system, generating a true and accurate copy of the document to all counsel of record.

*/s/ Leroy Moya*

_____

Leroy Moya

**Victoria Guzman**
**EXHIBIT 1**

| | |
|---|---|
| **From:** | David H. Miller |
| **Sent:** | Friday, March 4, 2022 4:26 PM |
| **To:** | Harpole, Jennifer S.; Watt, Sarah K.; VicRamirez@littler.com; LEgan@littler.com |
| **Cc:** | Victoria Guzman; Cynthia Sanchez; Leroy Moya |
| **Subject:** | RE: Hamilton v. Amazon - Non Consent to Magistrate |

Good afternoon Jennifer,

Let me try to hit on all the outstanding issues:

1) We've both communicated copying various individuals at our firms over the course of the last few weeks, and I want to make sure I'm getting my messages to everyone that needs to see them at your office: So I'll be copying my emails to you to Ms. Watt, Ms. Ramirez, and Ms. Egan, unless you instruct me to the contrary. Would you please copy all messages to me about this case to Ms. Guzman, Ms. Sanchez, and Mr. Moya;

2) As you may know, our client Mr. Hamilton, has been out on leave because of a serious medical problem. Accordingly it's taking a bit more time than usual for us to be able to consult with him during the time of his recovery. We will try never to have it take a week for that to happen, but so far we've not been able to consult with him about the Magistrate Judge issue or your just filed motion for a stay. I apologize for this brief delay and in the future we'll hopefully be able to respond to your requests quickly;

3) With respect to the Magistrate Judge matter I'm a bit mystified by your urgency. The consent form does not have to be filed until April 13th. As soon as we talk with our client about this we'll be able to talk with you and fulfill our duties under the Court's of February 18th. Discussion him will certain make our consultation with you more meaningful;

4) As to a consultation about staying discovery, the law in this court has made it quite clear that such a motion would be frivolous. We urge you not to file it because having to respond to it in light of the Tenth Circuit's decision in *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt, Inc,* 713 F.2d 1477, 1484 (10th Cir. 1983), and the multiple cases that have come down in our federal district court since then would mean you would be forcing us to argue that your motion was frivolous and simply an attempt to prejudice the progression of this case. We would therefore have to seek all available remedies if you put us through that process.

Now, since we have not been able to consult with Mr. Hamilton about the Magistrate Judge consent issue, clearly we have also not been able to consult with him about your consultation request concerning a stay in the case pending the court's decision (on what we believe to be your client's unsupported motion to dismiss), so why don't we get this case back on its regular track: I'll get back to you on our position with respect to the Magistrate Judge Consent issue next week after we hear from our client, and instead of filing an ill-considered and time-wasting motion for a stay, why don't we set a time next week pursuant to Rule 26(f) and work cooperatively on getting out a draft Scheduling Order?

I hope you agree that the above sets out a more productive and reasonable course of action.

Thank you, and if you want to talk about this please feel free to give me a call.

Best regards and have a good weekend,

David

**David H. Miller**
*Managing Litigation Partner, Employment Dept.*

**The Sawaya Law Firm**
1600 Ogden Street, Denver, CO 80218
Firm: (303) 839-1650 ext. 1090 Direct: 303-551-7667
DHMiller@sawayalaw.com
www.sawayalaw.com



This electronic message transmission contains information from the law firm of Sawaya, Rose, McClure & Wilhite, P.C. which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by email and delete the original message.

---

**From:** David H. Miller
**Sent:** Thursday, March 3, 2022 3:34 PM
**To:** Harpole, Jennifer S. <JHarpole@littler.com>
**Subject:** RE: Hamilton v. Amazon - Non Consent to Magistrate

Been in depositions. Just ended the last one.
I'll get back to your client and file either today or tomorrow.
David

---

**From:** Harpole, Jennifer S. <JHarpole@littler.com>
**Sent:** Thursday, March 3, 2022 1:24 PM
**To:** David H. Miller <dhmiller@sawayalaw.com>; Victoria Guzman <vguzman@sawayalaw.com>
**Cc:** Watt, Sarah K. <SWatt@littler.com>
**Subject:** FW: Hamilton v. Amazon - Non Consent to Magistrate

**External Email**

Hi David and Victoria,

Following up on Sarah's email from yesterday morning, we will get this non-consent on file so that an Article III judge gets assigned to the motion to dismiss.  Please advise if we have consent to file with your e-signatures.

In addition, in light of the motion to dismiss which could be dispositive of the case as a whole, in order to conserve judicial and the parties' resources, we would like to ask the court to vacate the scheduling conference and stay discovery pending the court's ruling on the motion to dismiss.  Please let us know Plaintiff's position on this motion.

Thanks,
Jennifer

**Jennifer Harpole**
Shareholder
303.362.2868 direct, 720.431.8221 mobile, 303.484.3926 fax
JHarpole@littler.com



Labor & Employment Law Solutions | Local Everywhere
1900 Sixteenth Street, Suite 800, Denver, CO 80202-5835

**From:** Watt, Sarah K. <SWatt@littler.com>
**Sent:** Wednesday, March 2, 2022 8:26 AM
**To:** David H. Miller <dhmiller@sawayalaw.com>; Victoria Guzman <vguzman@sawayalaw.com>
**Cc:** Leroy Moya <LMoya@sawayalaw.com>; cjsanchez@sawayalaw.com; Harpole, Jennifer S. <JHarpole@littler.com>; Ramirez, Vicky <VicRamirez@littler.com>; Egan, Lisa <LEgan@littler.com>
**Subject:** Hamilton v. Amazon - Non Consent to Magistrate

Good morning counsel,

We are conferring per the rules regarding the assignment of a magistrate judge; however, since our client does *not* consent, we would like to get this on file today so we can get our Article III judge assigned.

Please let us know if you have any questions or would like to discuss further.

Thank you,

Sarah

**Sarah K. Watt**
Attorney at Law
602.474.3630 direct, 719.492.0082 mobile, 816.817.8039 fax
SWatt@littler.com



Labor & Employment Law Solutions | Local Everywhere
Camelback Esplanade, 2425 East Camelback Road, Suite 900, Phoenix, AZ 85016-4242

--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

App. Vol. I 143

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01337-PAB-KLM

KRISTEN GRAESSER,

      Plaintiff,

v.

IQVIA RDS INC., a North Carolina Corporation,

      Defendant.

## ORDER

This matter is before the Court on Defendant's Motion to Stay Pending Ruling on Defendant's Motion to Dismiss [Docket No. 28]. Plaintiff responded, Docket No. 32, and defendant replied. Docket No. 36.

This case arises from plaintiff's departure from her position as an Associate Medical Director working for defendant IQVIA RDS Inc. ("IQVIA"). Docket No. 1 at 3, ¶ 10. Plaintiff was employed by defendant from May 2019 until her voluntary departure in January 2021. *Id.* at 3, 5, ¶¶ 10, 24. Plaintiff alleges that defendant violated the Colorado Wages Claim Act, Colo. Rev. Stat. § 8-4-101 to -124 ("CWCA"), by withholding the salary bonus she earned in 2020. *Id.* at 7, ¶ 37. In the alternative, plaintiff alleges that she is owed a bonus by defendant under the doctrine of promissory estoppel. *Id.* at 7-8, ¶¶ 41-46. On July 16, 2021, defendant filed a motion to dismiss plaintiff's complaint in its entirety. *See* Docket No. 8 at 1. On November 1, 2021, defendant filed a motion to stay this case pending a ruling on its motion to dismiss. *See*

Docket No. 28.

It is well established that a court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). However, the Tenth Circuit has cautioned that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc*., 713 F.2d 1477, 1484 (10th Cir. 1983). Stays of all proceedings in a case are thus "generally disfavored in this District" and are considered to be "the exception rather than the rule.*" Davidson v. Bank of Am. N.A.*, No. 14-cv-01578-CMA-KMT, 2015 WL 5444308, at \*1 (D. Colo. Sept. 16, 2015). A stay may, however, be appropriate in certain circumstances. In determining whether to grant or deny a stay, courts in this district consider the following factors (the "*String Cheese Incident* factors"): "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc*., No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at \*2 (D. Colo. Mar. 30, 2006).

Defendant argues that factors one and two weigh in favor of a stay because defendant will have to spend time and money conducting discovery while a dispositive motion to dismiss is pending. Docket No. 28 at 3. Plaintiff opposes the stay, arguing that her interest weighs strongly against the requested stay and that defendant has failed to demonstrate an undue burden. Docket No. 32 at 3-4.

2

Because a stay could result in "adverse consequences[,] such as a decrease in evidentiary quality and witness availability[,]" *Clark v. Green Tree Servicing LLC*, No. 13-cv-02646-PAB-MEH, 2014 WL 324566, at \*2 (D. Colo. Jan. 29, 2014), the Court finds that the first factor weighs against a stay. With respect to the second factor, the ordinary burdens associated with litigation do not constitute undue burden. *See Collins v. Ace Mortgage Funding, LLC*, No. 08-cv-1709-REB-KLM, 2008 WL 4457850, at \*1 (D. Colo. Oct. 1, 2008). Defendant identifies no burden on it besides the time and expense warranted by discovery, and accordingly this factor does not weigh in favor of a stay.

Because the delay caused by a stay "makes the Court's docket less predictable, and hence, less manageable," *Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081-WYD-KLM, 2010 WL 148278, at \*3 (D. Colo. Jan. 7, 2010), factor three weighs against a stay. The Court is aware of no third parties with interests in this litigation, making factor four neutral. The only interest the public has in this case is in the speedy resolution of legal disputes. *Prison Legal News v. Fed Bureau of Prisons*, No. 15-cv-02184-RM-STV, 2017 WL 10619942, at \*13 (D. Colo. Feb 23, 2017).

Based on the above factors, and given the general presumption against stays, *see Davidson*, 2015 WL 5444308, at \*1, the Court finds that a stay is unwarranted here. Accordingly, it is

3

**ORDERED** that Defendant's Motion to Stay Pending Ruling on Defendant's

Motion to Dismiss [Docket No. 28] is **DENIED.**

DATED December 14, 2021.

BY THE COURT:

_____

PHILIP A. BRIMMER
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-00434-PAB-STV

DAN HAMILTON, Individually and on behalf of
all others similarly situated,

                  Plaintiff,

v.

AMAZON.COM SERVICES LLC,

            Defendant.

---

**DEFENDANT AMAZON.COM SERVICES LLC'S REPLY IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S INDIVIDUAL AND CLASS ACTION COMPLAINT**

---

Despite denying Amazon's assertion that Plaintiff is asking the Court to create new law,

Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Individual and Class Action

Complaint (the "Opposition") (Dkt. 16 at p. 1) tellingly cites no decision, whether judicial or

administrative, holding that premium pay for working on a holiday ("Holiday O/T Pay") must be

included in the regular rate of pay for overtime calculations under Colorado law. Instead, the only

Colorado regulation on point explicitly states that holiday pay may be *excluded* from the regular

rate.  Plaintiff asks the Court to read a requirement into Colorado law that is simply not there, and

which would place on Colorado employers an obligation that does not exist under federal law or

the laws of any other state in the country.  As there is exactly zero evidence that the Colorado

legislature or Colorado Department of Labor and Employment ("CDLE") intended to deviate from

this universal rule excluding holiday premium pay from the regular rate of pay, the Court should

decline Plaintiff's invitation to step into the role of legislator and rewrite Colorado law.

The Opposition confuses what the Colorado legislature can do with what it has done.  The Opposition spends much of its time making the unremarkable point that Colorado can provide greater protection to employees than that afforded by the Fair Labor Standards Act ("FLSA") and the equally unremarkable point that, in some instances, it has.  What the Opposition fails to do is provide any basis for finding that with respect to Holiday O/T Pay, Colorado actually *has* gone beyond the FLSA, and beyond every other state, to include it in the regular rate for calculating overtime.  Although Plaintiff spends the remainder of the Opposition arguing that Holiday O/T Pay should be characterized as a shift differential rather than holiday pay, once again, nothing suggests this is what the Colorado legislature or CDLE intended, and the case law Plaintiff cites from outside Colorado does not support this interpretation.  The Court should grant Amazon's Motion to Dismiss (Doc. 15) ("Motion") and dismiss Plaintiff's complaint, with prejudice.

## I.   ARGUMENT

### A.   The Opposition's Argument that Colorado *Could* Include Premium Pay for Working on a Holiday in the Regular Rate Is Irrelevant Because Colorado Has Not Done So.

The Opposition spends the Introduction describing what Colorado has the power to do.  For example, the Opposition notes several cases indicating that the FLSA provides a floor and not a ceiling with respect to "level of protection" afforded to employees.  (*Id.* at pp.2-3).[1]  What the

---

[1] The Opposition's string cite in support of this point is misleading.  While counsel notes, as he must, that *Jordan v. Maxim Healthcare Services, Inc.*, No. 15-CV-01372-KMT, 2018 WL 1535507 (D. Colo. Mar. 29, 2018), was reversed and remanded, he fails to note that the Appellate Court remanded with *instructions to enter judgment for the defendant*.  950 F.3d 724, 754 (10th Cir. 2020).  As to the quote counsel provides in footnote 1 from Circuit Judge Bacharach in *Kennett v. Bayada Home Health Care, Inc.*, 845 F. App'x 754 (10th Cir. 2021), the Opposition fails to note that Judge Bacharach was not on the panel that decided *Jordan*.  950 F.3d at 726.  Thus, as his statement is with respect to a holding in a case upon which he did not sit and comes in a concurrence and not in the majority opinion, it is, with respect, nothing more than the statement of

2

Opposition fails to do is point to any law, regulation, or case law showing that Colorado has actually deviated from the FLSA with respect to the treatment of premium pay for working on a holiday.  That is, the Opposition describes for the Court what Colorado could do and not what it has done.  Tellingly, after dismissing Amazon's claim that Plaintiff is trying to create new law, the Response cited no decision—whether judicial or regulatory—finding pay for working on a holiday has to be included in the regular rate.  That, of course, is because there is none.

To the contrary, Colorado's singular discussion of pay with respect to holidays is to state that it is *not* included in the regular rate for calculating overtime.  *See* Motion, pp. 5-7.  The current COMPS Order # 38 explicitly states that holiday pay may be excluded, without distinguishing between pay for working or not working on a holiday.  It states:

> 1.8 "Regular rate of pay" means the hourly rate actually paid to employees for a standard, nonovertime workweek. …
>
> > 1.8.1 Pay included in regular rate. The regular rate includes all compensation paid to an employee, including set hourly rates, shift differentials, minimum wage tip credits, nondiscretionary bonuses, production bonuses, and commissions used for calculating hourly overtime rates for non-exempt employees. Business expenses, bona fide gifts, discretionary bonuses, employer investment contributions, vacation pay, **holiday pay**, sick leave, jury duty, or other pay for non-work hours **may be excluded from regular rates.**

(emphasis added). 7 CCR 1103-1 (effective Jan. 1, 2022).  Although Plaintiff claims that the phrase

---

a single Circuit Court Judge with which at least five of his fellow Circuit Judges disagree.  The statement also has nothing to do with how Colorado treats premium pay for work on a holiday but, instead, is with respect to the scope of an exemption from minimum wage for "companions" and "causal babysitters." 845 F. App'x at 764.  Finally, neither Judge Bacharach nor the *Bayada* case is mentioned in *Brennan v. The Broadmoor Hotel, Inc. and CDLE, DLSS*, No. 2020CV31154 (Colo. Dist. Ct. Nov. 8, 2021), notwithstanding the assertion in footnote 1 that this state court adopted Judge Bacharach's position.

"pay for other non-work hours" means that *all* the preceding categories of pay must be for non-work hours, that phrasing simply indicates that one or some of those categories are for non-work hours, but does not speak to whether *all* of them are. There is nothing in the regulations to demonstrate, or even suggest, that Colorado treats holiday premium pay differently than pay for not working on the holiday. Likewise, there is nothing in the Opposition to show that Colorado law treats these two types of holiday pay differently. Regardless of whether Colorado *could* treat them differently, it does not. Plaintiff's novel legal claim is unsupported by the law and must be dismissed.

**B.      The Opposition Offers No Support for Transmuting Premium Payments for Working on a Holiday Into Shift Differentials.**

In moving to the "Argument" section, the Opposition continues to fail to offer any support for rewriting the law so that premium pay for work on a holiday is somehow not "holiday pay" in Colorado. In attempting to shoehorn this pay into the definition of a "shift differential" which must be included in the regular rate instead of "holiday pay" which need not be, the Opposition ignores that federal law *specifically* treats premium pay for working on a holiday separately from shift differentials, demonstrating they are not one and the same. (*See* Doc.15, pp. 9-10, citing 29 U.S.C. § 207(e)(6)). The Opposition further ignores that Defendant also treats Holiday O/T Pay and shift differentials as separate situations. (*See* Doc. 15, p. 10).

"[W]here a state law is patterned after a federal law or designed to implement its policies, federal constructions of the law 'should be accorded great weight.'" *See Deherrera v. Decker Truck Line, Inc.,* 820 F.3d 1147, 1161 (10th Cir. 2016) (quoting *People v. Gallegos,* 251 P.3d 1056, 1062 (Colo. 2011); *Gomez v. JP Trucking, Inc.,* 490 P.3d 977, 983 (Colo. App. 2020), cert. granted, No. 20SC950, 2021 WL 2769816 (June 28, 2021) (same, holding that Colorado wage

4

law's exemptions are "largely patterned after the FLSA" and rejecting the holding of *Brunson v. Colo. Cab Co., LLC*, 433 P.3d 93, 97 (Colo. App. 2018)).[2]  Courts "may not read a restriction into the Wage Order that was not placed there by the Department." *Gomez*, 490 P.3d at 984. Ultimately, courts are to "read … the FLSA and Colorado law 'harmoniously.'" *Ott v. Chacha in Art LLC,* 506 F. Supp. 3d 1133, 1141 (D. Colo. 2020) (citation omitted).

The Opposition misrepresents the holding in *Bell v. Iowa Turkey Growers Cooperative*, 407 F. Supp. 2d 1051 (S.D. Iowa 2006), claiming that case addresses holiday premium payments "as shift differentials" when it does not.  (Doc. 15, p. 7).  In *Bell*, the defendant paid shift differentials at time-and-a-half for working the second or third shift but, by its own admission, did not include those shift differentials in the regular rate for purposes of calculating overtime.  407 F. Supp. 2d at 1057.  Defendant further paid employees a premium rate for work undertaken on a Saturday or Sunday but admitted that because it did not include the second and third shift differentials in those payments, it underpaid overtime for those days.  *Id.*  The issue in *Bell* was whether the defendant, having paid overtime at an insufficient rate, could nonetheless take advantage of 29 U.S.C. § 207(h)(2) which holds that "[e]xtra compensation paid as described in

---

[2] Plaintiff's claim that Amazon's citation in the Motion to *Deherrera* is relying on "outdated law," (Opp. at p. 9) is incorrect.  *Deherrera* is a binding decision of this District, while the CDLE's Statement of Basis and Purpose is merely the CDLE's then-current interpretation of Colorado wage and hour law as of March 2020.  *Bachanov v. Fedex Ground Package Systems, Inc.,* Case No. 20-cv-0601-WJM-SKC, 2020 WL 7074794 *6-7 (D. Colo. Dec. 3, 2020) ("simply because the CDLE has interpreted the Wage Order exemption differently than in years past in light of what it sees as conflicting judicial opinions, such an interpretation cannot supersede *Deherrera*.").  Regarding the interstate driver exemption at issue in *Deherrera* and *Brunson*, the CDLE rewrote that exemption to deviate from federal law in March 2020 and then reversed that interpretation on January 1, 2021 in COMPS Order #37.  Thus, while there has been no change to the underlying statute during that time, the CDLE's interpretations vary from year to year and are not binding on the Court. *Deherrera* remains good law that this Court should follow.

paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section." *Id.* at 1058.[3]   The question was not, as the Opposition implies, whether the premium paid for working on a Saturday/Sunday— or holiday— was includable in the regular rate; in fact, the Court explicitly stated that defendant did not need to include overtime payments in the regular rate "[n]or do they need to include premium rates paid for work on the sixth or seventh days, so long as those premium rates are equal to or greater than one and one-half times the rate for nonovertime work on other days." *Id.*   *Bell* supports Defendant's position, not Plaintiff's.

### C.   The Court Should Interpret Colorado Law Regarding Holiday Premium Pay Harmoniously With the FLSA

In response to Amazon's assertion that this Court should interpret Colorado law harmoniously with the FLSA, the Opposition once again confuses what Colorado has the power to do or has done with regard to other issues under state wage and hour law, with what it actually has done with respect to whether premium pay for work on a holiday must be included in the regular rate for calculating overtime.   What Colorado has done is provide that pay for holidays is not included in the calculation of overtime.   (Doc. 15, pp. 5-7).   That Colorado has gone beyond the FLSA in other areas, and legally can, is meaningless.[4]

---

[3] Section 207(e)(6) states that the regular rate, which is used to calculate the overtime rate, "shall *not* be deemed to *include* . . . (6) extra compensation provided by a *premium rate paid for work* by the employee *on Saturdays, Sundays*, *holidays* . . . where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days." (emphasis added).

[4] The citation provided in the Opposition to note that Colorado sometimes goes beyond the FLSA, Doc. 16 at p. 4, is to page 22 of the CDLE's "Statement of Basis, Purpose, Specific Statutory Authority, and Findings" (the "Statement") which accompanied COMPS Order 36 and was promulgated in March 2020.   https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20Statement%20of%20Basis%2C%20Purpose%2C%20Authority%2C%20and%20Findings_

Plaintiff's heavy reliance on the CDLE's new regulations promulgated in March 2020 via COMPS Order #36, (Doc. 16, pp. 8-9), is unavailing as those regulations did nothing to change the law with regard to the regular rate of pay and holiday pay.  (*See* Doc. 15, fn. 3 (noting that throughout the limitations period, Colorado law exempted holiday pay from the calculation of overtime)).  In fact, the CDLE specifically stated that the "definition of 'regular rate of pay' is substantively unchanged" other than with regard to non-exempt employees paid a salary or on another non-hourly basis, which is not relevant here.  *See* Statement at p. 10.  Holiday pay, such as Defendant's Holiday O/T Pay, was not included in the regular rate before COMPS Order 36 and is not included in it now.

The Statement and COMPS Order #36 actually demonstrate that the CDLE has *not* rejected federal law with respect to premium pay for working on a holiday.  The Statement specifically noted that employment law practitioners, in reviewing the proposed COMPS Order that became #36, "commented that the COMPS Order should do more to clarify where Colorado does and does not follow federal wage law."  *Id.* at p. 11.   The CDLE took those comments to heart and, thus, "[i]n line with those comments" specifically noted that "Colorado has not followed, and will not follow . . . the federal Portal-to-Portal Act." *Id.* at p.12.  Thus, where the CDLE intended to deviate from federal law, it expressly said it was doing so.  Between its notation that the law with respect to regular rate remained unchanged and its silence with respect to deviating from federal law on its treatment of premium pay for working on a holiday, it is clear that this Colorado does not

---

0.pdf.  The cited page lists those instances as:  a higher minimum wage, daily overtime after 12 hours; meal breaks; rest breaks; and "other more specific yet still important protections, such as provisions about various credits and deductions, the right to be told the Order's provisions in a poster, and more."  Notably absent is treatment of holiday pay.

include this pay in the regular rate.

       Amazon respectfully submits that this Court should, as it has correctly done both before and since the issuance of COMPS Order #36, "read … the FLSA and Colorado law 'harmoniously.'" *Ott,* 506 F. Supp. 3d at 1141 (D. Colo. 2020).  To that end, the Court should decline to act as legislator and should uphold that Colorado law does not include holiday pay in the regular rate, just as the regulations say.  Further, this Court should read Colorado law harmoniously with federal law, finding that Holiday O/T Pay is not included in the regular rate of compensation, and should dismiss Plaintiff's suit in its entirety.

## II.    CONCLUSION

       For the foregoing reasons, and for the reasons set forth in Amazon's Motion to Dismiss, Amazon respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and award Amazon its reasonable costs and attorney's fees incurred in defending this action pursuant to C.R.S. § 8-4-110.

Dated: April 7, 2022

Respectfully submitted,

*/s/ Jennifer S. Harpole*
Jennifer S. Harpole
Sarah K. Watt
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
jharpole@littler.com
swatt@littler.com
Telephone:   303.629.6200
Facsimile:   303.629.0200

**Attorneys for Defendant
Amazon.com Services LLC**

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of April, 2022, I electronically filed the foregoing **DEFENDANT AMAZON.COM SERVICES LLC's REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S INDIVIDUAL AND CLASS ACTION COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
*Attorneys for Plaintiff*

                                           *s/Patricia Perez*
                                           Patricia Perez

4855-7024-5644.7 / 096748-1008

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-00434-PAB-STV**

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

     **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

     **Defendant.**

---

### MOTION TO CERTIFY CLASS ACTION

---

Plaintiff Dan Hamilton ("Hamilton"), on behalf of himself and all others similarly situated, herby moves the Court to certify this case as a F.R.C.P. Rule 23 class action.

### CERTIFICATION

Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiff's undersigned counsel certifies that he has consulted with Defendant's counsel about this matter and Defendant opposes this Motion.

### INTRODUCTION

Hamilton seeks certification of a class consisting of all classes of U.S. non-exempt hourly employees who worked for Defendant, Amazon.com Services LLC, ("Amazon") in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a company designated holiday

1

("Company Holiday")[1], from January 14, 2019, to present ("Relevant Period"). Hamilton alleges that Amazon violated his rights and the rights of the putative Class under Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act ("CWA"), C.R.S. § 8-4-101 et seq., the applicable Minimum Wage Orders ("MWO"), 7 C.C.R. 1103-1 (2019–2020); and the applicable Colorado Overtime and Minimum Pay Standards Orders ("COMPS Order"), 7 C.C.R. 1103-1 (2020–2022) (collectively, "Colorado Law") by failing to pay all overtime earned during weeks that they worked in excess of 40 hours and on a Company Holiday. This violation was the result of Amazon's uniform policies, practices, and procedures of paying time and a half of each employee's agreed upon rate of pay for time worked on a Company Holiday ("Holiday Incentive"), and failing to include that shift differential in the calculation of the regular rate of pay.

Hamilton's and the Class's claims are appropriate for class certification under Rule 23 because: (a) the Class is so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Class; (c) Hamilton's claims are typical of the Class's claims; (d) Hamilton and his counsel are adequate representatives; (e) common questions predominate over issues affecting only individual Class Members; and (f) a class action is superior to other available methods of adjudicating the case. See F.R.C.P. 23(a); (b)(3). Accordingly, the Court should certify this case as a class action, appoint Dan Hamilton as Class Representative, appoint David H. Miller and Victoria E. Guzman as Class Counsel, and authorize notice to the Class.

---

[1] Amazon's Company Holidays are New Year's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. ECF No. 5, State Court Complaint and Attached Exhibits at pp. 11–12.

## FACTUAL BACKGROUND

Hamilton began working for Amazon in November of 2017 and remains employed. ECF No. 5 at ¶¶ 7, 10.[2] Throughout his employment, he has been paid an hourly rate, plus various incentive payments, including a shift differential in the amount of time and a half for working on a Company Holiday ("Holiday Incentive"). *Id.* at pp. 11–12.  Pursuant to Amazon's policies, if an employee works on a Company Holiday, Amazon pays the employee their holiday pay, plus time and a half of their agreed upon rate for all hours worked on that holiday, irrespective of overtime. *Id.* at p. 12. While Amazon chose to pay time and a half and labelled this payment at "Holiday O/T" this amount was paid regardless of the number of hours Hamilton worked in a day or a week. *Id.* at ¶ 18. At all times during the Relevant Period, Amazon improperly failed to include the Holiday Incentive in the calculation of the regular rate of pay for overtime purposes. *Id.* at ¶ 19.

The Class was subject to the same policies, practices, and procedures. *Id.* at pp. 11–21. Colorado Law is, and has been throughout the Relevant Period, more protective of employee rights than the federal Fair Labor Standards Act ("FLSA").[3] While Amazon may have intended to utilize an exemption under the FLSA in its payment policies, it failed to recognize that federal exemptions are not automatically read into Colorado Law. Moreover, despite the FLSA's allowance of using this premium payment as a credit

---

[2] Because the Plaintiff's Complaint and attached exhibits were filed in federal court as a single document, rather than as separate documents, Hamilton cites to the paragraphs contained in the Complaint with "¶" and cites to the exhibits by referencing the page number the pertinent parts appear on within the entire document with "p".

[3] See ECF No. 16, Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, at 2–3, 8–10.

toward overtime, if certain requirements are met, the payment in itself has nothing to do with overtime compensation.[4] Simply because an employer chooses to pay the rate of time and a half for certain work, it does not automatically compensate that employee for overtime owed. *See* Exhibit 1, *Warning Lites Inc. of Colorado*, DLSS Case #2829-20 (Citation No. 2829-20, Jan. 8, 2021). As a result, Amazon's policy and practice of paying for time worked on Company Holidays and not including that within the worker's regular rate in calculating overtime—whether or not in compliance with the FLSA—violated Hamilton's and the Class's rights under Colorado Law.

## STANDARD OF REVIEW

A plaintiff seeking class certification must demonstrate "that the underlying case (1) satisfies each of Rule 23(a)'s prerequisites, and (2) falls under at least one of Rule 23(b)'s categories of class actions." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 913 (10th Cir. 2018). The threshold requirements set forth in Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

---

[4] For example, under the FLSA, if an employee works 10 hours on a holiday and is paid time and a half of their agreed upon rate, then works 40 more hours on non-holidays at their agreed upon rate in the same workweek, the employer may credit the 10 hours paid at time and a half for work completed on the holiday toward its obligation to pay overtime. Thus, the employer would pay 40 hours at the employee's agreed upon rate and 10 hours at time and a half, eliminating the benefit offered for working on a holiday. However, if that employee only worked 30 more hours during that workweek, they would be entitled to the full benefit of working on the holiday, because no overtime had been worked. Thus, the employee would be paid 30 hours at their agreed upon rate and 10 hours at time and a half. *See* 29 C.F.R. § 778.219(b).

Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), a class may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "The district court must undertake a 'rigorous analysis' to satisfy itself that a putative class meets the applicable Rule 23 requirements." *Menocal*, 882 F.3d at 913. In making such a determination, however, "the district court should construe Rule 23 liberally and resolve all doubts in favor of class certification." *Schreiber v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 169, 173 (D. Kan. 1996) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)).

## ARGUMENT

### I. THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF F.R.C.P. 23(A)

#### A. NUMEROSITY

First, the Plaintiff must establish that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Tenth Circuit has not set a numerical threshold as it has stated that determining numerosity is "to be made in the particular circumstances of the case." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir.1978). Courts "within the Tenth Circuit have certified classes ranging in size from tens to hundreds of thousands of class members." *Kennett v. Bayada Home Health Care, Inc.*, No. 14-CV-02005-CMA-MJW, 2018 WL 3145400, at *3 (D. Colo. June 27, 2018).

Here, there are approximately 10,006 putative Class Members. ECF Doc No. 1, Defendant's Notice of Removal at ¶ 25. Thus, the numerosity requirement is easily met.

**B.   COMMONALITY**

Second, the Plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Every question need not be common to the class as "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations omitted). However, "it is not just the presence of a common question that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Kennett*, 2018 WL 3145400, at *3 (quoting *Dukes*, 564 U.S. at 350.).

Here, there is one common question of law that affects Hamilton's and the Class Members' claims: whether, under Colorado Law, a premium rate, or shift differential, offered at time and a half for work performed on a holiday must be included in the calculation of the regular rate for that week.[5] The viability of Hamilton's and the Class's claims all depend on the answer to that question. Hamilton contends that, in Colorado, a premium rate, or shift differential, offered in any amount for work performed on a holiday must be treated the same as any other shift differential and must be included in the calculation of the regular rate of pay for overtime purposes, and that any FLSA exemption prohibiting such a calculation should not be read into Colorado Law so as to limit the rights of Colorado employees. *See* Exhibit 1. Thus, commonality is satisfied.

**C.   TYPICALITY**

Third, the Plaintiff must establish that "the claims or defenses of the representative parties

---

[5] It is the Defendant's burden to prove that the FLSA exemption applies to Colorado workers. *See Bowe v. SMC Elec. Prod., Inc.*, 935 F. Supp. 1126, 1134 (D. Colo. 1996).

are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) ("typicality exists where . . . all class members are at risk of . . . the same harmful practices, regardless of any class member's individual circumstances.").

Here, Hamilton's claims are typical of the Class's claims as he alleges that he and other non-exempt hourly workers in the Class were not properly paid overtime during weeks in which they worked on Company Holidays as required by Colorado Law. It is undisputed that:

1.      Amazon paid its non-exempt hourly employees time-and-a-half of their agreed upon rate for all hours spent working on Company Holidays. ECF Doc No. 5 at pp. 11–12; ECF Doc No. 15, Defendant's Motion to Dismiss at 2.

2.      Amazon paid its non-exempt hourly employees either four, six, or eight hours of pay for those holidays whether they worked on a Company Holiday or not. ECF Doc No. 5 at pp. 11–12; ECF Doc No. 15 at 2–3.

3.      Amazon did not include the Holiday Incentive when calculating the regular rate of pay for overtime purposes during weeks that its non-exempt hourly employees worked on a Company Holiday. ECF Doc No. 15 at 3.

4.      Amazon treated the Holiday Incentive that it paid to its non-exempt hourly employees as a credit toward any overtime that might be due to them for hours worked during that week. *See* ECF Doc No. 15 at 2.

Thus, as Hamilton and the Class were subject to the same holiday incentive policy and

overtime calculation procedure, Hamilton's claims arising out of them are typical of the claims available to the Class. Therefore, typicality is satisfied.

### D.   ADEQUACY

Finally, the Plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Once the plaintiff demonstrates facts to meet this initial burden, the burden shifts to the defendant, and absent any evidence to the contrary, there is a presumption of adequacy. *Kennett*, 2018 WL 3145400, at *4.

Here, there are no conflicts between Hamilton and his counsel, and together they will fairly and adequately protect the interests of the Class. Hamilton does not have any conflicts of interest with the members of the Class as he has spoken to his belief that the Class Members are entitled to the same remedies as him. *See* ECF Doc No. 5 at ¶¶ 24–36, 44, 46–47. In pursuing those interests, Hamilton obtained the Sawaya and Miller Law Firm as counsel and is currently represented by David H. Miller and Victoria E. Guzman.

Hamilton's lead counsel is an accomplished class action employment attorney with more than 40 years of experience. Mr. Miller has litigated dozens of wage and hour class actions, and he is dedicated to assuring that the Class obtains a fair and adequate result in this case. Prior to joining the Sawaya and Miller Law Firm, Ms. Guzman was employed by the Colorado Department

of Labor and Employment, where, in addition to interpreting and enforcing Colorado Law, she was on the policy team tasked with drafting and implementing the COMPS Order #36. Both attorneys are knowledgeable on the applicable law and seek to certify the class in the early stages of this case to protect Hamilton's and the Class's rights.[6] Thus, adequacy is satisfied.

## II.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF F.R.C.P. 23 (B)(3)

### A.   PREDOMINANCE

When determining predominance, the Court looks to whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In doing so, the Court must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)). A class may be certified if a central issue that is common to the class predominates, even when "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA Charles Alan Wright, et al., Federal Practice

---

[6] Such actions include, *inter alia*: *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile*, No. 2020CV030841 (Den. Dist. Ct.); *Banton v. Board of Governors of the Colorado State University*, No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC*, No. 18CV33524 (Den. Dist. Co.); *Pilmenstein v. Devereux Cleo Wallace*, No. 2017CV30319 (Jefferson Dist. Ct.); *Crepeau v. PDQ Truck, LLC*, 1:15-cv-02750-CMA-MLC (D. Colo.); *Bauer v. Glenmoor County Club*, No. 2015CV30354 (Arap. Co. Dist. Ct.); *Arteaga-Gomez v. Prestige Corporate Relocation, LLC*, No. 2015CV30175 (Den. Co. Dist. Ct.); *Ortez v. United Parcel Service*, No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary*, No. 17-cv-02074 (D. Colo.); *Collins v. DKL Ventures, LLC*, No. 16-cv-00070 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *Price v. Sprouts Farmers Market, LLC*, No. 16-cv-00855 (D. Colo.); and *Nesbitt v. FCHN, Inc.*, No. 14-cv-0090 (D. Colo.).

& Procedure § 1778 (3d ed. 2005)).

As discussed above, Hamilton's and the Class's claims all turn on the answer to the question of whether the Court will wholesale import into Colorado Law the FLSA holiday premium pay exemption. It is undisputed that the Holiday Incentives paid to Hamilton and the Class were not included in the calculation of the regular rate for overtime purposes, and it is undisputed the Amazon's policies and procedures regarding Holiday Incentives applied equally to the Class. Once the above question as to Amazon's liability is answered, all that remains is a question of damages owed to each Class Member. *See Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 676 (D.N.M. 2020) ("'[D]amages determinations are individual in nearly all wage-and-hour class actions,' courts routinely have held that 'damages calculations alone cannot defeat certification.'") (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013)). Thus, predominance is satisfied.

### B.    SUPERIORITY OF CLASS ACTION

When determining superiority, Rule 23(b)(3) sets out four relevant factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[T]hese factors are non-exhaustive." *Kennett*, 2018 WL 3145400, at *5. Superiority is established if class treatment "will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Broad and Cassel*,

773 F.3d 1076, 1096 (10th Cir. 2014) (quoting *Amchem*, 521 U.S. at 615).

The central issue of the case is whether the court should ignore Colorado law and its interpretive history, rules, and regulations and simply accept—contrary to the principles of federalism and state's rights under the Constitutions of both the United States and the State of Colorado—that the FLSA holiday premium exemption must be read into Colorado Law. *See Larrieu v. Best Buy Stores, L.P.*, 491 F. App'x 864, 866 (10th Cir. 2012). That question can and should be addressed at a single trial to determine Amazon's liability as to all of the Class Members. Such a trial would be better than requiring every Class Member to file their own individual action for at least four reasons.

First, the amount due to each Class Member is relatively small. *See* ECF Doc. 5 at ¶¶ 45–46 (estimating that Hamilton is owed $143.54 (without penalties)). Because of that, the likelihood that the Class Members will be able to retain their own attorneys and fully litigate their claims individually is extremely low. *See Sobolewski v. Boselli & Sons, LLC*, No. 16-CV-01573-RM-STV, 2017 WL 6945045, at *6 (D. Colo. Nov. 15, 2017), *report and recommendation adopted*, No. 16-CV-01573-RM-STV, 2018 WL 3838140 (D. Colo. June 13, 2018). If, as Hamilton alleges, Amazon committed wage theft against the Class, the interests of justice weigh in favor of allowing their wage claims to be decided on a class-wide basis, instead of permitting Amazon to avoid liability to the absent Class Members.

Second, the undersigned counsel are not aware of any class member having expressed or demonstrated any interest in controlling their own action or commencing any such action. Nor, in light of the relatively modest individual damages, are Class Members likely to do so. *See id.*

Third, trying this case as a class action will serve the interest of judicial efficiency. The

Court can determine the central questions related to Amazon's liability on a class basis and then, if necessary, address individual damages questions by considering expert and/or representative evidence, by holding a separate hearing on damages, or by appointing a special master to determine each class member's damages. Denial of class certification would necessitate the filing of thousands of different lawsuits by Amazon employees with substantially similar claims, which would be both inefficient and unfair to the Class. *See Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 642 (D. Colo. 1986).

Fourth, undersigned counsel is not aware of any special difficulties that would prevent this Court from deciding this case as a class action. *See Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 184 (D.N.M. 2016) (citing case law from the 1st, 4th, 7th, 9th, and 11th Circuits supporting the conclusion that when predominance is met, the class is likely manageable).

Thus, superiority is satisfied. As all of the prerequisites under Rules 23(a) and 23(b)(3) are satisfied, the Court should certify this case as a class action. Additionally, because Hamilton's claims are typical of the Class and because he is an adequate representative, the Court should appoint Hamilton as a Class Representative.

**III.    THE COURT SHOULD APPOINT THE PLAINTIFF'S COUNSEL AS CLASS COUNSEL**

Pursuant to Rule 23(g), when a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(g). In making that appointment, the Court must consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;
(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii)   counsel's knowledge of the applicable law; and
(iv)    the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).

As discussed above, Hamilton's counsel have engaged in extensive investigation regarding the viability of the Class's claims, are both knowledgeable about the applicable law, and Mr. Miller has extensive experience handling wage and hour class claims in both state and federal court. Moreover, the Sawaya and Miller Law Firm is experienced in handling class action lawsuits and is ready and willing to commit the time and resources necessary to pursue all potential claims the Class has and to ensure that Class Members receive proper notice. Thus, the Court should appoint the undersigned counsel as Class Counsel.

## IV.   THE COURT SHOULD AUTHORIZE NOTICE TO THE CLASS MEMBERS

Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, . . . . The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.

Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language" all of the enumerated items as set forth in Rule 23(c)(2)(B)(i)–(vii). *Id.*

Hamilton has prepared Notice and Opt-out forms (attached as Exhibits 2 and 3) which fully satisfy the requirements of Rule 23(c)(2)(B). Hamilton respectfully asks that the Court allow his counsel to send these notices via e-mail and text message to the Class as they will be the most efficient and cost-effective means of ensuring notice to a class of this size and type. *Swanson v. Cathedral Energy Servs., Inc.*, No. 17-cv-01578, ECF No. 38 at 6 (D. Colo. Oct. 9, 2018) (attached as Exhibit 4, authorizing notice to be sent via text and e-mail); *Thrower v. Universal Pegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 489–90 (S.D. Tex. 2020) (allowing notice by e-mail and text message, noting that "first-class mail, like payphones and dial-up internet, is quickly fading into obscurity"); *Weeks v. Matrix Absence Mgmt. Inc.*, 494 F. Supp. 3d 653, 659 (D. Ariz. 2020) (allowing notice

by email, as "during the COVID-19 global pandemic, people are utilizing email to access information and documents now more than ever."). If approved, Hamilton's counsel will conduct skip-tracing and other reasonable efforts to locate Class Members whose forms are undeliverable and will mail notice via U.S Mail to those individuals, during a 60-day notice period.[7]

Hamilton additionally respectfully asks that the Court order the Defendant to post the Notice in break rooms and other areas that Class Members frequent or receive information in the workplace for the entirety of the Notice Period. *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1176 (D.N.M. 2021) ("[P]osting notice in the workplace, even if supplemental to other forms of notice, furthers the broad remedial purposes of the FLSA.").[8] Finally, Hamilton further respectfully requests that the Court order the Defendant to provide a copy of the Notice and Opt-Out forms to every Class Member who is to receive a paystub during the next pay period. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, No. 14-CV-01686-RM-KMT, 2015 WL 4600726, at *4 (D. Colo. July 31, 2015) (ordering the employer to provide a copy of the notice in English and Spanish to every employee for the next two pay periods following the Court's approval of the notice).

Hamilton does not currently have the contact information for all of the Class Members and as such, he respectfully asks that such information—including names, dates of employment, mailing addresses, e-mail addresses, and phone numbers—be produced by the Defendant.

**CONCLUSION**

---

[7] The Plaintiff's counsel do not believe it is necessary to appoint an administrator because they are capable of sending notice via e-mail and text message to Class Members without requiring either party to undertake the expense of hiring an administrator.

[8] While this case was not filed under the FLSA, akin to the FLSA, Colorado Law serves broad remedial purposes. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 28, 488 P.3d 1140, 1147 (Colo. 2021).

WHEREFORE, the Plaintiff respectfully moves the Court to: (1) Certify this case as a class action pursuant to F.R.C.P. 23; (2) Order that within 14 days of the Court's Certification Order, Amazon shall produce a class list containing the names, dates of employment, mail and e-mail addresses, and phone numbers of the following Class Members: all classes of U.S. non-exempt hourly employees who worked for Amazon in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a Company Holiday, from January 14, 2019 to present; (3) Appoint Dan Hamilton, as the Class Representative; (4) Appoint David H. Miller and Victoria E. Guzman of the Sawaya & Miller Law Firm as Class Counsel; (5) Approve the Notice and Opt-Out forms attached as Exhibits 2 and 3; (6) Order the following notice procedures: (a) Within 14 days of receipt of the class list, Class Counsel shall send the approved notice forms via E-mail and text message; (b) Defendant shall post the Notice and provide a copy of the Notice and Opt-Out forms to Class Members as described herein; (c) Class Members shall have 60 days to opt-out of the Class if they choose to do so; and (d) Class Counsel shall conduct skip-tracing and other reasonable efforts to locate, communicate with, and provide the Notices to any Class Members via first class mail whose Notice Forms are returned undeliverable; and (7) Grant such other relief the Court deems just and proper.

Respectfully submitted on this 14th day of April, 2022.

/s/ David H. Miller_____
David H. Miller
Victoria E. Guzman
SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
303.839.1650
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
Counsel for the Plaintiff

App. Vol. I 171

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 14th day of April, 2022, I filed the foregoing document through the CM/ECF system, generating a true and accurate copy of the document to all counsel of record.

<u>*/s/ Leroy Moya*</u>
_____

Leroy Moya

16



**COLORADO**
**Department of**
**Labor and Employment**

**Division of Labor Standards and Statistics**
633 17th Street, Suite 600
Denver, CO 80202-2107
Phone: (303) 318-8441 | Toll-free: (888) 390-7936
Fax: (303) 318-8400 | www.colorado.gov/cdle/labor



**EXHIBIT 1**

## COLORADO DIVISION OF LABOR STANDARDS AND STATISTICS
## WAGE AND HOUR CITATION

**I. Summary**

The Colorado Division of Labor Standards and Statistics ("Division") has received wage complaint #2829-20 from ████ ████████ ("claimant") against Warning Lites Inc. of Colorado ("employer"). The employer's address is 3070 S. Wyandot St. Englewood, CO 80110.

Pursuant to C.R.S. § 8-4-101, et seq. (the "Colorado Wage Act"), the Division is required to investigate all wage complaints received. The Division conducted an investigation of the complaint, and upon review and consideration of all available documentation and evidence, this Citation is issued pursuant to Colorado wage and hour laws and regulations.

The claimant alleged that ██ was owed $6,008.28, because ██ worked on a shift differential, but was not paid overtime properly.[1] Based on the available evidence, the Division concludes that the employer owed wages to the claimant in the amount of $6,489.85, but acknowledges that the employer has paid the claimant $1,927.50. The employer owes wages in the amount of $4,562.35 and penalties in the amount of $8,112.31. The Division also concludes that the employer owes fines to the Division in the amount of 1,850.00.

**II. Discussion**

1. Facts & Reasoning

The Division concludes that the employer violated the Colorado Wage Act (C.R.S. § 8-4-101 et seq.) and/or provisions of the Colorado Minimum Wage Order (7 CCR 1103-1) by failing to pay all earned wages as required. C.R.S. § 8-4-101(14)(a)(I) defines wages or compensation as "all amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method… No amount is considered to be wages or compensation until such amount is earned, vested, and determinable…."

The Colorado Minimum Wage Order requires payment of an overtime premium for employees in covered positions working in the Food and Beverage, Health and Medical, Retail and Service, and Commercial Support Services industries. For covered employees in those industries, employees shall be paid time and one-half of the regular rate of pay for any work in excess of:

    (A) forty (40) hours per workweek, or
    (B) twelve (12) hours per workday, or
    (C) twelve (12) consecutive hours.

The regular rate includes all compensation paid to an employee, including set hourly rates, **shift differentials**, minimum wage tip credits, non-discretionary bonuses, production bonuses, and commissions. Overtime is

---

[1] The claimant additionally alleged that ██ was not paid properly for ██ profit sharing, but the Division does not have authority of such matters and the issue was not considered in the investigation.

Colorado Wage Complaint #2829-20
████ ████████ vs. Warning Lites Inc. of Colorado

App. Vol. I 173

calculated without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. Hours worked in two or more workweeks shall not be averaged for computation of overtime.

The employer failed to pay overtime as required by law. The claimant provided sufficient evidence to infer that the employer failed to pay all earned wages. The Division sent a Notice of Complaint to the employer on November 19, 2020, which included a copy of the complaint form and all supporting documents provided from the claimant.

In response, the employer affirmed that some wages were owed due to clerical errors, but denied that the claimant was paid on a shift differential, and thus argued that the claimant was not owed additional overtime. The employer explained that their employees were paid hourly for work completed "Monday through Friday 6:00am to 6:00pm and time and one half before 6:00am, after 6:00pm, over 40 hrs/week, & on weekends whether they have worked 40 hours or not." The employer argued that under this pay structure, the claimant was overcompensated, because the employer paid overtime even when not required to. The employer provided the claimant's timesheets and pay statements for time worked from August 27, 2018 to December 28, 2019, the claimant's employment contract, and the claimant's two weeks' notice. The employer mailed checks for the amount that they believed to be owed to the claimant on December 22, 2020.[2] The employer did not supply time sheets or pay statements from July 16, 2018 to August 26, 2018, and did not allege that they were exempt from paying overtime under the Minimum Wage Order.

The Division applies a shifting burden of proof structure with respect to the claimant and the employer. After a claimant meets their initial burden of establishing a basis for the wage claim, by creating a reasonable inference of a violation of Colorado wage and hour laws, the burden then shifts to the employer to disprove any violation of Colorado wage and hour laws by a preponderance of the evidence. 7 Code Colo. Regs § 1103-7:4.2.

Based on the submitted documentation, the Division determines that the employer has failed to prove by a preponderance of the evidence that the claimant is not owed wages. The employer did not allege that they were exempt from the overtime requirements of the Minimum Wage Order, and the Division finds that they were covered under the commercial support industry, as the employer supplied workers to aid other entities in construction work. Additionally, the Division determines that the claimant did work pursuant to a shift differential and is thus owed overtime accordingly.

Despite the employer's characterization of the pay arrangement as simple hourly pay with "overtime" paid if the claimant worked certain shifts regardless of whether any overtime was actually worked, by definition, that is a shift differential. A shift differential is additional compensation added to an employee's base rate for working certain, often undesirable, shifts, such as evenings or weekends.[3] Therefore, according to the employer's pay structure, the claimant was paid a shift differential of time and a half for all hours worked between 6:00pm and 6:00am and on Saturdays and Sundays. As the claimant worked on a shift differential, the employer was

---

[2] The checks were stated as mailed on December 21, 2020, but they were not postmarked until December 22, 2020. The checks were mailed to the Division because the claimant had not provided a current mailing address at the time the Division sent the Notice of Complaint or Notice of Fine. The Division received the checks on December 28, 2020, and mailed the checks to the claimant on January 7, 2021.

[3] See SHRM.org's website on Shift Differential Pay Practices: https://www.shrm.org/resourcesandtools/hr-topics/compensation/pages/shiftdifferentialpaypractices.aspx. As a leading resource for employers on employment practices, the Division finds SHRM's articles informational.



Colorado Wage Complaint #2829-20
███████  ███████   vs. Warning Lites Inc. of Colorado

required to calculate the claimant's regular rate each week for purposes of calculating overtime. Choosing to pay an employee time and a half for working less desirable shifts is not the same as paying an overtime premium. If an employer chooses to pay an employee a premium for certain shifts, the employer must pay an *additional* overtime premium for all hours that qualify for overtime. This is done by adding the total weekly earnings based on the rate paid for the various shifts/ days worked and dividing it by the total hours worked in the week. Then, the employer must calculate the overtime rate based on that regular rate.[4]

Based on the provided timesheets and pay statements, Division finds that the employer owed the claimant $6,489.85 in unpaid wages.[5] The Division acknowledges that the employer paid the claimant $1,927.50 prior to the issuance of this citation and notice of assessment. Therefore, the Division determines that the employer owes the claimant $4,562.35 in unpaid wages.[6]

2. Calculation of Penalties Owed to the Claimant

The Division sent the employer a Notice of Complaint on November 19, 2020. The employer failed to pay all earned wages within 14 days after the Notice of Complaint was sent. The employer is liable for penalties on all unpaid wages not paid within 14 days after a written demand or Notice of Complaint was sent, in accordance with C.R.S. § 8-4-109(3)(b).

The Division determines that penalties are owed to the claimant in the amount of $8,112.31. This amount was determined by selecting the greater of the values below:

1. The employee's average daily earnings of $214.35 ($1,071.77 earned in final 2019 pay period/ 5 days worked), multiplied by 10 days = $2,143.50.

OR

2. 125% percent of $6,489.85[7] = $8,112.31.

---

[4] *See* the USDOL's Factsheet #54. The Wage Order provides a definition of "regular rate;" however, the Fair Labor Standards Act (FLSA) enforced by the U.S Department of Labor provides further guidance on how to calculate the regular rate. As the Colorado Minimum Wage Order was intended to mirror the FLSA, the Division finds Chapter 29 of the Code of Federal Regulations instructive on how to calculate overtime for employees that are paid on a shift differential. Though the factsheet specifically discusses how to calculate wages for employees in the healthcare industry, shift differentials are simply most common in the healthcare industry. The examples on how to calculate overtime wages for employees who receive shift differential pay apply to all employees that are covered by overtime requirements, regardless of whether they are in the healthcare industry.

[5] The employer did not provide timesheets or pay statements for July 16, 2018 to August 26, 2018. In the absence of opposing evidence for that time period, the Division accepts the claimant's allegations and evidence as true and will award wages on that basis. The Division used the employer provided timesheets for all other dates.

[6] See the attached spreadsheet for calculations. The green highlights indicate weeks the hours were verified by employer timesheets; the yellow highlights indicate time that the claimant was paid double time; and the grey highlights simply serve to separate the weeks worked. Time recorded on the top row of each week indicates hours paid at the base rate, and time recorded on the bottom row indicates hours paid at the time and a half rate.

[7] Despite the employer's partial payment prior to the issuance of this Citation and Notice of Assessment, the partial payment was not postmarked until December 22, 2020, 33 days after the Notice of Complaint was sent. Thus, the Division must use the full amount of wages owed in the calculation of penalties.

Colorado Wage Complaint #2829-20
███████  ███████████  vs. Warning Lites Inc. of Colorado

App. Vol. I 175

3. Calculation of Fines Owed to the Division

The Division determines that the employer owes fine(s) to the State of Colorado for the following violation(s):

Non-Payment of Wages up to $50 per day Fine

In accordance with C.R.S. § 8-4-113(1)(a), a fine of $1,850.00 for failure to pay wages is assessed upon the employer. Wages have been owed to claimant for more than 90 days.

The total amount of fines owed by the employer to the Division is $1,850.00.[8]

## III. Conclusion

For the foregoing reasons, the Division concludes the employer violated wage and hour laws. The employer must pay whatever portion of these wages and/or penalties remain unpaid to the claimant immediately. The employer must also pay fines to the Division, as set forth in the attached notice of assessment.

Within 35 calendar days of the date of this Notice, unless this Citation is appealed by either party or terminated by the claimant, this is the final decision of the Colorado Department of Labor and Employment.

Dated this 8th day of January 2021,


Division of Labor Standards and Statistics
Colorado Department of Labor and Employment

Mailed, postage prepaid, and emailed to the parties named herein on January 8, 2021.

---

[8] The Division waived the $250.00 fine assessed for failure to timely respond to the Division's Notice of Complaint, because the employer provided good cause for failing to timely respond. The Division waives the $500.00 fine for failure to produce the pay statements for July and August of 2018, because the claimant produced those records prior to the issuance of the Notice of Complaint, thus they were ultimately available for Division inspection.

**U.S. Department of Labor**
Wage and Hour Division

**WHD**
U.S. Wage and Hour Division
(Revised July 2009)

## Fact Sheet #54 – The Health Care Industry and Calculating Overtime Pay

The Fair Labor Standards Act (FLSA) requires covered employers to pay nonexempt employees at least the federal minimum wage of $7.25 per hour effective July 24, 2009, for all hours worked and overtime pay for for hours worked over 40 in a workweek. The FLSA is administered by the Wage and Hour Division of the U.S. Department of Labor.

Hospitals and other institutions "primarily engaged in the care of the sick, the aged, or the mentally ill" are covered employers under Section 3(s)(1)(B) of the FLSA. Thus, hospitals, residential care establishments, skilled nursing facilities, nursing facilities, assisted living facilities, residential care facilities and intermediate care facilities for mental retardation and developmentally disabled must comply with the minimum wage, overtime and youth employment requirements of the FLSA.

**Summary**

This fact sheet provides guidance regarding common FLSA violations found by the Wage and Hour Division during investigations in the health care industry relating to the calculation of overtime pay. Nonexempt employees must be paid at least time-and-one-half their "regular rate" of pay for all hours worked over 40 in a workweek. The "regular rate" includes an employee's hourly rate *plus* the value of some other types of compensation such as bonuses and shift differentials. The only remuneration excluded from the regular rate under the FLSA are certain specified types of payments like discretionary bonuses, gifts, contributions to certain welfare plans, payments made to certain profit-sharing and savings plans, and pay for foregoing holidays and vacations. A common error in calculating overtime pay by health care employers involve the failure to include bonuses, shift differentials and other types of compensation in the regular rate of pay. Errors are also common in the health care industry in calculating the regular rate when an employee works two or more different jobs in a single workweek.

There is no limitation in the FLSA on the number of hours employees over the age of 15 may work in any workweek. The FLSA does not require overtime pay for hours in excess of eight hours worked in a day, except as discussed below, or for hours worked on Saturdays, Sundays, or holidays.

**The Eight and Eighty (8 and 80) Overtime System**

Under section 7(j) of the FLSA, hospitals and residential care establishments may utilize a fixed work period of fourteen consecutive days in lieu of the 40 hour workweek for the purpose of computing overtime. To use this exception, an employer must have a prior agreement or understanding with affected employees before the work is performed. This eight and eighty (8 and 80) exception allows employers to pay time and one-half the regular rate for all hours worked over eight in any workday and eighty hours in the fourteen-day period. See Regulations 29 CFR 778.601.

An employer can use both the standard 40 hour overtime system and the 8 and 80 overtime system for different employees in the same workplace, but they cannot use both for a single individual employee.

An employer's work period under the 8 and 80 overtime system must be a fixed and regularly recurring 14-day period. It may be changed if the change is designated to be permanent and not to evade the overtime

requirements. If an employer changes the pay period permanently, it must calculate wages on both the old pay period and the new pay period and pay the amount that is more advantageous to each employee in the pay period when the change was made.

Premium pay for daily overtime under the 8 and 80 system may be credited towards the overtime compensation due for hours worked in excess of 80 for that period.

## Bonuses

For purposes of calculating overtime pay, section 7(e) of the FLSA provides that non-discretionary bonuses must be included in the regular rate of pay. Non-discretionary bonuses include those that are announced to employees to encourage them to work more steadily, rapidly or efficiently, and bonuses designed to encourage employees to remain with a facility. Few bonuses are discretionary under the FLSA, allowing exclusion from the regular rate. See Regulations 29 CFR 778.200 and 778.208.

Referral bonuses paid for recruitment of new employees are not included in the regular rate of pay *if all of the following conditions are met:* (1) participation is strictly voluntary; (2) recruitment efforts do not involve significant time; and (3) the activity is limited to after-hours solicitation done only among friends, relatives, neighbors and acquaintances as part of the employees' social affairs.

### *Example: Attendance Bonus*

An intermediate care facility for the disabled pays its employees on a bi-weekly basis. If employees work all the hours that they are scheduled to work in a pay period, they are given a $100 bonus. If an employee works overtime, must this bonus be included in their regular rate of pay for overtime purposes?

Yes. In computing an employee's regular rate under the 40 hour overtime system, the employer must add half of the bi-weekly bonus ($50) to the employee's earnings (hourly rate times the total hours worked) for that week. The resulting total compensation would be divided by the total hours the employee worked during that week to determine the regular rate.

### Overtime Computation under the 40 Hours System

An employee paid biweekly at a rate of $12 per hour plus a $100 attendance bonus, working a schedule of 56 hours per week as shown in the chart below, would be due overtime pay as follows:

## WEEK ONE

|  | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day |  | 8 | 8 |  |  | 8(OT) |  |
| Evening | 8 |  |  | 8 |  | 8(OT) |  |
| Night |  |  |  | 8 |  |  |  |

## WEEK TWO

|  | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day |  | 8 | 8 |  |  | 8(OT) |  |
| Evening | 8 |  |  | 8 |  |  |  |
| Night |  |  |  | 8 |  |  | 8(OT) |

$100 (bi-weekly attendance bonus) ÷ 2 =          $50 (weekly bonus equivalent)
56 hours worked x $12/hour + $50 (weekly bonus equivalent) =          $722 (total ST compensation)

| | |
|---|---|
| $722 (total ST compensation) ÷ 56 hours worked = | $12.89 (regular rate) |
| $12.89 (regular rate) x ½ = | $6.45 (half-time premium) |
| $12.89 (regular rate) + $6.45 (half-time premium) = | $19.34 (overtime rate) |
| | |
| 40 (straight time hours) x $12.89 (regular rate) = | $515.60 (straight time earnings) |
| 16 (overtime hours) x $19.34 (overtime rate) = | $309.44 (overtime earnings) |
| **Total earnings for week one** | **$825.04** |
| **Total earnings for week two** | **$825.04** |
| **Total earnings for bi-weekly period** | **$1,650.08** |

### Overtime Computation under the 8 and 80 System

If the same employee, paid at $12 an hour with a $100 attendance bonus, worked the same scheduled time for the bi-weekly period, under the 8 and 80 system, the employee would have worked 8 hours of overtime on Wednesday and 8 hours of overtime on Friday during the first week and 8 hours of overtime on Wednesday and 8 hours of overtime on Saturday during the second week, and would be due overtime pay as follows:

| | |
|---|---|
| (bi-weekly attendance bonus) = | $100 |
| 112 hours worked x $12/hour + $100 (attendance bonus) = | $1,444 (total ST compensation) |
| $1,444 (total ST compensation) ÷ 112 hours = | $12.89 (regular rate) |
| $12.89 (regular rate) x ½ = | $ 6.45 (half-time premium) |
| $12.89 (regular rate) + $6.45 (half-time premium) = | $19.34 (overtime rate) |
| | |
| $12.89 (regular rate) x 80 (straight time hours) = | $1,031.20 (straight time earnings) |
| $19.34 (overtime rate) x 32 (overtime hours worked) = | $ 618.88 (overtime earnings) |
| **Total earnings for the bi-weekly period =** | **$1,650.08** |

*Example: Retention Bonus*

In an effort to attract more nursing personnel, a skilled nursing facility's nursing department gives hourly paid LPNs and RNs a $2,000 bonus after being employed six months. Does this bonus have to be included in the regular rate? If so, how does it need to be calculated?

Yes. The retention bonus must be included in the regular rate calculation in <u>overtime</u> weeks covered by the bonus period. The retention bonus described above was earned over six months or 26 weeks. The weekly equivalent is $76.92 ($2,000 ÷ 26 weeks). If an employee works overtime during the 26 week period, the increase in the regular rate is calculated by dividing $76.92 by the total hours worked during the overtime week.

### Overtime Computation under the 40 Hours System

In the following calculation, the $2,000 retention bonus was earned over six months or 26 weeks, for a weekly equivalent of $76.92 ($2000 ÷ 26 weeks). If the employee worked ten hours of overtime in their 9th week of employment, the employee would be due an additional $7.70 in overtime earning as follows:

| | |
|---|---|
| $76.92 ÷ 50 hours = | $1.54 (increase in the regular rate) |
| $1.54 x ½ = | $ .77 (increase in the additional half-time) |
| $ .77 x 10 hours of overtime worked = | $7.70 (increase in overtime earnings due to the bonus) |

3

## Overtime Computation under the 8 and 80 System

If an employee paid under the 8 and 80 system of overtime receives the same $2,000 retention bonus after six months, the employee would be due an additional $13.77 in overtime earnings after working 95 hours, 17 of which are overtime hours, in a 14-day period as follows:

| | |
|---|---|
| $76.92 x 2 weeks = | $153.84 (additional straight-time) |
| $153.84 ÷ 95 hours worked = | $1.62 (increase in regular rate) |
| $1.62 x ½ = | $ .81 (increase in the additional half-time) |
| $ .81 x 17 hours of overtime worked = | $13.77 (increase in overtime earnings due to the bonus) |

### *Example: Supplementary Shift Bonus*

At a residential care facility, if employees fill in for another employee who calls in sick, they are paid a supplementary shift bonus of $75. Does this bonus have to be included in the regular rate for overtime purposes?

Yes, it must be included in the regular rate. If an employee works 85 hours in a 14-day pay period (including five overtime hours), a $75 bonus would increase the regular rate by $.88 an hour as follows:

| | |
|---|---|
| $75 ÷ 85 hours worked = | $ .88 (increase in regular rate) |
| $.88 x ½ = | $ .44 (increase in the additional half-time) |
| $ .44 x 5 hours of overtime worked = | $2.20 (increase in overtime earnings due to the bonus) |

### Shift Differentials

Employers also must include shift differential pay when determining an employee's regular rate of pay. See Regulations 29 CFR 778.207(b). The following examples provide guidance on how to calculate overtime for employees who receive shift differential pay.

### *Example: Single Shift Differential*

A personal care assistant at an assisted living facility is paid $8 an hour and overtime on the basis of the 40 hour workweek system. She works three eight-hour day shifts at $8 an hour and three eight-hour evening shifts. The assistant is paid $1 shift differential for each hour worked on the evening shift. How much should she be paid for her eight hours of overtime?

The additional half-time must be computed based on the regular rate of pay. The regular rate is defined as the total remuneration divided by the total hours worked. The assistant earned a total of $408 for the 48 hours that she worked ($8 an hour times 24 hours plus $9 an hour times 24 hours). Her regular rate equaled $8.50 and her half-time premium is $4.25. Her total earnings for the 8 hours of overtime are $102.

### Straight-time computation

| | |
|---|---|
| 3 days x 8 hours/day x $8/hour | $192 |
| 3 evenings x 8 hours/evening x $8/hour | $192 |
| 3 evenings x 8 hours/evening x $1/hour (shift differential) | $ 24 |
| **Total ST earnings** | **$408** |

4

**Regular rate and half-time premium computation**

| | |
|---|---|
| $408 (total ST compensation) ÷ 48 (total hours worked) = | $ 8.50 (regular rate) |
| $ 8.50 (regular rate) x ½ = | $ 4.25 (half-time premium) |
| $ 8.50 (regular rate) + $ 4.25 (half-time premium) = | $12.75 (overtime rate) |

**Total compensation calculation**

| | |
|---|---|
| 40 hours x $ 8.50 (regular rate) = | $340 (straight time earnings) |
| 8 overtime hours x $12.75 (overtime rate) = | $102 (overtime earnings) |
| **Total earnings** | **$442** |

*Example: Two Different Shift Differentials*

Registered nurses (RNs) at a skilled nursing facility are paid a basic hourly rate of $22 an hour. When they work the evening shift, they are paid a shift differential of $1 an hour. When they work the night shift they are paid a shift differential of $2 an hour. When working overtime, RNs are paid time-and-one-half of their basic hourly rate of $22. Is this in compliance with the FLSA overtime standard?

No. Under the FLSA, the additional half-time compensation must be paid on the regular rate which is defined as the total remuneration divided by the total hours worked. Overtime compensation must be calculated on the regular rate, which will exceed the hourly rate when shift differentials are paid.

**Computation of total compensation for 40 hour system**

**WEEK ONE:**

| | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day | | 8 at $22 | | | | 8 at $22 | |
| Evening | | | | 8 at $23 | | 8 at $23 | |
| Night | 8 at $24 | | | 8 at $24 | | | |

| | |
|---|---|
| 16 day hours x $22 = | $352 |
| 16 evening hours x $ 22 = | $352 |
| 16 evening hours x $1shift differential = | $16 |
| 16 night hours x $22 = | $352 |
| 16 night hours x $2 shift differential = | $32 |
| $352 + $352 + $16 + $352 + $32 = | $1,104 total ST compensation) |
| 16 day hours + 16 evening hours + 16 night hours = | 48 total hours worked |
| $1,104 (total ST compensation) ÷ 48 (hours worked) = | $23 (regular rate) |
| $23 ÷ ½ | $11.50 (half-time premium) |
| $23 + $11.50 = | $34.50 (overtime rate) |

| | |
|---|---|
| $23 x 40 hours = | $920 (straight time earnings) |
| $34.50 (overtime rate) x 8 overtime hours = | $276 (overtime earnings) |
| **Total weekly earnings** | **$1,196** |

5

**WEEK TWO:**

| | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day | | 8 at $22 | 8 at $22 | | | | |
| Evening | 8 at $23 | | | 8 at $23 | | | |
| Night | | | | 8 at $24 | | | |

| | |
|---|---|
| 16 day hours x $22 = | $352 |
| 16 evening hours x $22 | $352 |
| 16 evening hours x $1 shift differential = | $16 |
| 8 night hours x $22 = | $176 |
| 8 night hours x $2 shift differential = | $16 |
| $352 + $352 + $16 + $176 + $16 = | $912 (total ST compensation) |
| **Total weekly earnings** | **$ 912** |
| | |
| total earnings for week one | $1,196 |
| total earnings for week two | $912 |
| **Total earnings for the bi-weekly period** | **$2,108** |

**Computation of total compensation for 8 and 80 overtime system**

**WEEK ONE:**

| | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day | | 8 at $22 | | | | 8 at $22 | |
| Evening | | | | 8 at $23 | | 8 at $23 (OT) | |
| Night | 8 at $24 | | | 8 at $24 (OT) | | | |

**WEEK TWO:**

| | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day | | 8 at $22 | 8 at $22 | | | | |
| Evening | 8 at $23 | | | 8 at $23 | | | |
| Night | | | | 8 at $24 (OT) | | | |

| | |
|---|---|
| 4 days x 8 hours/day x $22/hour = | $704 |
| 4 evenings x 8 hours/evening x $22/hour = | $704 |
| 4 evenings x 8 hours/evening x $1 shift differential = | $32 |
| 3 nights x 8 hours/night x $22/hour = | $528 |
| 3 nights x 8 hours/night x $2 shift differential = | $48 |
| $704 + $704 + $32 + $528 + $48 = | $2,016 (total ST compensation) |
| 32 day hours + 32 evening hours + 24 night hours = | 88 total hours worked |
| $2,016 (total ST compensation) ÷ 88 (total hours worked) = | $22.91 (regular rate) |
| $22.91 x ½ = | $11.46 (half-time premium) |
| $22.91 + $11.46 = | $34.37 (overtime rate) |
| | |
| 64 hours non-overtime hours x $22.91 (regular rate) = | $1,466.24 (straight time earnings) |
| 24 overtime hours x $34.37 (overtime rate) = | $824.88 (overtime earnings) |
| **Total earnings for the bi-weekly period** | **$2,291.12** |

The RNs working the above schedule worked eight hours of overtime on three days: Wednesday and Friday of the first week and Wednesday of the second week. On these three days, the RNs worked 16 hours each day. Under the 8 and 80 overtime system, they are entitled to overtime for each hour worked over 8 in a day.

**Two Different Jobs**

If an employee works at two or more different jobs in a single workweek, for which different non-overtime rates of pay have been established, his or her employer may use a weighted average to compute the employee's regular rate. However, an employee who performs two or more different kinds of work, for which different straight time hourly rates are established, may agree with his or her employer in advance of the performance of the work that he or she will be paid during overtime hours at a rate not less than one and one-half time the hourly rate established for the type of work he or she is performing during the overtime hours. See Regulations 29 CFR 778.419.

*Example: Two Different Jobs*

An employee works as a nurses' aide on a full time basis at $11 per hour. On weekends, the employee fills in as a receptionist and is paid $8 per hour. She is paid on a 40-hour workweek overtime basis. How is her overtime computed?

Overtime may be computed on the regular rate of pay, determined by the weighted average of the two rates. For example, if the employee worked 40 hours at $11 and 16 hours at $8, the following is the regular rate calculation:

| | |
|---|---|
| 40 hours x $11/hour + 16 hours x $8/hour = | $568 (total ST compensation) |
| $568 (total straight time compensation) ÷ 56 hours worked = | $10.14 (regular rate) |
| $10.14 (regular rate) x ½ = | $5.07 (additional half time premium) |
| $10.14 (regular rate) + $5.07= | $15.21 (overtime rate) |
| $10.14 (regular rate) x 40 hours= | $405.60 (total straight time earnings) |
| $15.21 (overtime rate) x 16 (overtime hours) | $243.36 (total overtime earnings) |
| **Total compensation** | **$648.96** |

**Terminology**

**Total Straight Time (ST) Compensation:**
All remuneration for employment (including shift differentials and bonuses) except those payments specifically excluded by statute. The most common statutory exclusions in the long term care industry are vacation, holiday, and sick pay.

**Total Hours Worked:**
All hours actually worked by an employee, excluding hours paid for vacation, holiday or sick leave.

**Regular Rate (RR):**
Total remuneration for employment ÷ by total hours worked. See Regulations 29 CFR 778.109.

**Half-Time Premium:**
Regular rate x ½.

7

**Overtime (OT) Rate:**
Regular rate + the half-time premium. See Regulations 29 CFR 778.107.

**Overtime (OT) Hours:**
Under the 40-hour workweek overtime plan: All hours worked over 40 in a workweek Under the 8 and 80 overtime system: All hours worked over eight in a day and 80 in a 14-day work period. See Regulations 29 CFR 778.101 and 778.601.

**Total Overtime (OT) Premium Pay:**
OT rate x OT hours. See Regulations 29 CFR 778.107.

**Straight Time (ST) earnings:**
ST hours x regular rate.

**Overtime (OT) Earnings:**
OT hours x OT rate.

**Total Earnings:**
ST earnings + OT earnings.

See Regulations 29 CFR 778.200 or call 1-866-4US-WAGE and request a copy of Regulation Part 778 Interpretative Bulletin on Overtime Compensation.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

The FLSA statute appears at 29 U.S.C. § 201 et seq. The federal regulations regarding hours worked appear in 29 C.F.R. Part 785.

When the state laws differ from the federal FLSA an employer must comply with the higher standard. Links to your state labor department can be found at www.dol.gov/whd/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                  **1-866-4-USWAGE**
Frances Perkins Building                                     TTY: 1-866-487-9243
200 Constitution Avenue, NW                                  **Contact Us**
Washington, DC 20210

| Week | M | Tu | W | Th | F | Sa | Su | Indiv Tot | Total | OT | Reg earned | Tot reg earned | Reg rate | OT earned | Total earned | Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/16/2018 | | | 10 | 8 | 10 | | | 28 | | | $336.00 | | | | | |
| | | 8 | | 8 | 8 | 8 | | 32 | 60 | 20 | $576.00 | $912.00 | $15.20 | $152.00 | $1,064.00 | $918.00 |
| 7/23/2018 | | | | | | | | 0 | | | $0.00 | | | | | |
| | | 8 | | 8 | 8 | | | 24 | 24 | 0 | $432.00 | $432.00 | $18.00 | $0.00 | $432.00 | $930.00 |
| 7/30/2018 | 4 | 4 | 9 | 8 | 4 | | | 29 | | | $348.00 | | | | | |
| | 5 | 8 | 8 | 8 | | | 5 | 34 | 63 | 23 | $612.00 | $960.00 | $15.24 | $175.24 | $1,135.24 | $960.00 |
| 8/6/2018 | 10 | 9 | 8 | | 8 | 4 | | 39 | | | $468.00 | | | | | |
| | | 8 | | 8 | | 4 | | 20 | 59 | 19 | $360.00 | $828.00 | $14.03 | $133.32 | $961.32 | $960.00 |
| 8/13/2018 | 4 | 10 | 10 | 9 | 11 | | | 44 | | | $528.00 | | | | | |
| | | 8 | | 8 | | 6 | | 22 | 66 | 26 | $396.00 | $924.00 | $14.00 | $182.00 | $1,106.00 | $948.00 |
| 8/20/2018 | 9 | 10 | 11 | 8 | | | | 46 | | | $552.00 | | | | | |
| | | 8 | | 8 | 5 | | | 21 | 67 | 27 | $378.00 | $930.00 | $13.88 | $187.39 | $1,117.39 | $966.00 |
| 8/27/2018 | 9.5 | 9.5 | 8 | 10 | 9 | | | 46 | | | $552.00 | | | | | |
| | 0.5 | 8.5 | | | | | | 17 | 63 | 23 | $306.00 | $858.00 | $13.62 | $156.62 | $1,014.62 | $894.00 |
| 9/3/2018 | | 9 | 9 | 9 | 9 | | | 36 | | | $432.00 | | | | | |
| | | 11 | | 9 | 1 | 8 | | 29 | 65 | 25 | $522.00 | $954.00 | $14.68 | $183.46 | $1,137.46 | $954.00 |
| 9/10/2018 | 9 | 9 | 9 | 9 | | | | 36 | | | $432.00 | | | | | |
| | 1 | 1 | 1 | 1 | | | 10 | 14 | 50 | 10 | $252.00 | $684.00 | $13.68 | $68.40 | $752.40 | $846.00 |
| 9/17/2018 | 10 | 9 | 8 | 6 | 6 | | | 39 | | | $468.00 | | | | | |
| | | 8 | | 8.5 | | 16 | 14 | 46.5 | 85.5 | 45.5 | $837.00 | $1,305.00 | $15.26 | $347.24 | $1,652.24 | $1,305.00 |
| 9/24/2018 | 8 | 7 | 9.5 | 9.5 | 7.5 | | | 41.5 | | | $498.00 | | | | | |
| | | 6 | 0.5 | 0.5 | | | 8 | 15 | 56.5 | 16.5 | $270.00 | $768.00 | $13.59 | $112.14 | $880.14 | $777.00 |
| 10/1/2018 | 4 | 6.5 | 9 | 9 | 4 | | | 32.5 | | | $390.00 | | | | | |
| | | | | 1 | | | 8 | 9 | 41.5 | 1.5 | $162.00 | $552.00 | $13.30 | $9.98 | $561.98 | $552.00 |
| 10/8/2018 | 9.5 | | 8.5 | 9 | 9 | | | 36 | | | $432.00 | | | | | |
| | 3.5 | | | 1.5 | 6 | | | 11 | 47 | 7 | $198.00 | $630.00 | $13.40 | $46.91 | $676.91 | $630.00 |
| 10/15/2018 | 9.5 | | 8 | 5 | 5 | | | 27.5 | | | $330.00 | | | | | |
| | 11 | 9 | 8 | 8 | | 17.5 | 6 | 59.5 | 87 | 47 | $1,071.00 | $1,401.00 | $16.10 | $378.43 | $1,779.43 | $1,401.00 |
| 10/22/2018 | 8 | 8 | 9.5 | 9.5 | 6 | | | 41 | | | $492.00 | | | | | |
| | | 8 | | | | | | 24 | 65 | 25 | $432.00 | $924.00 | $14.22 | $177.69 | $1,101.69 | $930.00 |
| 10/29/2018 | 8 | 8.5 | 8 | 10 | 9 | | | 43.5 | | | $522.00 | | | | | |
| | | | | | | | | 0 | 43.5 | 3.5 | $0.00 | $522.00 | $12.00 | $21.00 | $543.00 | $543.00 |
| 11/5/2018 | 12 | 10 | 10 | 10 | | | | 42 | | | $504.00 | | | | | |
| | 1 | 15 | | | 4 | 8 | 8 | 36 | 78 | 38 | $648.00 | $1,152.00 | $14.77 | $280.62 | $1,432.62 | $1,164.00 |
| 11/12/2018 | | | 9 | 7.5 | 8 | | | 24.5 | | | $294.00 | | | | | |
| | | | 6 | | 6 | 8 | | 20 | 44.5 | 4.5 | $360.00 | $654.00 | $14.70 | $33.07 | $687.07 | $654.00 |
| 11/19/2018 | | 9 | 9.5 | | 8 | | | 26.5 | | | $318.00 | | | | | |
| | | 8 | 0.5 | | | | 8 | 16.5 | 43 | 3 | $297.00 | $615.00 | $14.30 | $21.45 | $636.45 | $615.00 |
| 11/26/2018 | 12 | 8 | | | | | | 20 | | | $240.00 | | | | | |
| | | 5 | | 8 | | 10 | 8 | 31 | 51 | 11 | $558.00 | $798.00 | $15.65 | $86.06 | $884.06 | $798.00 |
| 12/3/2018 | 8 | 8 | 8 | 8 | 8 | | | 40 | | | $480.00 | | | | | |
| | 2 | | 1 | 3 | 1 | | | 7 | 47 | 7 | $126.00 | $606.00 | $12.89 | $45.13 | $651.13 | $606.00 |
| 12/10/2018 | 8 | 9.5 | 9 | 6 | 5 | | | 37.5 | | | $450.00 | | | | | |
| | | 13 | | 8 | | 8 | | 29 | 66.5 | 26.5 | $522.00 | $972.00 | $14.62 | $193.67 | $1,165.67 | $972.00 |
| 12/17/2018 | 12 | | | | | | | 12 | | | $156.00 | | | | | |
| | | | | | | | | 0 | 12 | 0 | $0.00 | $156.00 | $13.00 | | $156.00 | $156.00 |
| | | | | | | | | | | | | | | | $21,528.81 | $19,479.00 |

| | |
|---|---|
| Earned | $21,528.81 |
| Paid | $19,479.00 |
| Owed | $2,049.81 |

| Week | M | Tu | W | Th | F | Sa | Su | Indiv Tot | Total | OT | Reg earned | Tot reg earned | Reg rate | OT earned | Tot earned | Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/31/2018 | | | | 7 | 7 | | | 14 | | | $182.00 | | | | | |
| | | | | | 5 | | 7 | 12 | 26 | | $234.00 | $416.00 | $16.00 | | $416.00 | $377.00 |
| 1/7/2019 | 10 | 8.5 | 8 | 12 | | | | 38.5 | | | $500.50 | | | | | |
| | 2 | | | | | | | 2 | 40.5 | 0.5 | $39.00 | $539.50 | $13.32 | $3.33 | $542.83 | $578.50 |
| 1/14/2019 | | | 8 | 8 | 9.5 | 8 | | 33.5 | | | $435.50 | | | | | |
| | | | | | 0.5 | | 8 | 8 | 42 | 2 | $165.75 | $601.25 | $14.32 | $14.32 | $615.57 | $601.25 |
| 1/21/2019 | 9 | 6.5 | 8 | 8 | 9 | | | 40.5 | | | $526.50 | | | | | |
| | | 8.5 | | | | | 10 | 18.5 | 59 | 19 | $360.75 | $887.25 | $15.04 | $142.86 | $1,030.11 | $890.50 |
| 1/28/2019 | 4 | 8 | 8 | 8 | | | | 38 | | | $494.00 | | | | | |
| | | | | | | | 8 | 8 | 46 | 6 | $156.00 | $650.00 | $14.13 | $42.39 | $692.39 | $650.00 |
| 2/4/2019 | 8 | 8 | 8 | | 10 | | | 34 | | | $442.00 | | | | | |
| | | | | | | | 8 | 8 | 50 | 10 | $312.00 | $754.00 | $15.08 | $75.40 | $829.40 | $754.00 |
| 2/11/2019 | 4 | 9.5 | 12 | 8 | 1.5 | | | 35 | | | $455.00 | | | | | |
| | 7 | 4.5 | 12 | | 3.5 | | | 27 | 62 | 22 | $526.50 | $981.50 | $15.83 | $174.14 | $1,155.64 | $1,033.50 |
| 2/18/2019 | 4 | | 9.5 | 9 | 8 | | | 30.5 | | | $396.50 | | | | | |
| | | | | | | 7.5 | 9 | 16.5 | 47 | 7 | $321.75 | $718.25 | $15.28 | $53.49 | $771.74 | $718.25 |
| 2/25/2019 | 4 | 8 | 9 | 9 | 9 | | | 39 | | | $507.00 | | | | | |
| | 5 | | 11 | 10 | 2 | | | 28 | 67 | 27 | $546.00 | $1,053.00 | $15.72 | $212.17 | $1,265.17 | $1,053.00 |
| 3/4/2019 | | 6 | 8 | 4 | 8 | | | 26 | | | $338.00 | | | | | |
| | | 2 | | | | | 8 | 10 | 36 | | $195.00 | $533.00 | $14.81 | $0.00 | $533.00 | $533.00 |
| 3/11/2019 | 9.5 | | 9 | | 8 | | | 26.5 | | | $344.50 | | | | | |
| | | | | | | | 10.5 | 10.5 | 37 | | $204.75 | $549.25 | $14.84 | $0.00 | $549.25 | $549.25 |
| 3/18/2019 | 8 | 8 | 8 | 8 | 6.5 | | | 38.5 | | | $500.50 | | | | | |
| | | | | 8 | | | | 16 | 54.5 | 14.5 | $312.00 | $812.50 | $14.91 | $108.08 | $920.58 | $812.50 |
| 3/25/2019 | 8 | 8 | 8 | 10 | 4 | | | 38 | | | $494.00 | | | | | |
| | | | 12 | | | | | 12 | 50 | 10 | $234.00 | $728.00 | $14.56 | $72.80 | $800.80 | $793.00 |
| 4/1/2019 | 10 | 9 | 8 | 11.5 | 11 | | | 49.5 | | | $643.50 | | | | | |
| | | | | | | | 15 | 15 | 64.5 | 24.5 | $292.50 | $936.00 | $14.51 | $177.77 | $1,113.77 | $997.75 |
| 4/8/2019 | 8 | 7 | 4 | | 9.5 | | | 28.5 | | | $370.50 | | | | | |
| | | | | | | | 10.5 | 10.5 | 39 | | $204.75 | $575.25 | $14.75 | $0.00 | $575.25 | $575.25 |
| 4/15/2019 | 9.5 | 9.5 | 9 | 6 | 8 | | | 42 | | | $546.00 | | | | | |
| | | | | | 5 | | 11.5 | 16.5 | 58.5 | 18.5 | $321.75 | $867.75 | $14.83 | $137.21 | $1,004.96 | $861.25 |
| 4/22/2019 | 7 | 9.5 | 6 | 8.5 | 10 | | | 41 | | | $533.00 | | | | | |
| | | | | 12 | | | | 20 | 61 | 21 | $390.00 | $923.00 | $15.13 | $158.88 | $1,081.88 | $1,046.50 |
| 4/29/2019 | 7 | 8.5 | 8 | 8 | 8 | | | 39.5 | | | $513.50 | | | | | |
| | | | | | | | 9 | 9 | 48.5 | 8.5 | $175.50 | $689.00 | $14.21 | $60.38 | $749.38 | $689.00 |
| 5/6/2019 | | 12 | 8.5 | 8 | 10.5 | | | 39 | | | $507.00 | | | | | |
| | | 0.5 | | 4 | 0.5 | | 9 | 14 | 53 | 13 | $273.00 | $780.00 | $14.72 | $95.66 | $875.66 | $776.75 |
| 5/13/2019 | 10 | | 10 | 2.5 | 9 | | | 31.5 | | | $409.50 | | | | | |
| | | | 6 | | | | 4 | 10 | 41.5 | 1.5 | $195.00 | $604.50 | $14.57 | $10.92 | $615.42 | $604.50 |
| 5/20/2019 | 7.5 | | 6 | 8 | 8 | | | 29.5 | | | $383.50 | | | | | |
| | | | 4.5 | 10.5 | | | | 15 | 44.5 | 4.5 | $292.50 | $676.00 | $15.19 | $34.18 | $710.18 | $676.00 |
| 5/27/2019 | 10 | 10 | 9 | 9 | | | | 38 | | | $624.00 | | | | | |
| | 3 | 8.5 | 9 | 7.5 | 9 | 16 | 2.5 | 47.5 | 85.5 | 45.5 | $984.75 | $1,608.75 | $18.82 | $428.06 | $2,036.81 | $1,686.75 |
| 6/4/2019 | 10 | 10 | 10 | 10 | 10 | | | 50 | | | $650.00 | | | | | |
| | | | | | | | 5 | 5 | 55 | 15 | $97.50 | $747.50 | $13.59 | $101.93 | $849.43 | $812.50 |
| 6/10/2019 | 9 | 9 | 9 | 9 | 4 | | | 40 | | | $520.00 | | | | | |
| | 3 | 1 | 1 | 1 | | 4 | 4 | 14 | 54 | 14 | $273.00 | $793.00 | $14.69 | $102.80 | $895.80 | $793.00 |
| 6/17/2019 | 10 | 10 | 10 | 10 | 10 | | | 50 | | | $650.00 | | | | | |
| | 7 | 7.5 | | 4 | | | 4 | 22.5 | 72.5 | 32.5 | $438.75 | $1,088.75 | $15.02 | $244.03 | $1,332.78 | $1,153.75 |
| 6/24/2019 | 10 | 8 | 10 | 8 | 8 | | | 44 | | | $572.00 | | | | | |
| | 7 | 10 | | | | | | 17 | 61 | 21 | $331.50 | $903.50 | $14.81 | $155.52 | $1,059.02 | $903.50 |
| 7/1/2019 | 8 | 8 | | 6 | | | | 22 | | | $286.00 | | | | | |
| | | | | | | | | 0 | 22 | | $0.00 | $286.00 | $13.00 | $0.00 | $286.00 | $286.00 |
| 7/8/2019 | 9 | 8.5 | 9 | 9 | | | | 35.5 | | | $461.50 | | | | | |
| | 1 | | 4 | 4 | 4 | 10 | | 23 | 58.5 | 18.5 | $448.50 | $910.00 | $15.56 | $143.89 | $1,053.89 | $910.00 |
| 7/15/2019 | 9 | 9 | 8 | 9 | 10.5 | | | 45.5 | | | $591.50 | | | | | |
| | | 8 | 1 | | | | 7 | 16 | 61.5 | 21.5 | $312.00 | $903.50 | $14.69 | $157.93 | $1,061.43 | $939.25 |
| 7/22/2019 | 8 | 9.5 | 7.5 | | 4 | | | 29 | | | $377.00 | | | | | |
| | 6 | 2.5 | | 8 | | | 8 | 24.5 | 53.5 | 13.5 | $477.75 | $854.75 | $15.98 | $107.84 | $962.59 | $854.75 |
| 7/29/2019 | 10 | 6 | 9 | 5 | 8 | | | 38 | | | $494.00 | | | | | |
| | | | | 8 | | 8 | 13 | 29 | 67 | 27 | $565.50 | $1,059.50 | $15.81 | $213.48 | $1,272.98 | $1,059.50 |
| 8/5/2019 | 8 | | | | | | | 17 | | | $221.00 | | | | | |
| | | | 9 | | | | | | | | | | | | | |
| | | | | | | 9 | 4 | 13 | 30 | | $253.50 | $474.50 | $15.82 | $0.00 | $474.50 | $474.50 |
| 8/12/2019 | | 9 | 9 | | 1 | | | 28 | | | $364.00 | | | | | |
| | | | 12 | | | 9 | 11 | 32 | 60 | 20 | $624.00 | $988.00 | $16.47 | $164.67 | $1,152.67 | $994.50 |
| 8/19/2019 | 4 | 7 | 9 | 7 | 7 | | | 34 | | | $442.00 | | | | | |
| | | | 9 | | 7 | 8 | 9 | 33 | 67 | 27 | $643.50 | $1,085.50 | $16.20 | $218.72 | $1,304.22 | $1,085.50 |
| 8/26/2019 | 9.5 | 7 | 6.5 | 8 | 9 | | | 40 | | | $520.00 | | | | | |
| | 2.5 | | | | | | | 2.5 | 42.5 | 2.5 | $48.75 | $568.75 | $13.38 | $16.73 | $585.48 | $568.75 |
| 9/2/2019 | | 11 | 6 | 11 | 8 | | | 36 | | | $468.00 | | | | | |
| | | 1 | 7 | 7 | | | 8 | 23 | 59 | 19 | $448.50 | $916.50 | $15.53 | $147.57 | $1,064.07 | $916.50 |
| 9/9/2019 | 10.5 | 9.5 | 8 | 9 | 4 | | | 41 | | | $533.00 | | | | | |
| | 0.5 | 0.5 | | 4 | | | 7 | 12 | 53 | 13 | $234.00 | $767.00 | $14.47 | $94.07 | $861.07 | $773.50 |
| 9/16/2019 | 8 | 9.5 | 6 | 9.5 | 4 | | | 37 | | | $481.00 | | | | | |

| Date | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Wk | Per | OT | Wk Pay | Per Pay | Rate | OT Pay | Total | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | 0.5 |  | 0.5 |  | 12 | 12 | 25 | 62 | 22 | $487.50 | $968.50 | $15.62 | $171.83 | $1,140.33 | $968.50 |
| 9/23/2019 | 5.5 | 8 | 7 | 9 | 6 |  |  | 35.5 |  |  |  | $461.50 |  |  |  |  |
|  |  |  |  | 7 | 5 |  |  | 12 | 47.5 | 7.5 | $234.00 | $695.50 | $14.64 | $54.91 | $750.41 | $695.50 |
| 9/30/2019 | 5.5 |  | 4 |  | 4 |  |  | 13.5 |  |  |  | $175.50 |  |  |  |  |
|  |  |  |  |  |  | 13 | 8 | 21 | 34.5 |  | $409.50 | $585.00 | $16.96 | $0.00 | $585.00 | $572.00 |
| 10/7/2019 | 10 | 4 |  | 4 | 6.5 |  |  | 24.5 |  |  |  | $318.50 |  |  |  |  |
|  | 2 |  |  |  | 4 |  |  | 6 | 30.5 |  | $117.00 | $435.50 | $14.28 | $0.00 | $435.50 | $422.50 |
| 10/14/2019 |  | 12 | 12 | 5 | 4 |  |  | 33 |  |  |  | $429.00 |  |  |  |  |
|  | 4 |  | 8 |  |  |  |  | 12 | 45 | 5 | $234.00 | $663.00 | $14.73 | $36.83 | $699.83 | $643.50 |
| 10/21/2019 | 10 | 8 | 9 | 8 | 8 |  |  | 43 |  |  |  | $559.00 |  |  |  |  |
|  | 1 |  | 8 |  |  |  |  | 9 | 52 | 12 | $175.50 | $734.50 | $14.13 | $84.75 | $819.25 | $767.00 |
| 10/28/2019 |  |  |  |  |  |  |  | 0 |  |  |  | $0.00 |  |  |  |  |
|  |  |  |  |  |  |  | 10 | 10 | 10 |  | $195.00 | $195.00 | $19.50 | $0.00 | $195.00 | $195.00 |
| 11/4/2019 | 9 | 11 | 11 | 12 | 9 |  |  | 52 |  |  |  | $676.00 |  |  |  |  |
|  | 4.5 |  |  |  |  |  |  | 4.5 | 56.5 | 16.5 | $87.75 | $763.75 | $13.52 | $111.52 | $875.27 | $841.75 |
| 11/11/2019 |  | 9 |  | 10.5 | 10.5 |  |  | 30 |  |  |  | $390.00 |  |  |  |  |
|  |  | 12 |  | 0.5 | 0.5 | 10.5 |  | 23.5 | 53.5 | 13.5 | $458.25 | $848.25 | $15.86 | $107.02 | $955.27 | $848.25 |
| 11/18/2019 | 10 | 9 | 9.5 |  |  |  |  | 28.5 |  |  |  | $370.50 |  |  |  |  |
|  |  | 13 | 4.5 |  |  | 8 |  | 25.5 | 54 | 14 | $497.25 | $867.75 | $16.07 | $112.49 | $980.24 | $867.75 |
| 11/25/2019 | 8 |  |  |  |  |  |  | 8 |  |  |  | $104.00 |  |  |  |  |
|  |  | 8 |  |  |  |  |  | 0 | 8 |  | $0.00 | $104.00 | $13.00 | $0.00 | $104.00 | $104.00 |
| 12/2/2019 | 9.5 | 8 | 8 | 6 | 11 |  |  | 42.5 |  |  |  | $552.50 |  |  |  |  |
|  |  |  |  |  |  | 10 | 10 | 24.5 | 67 | 27 | $477.75 | $1,030.25 | $15.38 | $207.59 | $1,237.84 | $1,046.50 |
| 12/9/2019 | 8 | 6 | 11 | 10 | 5.5 |  |  | 40.5 |  |  |  | $526.50 |  |  |  |  |
|  |  | 14 |  | 4 |  | 6 | 8 | 32 | 72.5 | 32.5 | $624.00 | $1,150.50 | $15.87 | $257.87 | $1,408.37 | $1,244.75 |
| 12/16/2019 | 12 | 10.5 | 4 | 8 | 6 |  |  | 40.5 |  |  |  | $526.50 |  |  |  |  |
|  |  |  |  |  |  | 12 |  | 20 | 60.5 | 20.5 | $390.00 | $916.50 | $15.15 | $155.27 | $1,071.77 | $919.75 |
| 12/22/2019 | 10.5 | 7 |  |  |  |  |  | 17.5 |  |  |  | $227.50 |  |  |  |  |
|  | 8.5 |  |  |  |  |  |  | 8.5 | 26 |  | $165.75 | $393.25 | $15.13 | $0.00 | $393.25 | $393.25 |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $44,753.04 | $40,313.00 |

| | |
|---|---|
| Earned | $44,753.04 |
| Paid | $40,313.00 |
| Owed | $4,440.04 |
| | |
| 2018 owed | $2,049.81 |
| 2019 owed | $4,440.04 |
| Total owed | $6,489.85 |
| 2018 paid | $855.00 |
| 2019 paid | $1,072.50 |
| Total owed | $4,562.35 |



**Division of Labor Standards and Statistics**
633 17th Street, Suite 600
Denver, CO 80202-2107
Phone: (303) 318-8441 | Toll-free: (888) 390-7936
Fax: (303) 318-8400 | www.colorado.gov/cdle/labor

**COLORADO DIVISION OF LABOR STANDARDS AND STATISTICS**

**NOTICE OF ASSESSMENT #2829-20**

**I. Wages Owed and Full Penalties and Fines**

On January 8, 2021, as described in the preceding Citation, the Colorado Division of Labor Standards and Statistics has determined the employer owes the following, and is ordered to pay:

    a. Total Wages earned on or after January 1, 2015 (to the claimant):  $4,562.35

    b. Total Penalties (to the claimant): $8,112.31

    c. Total Fines (to the Division): $1,850.00

**II. Wages Owed and Reduction or Waiver of Penalties and Fines**

The Division is offering to reduce the penalties listed above by 50%, and reduce or waive the above fines, if the employer pays the claimant the total wages owed within fourteen calendar days of this Citation and Notice of Assessment:

    a. Total Wages earned on or after January 1, 2015 (to the claimant): $4,562.35

    b. Reduced Penalties (to the claimant): $4,056.16

    c. Waived/Reduced Fines (to the Division): $0.00

Payment of wages and reduced penalties must be made to the claimant by **January 22, 2021.** The payment may be made by mailing payment made out to the claimant, to the claimant's home address: ███████████
██████████

Please note that although the wages owed may be taxable, the penalties ordered above are not considered wages for purposes of withholding federal or state taxes.

The employer must immediately provide to the Division written proof of the payment which includes: gross wages owed, net wages paid, method of payment (check, direct deposit, etc.), check numbers or bank of deposit, and the address payment was sent to, if sent by mail.

**III. Failure to Pay the Claimant by January 22, 2021**

The employer is liable for all unpaid wages, full penalties on those wages, and the full fines listed in Section I above if the total wages ordered are not paid to the claimant within 14 days.

The payment of the fines must be made by mailing or hand delivering a check, made out to the Colorado Division of Labor Standards and Statistics-Wage Theft Enforcement Fund, to 633 17th Street, Suite 600 Denver, CO 80202.  The proof of paying the wages to the claimant within 14 days must also be sent to this address. Please indicate the claim number on the check.

Colorado Wage Complaint #2829-20
████████  ████████ vs. Warning Lites Inc. of Colorado

App. Vol. I 188



**EXHIBIT 2**

### NOTICE OF CLASS ACTION LAWSUIT

**If you work or worked for Amazon.com Services LLC (a.k.a. Amazon.com Services, Inc.), as a non-exempt hourly employee in an AMZL workplace and/ or Fulfillment Center in Colorado and worked more than 40 hours during weeks in which you also worked on a company designated holiday from January 14, 2019 to present, please read this notice. A class action lawsuit may affect your rights.**

*A Federal court authorized this notice. This is not a solicitation from a lawyer.*

A current Amazon employee has sued the company in a class action, claiming that Amazon violated Colorado wage and hour law by: (1) paying time and a half of each employee's agreed upon rate of pay for time worked on a company designated holiday, and (2) failing to include that holiday premium rate in the calculation of the regular rate of pay for that week for overtime purposes. The employees claims that as a result of these policies, Amazon failed to pay employees all overtime compensation for hours that they worked in Colorado.

The employee filed his lawsuit in the District Court of Arapahoe County, Colorado, but it was removed to United States District Court for the District of Colorado in Denver, Colorado where the case is pending as *Hamilton v. Amazon.com Services LLC.*, Case No. 22-cv-00434-PAB-STV. The Court has authorized the sending of this notice to inform you of your rights and options in regard to the lawsuit.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING AND BE INCLUDED** | If you take no action, you may be considered to be part of the Class. You will keep the possibility of getting money or benefits from a trial or a settlement of the wage and hour claims, and will give up any rights to sue the Defendant separately about the same claims in the lawsuit. Any settlement or judgement in the lawsuit will include all Class Members who do not request to be excluded. Class members may be represented by the Plaintiff's attorneys, or may enter an appearance through their own attorney(s). |
| **EXCLUDE YOURSELF** | The Court will exclude you from the class if you request exclusion by sending the Opt-out form attached to this Notice to attorney David H. Miller by [60 days from mailing]. If you request to be excluded, you will give up the possibility of getting money or benefits from any judgement or settlement in the case. You will keep the right to sue the Defendant separately about the claims in the lawsuit, but the statue(s) of limitations will continue to run (or may have already run) on any claims you might have. |

**More questions? Contact Leroy Moya at the Sawaya & Miller Law Firm at 303-839-1650 x 1077 or lmoya@sawayalaw.com**   1

App. Vol. I 189

### 1. Why did I get this Notice?

Amazon's records show that you currently work or previously worked for Amazon in an AMZL workplace and/or Fulfillment Center as an non-exempt hourly employee in Colorado who worked more than 40 hours during a week in which you also worked on a company designated holiday between January 14, 2019 and the present. You have legal rights and options that you may exercise in the case.

### 2. What is a class action and who is involved?

In a class action lawsuit, one or more people sue on behalf of himself, herself, or themselves and others who have similar claims. The employee who has sued is called the Plaintiff. The individuals on whose behalf the Plaintiff sue are called the Class. Amazon is called the Defendant. One court resolves the issues for everyone who does not request to be excluded from the case.

### 3. Why is this lawsuit a class action?

The Plaintiff who filed the lawsuit alleges that there is a group of employees who were subject to the same pay policies and practices.

### 4. What are the Plaintiff's claims?

The Plaintiff alleges that Amazon violated his rights and the Class Members' rights by: (A) failing to pay all overtime earned during weeks that they worked in excess of 40 hours and on a company designated holiday. The Plaintiff alleges that this violation was the result of Amazon's uniform policies, practices, and procedures of: (A) paying time and a half of each employee's agreed upon rate of pay for time worked on a company designated holiday; and (B) failing to include that holiday premium payment in the calculation of the regular rate of pay for overtime purposes.

### 5. What is Amazon's position?

Amazon denies the Plaintiff's allegations and alleges that it paid the Plaintiff and the Class Members properly.

### 6. Has the Court decided who is right?

The Court has not decided whether the Plaintiff or Amazon are correct. By authorizing this notice, the Court is not suggesting that the Plaintiff will win or lose the case.

### 7. What is the Plaintiff asking for?

The Plaintiff is asking to be compensated at a premium rate based on his regular rate of pay for all of the overtime he was not properly compensated, and for statutory penalties under

**More questions? Contact Leroy Moya at the Sawaya & Miller Law Firm at 303-839-1650 x 1077 or lmoya@sawayalaw.com**                    2

App. Vol. I 190

the Colorado Wage Act, for himself and all of the Class Members. He is also asking to be reimbursed for his attorney's fees and costs in the lawsuit.

| **8. I am not sure if I am included in this lawsuit.** |
|---|

If you are still not sure whether you are included, you can get free help by contacting the lawyers who are representing the Plaintiff in this case by using the contact information listed at the bottom of each page. Otherwise, you may seek legal advice from any attorney of your choice at your own expense.

| **9. What happens if I do nothing at all?** |
|---|

If you do not request to be excluded from this class action and you are considered to be part of the Class, you will be bound by any ruling, settlement or judgment, whether favorable or unfavorable, on the claims asserted. By doing nothing, you designate the named Plaintiff as your representative, and to the fullest extent possible, to make decisions on our behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and costs, the approval of settlements, and all other matters pertaining to this lawsuit. While this suit is pending, you may be asked to provide information to the attorneys representing either party.

| **10. How do I ask to be excluded?** |
|---|

You may request to be excluded from this class action by signing and sending the red opt-out form attached to this Notice to the Plaintiff's attorneys at:

AMAZON CLASS ACTION LAWSUIT
Attn: David H. Miller
The Sawaya & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
lmoya@sawayalaw.com

**The signed Opt-out form must be postmarked or received via e-mail by [60 days from mailing]. Any settlement or judgment will include all Class Members who do not request to be excluded by [60 days from mailing].**

| **11. Should I get a lawyer?** |
|---|

If you do not request to be excluded, you may either allow Plaintiff's counsel to continue working on your behalf, or you may enter an appearance through your own lawyer. If you want to enter an appearance through your own lawyer, you may have to pay that lawyer.

| **12. How will the lawyers get paid?** |
|---|

**More questions? Contact Leroy Moya at the Sawaya & Miller Law Firm at 303-839-1650 x 1077 or lmoya@sawayalaw.com**                  3

App. Vol. I 191

The named Plaintiff has entered into contingency fee agreement with his counsel, which means that if you do not win, there will be no attorneys' fees or costs chargeable to you. In the event that there is a recovery, under the fee agreement Plaintiff's counsel will receive reimbursement for their reasonable costs and a percentage of any settlement obtained or money judgment entered in favor of all members of the Class. Alternatively, the Court may be asked to determine the amount of attorney's fees. The fees may be part of a settlement obtained or money judgment entered in favor of Plaintiff, or may be ordered by the Court to be paid separately by the Defendant, or may be a combination of the two. A copy of the contingency fee agreement executed by the named Plaintiff may be obtained upon request from Plaintiff's counsel identified below

## 12. Retaliation is Prohibited.

Colorado law prohibits retaliation against you in any way if you choose to participate in this case. You may be entitled to additional damages should a court determine that any adverse action was taken against you for joining or remaining in this lawsuit.

## 13. Are more details available?

Yes. If you have any questions or require additional information, please contact the attorney for Plaintiff in this lawsuit: David Miller at the Sawaya & Miller Law Firm, 1600 Ogden Street Denver, Colorado 80218, (303) 839-1650 ext. 1090, or dhmiller@sawayalaw.com

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS MATTER.**

**More questions? Contact Leroy Moya at the Sawaya & Miller Law Firm at 303-839-**   4
**1650 x 1077 or lmoya@sawayalaw.com**

App. Vol. I 192

| EXHIBIT 3 |

| **OPT-OUT FORM** |

COMPLETING AND RETURNING THIS FORM MEANS <u>YOU WILL NOT BE INCLUDED IN ANY SETTLEMENT OR JUDGMENT</u>, BUT THAT YOU CAN BRING YOUR OWN LAWSUIT FOR THE SAME CLAIMS IN THE FUTURE IF THE STATUTES OF LIMITATIONS HAVE NOT RUN.

**IF YOU WANT TO BE PART OF THE CLASS AND THE SETTLEMENT OR JUDGMENT, <u>DO NOT</u> COMPLETE AND/OR RETURN THIS FORM.**

| **INFORMATION ABOUT YOU** |

Your Name: _____

Address: _____

_____

Phone: _____

| **NOT BEING PART OF THE CLASS (OPTING OUT)** |

Sign and Date Below **To Not Be Part Of The Class**.

_____          _____
Signature of [NAME]               Date

By signing above, you understand that you will not be part of any judgement or settlement in the lawsuit that is pending in the United States District Court for the District of Colorado, as Case No. 22-cv-00434-PAB, and that you give up the right to get any money or benefits from a judgment or settlement, but that you can bring another lawsuit regarding the same claims so long as the applicable statutes of limitation have not expired.

<u>**Instructions on the other side of the page will tell you how to return this form and what to do if you have questions.**</u>



**More questions? Contact the Sawaya & Miller Law Firm at 303-839-1650 x 1077 or lmoya@sawayalaw.com**          1

App. Vol. I 193

## HOW CAN I GET MORE INFORMATION TO HELP ME DECIDE WHAT TO DO?

You can speak or write to someone at The Sawaya & Miller Law Firm to get more information before deciding whether or not to complete this form. Their contact information is as follows:

David H. Miller
Sawaya & Miller Law Firm
Phone: 303.551.7679
Fax: 303.832.7102
E-mail: lmoya@sawayalaw.com

## WHERE DO I SEND THIS FORM?

To be excluded, you must complete and send this form to:

AMAZON CLASS ACTION LAWSUIT
Attn: David H. Miller
The Sawaya & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
lmoya@sawayalaw.com

## WHAT IS THE DEADLINE TO SEND THIS FORM?

**You must return this form on or before this date to not be part of the Class: [60 days from mailing].**

**More questions? Contact the Sawaya & Miller Law Firm at 303-839-1650 x 1077
or lmoya@sawayalaw.com**                2

App. Vol. I 194

Appellate Case: 23-1082     Document: 010110874661     Date Filed: 06/16/2023     Page: 195

**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01578-RBJ

STUART SWANSON and TRAVIS SAKOWSKI,
on behalf of themselves and all similarly situated persons,

      Plaintiffs,

v.

CATHEDRAL ENERGY SERVICES, INC., a Delaware corporation,

      Defendant.

---

ORDER: HOFFMAN-LAROCHE NOTICE

---

Plaintiffs are former employees of Cathedral Energy Services, Inc. ("CES"). They filed this action in March 2017, asserting violations of state and federal wage and hours laws. CES removed the case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This order addresses plaintiffs' request for approval of a notice to be sent to potential members of a purported collective action under Fair Labor Standards Act as well as the manner in which the case will proceed from here.

**BACKGROUND**

CES provides directional drilling equipment and services to oil and gas operators. Affidavit of Michelle Johnson, Corporate Human Resources Manager for CES's parent company. ECF No. 24-1 at ¶3. At the time of plaintiffs' employment CES had two separate and distinct divisions: Flowback and Production Testing ("FPT") and Directional Drilling. *Id.* at ¶4. CES divested its FPT business in January 2017. *Id.* at ¶3.

Appellate Case: 23-1082     Document: 010110874661     Date Filed: 06/16/2023     Page: 196

Stuart Swanson and Travis Sakowski worked as Production Testing Operators in the FPT division, Swanson from July 3, 2011 to March 28, 2016, and Sakowski from June 2012 until February 11, 2015.  *Id.* at ¶¶ 5, 6.  That was their only employment by CES.  Their positions called for hourly wages, overtime for hours in excess of 40 in a given week, and reimbursement of certain expenses.  *See id.* at ¶¶9, 10.  They were required accurately to record and submit records of time worked in a format dictated either by their personal preference or a supervisor's preference.  *Id.* at 12.

Plaintiffs assert violations of the state wage and hours laws of Colorado, North Dakota, Wyoming and Pennsylvania (claims One through Five) and violation of the Fair Labor Standards Act (claim Six).  Complaint, ECF No. 4 at 7.  They bring the case as both a purported class action (state claims) and a collective action (federal claim), initially defined in their Complaint as "all current or former non-exempt employees of Cathedral who were not compensated properly for all overtime hours worked with the applicable statute of limitations"  *See id.* at 3-4.  A trial to the Court has been set for April 29, 2019.  ECF No. 37.

The pending motion seeks approval of a notice to be sent to potential members of the purported FLSA collective action.  ECF No. 21.  The Court has considered the motion; CES's response in opposition, ECF No 24; CES's separate objection to the proposed form of notice, ECF No. 25; and plaintiffs' reply, ECF No. 31.

## ANALYLSIS and CONCLUSIONS

### A.  Bifurcation.

At the outset the Court notifies the parties, *sua sponte,* that it will bifurcate the state claims from the federal claim and consider the latter first.  To that extent I agree with Judge

Appellate Case: 23-1082     Document: 010110874661     Date Filed: 06/16/2023     Page: 197

Krieger's analysis in *Oldershaw v. Davita Healthcare Partners, Inc.,* 244 F. Supp. 3d 1110 (D. Colo. 2017). As she notes, there are significant differences between the requirements for a class action under Fed. R. Civ. P. 23 and an FLSA collective action. *Id.* at 1112-16. There are certain difficulties in trying to administer both procedures simultaneously, *see id.* at 1116-18. These problems are somewhat compounded in the present case by plaintiff's desire to proceed under the laws of four different states.

Accordingly, the Court bifurcates claims One through Five and stays those claims until the FLSA claim has been fully resolved. Plaintiffs have essentially carved out this path already by proceeding first with their request for approve of a notice to the members of a potential collective under the FLSA.

### B. **Collective Action.**

Plaintiffs propose conditional certification of a collective action defined as "All current and former Supervisors, Operators and Hands (or workers performing similar jobs with different job titles) who worked for Defendant in the United States at any time from March 9, 2014 to present." CES responds that plaintiffs have not demonstrated other than by conclusory allegations that CES has a common policy of violating the FLSA. ECF No. 24 at 7.

In *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001), the court affirmed the district court's two-stage approach to certification of a collective action under the FLSA.[1] First, the court determines whether plaintiffs are "similarly situated" to the members of the purported collective. This "'require[s] nothing more than substantial allegations that the putative class members were together the victims of a simple decision, policy, or plan.'" *Id.* at

---

[1] *Thiessen* was an Age Discriminate in Employment case, but the ADEA uses the procedure of the FLSA. 267 F.3d at 1102.

1102 (quoting *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997), which in turn quoted *Bayles v. American Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996)).  The second stage, after conclusion of discovery and typically prompted by a motion to decertify, uses a stricter multi-factor standard for a final determination as to who, if anyone, is "similarly situated" to the representative plaintiffs.  *Id.* at 1102-03.  Judge Kane has adopted a procedure somewhat different than the procedure affirmed in *Thiessen,* i.e., "to presumptively allow workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous."  *Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d 1300, 1309 (D. Colo. 2015).

Plaintiffs' claims are sparsely described in their Complaint.  They clarify their allegations in declarations filed in support of the pending motion.  Mr. Swanson states,

> our pay stubs would seem to show an hourly rate with overtime pay but, in reality, our stubs did not correspond to the actual number of hours we worked.  Instead, we were told we were getting a flat day rate, *i.e.*, a set amount per day no matter how many hours we worked. . . . [I]n addition to this day rate, Cathedral paid us a lot of compensation through mileage reimbursements and bonuses such as truck bonuses, subsidence bonuses, and field bonuses/adjustments.  These were very large parts of our pay.  Often Cathedral employees would look for opportunities to drive so they could earn more money.  As the attached pay records show, none of this pay was considered part of our overtime rate.

ECF No. 21-2 at ¶¶4-5.  Mr. Sakowski's declaration is similar.  ECF No. 21-1 at ¶¶4-5.

CES responds, among other things, that plaintiffs "fail to present competent evidence of any system or company-wide policy of adjusting time records to withhold overtime pay or to unlawfully exclude payments from the regular rate of pay."  ECF No. 24 at 4.  While acknowledging plaintiffs' declarations, CED states that plaintiffs "cannot testify to what *other*

employees were or were not told or what they believed." *Id.* at 8.  Rather, "[c]onsistent with the decentralized implementation of the timekeeping policies, the manner by which deployed 'Production Testing Operators' recorded and reported their hours worked as well as the number of hours allegedly worked will require individualized inquiries." *Id.* at 8-9.  CES argues that its truck and mileage reimbursements were properly excluded from plaintiffs' regular hourly rates. *Id.* at 10.

In my view, CES's response digs too deeply into the ultimate merits of the claims and demands too much similarity of the plaintiffs' claims to others for this stage of a collective action case.  However, I do agree that plaintiffs' proposed class is overly broad in its scope.  Based upon plaintiffs' allegations and declarations, I find that it is reasonable to infer that individuals employed in the FPD division in the same positions and in roughly the same time period are similarly situated to the plaintiffs for present purposes.  Accordingly, I conclude that this case will be conditionally certified as a collective action, and plaintiffs may send a proper notice to "Production Testing Operators employed by Cathedral Energy Services, Inc. in its Flowback and Production Testing division during the period July 2011 through December 2016."

### C.  **Form of Notice**.

Plaintiffs' tender a proposed form of notice and a proposed consent form.  ECF Nos. 21-4 and 21-5.  CES objects to plaintiffs' proposal to send notices by text, email, regular mail and posting at CES locations, arguing that regular mail should be sufficient.  ECF No. 25 at 2-6. CES also registers the following objections to the content of the notice:

- it doesn't inform putative plaintiffs of their right to select their own counsel

- it doesn't inform putative plaintiffs of CES's position

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 200

- it should direct recipients to return opt-in notices to the court or third-party administrator

- it should provide contact information for CES's counsel

- it should be limited to two years to be consistent with the statute of limitations absent evidence of willfulness

- it implies judicial endorsement, and

- it doesn't inform opt-in plaintiffs of their obligations, including that the "may be deposed, required to submit to written discovery, compelled to testify, and obligated to appear in Denver."

*Id.* at 6-10 (quoting in the last bullet point *Darrow v. WKRP Management, LLC,* No. 09-cv-0613-CMA-BNB, 2012 WL 638119, at *6 (D. Colo. Feb. 28, 2012). CES does not, however, tender an alternative form of notice.

Plaintiffs reply that distribution by text, email and posting is consistent with the goal of providing actual notice to as many persons as possible, particularly given the mobility of oilfield workers. ECF No. 31 at 11-14. They do not oppose modifying the notice to address most of CES's concerns, but they oppose including the quoted language from *Darrow* which they believe might unduly chill or intimidate prospective opt-ins. *Id.* at 9-10.

The Court agrees with plaintiffs that distribution by regular mail, email and text is consistent with the remedial purposes of the FLSA and with the goal of notifying a mobile group of ex-employees. I do not see the benefit of posting at CES locations, given that CES divested the FTP division in January 2017. I do not agree that distribution should be restricted to a two year statute of limitations period. The application of the statute of limitations, including a willfulness determination, is for the second stage. I agree with CES that some notice of what

might be expected of opt-ins is appropriate, but I do not agree with the language CES favors.

Rather, it is sufficient to include in the notice something like this: "Persons who opt-in will be

expected to cooperate with the prosecution and defense of this case including answering

questions about the work they did and wages they received while employed by Cathedral Energy

Services."

## ORDER

Plaintiffs' Motion for Approval of *Hoffman-LaRoche Notice,* ECF No. 21, is GRANTED.

The Court directs counsel to meet, confer and attempt in good faith to agree upon a form of

notice; a consent form; a procedure for obtaining the names, addresses, email addresses, and

mobile phone numbers for individuals within the collective as defined by the Court; and an opt-

in deadline.  If agreement is not reached within 14 days, the parties shall contact Chambers and

set an evidentiary hearing at the first available date on the Court's calendar.  If agreement is

achieved, please file a status report accordingly.[2]

DATED this 9th day of October, 2018.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

[2] The Court apologizes to the parties for its delay in addressing the motion.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 22-cv-00434-PAB-STV**

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

      **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

      **Defendant.**

---

### MOTION FOR ORDER CERTIFYING DETERMINATIVE QUESTION OF COLORADO LAW TO THE COLORADO SUPREME COURT

---

The Plaintiff, through the undersigned counsel, hereby moves the Court to enter the attached proposed Order certifying a close, important, novel, and determinative issue in this case—whether a premium payment paid at the rate of time and a half of the worker's agreed upon rate for time worked on a holiday may be excluded from the calculation of the regular rate for overtime purposes under the Colorado Wage Claim Act, C.R.S. § 8-4-101 et seq. ("CWA"), and its implementing regulations, 7 C.C.R. 1103-1, ("Colorado Law")—to the Colorado Supreme Court, and states as follows:

### CERTIFICATION OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel for the Plaintiff certifies that he conferred with the Defendant's counsel regarding the relief sought in this Motion and that the Defendant opposes this Motion.

## **INTRODUCTION**

A federal district court may certify a question of state law to the Colorado Supreme Court "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court." C.A.R. 21.1(a). Certification is warranted where "the question is close, important, novel, and determinative." *Larrieu v. Best Buy Stores, L.P.*, 491 F. App'x 864, 866 (10th Cir. 2012).

In this case, the Defendant has filed a Motion to Dismiss[1] in which it asserts, inter alia, and contrary to the principles of federalism and state's rights under both the Constitutions of Colorado and the United States, that a federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA") exemption must be read into Colorado Law, and thus the Defendant's failure to include a premium payment paid at the rate of time and a half for work completed on a holiday, irrespective of overtime, in the calculation of the regular rate of pay did not violate Colorado Law. ECF No. 15, Defendant's Motion to Dismiss at 7–10. In doing so, the Defendant ignores ample case law stating that Colorado Law is more protective of employee rights than the FLSA and would gut the additional protections of Colorado Law in favor of having the FLSA set the upper limit of wage protections in this area. *See* ECF No. 15 at 7–10. Colorado Law incorporates principles from the FLSA in some circumstances while providing superior protections than those in the FLSA in others. *See* 7 C.C.R. 1103-1, Rule 8.7 ("The provisions of the COMPS Order

---

[1] Much of the Defendant's argument focused on its assertion that payment received simply because it is a holiday and payment received for actually working on a holiday should considered the same types of payments under Colorado Law—a claim that has no merit and which is addressed in the Plaintiff's response to the Motion to Dismiss. *See generally* ECF No. 15; ECF No. 16.

shall be liberally construed"); *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (holding that FLSA exemptions need not be construed narrowly); Colo. Dept. Labor and Employment, *Statement of Basis, Purpose, Specific Statutory Authority, and Findings ("CDLE Statement")*[2] at 56–57 (explaining that *Encino Motorcars* did not affect Colorado law). While the Defendant's assertion grossly misstates Colorado Law, it also highlights the fact that neither the Colorado Supreme Court, nor the Colorado Court of Appeals, nor the CDLE has addressed the following question of law:

> Whether a premium payment paid at the rate of one and a half times the worker's agreed upon rate for time worked on a holiday, irrespective of overtime, may be excluded from the calculation of the regular rate of pay for overtime purposes under Colorado Law.

This is a close, important, novel, and determinative question, and thus certification to the Colorado Supreme Court is appropriate. *See Larrieu*, 491 F. App'x at 866. Accordingly, the Court should enter the proposed Order certifying the question of whether a premium payment paid for time worked on a holiday, irrespective of overtime, may be excluded from the calculation of the regular rate of pay to the Colorado Supreme Court.

## **RELEVANT FACTS**

The Plaintiff has been employed by the Defendant as a warehouse worker since November of 2017. ECF No. 5 at ¶ 7.[3] Throughout his employment, he has been paid an

---

[2]    Available    at    https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20Statement%20of%20Basis%2C%20Purpose%2C%20Authority%2C%20and%20Findings_0.pdf

[3] Because the Plaintiff's Complaint and attached exhibits were filed in federal court as a single document, rather than as separate documents, the Plaintiff cites to the paragraphs contained in the Complaint with "¶" and cites to the exhibits by referencing the page number the pertinent parts appear on within the entire document with "p".

hourly rate, plus various incentive payments to encourage him to work additional shifts, stay late, or work on less appealing days. *Id.* at ¶¶ 7, 11. One of these incentives is the offer to be paid time and a half for working on a designated company holiday ("Holiday Incentive"), even though he would get paid for not working on that holiday under Amazon's policies. *Id.* at pp. 11–12. If an employee works on one of those seven holidays, Amazon pays the employee their holiday pay, plus time and a half of their agreed upon rate for all hours worked on that holiday, irrespective of overtime. *Id.* at p. 12. At all times relevant to this case, Amazon improperly failed to include the Holiday Incentive in the calculation of the regular rate of pay for overtime purposes. *Id.* at ¶ 19.

The Plaintiff brought this action in Colorado state court alleging a violation of Colorado Law: that the Defendant failed to pay all overtime to the Plaintiff and its other hourly employees during weeks that they worked in excess of 40 hours and on a designated company holiday ("Company Holiday"). *Id.* ¶¶ 20, 23–24. The Defendant removed the case to this Court, asserting diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), 1444, 1453 and 1711-1715. ECF No. 1 at p. 1. Plaintiff has not contested that jurisdiction or removal.

The Defendant filed a Motion to Dismiss in which it argued, inter alia, that the Plaintiff's complaint fails to state a claim upon which relief may be granted. ECF No. 15 at 3–10. This argument is based upon the following premises: (1) payment received for time worked on a holiday should be considered the same as payment received simply because it is a holiday and not connected to any actual work time, and thus should not be included in the calculation of the regular rate; and (2) because the Plaintiff's Colorado

Law claims are based on payments received for time worked on a holiday, the Plaintiff's claims fail as a matter of law as a result of FLSA regulations. *Id.*

The Plaintiff categorically disagrees with the Defendant's arguments in the Motion to Dismiss, but Defendant's statements in that Motion do demonstrate that the question of whether a premium payment paid for time worked on a holiday, irrespective of overtime, may be excluded from the calculation of the regular rate of pay under Colorado Law is a question of law that has not been resolved or addressed previously in any case decision and is determinative in this case. Accordingly, certification of the question to the Colorado Supreme Court is appropriate.

## **ARGUMENT**

### A.   **STANDARD OF REVIEW**

Under Colorado Appellate Rule 21.1, the Colorado Supreme Court:

[M]ay answer questions of law certified to it by . . . a United States District Court, . . when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court.

C.A.R. 21.1 (a). Appellate Rule 21.1 "may be invoked by an order of [a U.S. District Court] . . . upon the motion of any party in which the certified question arose. C.A.R. 21.1 (b). The U.S. District Court's order for certification must set forth:

(1) The questions of law to be answered; and
(2) A statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

C.A.R. 21.1(c). "The decision to certify rests in the sound discretion of the federal district court."

*Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990) (citing *Lehman Bros. v. Schein,* 416

U.S. 386, 391 (1974)). In *Larrieu*, Judge (now Justice) Neil Gorsuch explained:

> [C]ertification has a valuable role to play for important and novel questions of state legal policy. As the Supreme Court has observed, certification can "in the long run save time, energy, and resources and help [ ] build a cooperative judicial federalism." *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S. Ct. 1741, 40 L.Ed.2d 215 (1974). **In particular, it "give[s] meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state ... courts."** *Pino,* 507 F.3d at 1236; *see also* 10th Cir. Rule 27.1.

491 F. App'x at 865 (emphasis added).

The Tenth Circuit Court of Appeals has held that certification is appropriate where a legal

question is "close, important, novel, and determinative." *Id.* at 866; *see also Allstate,* 920 F.2d at

667 ("Certification is particularly appropriate where the legal question at issue is novel and the

applicable state law is unsettled").

**B.    THE DEFENDANT MISSTATES COLORADO WAGE AND HOUR LAW.**

As an initial matter, the Defendant's second argument in favor of dismissal—that

the FLSA regulations related to holiday premiums and the calculation of the regular rate

should be read into Colorado Law—is contrary to established law. *See* ECF No. 15 at 7–

10.

As this Court has recognized, the FLSA sets a floor of basic rights that states

cannot abridge, but which they are free to exceed in their own wage and hour laws and

regulations. *See Bowe v. SMC Elec. Prod., Inc.*, 935 F. Supp. 1126, 1134 (D. Colo. 1996)

("[F]ederal law [does] not prevent [Colorado] from defining terms or exemptions

differently, or more favorably to employees, than federal regulations would allow"). In

most instances, Colorado Law provides rights that are greater than those provided by the FLSA. *See e.g.* 7 C.C.R. 1103-1, Rule 3.1 (Setting Colorado minimum wage of $12.56 per hour); *compare* 29 U.S.C. § 206(a)(1) (setting federal minimum wage of $7.25 an hour); *see also supra CDLE Statement* at 22 ("[T]he FLSA, is no rationale for removing coverage in an order that provided many more rights than the FLSA"); *id.* at 52–55 (rejecting FLSA's *de minimis* doctrine). Colorado's intent to provide greater protections than those of the FLSA has been codified in all applicable versions of the Minimum Wage Order ("MWO") and its successor the Colorado Overtime and Minimum Pay Standards ("COMPS Order"), which state that "[w]henever employers are subjected to both federal and Colorado law, the law providing greater protection or setting the higher standard shall apply." 7 C.C.R. 1103-1, § 22 (2019–2020); *see also* 7 C.C.R. 1103-1, Rule 8.6 (2020–2022).

Notably, while Colorado Law must be interpreted "liberally," the United States Supreme Court has held that such interpretation is not necessarily required under the FLSA. *Compare Fang v. Showa Entetsu Co.*, 91 P.3d 419, 421 (Colo. App. 2003) ("The CWCA should be liberally interpreted to serve its purpose"); C.R.S. § 8-6-102 ("Whenever this article or any part thereof is interpreted by any court, it shall be liberally construed by such court"); 7 C.C.R. 1103-1, Rule 8.7(A) ("The provisions of the COMPS Order shall be liberally construed, with exceptions and exemptions accordingly narrowly construed") *with Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (FLSA exemptions need not be construed narrowly); *supra CDLE Statement* at 56–57 (explaining that *Encino Motorcars* did not affect Colorado Law).

The Defendant argues that as Colorado Law is silent as to how to calculate the regular rate of pay when an employee is paid a premium rate for working on a holiday, Colorado Law and the FLSA should be read "harmoniously." ECF No. 15 at 7–10. A review of Rule 1.2 and the CDLE's *Statement of Basis, Purpose, Specific Statutory Authority, and Findings*, however, demonstrate that the Defendant's argument is entirely baseless. 7 C.C.R. 1103-1, Rule 1.2; *see supra CDLE Statement* at 11-13, 22, 52-55. In adopting the COMPS Order, the CDLE explained that numerous employment attorneys and advocates had requested "that the COMPS Order should do more to clarify where Colorado does and does not follow federal wage law." *CDLE Statement* at 11. The CDLE responded by listing the specific statutes and regulations that were incorporated into Colorado Law —"29 U.S.C. §§ 201 et seq.; 20 C.F.R. §§ 655.210, 655.1304; 29 C.F.R. Part 541 Subpart G." 7 C.C.R. 1103-1, Rule 1.2. The CDLE specifically identified the FLSA principles that had been incorporated into the COMPS Order in its *Statement* that was published with the order. *CDLE Statement* at 11–13, 22, 52–55. Contrary to the Defendant's assertions, neither the COMPS Order nor the *Statement* incorporates the Federal holiday premium pay exemption.

Because Colorado Law—and specifically the law related to overtime—is more protective than the FLSA, the Court should certify the question of whether a holiday premium payment may be excluded from the calculation of the regular rate under Colorado Law to the Colorado Supreme Court rather than dismissing the Plaintiff's claims based on the FLSA.

**C.**   **CERTIFICATION TO THE COLORADO SUPREME COURT IS APPROPRIATE**

    **1.   THE HOLIDAY PREMIUM PAY QUESTION IS CLOSE**

A question is "close" if "[b]oth sides have strong arguments for their respective positions." *Larrieu*, 491 F. App'x at 866. "In light of the lack of precedential decision on point and in furtherance of comity and federalism . . . the Colorado Supreme Court should have the opportunity to answer [this] important question[] in the first instance." *See Craft v. Philadelphia Indemnity Insurance*, 560 F. App'x 710, 715 (10th Cir. 2014).

Here, certification of the question of whether a holiday premium pay should be included in the regular rate of pay is appropriate because the question is "close." *See Larrieu*, 491 F. App'x at 866. This is attested to by the fact that both sides argue that the law is clearly in their party's favor. *See* ECF No. 15; ECF No. 16. Colorado Law incorporates principles from the FLSA in some circumstances while providing superior protections to those in the FLSA in others. The question here is which of those circumstances currently applies. As Colorado Law is silent as to this particular question, both the Plaintiff's and the Defendant's arguments could be deemed to have merit. *See Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 801 (D. Colo. 2017), *certified question answered*, 414 P. 3d 700, 702, (Colo. 2018) (accepting certification because there were "at least two plausible interpretations" of the statute at issue). Thus, the question is close since there are two plausible interpretations of Colorado Law.

## 2. THE HOLIDAY PREMIUM PAY QUESTION IS IMPORTANT

A question is important if its answer in one direction "may have effected a sea change in [a State's] law." *Larrieu*, 491 F. App'x at 868. Moreover, a question is important if its answer will affect the rights and liabilities of a state's citizens. *See Craft*, 560 F. App'x at 712 (certifying question that was "of particular importance to Colorado insurers and insureds").

Here, certification of the question of whether a holiday premium pay should be included in the regular rate of pay is appropriate because the question is "important." *See id.* The Defendant has admitted that the resolution of this question affects the fundamental right to proper wage payment of over 10,000 Colorado employees amounting to approximately $10,000,000.00 in penalties alone. ECF No. 1 Notice of Removal at ¶¶ 25, 34. Beyond the Defendant, the issue of whether Colorado Law generally allows employers to exclude holiday premium payments from the calculation of the regular rate has implications for every non-exempt employee throughout Colorado. There are hundreds of thousands of employees in Colorado who may choose to work on a holiday, forgoing time with friends and family, due to the perceived benefit of time and a half pay, when, if the FLSA were to apply, it could be no benefit *at all. See* ECF No. 26 at n. 4. In recognition that the rights of so many Colorado citizens will be affected by the determination of the question at issue in this case, the Court should certify the question to the Colorado Supreme Court. *See Larrieu*, 491 F. App'x at 868.

### 3.   THE HOLIDAY PREMIUM PAY QUESTION IS NOVEL

A "novel" question is one that no court has had the opportunity to answer. *See Larrieu*, 491 F. App'x at 868. As the Defendant admits in its Motion to Dismiss, "Colorado law is completely devoid of any indication" of how the holiday premium pay question should be treated. ECF No. 15 at 10. The undersigned counsel have carefully researched the issue over several months, and have not found any controlling state or federal precedent. *See* C.A.R. 21.1(a). The undersigned counsel were only able to find one federal case that is tangentially on point to the FLSA exemption that the Defendant seeks to enforce. *See generally Bell v. Iowa Turkey Growers Cooperative*, 407 F. Supp. 2d 1051, 1056–62 (S.D. Iowa 2006) (Determining whether sixth day

premium payments should be included in the calculation of the regular rate and could be credited toward overtime under the FLSA when certain overtime payments did not meet the statutory requirements). However, in *Bell*, the claim was brought under federal law, whereas here, the Plaintiff's claim is brought under Colorado law, and the federal is argued not to apply. *See id.*

The undersigned counsel did find one citation issued by the Colorado Department of Labor and Employment ("CDLE"), that is partially on point. *See* Exhibit 1, *Warning Lites Inc. of Colorado*, DLSS Case #2829-20 (Citation No. 2829-20, Jan. 8, 2021). There, the employer paid the employee a base hourly rate for hours worked "Monday through Friday 6:00am to 6:00pm and time and one half before 6:00am, after 6:00pm, over 40 hrs/week, & on weekends whether they have worked 40 hours or not." *Id.* at 2. The employer argued that no wages were owed to the employee because it paid "overtime" when it was not required to. *Id.* The CDLE determined that wages were owed, because the employer's payment of time and a half for working undesirable shifts was a shift differential, and not automatic overtime simply because the employer chose the rate of time and a half. *Id.* at 2–3. This determination is partially on point with the issue at hand, as the employee was paid time and a half for working on certain days or certain times, regardless of whether they worked overtime. *See id.* at 2. However, the employer did not raise the defense that the time worked on Saturdays and Sundays should be exempt under the FLSA, and the CDLE did not consider the application, *vel non*, of the exemption. *See id.* at 2–3.

Under these circumstances, the issue is "novel" and certification is appropriate. *See Larrieu*, 491 F. App'x at 868.

### 4.  The Holiday Premium Pay Question is Determinative

A question is "determinative" if the answer in one direction "will spell the end of [the Plaintiff's] lawsuit." *Id*; s*ee e.g., U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir.2009) (applying answer from *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507 (Colo.2007)).

Here, the determination in this case revolves entirely around the interpretation of the above referenced legal question—a question of entirely state law which at times has not been interpreted by the federal courts in the same way the state courts and/or agencies have interpreted such question. If, as the Plaintiff alleges, the premium payment received for working on a holiday should be included in the calculation of the regular rate for work completed in Colorado as a matter of law, the Plaintiff and the Class Members will prevail in this action. *See* ECF No. 5 ¶¶ 20, 23–24. In contrast, if the Defendant is correct in its assertion that the FLSA exemption prohibiting such a calculation, should be read into Colorado Law, the Defendant will prevail. *See* ECF No. 26 at 6, 9–10. As such, the question is "determinative" as it directly affects the viability of the Plaintiff's and Class Members' claims.  *See Larrieu*, 491 F. App'x at 866–68.

## <u>CONCLUSION</u>

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, respectfully asks the Court to grant this Motion and to enter the proposed Order attached hereto as Exhibit 2, and to grant all other and further relief as the Court may deem to be just and appropriate.

Respectfully submitted on this 14th day of April, 2022.

/s/ David H. Miller

_____

David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303-839-1650
E-mail: DHMiller@sawayalaw.com
VGuzman@sawayalaw.com

Counsel for the Plaintiff

## CERTIFICATE OF SERVICE

I certify that on this 14th day of April, 2022, I electronically filed the foregoing Motion and its corresponding proposed Order through the Court's CM/ECF System, generating a true and accurate copy of this document to all counsel of record.

/s/ Leroy Moya

_____

Leroy Moya



**COLORADO**
**Department of**
**Labor and Employment**

**Division of Labor Standards and Statistics**
633 17th Street, Suite 600
Denver, CO 80202-2107
Phone: (303) 318-8441 | Toll-free: (888) 390-7936
Fax: (303) 318-8400 | www.colorado.gov/cdle/labor

**EXHIBIT 1**

## COLORADO DIVISION OF LABOR STANDARDS AND STATISTICS
## WAGE AND HOUR CITATION

### I. Summary

The Colorado Division of Labor Standards and Statistics ("Division") has received wage complaint #2829-20 from ▓▓▓▓ ▓▓▓▓▓▓ ("claimant") against Warning Lites Inc. of Colorado ("employer"). The employer's address is 3070 S. Wyandot St. Englewood, CO 80110.

Pursuant to C.R.S. § 8-4-101, et seq. (the "Colorado Wage Act"), the Division is required to investigate all wage complaints received. The Division conducted an investigation of the complaint, and upon review and consideration of all available documentation and evidence, this Citation is issued pursuant to Colorado wage and hour laws and regulations.

The claimant alleged that ▓▓ was owed $6,008.28, because ▓▓ worked on a shift differential, but was not paid overtime properly.[1] Based on the available evidence, the Division concludes that the employer owed wages to the claimant in the amount of $6,489.85, but acknowledges that the employer has paid the claimant $1,927.50. The employer owes wages in the amount of $4,562.35 and penalties in the amount of $8,112.31. The Division also concludes that the employer owes fines to the Division in the amount of 1,850.00.

### II. Discussion

#### 1. Facts & Reasoning

The Division concludes that the employer violated the Colorado Wage Act (C.R.S. § 8-4-101 et seq.) and/or provisions of the Colorado Minimum Wage Order (7 CCR 1103-1) by failing to pay all earned wages as required. C.R.S. § 8-4-101(14)(a)(I) defines wages or compensation as "all amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method… No amount is considered to be wages or compensation until such amount is earned, vested, and determinable…."

The Colorado Minimum Wage Order requires payment of an overtime premium for employees in covered positions working in the Food and Beverage, Health and Medical, Retail and Service, and Commercial Support Services industries. For covered employees in those industries, employees shall be paid time and one-half of the regular rate of pay for any work in excess of:

    (A) forty (40) hours per workweek, or
    (B) twelve (12) hours per workday, or
    (C) twelve (12) consecutive hours.

The regular rate includes all compensation paid to an employee, including set hourly rates, **shift differentials**, minimum wage tip credits, non-discretionary bonuses, production bonuses, and commissions. Overtime is

---

[1] The claimant additionally alleged that ▓▓ was not paid properly for ▓▓ profit sharing, but the Division does not have authority of such matters and the issue was not considered in the investigation.

Colorado Wage Complaint #2829-20
▓▓▓▓ ▓▓▓▓▓▓ vs. Warning Lites Inc. of Colorado

App. Vol. I 215

calculated without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. Hours worked in two or more workweeks shall not be averaged for computation of overtime.

The employer failed to pay overtime as required by law. The claimant provided sufficient evidence to infer that the employer failed to pay all earned wages. The Division sent a Notice of Complaint to the employer on November 19, 2020, which included a copy of the complaint form and all supporting documents provided from the claimant.

In response, the employer affirmed that some wages were owed due to clerical errors, but denied that the claimant was paid on a shift differential, and thus argued that the claimant was not owed additional overtime. The employer explained that their employees were paid hourly for work completed "Monday through Friday 6:00am to 6:00pm and time and one half before 6:00am, after 6:00pm, over 40 hrs/week, & on weekends whether they have worked 40 hours or not." The employer argued that under this pay structure, the claimant was overcompensated, because the employer paid overtime even when not required to. The employer provided the claimant's timesheets and pay statements for time worked from August 27, 2018 to December 28, 2019, the claimant's employment contract, and the claimant's two weeks' notice. The employer mailed checks for the amount that they believed to be owed to the claimant on December 22, 2020.[2] The employer did not supply time sheets or pay statements from July 16, 2018 to August 26, 2018, and did not allege that they were exempt from paying overtime under the Minimum Wage Order.

The Division applies a shifting burden of proof structure with respect to the claimant and the employer. After a claimant meets their initial burden of establishing a basis for the wage claim, by creating a reasonable inference of a violation of Colorado wage and hour laws, the burden then shifts to the employer to disprove any violation of Colorado wage and hour laws by a preponderance of the evidence. 7 Code Colo. Regs § 1103-7:4.2.

Based on the submitted documentation, the Division determines that the employer has failed to prove by a preponderance of the evidence that the claimant is not owed wages. The employer did not allege that they were exempt from the overtime requirements of the Minimum Wage Order, and the Division finds that they were covered under the commercial support industry, as the employer supplied workers to aid other entities in construction work. Additionally, the Division determines that the claimant did work pursuant to a shift differential and is thus owed overtime accordingly.

Despite the employer's characterization of the pay arrangement as simple hourly pay with "overtime" paid if the claimant worked certain shifts regardless of whether any overtime was actually worked, by definition, that is a shift differential. A shift differential is additional compensation added to an employee's base rate for working certain, often undesirable, shifts, such as evenings or weekends.[3] Therefore, according to the employer's pay structure, the claimant was paid a shift differential of time and a half for all hours worked between 6:00pm and 6:00am and on Saturdays and Sundays. As the claimant worked on a shift differential, the employer was

---

[2] The checks were stated as mailed on December 21, 2020, but they were not postmarked until December 22, 2020. The checks were mailed to the Division because the claimant had not provided a current mailing address at the time the Division sent the Notice of Complaint or Notice of Fine. The Division received the checks on December 28, 2020, and mailed the checks to the claimant on January 7, 2021.

[3] See SHRM.org's website on Shift Differential Pay Practices: https://www.shrm.org/resourcesandtools/hr-topics/compensation/pages/shiftdifferentialpaypractices.aspx. As a leading resource for employers on employment practices, the Division finds SHRM's articles informational.

Colorado Wage Complaint #2829-20
 vs. Warning Lites Inc. of Colorado

App. Vol. I 216

required to calculate the claimant's regular rate each week for purposes of calculating overtime. Choosing to pay an employee time and a half for working less desirable shifts is not the same as paying an overtime premium. If an employer chooses to pay an employee a premium for certain shifts, the employer must pay an *additional* overtime premium for all hours that qualify for overtime. This is done by adding the total weekly earnings based on the rate paid for the various shifts/ days worked and dividing it by the total hours worked in the week. Then, the employer must calculate the overtime rate based on that regular rate.[4]

Based on the provided timesheets and pay statements, Division finds that the employer owed the claimant $6,489.85 in unpaid wages.[5] The Division acknowledges that the employer paid the claimant $1,927.50 prior to the issuance of this citation and notice of assessment. Therefore, the Division determines that the employer owes the claimant $4,562.35 in unpaid wages.[6]

<u>2. Calculation of Penalties Owed to the Claimant</u>

The Division sent the employer a Notice of Complaint on November 19, 2020. The employer failed to pay all earned wages within 14 days after the Notice of Complaint was sent. The employer is liable for penalties on all unpaid wages not paid within 14 days after a written demand or Notice of Complaint was sent, in accordance with C.R.S. § 8-4-109(3)(b).

The Division determines that penalties are owed to the claimant in the amount of $8,112.31. This amount was determined by selecting the greater of the values below:

> 1. The employee's average daily earnings of $214.35 ($1,071.77 earned in final 2019 pay period/ 5 days worked), multiplied by 10 days = $2,143.50.
>
> OR
>
> 2. 125% percent of $6,489.85[7] = $8,112.31.

---

[4] *See* the USDOL's Factsheet #54. The Wage Order provides a definition of "regular rate;" however, the Fair Labor Standards Act (FLSA) enforced by the U.S Department of Labor provides further guidance on how to calculate the regular rate. As the Colorado Minimum Wage Order was intended to mirror the FLSA, the Division finds Chapter 29 of the Code of Federal Regulations instructive on how to calculate overtime for employees that are paid on a shift differential. Though the factsheet specifically discusses how to calculate wages for employees in the healthcare industry, shift differentials are simply most common in the healthcare industry. The examples on how to calculate overtime wages for employees who receive shift differential pay apply to all employees that are covered by overtime requirements, regardless of whether they are in the healthcare industry.

[5] The employer did not provide timesheets or pay statements for July 16, 2018 to August 26, 2018. In the absence of opposing evidence for that time period, the Division accepts the claimant's allegations and evidence as true and will award wages on that basis. The Division used the employer provided timesheets for all other dates.

[6] See the attached spreadsheet for calculations. The green highlights indicate weeks the hours were verified by employer timesheets; the yellow highlights indicate time that the claimant was paid double time; and the grey highlights simply serve to separate the weeks worked. Time recorded on the top row of each week indicates hours paid at the base rate, and time recorded on the bottom row indicates hours paid at the time and a half rate.

[7] Despite the employer's partial payment prior to the issuance of this Citation and Notice of Assessment, the partial payment was not postmarked until December 22, 2020, 33 days after the Notice of Complaint was sent. Thus, the Division must use the full amount of wages owed in the calculation of penalties.

Colorado Wage Complaint #2829-20
██████ ████████ vs. Warning Lites Inc. of Colorado

App. Vol. I 217

3. Calculation of Fines Owed to the Division

The Division determines that the employer owes fine(s) to the State of Colorado for the following violation(s):

Non-Payment of Wages up to $50 per day Fine

In accordance with C.R.S. § 8-4-113(1)(a), a fine of $1,850.00 for failure to pay wages is assessed upon the employer. Wages have been owed to claimant for more than 90 days.

The total amount of fines owed by the employer to the Division is $1,850.00.[8]

**III. Conclusion**

For the foregoing reasons, the Division concludes the employer violated wage and hour laws. The employer must pay whatever portion of these wages and/or penalties remain unpaid to the claimant immediately. The employer must also pay fines to the Division, as set forth in the attached notice of assessment.

Within 35 calendar days of the date of this Notice, unless this Citation is appealed by either party or terminated by the claimant, this is the final decision of the Colorado Department of Labor and Employment.

Dated this 8th day of January 2021,


Division of Labor Standards and Statistics
Colorado Department of Labor and Employment

Mailed, postage prepaid, and emailed to the parties named herein on January 8, 2021.

---

[8] The Division waived the $250.00 fine assessed for failure to timely respond to the Division's Notice of Complaint, because the employer provided good cause for failing to timely respond. The Division waives the $500.00 fine for failure to produce the pay statements for July and August of 2018, because the claimant produced those records prior to the issuance of the Notice of Complaint, thus they were ultimately available for Division inspection.

**U.S. Department of Labor**
Wage and Hour Division

WHD
U.S. Wage and Hour Division
(Revised July 2009)

# Fact Sheet #54 – The Health Care Industry and Calculating Overtime Pay

The Fair Labor Standards Act (FLSA) requires covered employers to pay nonexempt employees at least the federal minimum wage of $7.25 per hour effective July 24, 2009, for all hours worked and overtime pay for for hours worked over 40 in a workweek. The FLSA is administered by the Wage and Hour Division of the U.S. Department of Labor.

Hospitals and other institutions "primarily engaged in the care of the sick, the aged, or the mentally ill" are covered employers under Section 3(s)(1)(B) of the FLSA. Thus, hospitals, residential care establishments, skilled nursing facilities, nursing facilities, assisted living facilities, residential care facilities and intermediate care facilities for mental retardation and developmentally disabled must comply with the minimum wage, overtime and youth employment requirements of the FLSA.

**Summary**

This fact sheet provides guidance regarding common FLSA violations found by the Wage and Hour Division during investigations in the health care industry relating to the calculation of overtime pay. Nonexempt employees must be paid at least time-and-one-half their "regular rate" of pay for all hours worked over 40 in a workweek. The "regular rate" includes an employee's hourly rate *plus* the value of some other types of compensation such as bonuses and shift differentials. The only remuneration excluded from the regular rate under the FLSA are certain specified types of payments like discretionary bonuses, gifts, contributions to certain welfare plans, payments made to certain profit-sharing and savings plans, and pay for foregoing holidays and vacations. A common error in calculating overtime pay by health care employers involve the failure to include bonuses, shift differentials and other types of compensation in the regular rate of pay. Errors are also common in the health care industry in calculating the regular rate when an employee works two or more different jobs in a single workweek.

There is no limitation in the FLSA on the number of hours employees over the age of 15 may work in any workweek. The FLSA does not require overtime pay for hours in excess of eight hours worked in a day, except as discussed below, or for hours worked on Saturdays, Sundays, or holidays.

**The Eight and Eighty (8 and 80) Overtime System**

Under section 7(j) of the FLSA, hospitals and residential care establishments may utilize a fixed work period of fourteen consecutive days in lieu of the 40 hour workweek for the purpose of computing overtime. To use this exception, an employer must have a prior agreement or understanding with affected employees before the work is performed. This eight and eighty (8 and 80) exception allows employers to pay time and one-half the regular rate for all hours worked over eight in any workday and eighty hours in the fourteen-day period. See Regulations 29 CFR 778.601.

An employer can use both the standard 40 hour overtime system and the 8 and 80 overtime system for different employees in the same workplace, but they cannot use both for a single individual employee.

An employer's work period under the 8 and 80 overtime system must be a fixed and regularly recurring 14-day period. It may be changed if the change is designated to be permanent and not to evade the overtime

requirements. If an employer changes the pay period permanently, it must calculate wages on both the old pay period and the new pay period and pay the amount that is more advantageous to each employee in the pay period when the change was made.

Premium pay for daily overtime under the 8 and 80 system may be credited towards the overtime compensation due for hours worked in excess of 80 for that period.

**Bonuses**

For purposes of calculating overtime pay, section 7(e) of the FLSA provides that non-discretionary bonuses must be included in the regular rate of pay. Non-discretionary bonuses include those that are announced to employees to encourage them to work more steadily, rapidly or efficiently, and bonuses designed to encourage employees to remain with a facility. Few bonuses are discretionary under the FLSA, allowing exclusion from the regular rate. See Regulations 29 CFR 778.200 and 778.208.

Referral bonuses paid for recruitment of new employees are not included in the regular rate of pay *if all of the following conditions are met:* (1) participation is strictly voluntary; (2) recruitment efforts do not involve significant time; and (3) the activity is limited to after-hours solicitation done only among friends, relatives, neighbors and acquaintances as part of the employees' social affairs.

*Example: Attendance Bonus*

An intermediate care facility for the disabled pays its employees on a bi-weekly basis. If employees work all the hours that they are scheduled to work in a pay period, they are given a $100 bonus. If an employee works overtime, must this bonus be included in their regular rate of pay for overtime purposes?

Yes. In computing an employee's regular rate under the 40 hour overtime system, the employer must add half of the bi-weekly bonus ($50) to the employee's earnings (hourly rate times the total hours worked) for that week. The resulting total compensation would be divided by the total hours the employee worked during that week to determine the regular rate.

**Overtime Computation under the 40 Hours System**

An employee paid biweekly at a rate of $12 per hour plus a $100 attendance bonus, working a schedule of 56 hours per week as shown in the chart below, would be due overtime pay as follows:

### WEEK ONE

|          | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|----------|--------|--------|---------|-------|----------|--------|----------|
| Day      |        | 8      | 8       |       |          | 8(OT)  |          |
| Evening  | 8      |        |         | 8     |          | 8(OT)  |          |
| Night    |        |        |         | 8     |          |        |          |

### WEEK TWO

|          | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|----------|--------|--------|---------|-------|----------|--------|----------|
| Day      |        | 8      | 8       |       |          | 8(OT)  |          |
| Evening  | 8      |        |         | 8     |          |        |          |
| Night    |        |        |         | 8     |          |        | 8(OT)    |

$100 (bi-weekly attendance bonus) ÷ 2 =          $50 (weekly bonus equivalent)

56 hours worked x $12/hour + $50 (weekly bonus equivalent) =          $722 (total ST compensation)

2

| | |
|---|---|
| $722 (total ST compensation) ÷ 56 hours worked = | $12.89 (regular rate) |
| $12.89 (regular rate) x ½ = | $6.45 (half-time premium) |
| $12.89 (regular rate) + $6.45 (half-time premium) = | $19.34 (overtime rate) |
| | |
| 40 (straight time hours) x $12.89 (regular rate) = | $515.60 (straight time earnings) |
| 16 (overtime hours) x $19.34 (overtime rate) = | $309.44 (overtime earnings) |
| **Total earnings for week one** | **$825.04** |
| **Total earnings for week two** | **$825.04** |
| **Total earnings for bi-weekly period** | **$1,650.08** |

### Overtime Computation under the 8 and 80 System

If the same employee, paid at $12 an hour with a $100 attendance bonus, worked the same scheduled time for the bi-weekly period, under the 8 and 80 system, the employee would have worked 8 hours of overtime on Wednesday and 8 hours of overtime on Friday during the first week and 8 hours of overtime on Wednesday and 8 hours of overtime on Saturday during the second week, and would be due overtime pay as follows:

| | |
|---|---|
| (bi-weekly attendance bonus) = | $100 |
| 112 hours worked x $12/hour + $100 (attendance bonus) = | $1,444 (total ST compensation) |
| $1,444 (total ST compensation) ÷ 112 hours = | $12.89 (regular rate) |
| $12.89 (regular rate) x ½ = | $ 6.45 (half-time premium) |
| $12.89 (regular rate) + $6.45 (half-time premium) = | $19.34 (overtime rate) |
| | |
| $12.89 (regular rate) x 80 (straight time hours) = | $1,031.20 (straight time earnings) |
| $19.34 (overtime rate) x 32 (overtime hours worked) = | $ 618.88 (overtime earnings) |
| **Total earnings for the bi-weekly period =** | **$1,650.08** |

*Example: Retention Bonus*

In an effort to attract more nursing personnel, a skilled nursing facility's nursing department gives hourly paid LPNs and RNs a $2,000 bonus after being employed six months. Does this bonus have to be included in the regular rate? If so, how does it need to be calculated?

Yes. The retention bonus must be included in the regular rate calculation in <u>overtime</u> weeks covered by the bonus period. The retention bonus described above was earned over six months or 26 weeks. The weekly equivalent is $76.92 ($2,000 ÷ 26 weeks). If an employee works overtime during the 26 week period, the increase in the regular rate is calculated by dividing $76.92 by the total hours worked during the overtime week.

### Overtime Computation under the 40 Hours System

In the following calculation, the $2,000 retention bonus was earned over six months or 26 weeks, for a weekly equivalent of $76.92 ($2000 ÷ 26 weeks). If the employee worked ten hours of overtime in their 9th week of employment, the employee would be due an additional $7.70 in overtime earning as follows:

| | |
|---|---|
| $76.92 ÷ 50 hours = | $1.54 (increase in the regular rate) |
| $1.54 x ½ = | $ .77 (increase in the additional half-time) |
| $ .77 x 10 hours of overtime worked = | $7.70 (increase in overtime earnings due to the bonus) |

3

**Overtime Computation under the 8 and 80 System**

If an employee paid under the 8 and 80 system of overtime receives the same $2,000 retention bonus after six months, the employee would be due an additional $13.77 in overtime earnings after working 95 hours, 17 of which are overtime hours, in a 14-day period as follows:

| | |
|---|---|
| $76.92 x 2 weeks = | $153.84 (additional straight-time) |
| $153.84 ÷ 95 hours worked = | $1.62 (increase in regular rate) |
| $1.62 x ½ = | $ .81 (increase in the additional half-time) |
| $ .81 x 17 hours of overtime worked = | $13.77 (increase in overtime earnings due to the bonus) |

*Example: Supplementary Shift Bonus*

At a residential care facility, if employees fill in for another employee who calls in sick, they are paid a supplementary shift bonus of $75. Does this bonus have to be included in the regular rate for overtime purposes?

Yes, it must be included in the regular rate. If an employee works 85 hours in a 14-day pay period (including five overtime hours), a $75 bonus would increase the regular rate by $.88 an hour as follows:

| | |
|---|---|
| $75 ÷ 85 hours worked = | $ .88 (increase in regular rate) |
| $.88 x ½ = | $ .44 (increase in the additional half-time) |
| $ .44 x 5 hours of overtime worked = | $2.20 (increase in overtime earnings due to the bonus) |

**Shift Differentials**

Employers also must include shift differential pay when determining an employee's regular rate of pay. See Regulations 29 CFR 778.207(b). The following examples provide guidance on how to calculate overtime for employees who receive shift differential pay.

*Example: Single Shift Differential*

A personal care assistant at an assisted living facility is paid $8 an hour and overtime on the basis of the 40 hour workweek system. She works three eight-hour day shifts at $8 an hour and three eight-hour evening shifts. The assistant is paid $1 shift differential for each hour worked on the evening shift. How much should she be paid for her eight hours of overtime?

The additional half-time must be computed based on the regular rate of pay. The regular rate is defined as the total remuneration divided by the total hours worked. The assistant earned a total of $408 for the 48 hours that she worked ($8 an hour times 24 hours plus $9 an hour times 24 hours). Her regular rate equaled $8.50 and her half-time premium is $4.25. Her total earnings for the 8 hours of overtime are $102.

**Straight-time computation**

| | |
|---|---|
| 3 days x 8 hours/day x $8/hour | $192 |
| 3 evenings x 8 hours/evening x $8/hour | $192 |
| 3 evenings x 8 hours/evening x $1/hour (shift differential) | $ 24 |
| **Total ST earnings** | **$408** |

4

**Regular rate and half-time premium computation**

| | |
|---|---|
| $408 (total ST compensation) ÷ 48 (total hours worked) = | $ 8.50 (regular rate) |
| $ 8.50 (regular rate) x ½ = | $ 4.25 (half-time premium) |
| $ 8.50 (regular rate) + $ 4.25 (half-time premium) = | $12.75 (overtime rate) |

**Total compensation calculation**

| | |
|---|---|
| 40 hours x $ 8.50 (regular rate) = | $340 (straight time earnings) |
| 8 overtime hours x $12.75 (overtime rate) = | $102 (overtime earnings) |
| **Total earnings** | **$442** |

*Example: Two Different Shift Differentials*

Registered nurses (RNs) at a skilled nursing facility are paid a basic hourly rate of $22 an hour. When they work the evening shift, they are paid a shift differential of $1 an hour. When they work the night shift they are paid a shift differential of $2 an hour. When working overtime, RNs are paid time-and-one-half of their basic hourly rate of $22. Is this in compliance with the FLSA overtime standard?

No. Under the FLSA, the additional half-time compensation must be paid on the regular rate which is defined as the total remuneration divided by the total hours worked. Overtime compensation must be calculated on the regular rate, which will exceed the hourly rate when shift differentials are paid.

**Computation of total compensation for 40 hour system**

**WEEK ONE:**

| | Sunday | Monday | Tuesday | Weds. | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Day | | 8 at $22 | | | | 8 at $22 | |
| Evening | | | | 8 at $23 | | 8 at $23 | |
| Night | 8 at $24 | | | 8 at $24 | | | |

| | |
|---|---|
| 16 day hours x $22 = | $352 |
| 16 evening hours x $ 22 = | $352 |
| 16 evening hours x $1 shift differential = | $16 |
| 16 night hours x $22 = | $352 |
| 16 night hours x $2 shift differential = | $32 |
| $352 + $352 + $16 + $352 + $32 = | $1,104 total ST compensation) |
| 16 day hours + 16 evening hours + 16 night hours = | 48 total hours worked |
| $1,104 (total ST compensation) ÷ 48 (hours worked) = | $23 (regular rate) |
| $23 ÷ ½ | $11.50 (half-time premium) |
| $23 + $11.50 = | $34.50 (overtime rate) |
| | |
| $23 x 40 hours = | $920 (straight time earnings) |
| $34.50 (overtime rate) x 8 overtime hours = | $276 (overtime earnings) |
| **Total weekly earnings** | **$1,196** |

5

**WEEK TWO:**

|           | Sunday   | Monday   | Tuesday  | Weds.    | Thursday | Friday | Saturday |
|-----------|----------|----------|----------|----------|----------|--------|----------|
| Day       |          | 8 at $22 | 8 at $22 |          |          |        |          |
| Evening   | 8 at $23 |          |          | 8 at $23 |          |        |          |
| Night     |          |          |          | 8 at $24 |          |        |          |

| | |
|---|---|
| 16 day hours x $22 = | $352 |
| 16 evening hours x $22 | $352 |
| 16 evening hours x $1 shift differential = | $16 |
| 8 night hours x $22 = | $176 |
| 8 night hours x $2 shift differential = | $16 |
| $352 + $352 + $16 + $176 + $16 = | $912 (total ST compensation) |
| **Total weekly earnings** | **$ 912** |

| | |
|---|---|
| total earnings for week one | $1,196 |
| total earnings for week two | $912 |
| **Total earnings for the bi-weekly period** | **$2,108** |

**Computation of total compensation for 8 and 80 overtime system**

**WEEK ONE:**

|           | Sunday   | Monday   | Tuesday  | Weds.         | Thursday | Friday          | Saturday |
|-----------|----------|----------|----------|---------------|----------|-----------------|----------|
| Day       |          | 8 at $22 |          |               |          | 8 at $22        |          |
| Evening   |          |          |          | 8 at $23      |          | 8 at $23 (OT)   |          |
| Night     | 8 at $24 |          |          | 8 at $24 (OT) |          |                 |          |

**WEEK TWO:**

|           | Sunday   | Monday   | Tuesday  | Weds.         | Thursday | Friday | Saturday |
|-----------|----------|----------|----------|---------------|----------|--------|----------|
| Day       |          | 8 at $22 | 8 at $22 |               |          |        |          |
| Evening   | 8 at $23 |          |          | 8 at $23      |          |        |          |
| Night     |          |          |          | 8 at $24 (OT) |          |        |          |

| | |
|---|---|
| 4 days x 8 hours/day x $22/hour = | $704 |
| 4 evenings x 8 hours/evening x $22/hour = | $704 |
| 4 evenings x 8 hours/evening x $1 shift differential = | $32 |
| 3 nights x 8 hours/night x $22/hour = | $528 |
| 3 nights x 8 hours/night x $2 shift differential = | $48 |
| $704 + $704 + $32 + $528 + $48 = | $2,016 (total ST compensation) |
| 32 day hours + 32 evening hours + 24 night hours = | 88 total hours worked |
| $2,016 (total ST compensation) ÷ 88 (total hours worked) = | $22.91 (regular rate) |
| $22.91 x ½ = | $11.46 (half-time premium) |
| $22.91 + $11.46 = | $34.37 (overtime rate) |

| | |
|---|---|
| 64 hours non-overtime hours x $22.91 (regular rate) = | $1,466.24 (straight time earnings) |
| 24 overtime hours x $34.37 (overtime rate) = | $824.88 (overtime earnings) |
| **Total earnings for the bi-weekly period** | **$2,291.12** |

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 225

The RNs working the above schedule worked eight hours of overtime on three days: Wednesday and Friday of the first week and Wednesday of the second week. On these three days, the RNs worked 16 hours each day. Under the 8 and 80 overtime system, they are entitled to overtime for each hour worked over 8 in a day.

**Two Different Jobs**

If an employee works at two or more different jobs in a single workweek, for which different non-overtime rates of pay have been established, his or her employer may use a weighted average to compute the employee's regular rate. However, an employee who performs two or more different kinds of work, for which different straight time hourly rates are established, may agree with his or her employer in advance of the performance of the work that he or she will be paid during overtime hours at a rate not less than one and one-half time the hourly rate established for the type of work he or she is performing during the overtime hours. See Regulations 29 CFR 778.419.

*Example: Two Different Jobs*

An employee works as a nurses' aide on a full time basis at $11 per hour. On weekends, the employee fills in as a receptionist and is paid $8 per hour. She is paid on a 40-hour workweek overtime basis. How is her overtime computed?

Overtime may be computed on the regular rate of pay, determined by the weighted average of the two rates. For example, if the employee worked 40 hours at $11 and 16 hours at $8, the following is the regular rate calculation:

| | |
|---|---|
| 40 hours x $11/hour + 16 hours x $8/hour = | $568 (total ST compensation) |
| $568 (total straight time compensation) ÷ 56 hours worked = | $10.14 (regular rate) |
| $10.14 (regular rate) x ½ = | $5.07 (additional half time premium) |
| $10.14 (regular rate) + $5.07= | $15.21 (overtime rate) |
| $10.14 (regular rate) x 40 hours= | $405.60 (total straight time earnings) |
| $15.21 (overtime rate) x 16 (overtime hours) | $243.36 (total overtime earnings) |
| **Total compensation** | **$648.96** |

**Terminology**

**Total Straight Time (ST) Compensation:**
All remuneration for employment (including shift differentials and bonuses) except those payments specifically excluded by statute. The most common statutory exclusions in the long term care industry are vacation, holiday, and sick pay.

**Total Hours Worked:**
All hours actually worked by an employee, excluding hours paid for vacation, holiday or sick leave.

**Regular Rate (RR):**
Total remuneration for employment ÷ by total hours worked. See Regulations 29 CFR 778.109.

**Half-Time Premium:**
Regular rate x ½.

7

**Overtime (OT) Rate:**
Regular rate + the half-time premium. See Regulations 29 CFR 778.107.

**Overtime (OT) Hours:**
Under the 40-hour workweek overtime plan: All hours worked over 40 in a workweek Under the 8 and 80 overtime system: All hours worked over eight in a day and 80 in a 14-day work period. See Regulations 29 CFR 778.101 and 778.601.

**Total Overtime (OT) Premium Pay:**
OT rate x OT hours. See Regulations 29 CFR 778.107.

**Straight Time (ST) earnings:**
ST hours x regular rate.

**Overtime (OT) Earnings:**
OT hours x OT rate.

**Total Earnings:**
ST earnings + OT earnings.

See Regulations 29 CFR 778.200 or call 1-866-4US-WAGE and request a copy of Regulation Part 778 Interpretative Bulletin on Overtime Compensation.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

The FLSA statute appears at 29 U.S.C. § 201 et seq. The federal regulations regarding hours worked appear in 29 C.F.R. Part 785.

When the state laws differ from the federal FLSA an employer must comply with the higher standard. Links to your state labor department can be found at www.dol.gov/whd/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                          **1-866-4-USWAGE**
Frances Perkins Building                                               TTY: 1-866-487-9243
200 Constitution Avenue, NW                                            **Contact Us**
Washington, DC 20210

| Week | M | Tu | W | Th | F | Sa | Su | Indiv Tot | Total | OT | Reg earned | Tot reg earned | Reg rate | OT earned | Total earned | Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/16/2018 | | | 10 | 8 | 10 | | | 28 | | | $336.00 | | | | | |
| | | 8 | | 8 | 8 | 8 | | 32 | 60 | 20 | $576.00 | $912.00 | $15.20 | $152.00 | $1,064.00 | $918.00 |
| 7/23/2018 | | | | | | | | 0 | | | $0.00 | | | | | |
| | | 8 | | 8 | 8 | | | 24 | 24 | 0 | $432.00 | $432.00 | $18.00 | $0.00 | $432.00 | $930.00 |
| 7/30/2018 | 4 | 4 | 9 | 8 | 4 | | | 29 | | | $348.00 | | | | | |
| | 5 | 8 | 8 | 8 | | | 5 | 34 | 63 | 23 | $612.00 | $960.00 | $15.24 | $175.24 | $1,135.24 | $960.00 |
| 8/6/2018 | 10 | 9 | 8 | 8 | 4 | | | 39 | | | $468.00 | | | | | |
| | | 8 | | 8 | 4 | | | 20 | 59 | 19 | $360.00 | $828.00 | $14.03 | $133.32 | $961.32 | $960.00 |
| 8/13/2018 | 4 | 10 | 10 | 9 | 11 | | | 44 | | | $528.00 | | | | | |
| | | 8 | | 8 | | 6 | | 22 | 66 | 26 | $396.00 | $924.00 | $14.00 | $182.00 | $1,106.00 | $948.00 |
| 8/20/2018 | 9 | 10 | 11 | 8 | 8 | | | 46 | | | $552.00 | | | | | |
| | | 8 | | 8 | 5 | | | 21 | 67 | 27 | $378.00 | $930.00 | $13.88 | $187.39 | $1,117.39 | $966.00 |
| 8/27/2018 | 9.5 | 9.5 | 8 | 10 | 9 | | | 46 | | | $552.00 | | | | | |
| | 0.5 | 8.5 | | | 9 | | | 17 | 63 | 23 | $306.00 | $858.00 | $13.62 | $156.62 | $1,014.62 | $894.00 |
| 9/3/2018 | | 9 | 9 | 9 | 9 | | | 36 | | | $432.00 | | | | | |
| | | 11 | | 9 | 1 | 8 | | 29 | 65 | 25 | $522.00 | $954.00 | $14.68 | $183.46 | $1,137.46 | $954.00 |
| 9/10/2018 | 9 | 9 | 9 | 9 | | | | 36 | | | $432.00 | | | | | |
| | 1 | 1 | 1 | 1 | | | 10 | 14 | 50 | 10 | $252.00 | $684.00 | $13.68 | $68.40 | $752.40 | $846.00 |
| 9/17/2018 | 10 | 9 | 8 | 6 | 6 | | | 39 | | | $468.00 | | | | | |
| | | 8 | | 8.5 | | 16 | 14 | 46.5 | 85.5 | 45.5 | $837.00 | $1,305.00 | $15.26 | $347.24 | $1,652.24 | $1,305.00 |
| 9/24/2018 | 8 | 7 | 9.5 | 9.5 | 7.5 | | | 41.5 | | | $498.00 | | | | | |
| | | 6 | 0.5 | 0.5 | | | 8 | 15 | 56.5 | 16.5 | $270.00 | $768.00 | $13.59 | $112.14 | $880.14 | $777.00 |
| 10/1/2018 | 4 | 6.5 | 9 | 9 | 4 | | | 32.5 | | | $390.00 | | | | | |
| | | | | 1 | | | 8 | 9 | 41.5 | 1.5 | $162.00 | $552.00 | $13.30 | $9.98 | $561.98 | $552.00 |
| 10/8/2018 | 9.5 | | 8.5 | 9 | 9 | | | 36 | | | $432.00 | | | | | |
| | 3.5 | | | 1.5 | 9 | | | 11 | 47 | 7 | $198.00 | $630.00 | $13.40 | $46.91 | $676.91 | $630.00 |
| 10/15/2018 | 9.5 | | 8 | 5 | 5 | | | 27.5 | | | $330.00 | | | | | |
| | 11 | 9 | 8 | 8 | | 17.5 | 6 | 59.5 | 87 | 47 | $1,071.00 | $1,401.00 | $16.10 | $378.43 | $1,779.43 | $1,401.00 |
| 10/22/2018 | 8 | 8 | 9.5 | 9.5 | 6 | | | 41 | | | $492.00 | | | | | |
| | | 8 | | 8 | 8 | | | 24 | 65 | 25 | $432.00 | $924.00 | $14.22 | $177.69 | $1,101.69 | $930.00 |
| 10/29/2018 | 8 | 8.5 | 8 | 10 | 9 | | | 43.5 | | | $522.00 | | | | | |
| | | | | | | | | 0 | 43.5 | 3.5 | $0.00 | $522.00 | $12.00 | $21.00 | $543.00 | $543.00 |
| 11/5/2018 | 12 | 10 | 10 | 10 | | | | 42 | | | $504.00 | | | | | |
| | 1 | 15 | | | 4 | 8 | 8 | 36 | 78 | 38 | $648.00 | $1,152.00 | $14.77 | $280.62 | $1,432.62 | $1,164.00 |
| 11/12/2018 | | | 9 | 7.5 | 8 | | | 24.5 | | | $294.00 | | | | | |
| | | | 6 | | | 6 | 8 | 20 | 44.5 | 4.5 | $360.00 | $654.00 | $14.70 | $33.07 | $687.07 | $654.00 |
| 11/19/2018 | | | 9 | 9.5 | 8 | | | 26.5 | | | $318.00 | | | | | |
| | | 8 | 0.5 | | | | 8 | 16.5 | 43 | 3 | $297.00 | $615.00 | $14.30 | $21.45 | $636.45 | $615.00 |
| 11/26/2018 | 12 | 8 | | | | | | 20 | | | $240.00 | | | | | |
| | | 5 | | 8 | | 10 | 8 | 31 | 51 | 11 | $558.00 | $798.00 | $15.65 | $86.06 | $884.06 | $798.00 |
| 12/3/2018 | 8 | 8 | 8 | 8 | 8 | | | 40 | | | $480.00 | | | | | |
| | 2 | | 1 | 3 | 1 | | | 7 | 47 | 7 | $126.00 | $606.00 | $12.89 | $45.13 | $651.13 | $606.00 |
| 12/10/2018 | 8 | 9.5 | 9 | 6 | 5 | | | 37.5 | | | $450.00 | | | | | |
| | | 13 | | 8 | | 8 | | 29 | 66.5 | 26.5 | $522.00 | $972.00 | $14.62 | $193.67 | $1,165.67 | $972.00 |
| 12/17/2018 | 12 | | | | | | | 12 | | | $156.00 | | | | | |
| | | | | | | | | 0 | 12 | 0 | $0.00 | $156.00 | $13.00 | $0.00 | $156.00 | $156.00 |
| | | | | | | | | | | | | | | | $21,528.81 | $19,479.00 |

| | |
|---|---|
| Earned | $21,528.81 |
| Paid | $19,479.00 |
| Owed | $2,049.81 |

| Week | M | Tu | W | Th | F | Sa | Su | Indiv Tot | Total | OT | Reg earned | Tot reg earned | Reg rate | OT earned | Tot earned | Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/31/2018 | | | | 7 | 7 | | | 14 | | | $182.00 | | | | | |
| | | | | 5 | | | 7 | 12 | 26 | | $234.00 | $416.00 | $16.00 | | $416.00 | $377.00 |
| 1/7/2019 | 10 | 8.5 | 8 | 12 | | | | 38.5 | | | $500.50 | | | | | |
| | 2 | | | | | | | 2 | 40.5 | 0.5 | $39.00 | $539.50 | $13.32 | $3.33 | $542.83 | $578.50 |
| 1/14/2019 | | | 8 | 8 | 9.5 | 8 | | 33.5 | | | $435.50 | | | | | |
| | | | | | | 0.5 | 8 | 8.5 | 42 | 2 | $165.75 | $601.25 | $14.32 | $14.32 | $615.57 | $601.25 |
| 1/21/2019 | 9 | 6.5 | 8 | 8 | 9 | | | 40.5 | | | $526.50 | | | | | |
| | | 8.5 | | | | | 10 | 18.5 | 59 | 19 | $360.75 | $887.25 | $15.04 | $142.86 | $1,030.11 | $890.50 |
| 1/28/2019 | 4 | | | 8 | 8 | | | 38 | | | $494.00 | | | | | |
| | | | | | | | 8 | 8 | 46 | 6 | $156.00 | $650.00 | $14.13 | $42.39 | $692.39 | $650.00 |
| 2/4/2019 | 8 | | 8 | 8 | 10 | | | 34 | | | $442.00 | | | | | |
| | | | | | | | 8 | 16 | 50 | 10 | $312.00 | $754.00 | $15.08 | $75.40 | $829.40 | $754.00 |
| 2/11/2019 | 4 | 9.5 | 12 | 8 | 1.5 | | | 35 | | | $455.00 | | | | | |
| | 7 | | 4.5 | 12 | 3.5 | | | 27 | 62 | 22 | $526.50 | $981.50 | $15.83 | $174.14 | $1,155.64 | $1,033.50 |
| 2/18/2019 | 4 | 9.5 | 9 | 8 | | | | 30.5 | | | $396.50 | | | | | |
| | | | | | | 7.5 | 9 | 16.5 | 47 | 7 | $321.75 | $718.25 | $15.28 | $53.49 | $771.74 | $718.25 |
| 2/25/2019 | 4 | 8 | 9 | 9 | 9 | | | 39 | | | $507.00 | | | | | |
| | 5 | | 11 | 10 | 2 | | | 28 | 67 | 27 | $546.00 | $1,053.00 | $15.72 | $212.17 | $1,265.17 | $1,053.00 |
| 3/4/2019 | | 6 | 8 | 4 | 8 | | | 26 | | | $338.00 | | | | | |
| | | 2 | | | | | 8 | 10 | 36 | | $195.00 | $533.00 | $14.81 | $0.00 | $533.00 | $533.00 |
| 3/11/2019 | 9.5 | | 9 | | 8 | | | 26.5 | | | $344.50 | | | | | |
| | | | | | | | 10.5 | 10.5 | 37 | | $204.75 | $549.25 | $14.84 | $0.00 | $549.25 | $549.25 |
| 3/18/2019 | 8 | 8 | 8 | 8 | 6.5 | | | 38.5 | | | $500.50 | | | | | |
| | | | | 8 | | | | 16 | 54.5 | 14.5 | $312.00 | $812.50 | $14.91 | $108.08 | $920.58 | $812.50 |
| 3/25/2019 | 8 | 8 | 8 | 10 | 4 | | | 38 | | | $494.00 | | | | | |
| | | | 12 | | | | | 12 | 50 | 10 | $234.00 | $728.00 | $14.56 | $72.80 | $800.80 | $793.00 |
| 4/1/2019 | 10 | 9 | 8 | 11.5 | 11 | | | 49.5 | | | $643.50 | | | | | |
| | | | | | | | 15 | 15 | 64.5 | 24.5 | $292.50 | $936.00 | $14.51 | $177.77 | $1,113.77 | $997.75 |
| 4/8/2019 | 8 | 7 | 4 | | 9.5 | | | 28.5 | | | $370.50 | | | | | |
| | | | | | | | 10.5 | 10.5 | 39 | | $204.75 | $575.25 | $14.75 | $0.00 | $575.25 | $575.25 |
| 4/15/2019 | 9.5 | 9.5 | 9 | 6 | 8 | | | 42 | | | $546.00 | | | | | |
| | | | | | 5 | | 11.5 | 16.5 | 58.5 | 18.5 | $321.75 | $867.75 | $14.83 | $137.21 | $1,004.96 | $861.25 |
| 4/22/2019 | 7 | 9.5 | 6 | 8.5 | 10 | | | 41 | | | $533.00 | | | | | |
| | | | | 12 | | | | 20 | 61 | 21 | $390.00 | $923.00 | $15.13 | $158.88 | $1,081.88 | $1,046.50 |
| 4/29/2019 | 7 | 8.5 | 8 | 8 | | | | 39.5 | | | $513.50 | | | | | |
| | | | | | | | 9 | 9 | 48.5 | 8.5 | $175.50 | $689.00 | $14.21 | $60.38 | $749.38 | $689.00 |
| 5/6/2019 | | 12 | 8.5 | 8 | 10.5 | | | 39 | | | $507.00 | | | | | |
| | | 0.5 | | | | 4 | 0.5 | 14 | 53 | 13 | $273.00 | $780.00 | $14.72 | $95.66 | $875.66 | $776.75 |
| 5/13/2019 | 10 | | 10 | 2.5 | 9 | | | 31.5 | | | $409.50 | | | | | |
| | | | | 6 | | | 4 | 10 | 41.5 | 1.5 | $195.00 | $604.50 | $14.57 | $10.92 | $615.42 | $604.50 |
| 5/20/2019 | 7.5 | | 6 | 8 | 8 | | | 29.5 | | | $383.50 | | | | | |
| | | | 4.5 | 10.5 | | | | 15 | 44.5 | 4.5 | $292.50 | $676.00 | $15.19 | $34.18 | $710.18 | $676.00 |
| 5/27/2019 | 10 | 10 | 9 | 9 | | | | 38 | | | $624.00 | | | | | |
| | 3 | 8.5 | 9 | 7.5 | 1 | 16 | 2.5 | 47.5 | 85.5 | 45.5 | $984.75 | $1,608.75 | $18.82 | $428.06 | $2,036.81 | $1,686.75 |
| 6/4/2019 | 10 | 10 | 10 | 10 | 10 | | | 50 | | | $650.00 | | | | | |
| | | | | | | | 5 | 5 | 55 | 15 | $97.50 | $747.50 | $13.59 | $101.93 | $849.43 | $812.50 |
| 6/10/2019 | 9 | 9 | 9 | 9 | 4 | | | 40 | | | $520.00 | | | | | |
| | 3 | 1 | 1 | 1 | | 4 | 4 | 14 | 54 | 14 | $273.00 | $793.00 | $14.69 | $102.80 | $895.80 | $793.00 |
| 6/17/2019 | 10 | 10 | 10 | 10 | 10 | | | 50 | | | $650.00 | | | | | |
| | 7 | 7.5 | | 4 | | | 4 | 22.5 | 72.5 | 32.5 | $438.75 | $1,088.75 | $15.02 | $244.03 | $1,332.78 | $1,153.75 |
| 6/24/2019 | 10 | 8 | 10 | 8 | 8 | | | 44 | | | $572.00 | | | | | |
| | 7 | | 10 | | | | | 17 | 61 | 21 | $331.50 | $903.50 | $14.81 | $155.52 | $1,059.02 | $903.50 |
| 7/1/2019 | 8 | 8 | 6 | | | | | 22 | | | $286.00 | | | | | |
| | | | | | | | | 0 | 22 | | $0.00 | $286.00 | $13.00 | $0.00 | $286.00 | $286.00 |
| 7/8/2019 | 9 | 8.5 | 9 | | | | | 35.5 | | | $461.50 | | | | | |
| | 1 | | 4 | 4 | 4 | | 10 | 23 | 58.5 | 18.5 | $448.50 | $910.00 | $15.56 | $143.89 | $1,053.89 | $910.00 |
| 7/15/2019 | 9 | 9 | 8 | 9 | 10.5 | | | 45.5 | | | $591.50 | | | | | |
| | 8 | 1 | | | | | 7 | 16 | 61.5 | 21.5 | $312.00 | $903.50 | $14.69 | $157.93 | $1,061.43 | $939.25 |
| 7/22/2019 | 8 | 9.5 | 7.5 | | 4 | | | 29 | | | $377.00 | | | | | |
| | 6 | 2.5 | | | 8 | | 8 | 24.5 | 53.5 | 13.5 | $477.75 | $854.75 | $15.98 | $107.84 | $962.59 | $854.75 |
| 7/29/2019 | 10 | 6 | 9 | 5 | 8 | | | 38 | | | $494.00 | | | | | |
| | | | | 8 | | 8 | 13 | 29 | 67 | 27 | $565.50 | $1,059.50 | $15.81 | $213.48 | $1,272.98 | $1,059.50 |
| 8/5/2019 | 8 | | | 9 | | | | 17 | | | $221.00 | | | | | |
| | | | | | | 9 | 4 | 13 | 30 | | $253.50 | $474.50 | $15.82 | $0.00 | $474.50 | $474.50 |
| 8/12/2019 | | 9 | 9 | 9 | 1 | | | 28 | | | $364.00 | | | | | |
| | | | | | 12 | 9 | 11 | 32 | 60 | 20 | $624.00 | $988.00 | $16.47 | $164.67 | $1,152.67 | $994.50 |
| 8/19/2019 | 4 | 7 | 7 | 7 | 7 | | | 34 | | | $442.00 | | | | | |
| | | 9 | | | 7 | 8 | 9 | 33 | 67 | 27 | $643.50 | $1,085.50 | $16.20 | $218.72 | $1,304.22 | $1,085.50 |
| 8/26/2019 | 9.5 | 7 | 6.5 | 8 | 9 | | | 40 | | | $520.00 | | | | | |
| | 2.5 | | | | | | | 2.5 | 42.5 | 2.5 | $48.75 | $568.75 | $13.38 | $16.73 | $585.48 | $568.75 |
| 9/2/2019 | | 11 | 6 | 11 | 8 | | | 36 | | | $468.00 | | | | | |
| | | 1 | 7 | 7 | | | 8 | 23 | 59 | 19 | $448.50 | $916.50 | $15.53 | $147.57 | $1,064.07 | $916.50 |
| 9/9/2019 | 10.5 | 9.5 | 8 | 9 | 4 | | | 41 | | | $533.00 | | | | | |
| | 0.5 | 0.5 | | 4 | | | 7 | 12 | 53 | 13 | $234.00 | $767.00 | $14.47 | $94.07 | $861.07 | $773.50 |
| 9/16/2019 | 8 | 9.5 | 6 | 9.5 | 4 | | | 37 | | | $481.00 | | | | | |

| Date | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 0.5 | | 0.5 | | 12 | 12 | 25 | 62 | 22 | $487.50 | $968.50 | $15.62 | $171.83 | $1,140.33 | $968.50 |
| 9/23/2019 | 5.5 | 8 | 7 | 9 | 6 | | | 35.5 | | | | $461.50 | | | | |
| | | | 7 | 5 | | | | 12 | 47.5 | 7.5 | $234.00 | $695.50 | $14.64 | $54.91 | $750.41 | $695.50 |
| 9/30/2019 | 5.5 | | 4 | | 4 | | | 13.5 | | | | $175.50 | | | | |
| | | | | | | 13 | 8 | 21 | 34.5 | | $409.50 | $585.00 | $16.96 | $0.00 | $585.00 | $572.00 |
| 10/7/2019 | 10 | 4 | | 4 | 6.5 | | | 24.5 | | | | $318.50 | | | | |
| | 2 | | | | | 4 | | 6 | 30.5 | | $117.00 | $435.50 | $14.28 | $0.00 | $435.50 | $422.50 |
| 10/14/2019 | | 12 | 12 | 5 | 4 | | | 33 | | | | $429.00 | | | | |
| | 4 | 8 | | | | | | 12 | 45 | 5 | $234.00 | $663.00 | $14.73 | $36.83 | $699.83 | $643.50 |
| 10/21/2019 | 10 | 8 | 9 | 8 | 8 | | | 43 | | | | $559.00 | | | | |
| | 1 | | 8 | | | | | 9 | 52 | 12 | $175.50 | $734.50 | $14.13 | $84.75 | $819.25 | $767.00 |
| 10/28/2019 | | | | | | | | 0 | | | | $0.00 | | | | |
| | | | | | | | 10 | 10 | 10 | | $195.00 | $195.00 | $19.50 | $0.00 | $195.00 | $195.00 |
| 11/4/2019 | 9 | 11 | 11 | 12 | 9 | | | 52 | | | | $676.00 | | | | |
| | 4.5 | | | | | | | 4.5 | 56.5 | 16.5 | $87.75 | $763.75 | $13.52 | $111.52 | $875.27 | $841.75 |
| 11/11/2019 | | 9 | | 10.5 | 10.5 | | | 30 | | | | $390.00 | | | | |
| | 12 | | 0.5 | 0.5 | 10.5 | | | 23.5 | 53.5 | 13.5 | $458.25 | $848.25 | $15.86 | $107.02 | $955.27 | $848.25 |
| 11/18/2019 | 10 | 9 | 9.5 | | | | | 28.5 | | | | $370.50 | | | | |
| | 13 | 4.5 | | | 8 | | | 25.5 | 54 | 14 | $497.25 | $867.75 | $16.07 | $112.49 | $980.24 | $867.75 |
| 11/25/2019 | 8 | | | | | | | 8 | | | | $104.00 | | | | |
| | 0 | 8 | | | | | | 0 | 8 | | $0.00 | $104.00 | $13.00 | $0.00 | $104.00 | $104.00 |
| 12/2/2019 | 9.5 | 8 | 8 | 6 | 11 | | | 42.5 | | | | $552.50 | | | | |
| | 4.5 | | | | | 10 | 10 | 24.5 | 67 | 27 | $477.75 | $1,030.25 | $15.38 | $207.59 | $1,237.84 | $1,046.50 |
| 12/9/2019 | 8 | 6 | 11 | 10 | 5.5 | | | 40.5 | | | | $526.50 | | | | |
| | 14 | | | 4 | | 6 | 8 | 32 | 72.5 | 32.5 | $624.00 | $1,150.50 | $15.87 | $257.87 | $1,408.37 | $1,244.75 |
| 12/16/2019 | 12 | 10.5 | 4 | 8 | 6 | | | 40.5 | | | | $526.50 | | | | |
| | 2 | 6 | | | | 12 | | 20 | 60.5 | 20.5 | $390.00 | $916.50 | $15.15 | $155.27 | $1,071.77 | $919.75 |
| 12/22/2019 | 10.5 | 7 | | | | | | 17.5 | | | | $227.50 | | | | |
| | 8.5 | | | | | | | 8.5 | 26 | | $165.75 | $393.25 | $15.13 | $0.00 | $393.25 | $393.25 |
| | | | | | | | | | | | | | | | $44,753.04 | $40,313.00 |

| | |
|---|---|
| Earned | $44,753.04 |
| Paid | $40,313.00 |
| Owed | $4,440.04 |
| | |
| 2018 owed | $2,049.81 |
| 2019 owed | $4,440.04 |
| Total owed | $6,489.85 |
| 2018 paid | $855.00 |
| 2019 paid | $1,072.50 |
| Total owed | $4,562.35 |



**COLORADO**
Department of
Labor and Employment

**Division of Labor Standards and Statistics**
633 17th Street, Suite 600
Denver, CO 80202-2107
Phone: (303) 318-8441 | Toll-free: (888) 390-7936
Fax: (303) 318-8400 | www.colorado.gov/cdle/labor

<u>**COLORADO DIVISION OF LABOR STANDARDS AND STATISTICS**
**NOTICE OF ASSESSMENT #2829-20**</u>

**I. Wages Owed and Full Penalties and Fines**

On January 8, 2021, as described in the preceding Citation, the Colorado Division of Labor Standards and Statistics has determined the employer owes the following, and is ordered to pay:

     a. Total Wages earned on or after January 1, 2015 (to the claimant):  $4,562.35

     b. Total Penalties (to the claimant): $8,112.31

     c. Total Fines (to the Division): $1,850.00

**II. Wages Owed and Reduction or Waiver of Penalties and Fines**

The Division is offering to reduce the penalties listed above by 50%, and reduce or waive the above fines, if the employer pays the claimant <u>the total wages owed within fourteen calendar days of this Citation and Notice of Assessment</u>:

     a. Total Wages earned on or after January 1, 2015 (to the claimant): $4,562.35

     b. Reduced Penalties (to the claimant): $4,056.16

     c. Waived/Reduced Fines (to the Division): $0.00

Payment of wages and reduced penalties must be made to the claimant by **January 22, 2021.** The payment may be made by mailing payment made out to the claimant, to the claimant's home address: ████████████ ████████

Please note that although the wages owed may be taxable, the penalties ordered above are not considered wages for purposes of withholding federal or state taxes.

The employer must immediately provide to the Division written proof of the payment which includes: gross wages owed, net wages paid, method of payment (check, direct deposit, etc.), check numbers or bank of deposit, and the address payment was sent to, if sent by mail.

**III. Failure to Pay the Claimant by January 22, 2021**

The employer is liable for all unpaid wages, full penalties on those wages, and the full fines listed in Section I above if the total wages ordered are not paid to the claimant within 14 days.

The payment of the fines must be made by mailing or hand delivering a check, made out to the Colorado Division of Labor Standards and Statistics-Wage Theft Enforcement Fund, to 633 17th Street, Suite 600 Denver, CO 80202.  The proof of paying the wages to the claimant within 14 days must also be sent to this address. Please indicate the claim number on the check.

Colorado Wage Complaint #2829-20
████████ ████████ vs. Warning Lites Inc. of Colorado



App. Vol. I 230

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-00434-PAB-STV**

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

      **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

      **Defendant.**

---

**ORDER GRANTING MOTION FOR ORDER CERTIFYING DETERMINATIVE QUESTION OF COLORADO LAW TO THE COLORADO SUPREME COURT**

---

This matter comes before the Court on the Plaintiff's Motion for Order Certifying Determinative Question of Colorado Law to the Colorado Supreme Court. Having reviewed the Motion and any opposition thereto, the Court hereby GRANTS the Motion and ORDERS as follows:

### RELEVANT FACTS AND PROCEDURAL BACKGROUND

The facts relevant to the question certified and showing fully the nature of the controversy in which the question arose are as follows:

1.    The Plaintiff has been employed by the Defendant as a warehouse worker since November of 2017.

2.      Throughout his employment, the Plaintiff has been paid an hourly rate, plus various incentive payments to encourage him to work additional shifts, stay late, or work on less appealing days.

3.       One of these incentives is the offer to be paid time and a half for working on a designated company holiday, even though the Plaintiff would get paid for not working on that holiday.

4.      At all times relevant to this action, if the Plaintiff worked on a designated company holiday, the Defendant paid the Plaintiff both holiday pay and time and a half of his agreed upon rate for the hours worked on the designated holiday, irrespective of overtime.

5.      At all times relevant to this action, the Defendant failed to include the time and a half premium payment for working on a designated company holiday in the calculation of the Plaintiff's regular rate of pay for overtime purposes.

6.      The Plaintiff brought this action in Colorado state court alleging one violation of Colorado Wage and Hour Law: (1) that the Defendant failed to pay the Plaintiff all overtime earned during weeks that he worked on a company designated holiday and in excess of 40 hours.

7.      The Defendant removed the case to this Court and filed a Motion to Dismiss in which it argued, inter alia, that the Plaintiff's complaint fails to state a claim upon which relief may be granted.

8.      This argument is based upon the following premises: (1) neither federal nor Colorado law require holiday pay to be included in the regular rate of pay, and the holiday time and a half pay is a type of holiday pay; and (2) an FLSA exemption related to the calculation of the regular rate of pay for premiums paid for working on holidays (and other less desirable workdays) should be read

into Colorado Wage and Hour Law and, the Plaintiff's claim fails as a matter of law as a result of the FLSA regulations.

## **FINDINGS AND CONCLUSIONS**

The Court finds that the question of whether a premium paid for working on a holiday can be excluded from the calculation of the regular rate for overtime purposes under Colorado Wage and Hour Law is close, important, novel, and determinative, and accordingly, the Court CERTIFIES the following question to the Colorado Supreme Court:

> Whether a premium payment paid at the rate of one and a half times the worker's agreed upon rate for time worked on a holiday, irrespective of overtime, may be excluded from the calculation of the regular rate of pay for overtime purposes under Colorado Wage and Hour Law.

Pursuant to C.A.R. 21.1(d), the Clerk shall forward this Order to the Colorado Supreme Court under the Clerk's official seal, and the Clerk shall, if and when requested by the Colorado Supreme Court, forward the original copies of any portion of the record which the Colorado Supreme Court may determine necessary.

DATED this _____ day of 2022.

By:

_____
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00434-PAB

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

      **Plaintiff,**

v.

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

      **Defendant.**

---

## [PROPOSED] SCHEDULING ORDER

---

### 1.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

Date of conference: May 11, 2022 at 3:15 p.m.

Counsel for Plaintiff:

      David H. Miller
      THE SAWAYA & MILLER LAW FIRM
      1600 Ogden Street
      Denver, Colorado 80218
      Telephone: 303-551-7667
      Fax: 720-235-4380
      E-mail: dhmiller@sawayalaw.com

Counsel for Defendant:

      Jennifer S. Harpole
      LITTLER MENDELSON, P.C.
      1900 Sixteenth Street, Suite 800
      Denver, CO 80202
      Telephone: 303.629.6200
      Fax: 303-629-0200
      E-mail: jharpole@littler.com

## 2. STATEMENT OF JURISDICTION

Plaintiff filed this individual and putative class action in the Arapahoe County State District Court on January 14, 2022, alleging a state law wage and hour claim against the Defendant (Doc. #5 at pp. 4–5, ¶¶ 20, 23–24).[1] On February 17, 2022, Defendant filed its Notice of Removal in the United States District Court for the District of Colorado. Doc. #1 at p. 1, alleging diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), 1444, 1453, and 1711-1715. Plaintiff has not contested that jurisdiction or removal.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.    **Plaintiff's claims:**

1.    Dan Hamilton, on behalf of himself and a class of similarly situated employees (collectively, "Plaintiffs") alleges that Defendant violated the Colorado Wage and Hour Law by failing to pay all overtime owed during weeks in which he worked on a company designated holiday ("Company Holiday") and in excess 40 hours. The Plaintiff, and those similarly situated to him are all classes of U.S. non-exempt hourly employees who worked for Defendant in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a Company Holiday. The Plaintiff alleges that the Defendant failed to pay all overtime owed due to its uniform policies and practices of offering to pay time and a half for all hours actually worked on a company designated holiday, but then failing to include that premium rate in the calculation of the regular rate for that week. Defendant asserts

---

[1] Defendant has averred that Defendant's actual name is Amazon.com Services LLC, with no comma separating the word "Services" from the letters "LLC." *See* Doc. #1 at p.1.*Compare,* Doc. #1-1 at p. 1. Based on Defendant's representation the Plaintiff does not object to an amendment of the caption to remove that comma.

that having paid a premium for time worked on a holiday it satisfied the requirements to pay appropriate overtime payment without taking into account that premium time in determining the regular rate of pay for calculating overtime hours worked during that week when the clear requirements of state law require that the actual hours worked on the holiday at a premium rate be *included* in calculating a worker's regular rate of pay with respect to the payment of overtime earned during that work week. Plaintiff freely acknowledges that under the federal law set out in the Fair Labor Standards Act (29 U.S.C. 201 et. seq., hereinafter FLSA) when an employer pays for regular time worked on a holiday at a premium rate it *is not required* to include that premium rate into calculating that employee's regular rate of pay for overtime purposes for that work week. What the Defendant has ignored throughout is that Colorado state law is abundantly clear that under Colorado wage and hour law employees are provided additional protection and that if they actually work at a premium rate on a holiday then that rate *does* have to be included in calculating the regular rate of pay for overtime worked during that work week.

**b.    Defendant's defenses:**

As stated in Amazon's pending motion to dismiss, Colorado regulations state that holiday pay does not need to be included in the regular rate of pay for overtime calculations.  7 CCR 1103-1.  There is no Colorado law, regulation, case law, or agency interpretation/guidance holding otherwise.  Every state in the country follows the FLSA on this issue and provides that if an employee is paid 1.5 times their regular base pay for working on a holiday, that premium pay need not be included in calculating the regular rate of pay for overtime purposes.  29 U.S.C. § 207(e)(6).  Colorado is no different and this case should be dismissed for failure to state a claim.

The case should be dismissed and Plaintiff's pending motions for Rule 23 certification and certification of the legal issue to the Colorado supreme court should be denied.  Moreover, Plaintiff has failed to raise any factual allegations which would support his conclusory assertion that Amazon committed a willful violation which would extend the statute of limitations to three years instead of two.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1.    Plaintiff Dan Hamilton ("Hamilton") is currently employed as Defendant's employee in Colorado.

2.    Defendant operates multiple AMZL workplaces and fulfillment centers in the state of Colorado.

3.    Defendant is an "employer" within the meaning of C.R.S. 8-4-101(6).

4.    Plaintiff has been classified as a non-exempt hourly employee throughout his employment with Amazon.

5.    Amazon paid Hamilton time-and-a-half his base rate of pay for all hours spent working on Company holidays.

6.    Amazon did not include the premium pay for working on a holiday when calculating the regular rate of pay for overtime purposes during weeks that Hamilton worked on a Company holiday.

## 5. COMPUTATION OF DAMAGES

**Plaintiff:**

A plaintiff who prevails on his/her overtime claims under Colorado wage and hour law as demanded in his complaint where the back wages demanded are not paid within 14 days of the date of the service of the complaint is entitled not only to back wages of $143.54 (Doc. #5 at p. 7, ¶ 143.54), but also statutory penalties under C.R.S. 8-4-109(3), and attorney's fees and costs. The penalties alone in this case are conservatively estimated (by *Defendant*) as $9,185,508.00. (Doc. #1 at p. 9, ¶ 34).

**Defendant:**

Defendant does not seek damages *per se*, but will seek an award of its attorney's fees and costs incurred in defending this action.

**6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING
UNDER FED. R. CIV. P. 26(f)**

a.     **Date of Rule 26(f) meeting:** April 6, 2022. The parties met via Zoom conference.

b.     **Names of each participant and party he/she represented:** Plaintiff was represented by David H. Miller and Victoria Guzman. Defendant was represented by Jennifer Harpole and Sarah Watt.

c.     **Statement as to when Rule 26(a)(1) disclosures will be made:** Each party will serve his/its initial disclosures on or before May 11, 2022.

d.     **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):** *See* above.  Because the Court vacated the initial scheduling conference in this matter pending ruling on Defendant's Motion to Stay, the parties have agreed to May 11 for the exchange of initial disclosures.

e.     **Statement concerning any agreements to conduct informal discovery:** There is no agreement to conduct informal discovery.

5

f.      **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:** The parties agree to mark all documents produced in discovery with Bates numbering. The parties also agree to the use of a unified exhibit numbering system.

g.      **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:** The parties anticipate that certain records maintained by Defendant such as pay records and electronic communications are maintained and may be produced in electronic form. Reasonably accessible electronically stored information ("ESI") may be produced in any reasonably usable form (in accordance with Fed. R. Civ. P. 34(a)(1)(A)), including PDF, searchable PDF, to the extent possible, or TIFF format with a load file. Excels, non-redacted PowerPoints, and audio-video files will be produced in their native format.

h.      **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:** To date, the parties have engaged in telephone discussions regarding the potential of an informal settlement or resolution. The parties are not able to resolve the case at this time.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a.      **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:** None.

b.      **Limitations which any party proposes on the length of depositions:** Each deposition shall be limited to one day of 7 hours.

c.      **Limitations which any party proposes on the number of requests for production and/or requests for admission:** The parties propose that requests for production and requests for admission be limited to 25 per side.

d.      **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**  The parties will serve interrogatories, requests for production, and requests for admission regarding liability on opposing counsel on or before 45 days prior to the discovery cut-off date.  As noted below, the deadline for damages discovery shall be determined after the Court's ruling on Defendant's Motion to Dismiss.

e.      **Other Planning or Discovery Orders:**  The Court orders discovery bifurcated between liability and damages.  No damages discovery shall proceed until after the Court's ruling on Defendant's Motion to Dismiss (Dkt. #15).  If the Motion to Dismiss is denied, the Parties will submit a proposed Amended Scheduling Order to the Court.

No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(a).

The parties anticipate filing a motion or stipulation for entry of a Protective Order.

### 9. CASE PLAN AND SCHEDULE

a.      **Deadline for Joinder of Parties, Amendment of Pleadings, and Outstanding Motions:** June 8, 2022.

Defendant's Motion to Dismiss (Dkt. #15) has been fully briefed since April 7 and is currently pending. On April 14, 2022, Plaintiff filed a Motion to Certify Determinative Question of Colorado

Law to the Colorado Supreme Court (Dkt. #27). Defendant will file its response on May 5, 2022. Also on April 14, 2022, Plaintiff filed a Motion to Certify Class Action ("Motion to Certify") (Dkt. #26). On May 2, 2022, the parties jointly moved the Court to extend the briefing schedule on the Motion to Certify such that Defendant's response will be due June 2 and Plaintiff's reply will be due June 30 (Dkt. #31).  The Court granted the Motion on May 3, 2022.

b.      **Discovery Cut-off:** For discovery related to liability:  October 27, 2022. For damages discovery: to be determined after the Court's ruling on the Motion to Dismiss.

c.      **Dispositive Motion Deadline, if any**: To be determined after the Court's ruling on the Motion to Dismiss.

d.      **Expert Witness Disclosure:**

1.      The parties shall identify anticipated fields of expert testimony, if any: Because the issues in this case are primarily legal (i.e., requiring interpretation of existing federal and state law) rather than factual, the parties do not currently anticipate using expert witnesses.

2.      Limitations which the parties propose on the use or number of expert witnesses: In the event expert witnesses are used, two per side.

3.      The deadline for the parties to designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) shall be determined after the Court's ruling on the Motion to Dismiss.

4.      The deadline for the parties to designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) shall be determined after the Court's ruling on the Motion to Dismiss.

e.      **Identification of Persons to Be Deposed:**

1.      Plaintiff:

i.      Defendant's employees, managers, and policy makers of Colorado employee practices relating the claims made here, as well as named Defendant's employees identified through discovery, and through representatives designated to provide testimony under Fed. R. Civ. P. 30(b)(6), and/or as witnesses designated by Defendant. Plaintiff anticipates 7 hours for each deposition.

ii.      Individuals who were involved in creating and implementing the policies and practices at issue in this case, and witnesses with knowledge of such policies and practices, and the harm created thereby. Plaintiff is not currently in possession of the identities of such individuals but will seek this information in discovery.

2.      Defendant:

i.      Plaintiff.

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times: As needed.

b.      A final pretrial conference will be held in this case on _____ at o'clock _____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

b.      Anticipated length of trial and whether trial is to the court or jury: Plaintiff anticipates that a trial of this matter will last 3-5 days. Defendant anticipates that: the length of trial if no class is

certified will be 3-5 days. The parties agree to confer with each other and the Court for the need to supplement the Scheduling Order with respect to post-class certification proceedings, if applicable.

c.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439: None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _____ day of _____, 2022.

BY THE COURT:


_____
United States Magistrate Judge


APPROVED:


*David H. Miller*_____
David H. Miller, Esq.
Victoria E. Guzman, Esq.
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303-839-1650
E-mail: DHMiller@sawayalaw.com
          VGuzman@sawayalaw.com

Counsel for Dan Hamilton, individually and on behalf of all others similarly situated


*Jennifer S. Harpole*_____
Jennifer S. Harpole, Esq.
Sarah K. Watt, Esq.
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Fax: 303-629-0200
E-mail: jharpole@littler.com
          swatt@littler.com

Counsel for Amazon.com Services LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-00434-PAB-STV

DAN HAMILTON, Individually and on behalf of
all others similarly situated,

                Plaintiff,

v.

AMAZON.COM SERVICES, LLC,

              Defendant.

---

**DEFENDANT AMAZON.COM SERVICES LLC'S OPPOSITION TO PLAINTIFF'S
MOTION FOR ORDER CERTIFYING DETERMINATIVE QUESTION OF COLORADO
LAW TO THE COLORADO SUPREME COURT**

---

**I.     INTRODUCTION**

      The Court should deny Plaintiff's Motion for Order Certifying Determinative Question of

Colorado Law to the Colorado Supreme Court ("Motion for Order") because the legal question

presented is not close:  Applicable regulations state that holiday pay does not need to be included

in the regular rate of pay for overtime calculations.  The issue presented is only novel in that no

other plaintiff has ever tried to propose that such a requirement exists in Colorado despite the plain

regulatory language to the contrary.  There is no split of authority that the Colorado Supreme Court

must resolve.  Instead, this Court is more than capable of correctly deciding this issue and ruling

on Defendant Amazon.com Services LLC's ("Defendant" or "Amazon") pending Motion to

Dismiss (Dkt. #15), without input from its sister state court.

## II.     ARGUMENT

### A.     Certification of a Question to the Colorado Supreme Court Is Disfavored.

The Colorado Supreme Court may answer a question of law that is certified to it which "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the [Colorado] supreme court." Colo. R. App. P. 21.1(a). As Plaintiff states, certification may be appropriate where a legal question is "close, important, novel, and determinative." *Larrieu v. Best Buy Stores, L.P.*, 491 F. App'x 864, 868 (10th Cir. 2012).

Although certification of a question to the Colorado Supreme Court is left to the Court's discretion, *Anderson Living Tr. v. Energen Res. Corp.,* 886 F.3d 826, 839 (10th Cir. 2018), certification "is *not to be routinely invoked* whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (emphasis added); *see United States v. Durango & Silverton Narrow Gauge Railroad Company,* No. 19-cv-01913-REB-NRN, 2020 WL 2840138, *2 (D. Colo. June 1, 2020) ("Although available, certification should be used sparingly."). In fact, "[c]ertification is never compelled, even when there is no state law governing an issue." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999) (citation omitted).

Rather, the Court "must . . . bear in mind that, in a diversity case, we have a 'duty to decide questions of state law even if difficult or uncertain.'" *Sullivan v. Nationwide Affinity Insurance Company of America*, 842 F. App'x 251, 253 (10th Cir. 2021) (quoting *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012)). Put another way, the Court has "a duty to decide difficult or unsettled questions of state law and will do so if there is a 'reasonably clear and principled

2

course.'" *Ratcliff v. Good Times Restaurants, Inc.*, No. 19-cv-00077- LTB-MEH, 2019 WL 2774217, at *2 (D. Colo. July 2, 2019) (quoting *Pino v. United States,* 507 F.3d 1233, 1236 (10th Cir. 2007)).  "[W]e will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pino*, 507 F.3d at 1236.

**B.    The Court Should Decline to Certify the Proposed Question to the Colorado Supreme Court.**

**1.    This Matter Does Not Present a Close Question**

Plaintiff's legal theory is that holiday pay in the form of premium pay for working on a holiday must be included in the regular rate of pay for overtime purposes.  Plaintiff asserts in the Motion for Order that "neither the Colorado Supreme Court, nor the Colorado Court of Appeals, nor the CDLE [Colorado Department of Labor and Employment] has addressed" his theory (Dkt. #27, p. 3).  That admission is incomplete and only partially correct.  As extensively discussed in Amazon's Motion to Dismiss and Reply, the CDLE *has* addressed this issue by specifically excluding holiday pay from the regular rate for purposes of calculating overtime.  (*See* Dkt. #15, pp. 5-7 and Dkt. #24, pp. 3-4).  Considering the CDLE's regulations explicitly reject Plaintiff's theory, it unsurprising that there is no CDLE guidance or decision that has gone contrary to its own regulations and adopted Plaintiff's theory. Likewise, federal law expressly rejects his theory, and no state in the union has adopted it.  (*See* Dkt. #15 and Dkt. #24). No state or federal court at any level has addressed, much less adopted, his theory. Ultimately, this Court need only accept the CDLE's exclusion of holiday pay from the regular rate to grant Amazon's Motion to Dismiss and dispose of this case in its entirety.

Despite the lack of literally any legal support from any source for his theory and a wealth of authority demonstrating that it is meritless, Plaintiff argues this is a "close" question.  (Dkt. #27,

p.8-9). But it is not. As support, he cites *Larrieu,* 491 F. App'x at 866, for the proposition that a question is close if both parties have strong arguments. (Dkt. #27, p. 9). But in finding both sides had strong arguments and certifying a question to the Colorado Supreme Court, the *Larrieu* court laid out an exhaustive, multi-page recitation of the statutory and case law underpinnings of each side's arguments. 491 F. App'x at 866-68.[1]

The situation here bears no resemblance to the situation the *Larrieu* court addressed, as Plaintiff has not provided any legal support for his theory. Rather, Plaintiff only cites inapplicable authority regarding shift differentials from a federal court in Iowa, *Bell v. Iowa Turkey Growers Cooperative*, 407 F. Supp. 2d 1051, 1056–62 (S.D. Iowa 2006) and a citation from the CDLE.[2] (Dkt. #27-1). The issue in this case also bears no resemblance to *Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789 (D. Colo. 2017) which Plaintiff cites for the notion that the parties need only have "plausible" arguments. (Dkt. #27, p. 9). The Court in *Hernandez* certified a question *sua sponte* and, in doing so, spent 10 pages going through the relevant statutory and case law authorities, the latter of which had reached "differing answers." *Hernandez,* 250 F. Supp. 3d at 791-92, 794-801. Plaintiff's argument here is not a plausible reading of the law; rather, it is a request that the Court re-write the law. There is not a close question here and the Motion for Order should be denied.

---

[1] Notably, the *Larrieu* court also rested its decision to certify a question in part on the fact that the Colorado Supreme Court had previously granted certiorari to answer the very same question, but as the parties in that prior matter ultimately settled, did not get the chance to answer it. *Id.* at 868.

[2] Ironically, the CDLE decision Plaintiff submitted actually *supports* Amazon's position; *i.e.*, supports dismissal of the action, as the CDLE stated that "the Colorado Minimum Wage Order *was intended to mirror the FLSA*." (Dkt. #27.1, n.4) (emphasis added). Without question, the FLSA excludes premium pay for working on a holiday from the calculation of the regular rate. 29 U.S.C. § 207(e)(6). As fully described in Amazon's moving papers and reply, the Court should read Colorado law "harmoniously" with the FLSA. (Dkt. #15, p.7-10, Dkt. #24, p.6-8).

### 2.   This Court Is Capable of Interpreting Colorado Law.

The Tenth Circuit Court of Appeals has repeatedly stated, in various formulations, that both it and the District Courts "have a 'duty to decide questions of state law even if difficult or uncertain.'" *Sullivan*, 842 F. App'x at 253. "Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino*, 507 F.3d at 1236. Where there are "well-established principles of construction" and the parties have "fully and cogently addressed the relevant authorities in their briefing," there is such a reasonably clear and principled course. *See Durango & Silverton,* 2020 WL 2840138 at *2 (declining to certify a question to the Colorado Supreme Court), *see also Sullivan v. Nationwide Affinity Insurance Company of America*, 439 F.Supp.3d 1236, 1239 (D. Colo. 2020) (denying motion to certify question, stating "[t]here may be no binding Colorado authority answering the precise question before the Court, but the controlling principles . . . are well-established.") *affirmed by, Sullivan*, 842 F. App'x at  253.

Statutory interpretation principles are, indeed, well-established. Binding precedent makes clear that "where a state law is patterned after a federal law or designed to implement its policies, federal constructions of the law 'should be accorded great weight.'" *See Deherrera v. Decker Truck Line, Inc.,* 820 F.3d 1147, 1161 (10th Cir. 2016) (quoting *People v. Gallegos,* 251 P.3d 1056, 1062 (Colo. 2011); *Gomez v. JP Trucking, Inc.,* 490 P.3d 977, 983 (Colo. App. 2020), cert. granted, No. 20SC950, 2021 WL 2769816 (June 28, 2021) (same, holding that Colorado wage law's exemptions are "largely patterned after the FLSA" and rejecting the holding of *Brunson v. Colo. Cab Co., LLC*, 433 P.3d 93, 97 (Colo. App. 2018)). Courts "may not read a restriction into

the Wage Order that was not placed there by the Department." *Gomez*, 490 P.3d at 984. Ultimately, courts are to "read … the FLSA and Colorado law 'harmoniously.'" *Ott v. Chacha in Art LLC,* 506 F. Supp. 3d 1133, 1141 (D. Colo. 2020) (citation omitted). As stated by the CDLE in the decision Plaintiff attached to his Motion for Order, "the Colorado Minimum Wage Order *was intended to mirror the FLSA*." (Dkt. #27.1, n.4) (emphasis added). Defendant respectfully submits that this Court is more than capable of applying the foregoing principles and authorities to decide the Motion to Dismiss.

### 3.    Defendant Objects to the Proposed Order.

Should the Court, despite the foregoing, decide to certify a question to the Colorado Supreme Court, Amazon objects to the formulation of the factual background and legal question presented in Plaintiff's Proposed Order (Dkt. #27-2). If the Court determines to certify a question to the Supreme Court, Defendant requests that the Court order the parties to meet and confer on an appropriate factual recitation and question to be submitted to the Supreme Court.

Non-exhaustively, Amazon objects that the factual recitation includes allegations from Plaintiff some of which are irrelevant and others of which have not been admitted or stipulated to by Amazon. For example, there is no need to discuss "various incentive payments" in Paragraph 2 and Amazon disagrees with the characterization of such payments in Paragraphs 2 and 3. Plaintiff's recitation of alleged facts is designed to inaccurately characterize Amazon's "Holiday O/T" pay for working on a holiday as a shift differential while federal law explicitly treats pay for working on a holiday and shift differentials differently with respect to the regular rate. *Compare* 29 C.F.R. § 778.207(a) (holiday premium pay) *with* 29 C.F.R. § 778.207(b) (shift differentials); *see* Dkt. #15, p. 9-10.

6

Amazon further objects to Plaintiff's mischaracterization of its arguments in the Motion to Dismiss. (Dkt. #27-2 at p. 2, ¶ 8). First, Plaintiff's characterization fails to state Amazon's key argument that the CDLE has already addressed this issue in its favor by stating that holiday pay need not be included in the regular rate for overtime. It goes on to misstate Amazon's additional argument that, given that the CDLE has never given any indication nor given Colorado employers any reason to believe that Colorado does not follow federal law in this area, Colorado law should be read harmoniously with federal law. And it fails to note that, under the FLSA, premium pay for working on a holiday and shift differential pay are not the same, so Plaintiff is incorrect to conflate them in this case.  (Dkt. #15, p.9-10; Dkt. #24, p.4-8).  Rather than rewrite the entire proposed order here, Amazon submits that it would be a more efficient use of the parties' time and judicial resources to direct the parties to jointly prepare a mutually agreeable submission in the event this Court decides to certify the issue.

## <u>CONCLUSION</u>

The Court should deny the Motion for Order because this is not a close legal issue where there are conflicting decisions requiring appellate review and resolution.  Instead, Plaintiff has attempted to manufacture a violation of Colorado law where none exists and cites no authority whatsoever that actually supports his legal theory. This Court can and should readily decide Amazon's Motion to Dismiss without input from its sister state court.  However, if the Court grants the Motion for Order, it should not enter Plaintiff's Proposed Order.  Rather, the Court should order the parties to meet and confer on an appropriate order and question to be submitted to the Colorado Supreme Court.

Dated: May 5, 2022

Respectfully submitted,

*s/ Jennifer S. Harpole*
Jennifer S. Harpole
Sarah K. Watt
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
jharpole@littler.com
swatt@littler.com
Telephone:   303.629.6200
Facsimile:    303.629.0200

**Attorneys for Defendant
Amazon.com Services LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2022, I electronically filed the foregoing **DEFENDANT AMAZON.COM SERVICES LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER CERTIFYING DETERMINATIVE QUESTION OF COLORADO LAW TO THE COLORADO SUPREME COURT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
*Attorneys for Plaintiff*

*s/ Vicky Ramirez*
Vicky Ramirez

4863-6353-8973.4 / 096748-1008

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 253

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00434-PAB

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

       **Plaintiff,**

v.

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

       **Defendant.**

---

## SCHEDULING ORDER

---

### 1.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

Date of conference: May 11, 2022 at 3:15 p.m.

Counsel for Plaintiff:

    David H. Miller
    THE SAWAYA & MILLER LAW FIRM
    1600 Ogden Street
    Denver, Colorado 80218
    Telephone: 303-551-7667
    Fax: 720-235-4380
    E-mail: dhmiller@sawayalaw.com

Counsel for Defendant:

    Jennifer S. Harpole
    LITTLER MENDELSON, P.C.
    1900 Sixteenth Street, Suite 800
    Denver, CO 80202
    Telephone: 303.629.6200
    Fax: 303-629-0200
    E-mail: jharpole@littler.com

Appellate Case: 23-1082   Document: 010110874661   Date Filed: 06/16/2023   Page: 254

## 2. STATEMENT OF JURISDICTION

Plaintiff filed this individual and putative class action in the Arapahoe County State District Court on January 14, 2022, alleging a state law wage and hour claim against the Defendant (Doc. #5 at pp. 4–5, ¶¶ 20, 23–24).[1] On February 17, 2022, Defendant filed its Notice of Removal in the United States District Court for the District of Colorado. Doc. #1 at p. 1, alleging diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), 1444, 1453, and 1711-1715. Plaintiff has not contested that jurisdiction or removal.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**a.      Plaintiff's claims:**

1.      Dan Hamilton, on behalf of himself and a class of similarly situated employees (collectively, "Plaintiffs") alleges that Defendant violated the Colorado Wage and Hour Law by failing to pay all overtime owed during weeks in which he worked on a company designated holiday ("Company Holiday") and in excess 40 hours. The Plaintiff, and those similarly situated to him are all classes of U.S. non-exempt hourly employees who worked for Defendant in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a Company Holiday. The Plaintiff alleges that the Defendant failed to pay all overtime owed due to its uniform policies and practices of offering to pay time and a half for all hours actually worked on a company designated holiday, but then failing to include that premium rate in the calculation of the regular rate for that week. Defendant asserts

---

[1] Defendant has averred that Defendant's actual name is Amazon.com Services LLC, with no comma separating the word "Services" from the letters "LLC." *See* Doc. #1 at p.1.*Compare,* Doc. #1-1 at p. 1. Based on Defendant's representation the Plaintiff does not object to an amendment of the caption to remove that comma.

that having paid a premium for time worked on a holiday it satisfied the requirements to pay appropriate overtime payment without taking into account that premium time in determining the regular rate of pay for calculating overtime hours worked during that week when the clear requirements of state law require that  the actual hours worked on the holiday at a premium rate be *included* in calculating a worker's regular rate of pay with respect to the payment of overtime earned during that work week. Plaintiff freely acknowledges that under the federal law set out in the Fair Labor Standards Act (29 U.S.C. 201 et. seq., hereinafter FLSA) when an employer pays for regular time worked on a holiday at a premium rate it *is not required* to include that premium rate into calculating that employee's regular rate of pay for overtime purposes for that work week. What the Defendant has ignored throughout is that Colorado state law is abundantly clear that under Colorado wage and hour law employees are provided additional protection and that if they actually work at a premium rate on a holiday then that rate *does* have to be included in calculating the regular rate of pay for overtime worked during that work week.

**b.      Defendant's defenses:**

As stated in Amazon's pending motion to dismiss, Colorado regulations state that holiday pay does not need to be included in the regular rate of pay for overtime calculations.  7 CCR 1103-1.  There is no Colorado law, regulation, case law, or agency interpretation/guidance holding otherwise.  Every state in the country follows the FLSA on this issue and provides that if an employee is paid 1.5 times their regular base pay for working on a holiday, that premium pay need not be included in calculating the regular rate of pay for overtime purposes.  29 U.S.C. § 207(e)(6).  Colorado is no different and this case should be dismissed for failure to state a claim.

The case should be dismissed and Plaintiff's pending motions for Rule 23 certification and certification of the legal issue to the Colorado supreme court should be denied.  Moreover, Plaintiff has failed to raise any factual allegations which would support his conclusory assertion that Amazon committed a willful violation which would extend the statute of limitations to three years instead of two.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1.      Plaintiff Dan Hamilton ("Hamilton") is currently employed as Defendant's employee in Colorado.

2.      Defendant operates multiple AMZL workplaces and fulfillment centers in the state of Colorado.

3.      Defendant is an "employer" within the meaning of C.R.S. 8-4-101(6).

4.      Plaintiff has been classified as a non-exempt hourly employee throughout his employment with Amazon.

5.      Amazon paid Hamilton time-and-a-half his base rate of pay for all hours spent working on Company holidays.

6.      Amazon did not include the premium pay for working on a holiday when calculating the regular rate of pay for overtime purposes during weeks that Hamilton worked on a Company holiday.

## 5. COMPUTATION OF DAMAGES

**Plaintiff:**

A plaintiff who prevails on his/her overtime claims under Colorado wage and hour law as demanded in his complaint where the back wages demanded are not paid within 14 days of the date of the service of the complaint is entitled not only to back wages of $143.54 (Doc. #5 at p. 7, ¶ 143.54), but also statutory penalties under C.R.S. 8-4-109(3), and attorney's fees and costs. The penalties alone in this case are conservatively estimated (by *Defendant*) as $9,185,508.00. (Doc. #1 at p. 9, ¶ 34).

**Defendant:**

Defendant does not seek damages *per se*, but will seek an award of its attorney's fees and costs incurred in defending this action.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.      **Date of Rule 26(f) meeting:** April 6, 2022. The parties met via Zoom conference.

b.      **Names of each participant and party he/she represented:** Plaintiff was represented by David H. Miller and Victoria Guzman. Defendant was represented by Jennifer Harpole and Sarah Watt.

c.      **Statement as to when Rule 26(a)(1) disclosures will be made:** Each party will serve his/its initial disclosures on or before May 11, 2022.

d.      **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):** *See* above.  Because the Court vacated the initial scheduling conference in this matter pending ruling on Defendant's Motion to Stay, the parties have agreed to May 11 for the exchange of initial disclosures.

e.      **Statement concerning any agreements to conduct informal discovery:** There is no agreement to conduct informal discovery.

f.      **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:** The parties agree to mark all documents produced in discovery with Bates numbering. The parties also agree to the use of a unified exhibit numbering system.

g.      **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:** The parties anticipate that certain records maintained by Defendant such as pay records and electronic communications are maintained and may be produced in electronic form. Reasonably accessible electronically stored information ("ESI") may be produced in any reasonably usable form (in accordance with Fed. R. Civ. P. 34(a)(1)(A)), including PDF, searchable PDF, to the extent possible, or TIFF format with a load file. Excels, non-redacted PowerPoints, and audio-video files will be produced in their native format.

h.      **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:** To date, the parties have engaged in telephone discussions regarding the potential of an informal settlement or resolution.  The parties are not able to resolve the case at this time.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a.      **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:** None.

b.      **Limitations which any party proposes on the length of depositions:** Each deposition shall be limited to one day of 7 hours.

c.      **Limitations which any party proposes on the number of requests for production and/or requests for admission:** The parties propose that requests for production and requests for admission be limited to 25 per side.

d.      **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**   The parties will serve interrogatories, requests for production, and requests for admission regarding liability on opposing counsel on or before 45 days prior to the discovery cut-off date.  As noted below, the deadline for damages discovery shall be determined after the Court's ruling on Defendant's Motion to Dismiss.

e.      **Other Planning or Discovery Orders:**  The Court orders discovery bifurcated between liability and damages.  No damages discovery shall proceed until after the Court's ruling on Defendant's Motion to Dismiss (Dkt. #15).  If the Motion to Dismiss is denied, the Parties will submit a proposed Amended Scheduling Order to the Court.

No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(a).

The parties anticipate filing a motion or stipulation for entry of a Protective Order.

### 9. CASE PLAN AND SCHEDULE

a.      **Deadline for Joinder of Parties, Amendment of Pleadings, and Outstanding Motions:** June 8, 2022.

Defendant's Motion to Dismiss (Dkt. #15) has been fully briefed since April 7 and is currently pending. On April 14, 2022, Plaintiff filed a Motion to Certify Determinative Question of Colorado

Law to the Colorado Supreme Court (Dkt. #27). Defendant will file its response on May 5, 2022.

Also on April 14, 2022, Plaintiff filed a Motion to Certify Class Action ("Motion to Certify") (Dkt. #26). On May 2, 2022, the parties jointly moved the Court to extend the briefing schedule on the Motion to Certify such that Defendant's response will be due June 2 and Plaintiff's reply will be due June 30 (Dkt. #31).  The Court granted the Motion on May 3, 2022.

b.      **Discovery Cut-off:** For discovery related to liability:  October 27, 2022. For damages discovery: to be determined after the Court's ruling on the Motion to Dismiss.

c.      **Dispositive Motion Deadline, if any**: To be determined after the Court's ruling on the Motion to Dismiss.

d.      **Expert Witness Disclosure:**

1.      The parties shall identify anticipated fields of expert testimony, if any: Because the issues in this case are primarily legal (i.e., requiring interpretation of existing federal and state law) rather than factual, the parties do not currently anticipate using expert witnesses.

2.      Limitations which the parties propose on the use or number of expert witnesses: In the event expert witnesses are used, two per side.

3.      The deadline for the parties to designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) shall be determined after the Court's ruling on the Motion to Dismiss.

4.      The deadline for the parties to designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) shall be determined after the Court's ruling on the Motion to Dismiss.

e.      **Identification of Persons to Be Deposed:**

1.     Plaintiff:

      i.    Defendant's employees, managers, and policy makers of Colorado employee practices relating the claims made here, as well as named Defendant's employees identified through discovery, and through representatives designated to provide testimony under Fed. R. Civ. P. 30(b)(6), and/or as witnesses designated by Defendant. Plaintiff anticipates 7 hours for each deposition.

      ii.    Individuals who were involved in creating and implementing the policies and practices at issue in this case, and witnesses with knowledge of such policies and practices, and the harm created thereby. Plaintiff is not currently in possession of the identities of such individuals but will seek this information in discovery.

2.     Defendant:

      i.    Plaintiff.

## 10. DATES FOR FURTHER CONFERENCES

a.     Status conferences will be held in this case on December 14, 2022, at 9:00 a.m.

b.     A final pretrial conference will be held in this case on _____ at o'clock _____ m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.     Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

b.     Anticipated length of trial and whether trial is to the court or jury: Plaintiff anticipates that a trial of this matter will last 3-5 days. Defendant anticipates that: the length of trial if no class is

certified will be 3-5 days. The parties agree to confer with each other and the Court for the need to supplement the Scheduling Order with respect to post-class certification proceedings, if applicable.

c.     Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439: None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _11th_ day of _May_, 2022.

      BY THE COURT:

                                        _____

                                        United States Magistrate Judge

APPROVED:

_David H. Miller_____
David H. Miller, Esq.
Victoria E. Guzman, Esq.
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303-839-1650
E-mail: DHMiller@sawayalaw.com
        VGuzman@sawayalaw.com

Counsel for Dan Hamilton, individually and on behalf of all others similarly situated

_Jennifer S. Harpole_____
Jennifer S. Harpole, Esq.
Sarah K. Watt, Esq.
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Fax: 303-629-0200
E-mail: jharpole@littler.com
        swatt@littler.com

Counsel for Amazon.com Services LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-00434-PAB-STV

**DAN HAMILTON,** individually and
on behalf of all others similarly situated

     **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**
a Delaware limited liability company,

     **Defendant.**

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER CERTIFYING
DETERMINATIVE QUESTION OF COLORADO LAW TO THE COLORADO
SUPREME COURT**

---

The Plaintiff, through the undersigned counsel, submits his Reply in support of his motion

for an order certifying a determinative question of law—whether a premium payment paid at the

rate of time and a half of the worker's agreed upon rate for time worked on a holiday may be

excluded from the calculation of the regular rate for overtime purposes under the Colorado Wage

Claim Act, C.R.S. § 8-4-101 et seq. ("CWA"), and its implementing regulations, 7 C.C.R. 1103-

1, ("Colorado Law")—to the Colorado Supreme Court, and states as follows:

**<u>INTRODUCTION</u>**

The Defendant does not dispute that the Plaintiff's question is novel, important,

or determinative. Rather, the Defendant rests the majority of its opposition against

certification on the closeness of a question that is entirely different from the question

proposed by the Plaintiff. The Defendant continues to attempt to confuse the Court with

its insistence that this case is about holiday pay—which it is not. This case is about a Coloradan's right to be paid all overtime owed to them under Colorado law when they forgo time with their friends and family and choose to work on a holiday because of the promise to be paid at a premium rate for that sacrifice. While federal law has a carve out for such a situation, Colorado law is silent, but the language, intent, and history all show that in Colorado the result is the opposite from that under federal law.

A federal district court may certify a question of state law to the Colorado Supreme Court "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court." C.A.R. 21.1(a). Certification is warranted where "the question is close, important, novel, and determinative." *Larrieu v. Best Buy Stores, L.P.*, 491 F. App'x 864, 866 (10th Cir. 2012). Neither the Colorado Supreme Court, nor the Colorado Court of Appeals, nor the CDLE has addressed the following question of law:

> Whether a premium payment paid at the rate of one and a half times the worker's agreed upon rate for time worked on a holiday, irrespective of overtime, may be excluded from the calculation of the regular rate of pay for overtime purposes under Colorado Law.

This is a close, important, novel, and determinative question, and thus certification to the Colorado Supreme Court is appropriate. *See Larrieu*, 491 F. App'x at 866. Accordingly, the Court should enter the proposed Order certifying the question of whether a premium payment paid for time worked on a holiday, irrespective of overtime, may be excluded from the calculation of the regular rate of pay to the Colorado Supreme Court.

## **ARGUMENT**

## A.   **Certification of a Question to the Colorado Supreme Court Is Not Disfavored**

While it is true that the court denied the request for certification in each of the cases cited by the Defendant, the cited cases do not stand for the proposition that certification is disfavored and have little in common with the present case. Moreover, the Defendant failed to make any argument as it merely quoted from the cases without any analysis, and the cited cases can easily be differentiated from the present request.

First, the Plaintiff's request for certification was made early in this case before dispositive motions have been decided and before trial. *But cf. Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 839 (10th Cir. 2018) (certification denied because the issue was decided by the district court prior to the motion for certification); *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (certification denied because the motion was not filed until after the district court made a decision on the issue); *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999) (certification denied because motion for certification was not filed until after two courts had negatively decided the question presented); *Sullivan v. Nationwide Affinity Insurance Company of America*, 842 F. App'x 251, 253 (10th Cir. 2021) (certification denied because motion was filed after motion for summary judgment on the issue was decided).

Second, this question has not been decided by any court, state or federal. *But cf. United States v. Durango & Silverton Narrow Gauge Railroad Company*, No. 19-cv-01913-REB-NRN, 2020 WL 2840138, *2 (D. Colo. June 1, 2020) (certification denied because the claim was based on a 100 plus year-old statute that had been interpreted by courts in the past and merely required present day interpretation); *Boyd Rosene & Assocs.,*

3

*Inc.*, 178 F.3d at 1365 (certification denied because the question had been addressed by multiple federal courts).

Third, courts in the 10th Circuit have repeatedly certified questions of Colorado employment law to the Colorado Supreme Court, "in furtherance of comity and federalism" and in recognition of the potential for "far-reaching consequences" for Colorado employees and employers. *Johnson v. Sch. Dist. No. 1 in the Cnty. of Denver & Colorado*, 630 F. App'x 768, 771 (10th Cir. 2015), *certified question answered sub nom. Johnson v. Sch. Dist. No. 1 in the Cnty. of Denver*, 2018 CO 17, 413 P.3d 711; *see also Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 790 (D. Colo. 2017), *certified question answered*, 2018 CO 15, 414 P.3d 700 (certifying question in part because claims based on Colorado wage and hour law "tend[] to evade Colorado state-court review indefinitely."); *Leonard v. McMorris*, 272 F.3d 1295, 1297 (10th Cir. 2001), *certified question answered*, 63 P.3d 323 (Colo. 2003), *overturned due to legislative action*.

Thus, certification of a question to the Colorado Supreme Court is not disfavored as the Defendant broadly asserts, and the request for certification in this case bears no resemblance to the Defendant's cited case law.

**B.      The Court Should Certify the Proposed Question to the Colorado Supreme Court**

   **1.   THE HOLIDAY PREMIUM PAY QUESTION IS CLOSE**

The Defendant bases its conclusion that the question is not close on its continued attempt to confuse the Court by mischaracterizing the Plaintiff's claim. The Plaintiff does not disagree that the Colorado Department of Labor and Employment ("CDLE") has

addressed the issue of whether holiday pay should be included in the regular rate of pay—but that is not the question presented. As explained in detail in the Plaintiff's Response to the Defendant's Motion to Dismiss, the Plaintiff's claims have nothing to do with holiday pay. ECF No. 16 at 5–8.

The Defendant bases its present argument on the arguments it made in its Motion to Dismiss and in its Reply in Support of its Motion to Dismiss ("Reply"). However, as detailed in the Plaintiff's Response to the Motion to Dismiss, the argument that the holiday premium pay at issue and holiday pay are one in the same lacks merit, and in its Reply, the Defendant failed to respond to the Plaintiff's arguments that state and federal law and the Defendant's own policies draw distinctions between payments received for working on a holiday and payments received simply because it is a holiday, and that the federal exemption the Defendant argues should be read into Colorado law encompasses premium payments made for a variety of reasons, the fact that work was performed on a holiday being only one of many. *Compare* ECF No. 16 at 5–8 *with* ECF No. 24 at 2–6. Rather, the Defendant ignores all of these arguments and the plain reading on of Colorado law, and doubles down with a nonsensical argument for statutory interpretation that does not appear to have ever been used by any Court, administrative body, or otherwise. *See* ECF No. 24 at 3–4.

Specifically, the Defendant argues that the phrasing in Rule 1.8.1 in the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") "simply indicates that one or some of those categories are for non-work hours, but does not speak to whether all of them are." ECF No. 24 at 4. The sentence at issue reads:

> Business expenses, bona fide gifts, discretionary bonuses, employer investment contributions, vacation pay, holiday pay, sick leave, jury duty, or other pay for non-work hours may be excluded from regular rates.

7 C.C.R. 1103-1, Rule 1.8.1. According to the Defendant's posited interpretation, the listed nouns proceeding and preceding "holiday pay" may be modified by "pay for non-work hours," but "holiday pay" is not. *See* ECF No. 24 at 4. The Plaintiff is aware of no canon of statutory construction, let alone rule in the English language, that would support such an interpretation, and the Defendant cites none. The "last antecedent rule," which would apply the modifier to only the word "other" in the sentence is the closest to the posited interpretation, but the application of the "last antecedent rule" to Colorado statutes was expressly rejected by the Colorado Supreme Court in 1989. *See Est. of David v. Snelson*, 776 P.2d 813, 817–18 (Colo. 1989). Moreover, due to the inclusion of "other" following the list of nouns, a plain reading of the rule indicates that all listed nouns in the sentence, including "holiday pay", are types of "pay for non-work hours".

Thus, the fact that the CDLE has declared that "holiday pay" need not be included in the regular rate of pay has no impact on the answer to the Plaintiff's proposed question, and the Defendant's arguments that *its* proposed question is not close does not affect the closeness of the Plaintiff's proposed question. The Defendant's other arguments that this case is not similar to the circumstances in which this District has certified a question to the Colorado Supreme Court likewise lack merit as they are based on the Defendant's proposed question that is irrelevant to this case. Rather, while it is clear that Colorado Wage and Hour Law is more protective of employee rights than the FLSA, Colorado does incorporate some FLSA principles into Colorado Wage and Hour Law, and the details of

such incorporation have been the subject of much litigation for many years. *See* ECF No. 27 at 6–8; *Warning Lites Inc. of Colorado*, DLSS Case #2829-20 (Citation No. 2829-20, Jan. 8, 2021) (incorporating the FLSA's basic calculation of the regular rate when shift differentials are paid, but not incorporating other FLSA exemptions related to the regular rate). Due to that history, and the fact that the Plaintiff's question has not been addressed by any court, it is a close question. *See Larrieu v. Best Buy Stores, L.P.*, 491 F. App'x 864, 866 (10th Cir. 2012).

## 2. THE QUESTION IS NOT WHETHER THIS COURT IS CAPABLE OF INTERPRETING COLORADO LAW

There is no dispute that this Court is capable of interpreting Colorado law, but the question at hand is whether "in furtherance of comity and federalism" this Court *should* be the first to interpret Colorado law, when Colorado Courts have not yet had the opportunity. *Johnson*, 630 F. App'x at 771. As noted by the Court in *Hernandez*, Colorado Wage Claim Act claims "tend[] to evade Colorado state-court review indefinitely," because federal jurisdiction is regularly invoked. *Hernandez*, 250 F. Supp. 3d at 790. Given that context and the fact that this question has evaded court review thus far, without certification to the Colorado Supreme Court, the Plaintiff's question of Colorado Wage and Hour law may evade review by any Colorado court for years to come. Moreover, recent state court and administrative findings rejecting federal interpretation of Colorado Wage and Hour law indicate that there is not a "reasonably clear and principled course" for federal courts to follow in interpreting Colorado Wage and Hour Law. *See e.g.* Colo. Dept. of Labor and Employment, *Statement of Basis, Purposes, Authority, and Findings* at 32–33, and notes 110–111 (expressly rejecting the precedent established in *Deherrera*

7

*v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1161 (10th Cir. 2016) and *Combs v. Jaguar Energy Services, LLC*, 683 Fed. App'x. 704, 705–07 (10th Cir. 2017)); Order on Appeal at 18–19, *Brennan v. The Broadmoor Hotel, Inc. and CDLE, DLSS*, No. 2020CV31154 (Colo. Dist. Ct. Nov. 8, 2021) ("The Court is persuaded . . . that the [10th Circuit] did not decide the issue of statutory construction [of Colorado Wage and Hour Law] in any way binding upon this Court."). Thus, as the issue of certification is one of comity and not competency, and there has been recent upheaval in federal interpretations of Colorado Wage and Hour law by state courts and agencies, the Plaintiff's request for certification should be granted.

### 3. THE PROPOSED ORDER IS NOT DEFICIENT OR INCORRECT

The Defendant requests the Court to order the Parties to meet and confer on the appropriate recitation of the facts and the question to be submitted to the Colorado Supreme Court, but fails to state any valid reason for such.

First, the Defendant states that it objects to the question, but fails to state why or propose an amendment. The Defendant had ample opportunity to do so, and the Court should not require the parties to meet and confer when the Defendant refused to notify the Court or the Plaintiff what issue even needs discussing.

Second, Paragraph 2 is not irrelevant as it provides the background information necessary to understand the Plaintiff's full pay structure.

Third, it is unclear what the Defendant finds disagreeable about Paragraphs 2 and 3 as it failed to specify, but the Paragraphs do not inaccurately characterize the Plaintiff's pay structure. *See* ECF No. 5 at pp. 11–16, 22–24. It is clear from both the Defendant's

policies and the Plaintiff's paystubs that the Plaintiff received various types of "premium" payments throughout his employment, and the VET premium payments were explicitly stated as being offered in response to high customer demand or "other business conditions." *Id.* The Defendant had the opportunity to specify what was inaccurate with the stated facts, but chose not to do so.

Fourth, nowhere in the proposed order does the Plaintiff make reference to "shift differentials" and the Plaintiff merely sets up the necessary background information to ask the Colorado Supreme Court to decide whether the FLSA exemption related to holiday premium payment should be read into Colorado law. The Plaintiff does not dispute that with the stated facts, his claims are barred by the FLSA. As explained in detail in the Plaintiff's Response to the Motion to Dismiss, it is true that under the FLSA certain holiday premium payments are treated differently than normal shift differentials with respect to the regular rate, but that is only when certain conditions are met. *See* ECF No. 16 at 6–8; 29 C.F.R. § 778.203. The Plaintiff's question for certification is whether Colorado Wage and Hour Law, incorporates the FLSA exemption for qualifying premium payments.

Finally, the Defendant's objection to the Plaintiff's characterization of the Defendant's arguments in the Motion to Dismiss are meritless. The Defendant argues that the proposed order fails to state the Defendant's "key argument" related to holiday pay and mischaracterizes the second argument related to FLSA incorporation. ECF No. 34 at 7. While the Plaintiff does not include the Defendant's reasoning in the proposed order, the arguments are clearly stated. ECF No. 27-2 at ¶ 8. Failing to detail the reasoning

behind the arguments cannot be said to "mischaracterize" or "fail to state" the arguments if the ultimate conclusions are accurately stated. Furthermore, it is inappropriate to include the details of an argument within the recitation of the relevant facts and procedural background. If this Court grants the Plaintiff's Motion and if the Colorado Supreme Court agrees to answer the question, the Defendant will have ample opportunity to address its arguments for its overall conclusions. As such, the Defendant's request to meet and confer on the Proposed Order should be denied.

## **CONCLUSION**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, respectfully asks the Court to grant his Motion and to enter the proposed Order previously submitted to the Court, and to grant all other and further relief as the Court may deem to be just and appropriate.

Respectfully submitted on this 12th day of May, 2022.

*/s/ David H. Miller*

_____

David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303-839-1650
E-mail: DHMiller@sawayalaw.com
VGuzman@sawayalaw.com

*Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 12th day of May, 2022, I electronically filed the foregoing Reply through the Court's CM/ECF System, generating a true and accurate copy of this document to all counsel of record.

*/s/ Leroy Moya*
_____
Leroy Moya

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00434-PAB-STV

DAN HAMILTON, Individually and on behalf of
all others similarly situated,

    Plaintiff,

v.

AMAZON.COM SERVICES LLC,

   Defendant.

---

## DEFENDANT AMAZON.COM SERVICES LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY CLASS ACTION

---

  Defendant Amazon.com Services LLC ("Defendant" or "Amazon") opposes the Motion to

Certify Class Action ("Certification Motion") (Dkt. #26) filed by Plaintiff Dan Hamilton

("Plaintiff" or "Hamilton").  As set forth in Defendant's Motion to Dismiss (Dkt. #15) and Reply

(Dkt #24), Plaintiff's Complaint fails to state a claim as a matter of law and should be dismissed

with prejudice. Upon dismissal of the Complaint, the Certification Motion will be moot and should

be denied on that basis.  Should the Court deny the Motion to Dismiss, however, Amazon concedes

that this matter would be appropriate for class treatment with respect to those proposed class

members that meet the class criteria[1] and were employed on or after January 14, 2020, *i.e.*,

---

[1] Hamilton seeks certification of a class consisting of all classes of U.S. non-exempt hourly employees who worked for Defendant in AMZL workplaces and Fulfillment Centers throughout Colorado who worked more than 40 hours during weeks in which they also worked on a company designated holiday ("Company Holiday"). (Dkt. #26 at 1-2). Company Holidays are New Year's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. (Dkt. #26, n.1).

employed in the period starting two years prior to Plaintiff's filing of his Complaint. As there is

no evidence, and can be no evidence, that Amazon willfully violated Colorado law on this issue

of first impression, this Court should deny the Certification Motion to the extent that it seeks to

certify a class inclusive of persons that worked on a Company Holiday prior to January 14, 2020.

If the Court certifies the class prior to ruling on the Motion to Dismiss, the parties agree

that the Court should delay the sending of notice to the class until a ruling on the Motion to

Dismiss. With respect to the form and method of notice, Amazon objects to Plaintiff's proposal to

notify the class of their eligibility to participate in the lawsuit by *five* separate means and proposes

the use of a claims administrator to provide notice by U.S. mail and email, only. Amazon further

objects to additional contents of the notice, as set forth in detail below.

## I. RELEVANT FACTS

In or about November of 2017, Amazon hired Hamilton as a temporary hourly employee

at one of its warehouse locations, converting him to a regular employee on March 25, 2018. (Dkt.

#1). Amazon pays its non-exempt employees, such as Plaintiff, time-and-a-half for working on

Company Holidays ("Holiday O/T Pay"). (*Id.*) In addition, Amazon provides Plaintiff and its

hourly employees with four, six, or eight hours of pay for holidays irrespective of whether they

worked on the holiday. (*Id.*). Amazon does not include Holiday O/T Pay when calculating the

regular rate of pay; *i.e.*, does not factor it into the overtime rate of pay. (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff filed the Complaint, purportedly as a class action, against Defendant in state court

on January 14, 2022 and served Amazon on January 18, 2022. (Dkt. #01-1). On February 17,

2022, Amazon timely removed the Complaint to this Court. (Dkt. #01). On March 3, 2022,

Amazon filed its Motion to Dismiss, seeking dismissal of the Complaint in its entirety on the basis that Colorado law follows federal law (and the law of every other state) in not requiring employers that voluntarily provide employees premium pay for working on a holiday to include that holiday pay in the regular rate of pay for overtime.  The Motion to Dismiss has been fully briefed since April 7, 2022. (Dkt. #24).  On April 14, 2022, Plaintiff filed the Certification Motion. (Dkt. #26). Plaintiff also filed a Motion for Order Certifying Determinative Question of Law to the Colorado Supreme Court ("Motion for Order") on April 14, 2022.  (Dkt. #27), which has been fully briefed since May 12, 2022. (Dkt. ##34, 40).

On joint motion, the Court extended Amazon's deadline to respond to the Certification Motion to June 2, 2022 and Plaintiff's reply deadline to June 30, 2022. (Dkt. # 32).  Defendant filed a Motion to Stay Briefing on Plaintiff's Motion to Certify Class Action Pending Disposition of Its Motion to Dismiss ("Motion to Stay").  On May 31, 2022, the Court denied Amazon's Motion to Stay but extended Amazon's deadline to file the instant response to June 9, 2022. (Dkt. # 46).  Defendant obtained a further extension of this deadline to June 16, 2022. (Dkt. ## 47, 48).

## III.    ARGUMENT

### A.    Legal Standard for Class Certification.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  Federal Rule 23(a) sets out the standards for certifying a class action, specifying four prerequisites:   (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"

(typicality); and (4) "the representative parties will fairly and adequately protect the interest of the class" (adequacy).  In addition to meeting the requirements of Rule 23(a), a plaintiff seeking certification of a class must also demonstrate that the class meets one of the Rule 23(b) requirements. *See* Fed. R. Civ. P. 23(b)(1)-(3).  Here, Plaintiff claims he satisfies the requirements of Rule 23(b)(3): (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance); and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).  *See* Dkt. #26, p. 2.  Plaintiff bears the strict burden of proving that the Rule 23(a) and (b)(3) requirements are clearly met. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

District Courts must "conduct[] a 'rigorous analysis' . . . addressing the rule's requirements 'through findings,' regardless of whether these findings necessarily 'overlap with issues on the merits.'"  *Vallario v. Vandehey*, 554 F.3d 1259, 1266-67 (10th Cir. 2009); *see also Dukes*, 564 U.S. at 351 ("'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim").  Importantly, in *Dukes*, the Supreme Court held that Rule 23(a)(2)'s "commonality" requirement could not be satisfied simply by raising common questions, "even in droves."  564 U.S. at 350. Instead, a class action plaintiff must raise a common question that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Id.*

### B. Plaintiff's Motion Should Be Denied with Respect to Purported Class Members Allegedly Injured Prior to January 14, 2020.

Plaintiff's Motion should be denied with respect to any persons that worked on a Company Holiday prior to January 14, 2020 because Plaintiff cannot show any common issue of *liability*

with respect to them.  Alternatively, the Court should exercise its inherent power to manage class actions and limit the class period to January 14, 2020 and later.

The limitations period for wage claims under Colorado law is ordinarily two years and may be extended to three years only when a plaintiff can prove that a violation was "willful."  Colorado Overtime and Minimum Pay Standards Order #38 ("COMPS Order"), Rule 8.2; Colo. Rev. Stat. § 8-4-122; *see Farley v. Family Dollar Stores, Inc.*, No. 12–00325, 2013 WL 500446, at *1 (D. Colo. Feb. 11, 2013) ("The [CWA] has a two year statute of limitations for all actions unless the violation was willful[.]").  To establish that a wage violation under Colorado law was willful, "plaintiffs must prove that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Bayles v. Am. Med. Response of Colo., Inc.*, 937 F. Supp. 1477, 1489 (D. Colo. 1996) (applying the "willful" component of the FLSA) (quotations omitted.)  That is, "[a] finding of willfulness requires evidence that the employer *knew* it was violating the Act or that the employer *consciously disregarded* the consequences of its actions. If an employer acts unreasonably, but not recklessly, then its conduct is not willful." *Barber v. Marjon Corp.*, 791 P.2d 1192, 1194 (Colo. App. 1989) (emphasis added) (citations omitted).

Plaintiff's Complaint is devoid of any factual allegations that Defendant willfully violated Colorado law, instead containing only a conclusory request in the Prayer for Relief that the Court make a "finding that Defendant's behavior was willful." (Dkt. #1-1 at p. 8).  The only Complaint allegation that possibly could be construed as supporting such a finding is the claim that because Amazon knew shift differentials had to be included in the regular rate, it should have known to include time-and-a-half premiums for working on a holiday in the regular rate.  *Id.* at p. 5 ¶ 22. For its part, the Certification Motion contains no allegations whatsoever that Amazon's alleged

violation of Colorado law was willful, asking the Court to certify a class of all workers over a three-year period without justifying that timeframe in any way.

Here, Plaintiff cannot prove a willful violation. Plaintiff concedes that his theory of liability is so novel that it "has not been decided [on] by any court, state or federal," (Dkt. #40 at 3).[2] Plaintiff therefore cannot possibly carry his burden to prove a willful violation, that is, that Amazon knew it was violating the law or consciously disregarded whether it was.  Courts regularly find violations not to be willful where the issue is one of first impression or even where there are conflicting court decisions.  *See, e.g., Cortes-Diaz v. DL Reforestation, Inc.*, 2022 WL 833334, at *8-12 (D. Or. Mar. 21, 2022) (finding no willful violation as to claims for which "Plaintiffs acknowledge that there is no specific Oregon case law on point on these issues, to such an extent that they moved to certify a question to the Oregon Supreme Court."); *De Luna-Guerrero v. N. Carolina Grower's Ass'n., Inc.*, 370 F. Supp. 2d 386, 387–90 (E.D.N.C. 2005) (no willful violation on issue of first impression in circuit, which had been decided by only one other circuit); *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 510-11 (N.D. Tex. 1988), *aff'd*, 918 F.2d 1220 (5th Cir. 1990) (violation not willful where overtime-exemption question as to broadcast journalism questions was apparently issue of first impression).[3]

Because this is an issue of first impression nationwide, there was no reason for Defendant

---

[2] Plaintiff admits in the Motion for Order that his attorneys "have carefully researched the issue over several months, and have not found any controlling state or federal precedent."  (Dkt. #27 at 10).

[3] Although these cases arise in the summary judgment context, the Court should follow them here in order to prevent notice from issuing to thousands of putative class members who only worked in the third year of the limitations period and will not be entitled to any recovery even if Plaintiff prevails on a liability determination because Plaintiff cannot show Amazon willfully violated Colorado law.

to question its treatment of this pay. Federal law expressly permits Amazon's approach to pay for working on a holiday, and Colorado regulations expressly exclude holiday pay from the calculation of the regular rate of pay; *i.e.*, authorize the way Amazon handled it. (See Dkt. #15, Dkt. #24, and Dkt. #34). Amazon acted eminently reasonably, and certainly not recklessly, in interpreting Colorado's regulation excluding holiday pay from the regular rate to include time paid for working on a holiday. As there is no state in the country that requires time-and-a-half for working on a holiday to be included in the regular rate, no out-of-state case law could have tipped Amazon off to this potential issue, either.

Through all the briefing on the Motion to Dismiss, the Motion for Order, and the Motion for Stay, Plaintiff has never come up with any case law, agency interpretation, or statutory or regulatory authority that supports his claims in the case, nor has he been able to point to any other state that agrees with his position; *i.e.*, that treats the pay in question differently than Amazon did and federal expressly allows. What Amazon did, or did not do, with regard to looking into this issue is irrelevant because there is nothing on point for Amazon to find.

Plaintiff's apparent allegation in the Complaint that because Amazon included shift differentials in the regular rate it should have known to include holiday premium pay is a red herring. The FLSA distinguishes between shift differentials and holiday premium pay, requiring shift differentials to be included in the regular rate while holiday premium pay is not. 29 C.F.R. § 778.207; *see* Dkt.#15 at 9-10. Colorado law follows federal law with respect to shift differentials, and Amazon reasonably interpreted Colorado law to follow federal law with respect to holiday premium pay based on the regulation stating that holiday pay may be excluded from the regular rate. There is certainly nothing in Colorado law directing Amazon that Colorado considers holiday

premium pay to be a type of shift differential. There was no reason at all for Defendant to question

its treatment of this pay.  Nor, even had Defendant done so, any basis for finding that Amazon

would have uncovered something that would have caused it to change its position.[4]  There is no

basis for certifying a class that goes back three years from the filing of the Complaint.

### C.     No Notice Should Issue Prior to the Court's Ruling on the Motion to Dismiss

Although Amazon requests the Court decide the pending motions in the order they were

filed, *i.e.,* rule on the Motion to Dismiss prior to the Certification Motion, to the extent that the

Court grants class certification prior to deciding the Motion to Dismiss, Amazon further opposes

the Certification Motion's request for an Order from this Court that (1) Amazon produce a class

list containing the names, dates of employment, mail and e-mail addresses, and phone numbers of

the class within 14 days of class certification; and (2) that Plaintiff may send notice to the class

within 14 days of receipt of the class list.  In a separate filing, Plaintiff has conceded that "if this

Court were to decide the Motion to Certify Class prior to the Motion to Dismiss, it would make

sense, and the Plaintiff would consent, to delay the sending of notice until the Motion to Dismiss

is decided to avoid placing the burden of locating the contact information for over 10,000

individuals before it is necessary."  (Dkt. #39 at 5-6).  Amazon, therefore, proposes that should

---

[4] Even if the Court finds Colorado law is silent about the treatment of holiday premium pay (*i.e.*, that the regulation regarding holiday pay does not apply to holiday premium pay), Plaintiff's argument that this silence must be interpreted as inconsistent with federal law and disallowing the exemption stems from the CDLE's March 2020 guidance, which was issued within the two-year limitations period and did not exist during the three-year period.  That is, the earliest Amazon could possibly have been on notice of the CDLE's supposed position that every federal law exemption that is not specifically spelled out in Colorado's regulations is therefore inapplicable to its Colorado workers was on March 15, 2020. (Dkt. # 16 at p. 9.) Any violation before that time could not possibly have been willful. Indeed, case law supports Amazon's interpretation of Colorado law as harmonious with federal law in such a circumstance.  (Dkt. #15 at p. 8).

this Court grant certification of the class, the various deadlines with respect to production of the class list and Plaintiff's (or a claims administrator's) authority to send the class notice be measured from the earliest date on which the Court has issued its decisions on ***both*** the Certification Motion and the Motion to Dismiss.

### D.     Text Message Notice, Workplace Posting, and Notice by Amazon Are Unwarranted.

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that notice to class members be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The primary purpose of this notice is for "for the protection of members of the class or otherwise for the fair conduct of the action" rather than "a device for the undesirable solicitation of claims."  Fed. R. Civ. P. 23, Committee Notes on Rules – 1966 Amendment.

Here, Plaintiff proposes to notify the class by ***five*** separate methods: U.S. mail from Plaintiff's counsel, mailing from Amazon to current employees, email, text message, and workplace posting in "break rooms and other areas."  (Dkt. #26 at 13-14).[5] Plaintiff provides no explanation why this shotgun approach of notice is warranted. *See Fenley v. Wood Group Mustang, Inc.*, 170 F.Supp.3d 1063, 1074 (S.D. Ohio 2016) (general rule is that notice is typically sent by a single method absent some showing that additional method will ensure receipt of notice); *see also Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778 at *4 (S.D. Ohio Dec. 21, 2012) ("Courts generally approve only a single method for notification unless there is a reason to believe

---

[5] Plaintiff's counsel did not confer with Defendant's counsel regarding the form of notice or distribution methods before filing the Certification Motion.

that method is ineffective.").  The Tenth Circuit has held that first-class mail is sufficient notice to comply with Rule 23.  *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016) ("First-class mail sufficed to give notice."); *see also Martinez v. Rial De Minas, Inc.*, No. 16-CV-01947-RM-KLM, 2017 WL 9509950, at *2 (D. Colo. Oct. 12, 2017).

Notice via first-class mail is generally considered to be the most accurate, reliable form of class certification notice.  *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (court stating that "notification by first class mail is the preferred method in the unique circumstances of class certification notification. Such a mailing process ensures the integrity of a judicially controlled communication directed to the intended audience.").  Amazon, nevertheless, does not object to also providing notice via email, provided it is sent by a third-party administrator.

Amazon objects to sending notice via text message.  Notification by electronic means is inherently less reliable.  *See Stallings v. Antero Res. Corp.*, No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, at *8 (D. Colo. Mar. 12, 2018), *report and recommendation adopted*, No. 17-CV-01939-RM-NYW, 2018 WL 2561046 (D. Colo. Apr. 16, 2018) (court "not persuaded that multiple notices are required, and there has been no indication that electronic mail is any more reliable than U.S. Mail in this instance."). Even in *Thrower v. Universal Pegasus, Int'l Inc.*, 484 F. Supp. 3d 473 (S.D. Tex. 2020), cited by Plaintiff, the court recognized that text message notice has typically been limited to cases where there was some showing that notice by mail or email would be less reliable.  *Id.* at 489-90 (court ordering text message notice because the case involved "pipeline workers who routinely travel for work and are away from their home for extended periods of time.").  Plaintiff has made no such showing that first-class mail and email would be unreliable forms of notice warranting notice by text message.

10

The use of text message notice also would be unnecessarily invasive. *See Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-cv-01099, 2020 WL 6459641, at \*19 (M.D. Tenn. Nov. 3, 2020) (finding distribution of notice "through text message would be cumbersome and unnecessarily invasive."); *see also Anderson v. Minacs Grp. (USA) Inc.*, No. 16-13942, 2017 WL 1856276, \*9 (E.D. Mich. May 9, 2017) (prohibiting text message notice as it would require production of the recipients' telephone numbers "and this is an unnecessary intrusion upon [their] privacy" and recognizing "transmission of notice by text message could well be viewed by the recipients as harassing in nature"); *Andrews v. Producers Service Corporation*, No.: 2:19-cv-2514, 2020 WL 4434865, \*5 (S.D. Ohio Aug. 3, 2020) (ordering notice via first-class mail and email, denying request for text message notice). Here, notice through first-class mail and email is more than sufficient. The request for additional text message notice is excessive and should be denied.[6]

Next, there is no basis to post the Notice in Amazon's workplace because there is no suggestion of any expected difficulty locating *current* employees. *See Nelson*, 2018 WL 3023195, at \*6-7 (rejecting request for workplace posting of FLSA notice because "[t]here is no evidence or suggestion that posting will reach a wider audience than mailing and, in fact, the potential class members reached by such posting—current employees—are the same employees for whom defendants most likely have current home address information."); *see also Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 500-01 (D. Neb. 2009). This Court has previously denied a request for a workplace posting where the plaintiff failed to show that doing so would reach a

---

[6] If a claims administrator reports that specific member(s) of the class have *both* their notice by first-class mail returned as undeliverable with no forwarding address able to be located, *and* their email notice bounced back as undeliverable, Amazon would not object to notice being sent via text message only to those otherwise unreachable class members.

wider audience than mailing, and that same analysis is equally applicable here.  *Kibler v. Kroger Companies*, No. 21-cv-00509-PAB-KMT, 2022 WL 268056, at *8 (D. Colo. Jan. 28, 2022).

In addition, break room posting would be disruptive to the workplace, as many Amazon employees who are not within the scope of the proposed class would see the posting, including exempt employees and those non-exempt employees who have not worked overtime hours during a week in which they also worked on a Company Holiday.  *See Lane v. Atlas Roofing Corp.*, No. 4:11–cv–04066–SLD–JAG, 2012 WL 2862462, at *4 (C.D. Il. July 11, 2012) (holding that because "there is no showing that mail notice is insufficient, it is intrusive and unnecessary to order posting of notice on Defendant's premises"); *McKinstry v. Developmental Essential Services, Inc.*, No. 2:16-CV-12565, 2017 WL 815666 at *3 (E.D. Mich. March 2, 2017).  Notice should only be targeted to those employees who fall within the scope of this case.

For the same reasons that a workplace posting of the Notice is unnecessary and excessive, Amazon should not be required to provide the Notice directly to current employees. *See Young v. Hobbs Trucking Co., Inc.*, No. 3:15-CV-991, 2016 WL 3079027, at *3 (M.D. Tenn. June 1, 2016) (allowing notice by U.S. mail only and prohibiting distribution with employee paychecks).  It is Plaintiff's responsibility under Rule 23 to provide notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157 (1974). Yet, Plaintiff wants to improperly shift that burden to Amazon.  Having two separate mailings to the same address—one by Plaintiff's counsel (or a claims administrator, as discussed below) and one by Amazon—is a duplicative and unnecessary expense, especially with a class of this size.  Further, requiring Amazon to directly distribute the Notice places payroll personnel and supervisors in the position of receiving employee questions about the Notice and the lawsuit, which are more appropriately directed to a claims administrator.

**D.      A Third-Party Administrator Should Be Used.**

Amazon strongly supports the use of a third-party administrator in this case. Plaintiff requests that his counsel be permitted to handle the distribution of the Notice to more than 10,000 individuals and oversee the opt-out process without a third-party administrator.  But, rather than focusing on whether the administration of notice is fair and appropriate, Plaintiff merely proposes his counsel administer Notice because it will be less expensive.  As the U.S. Supreme Court has explained, the cost of a Rule 23 notice is the plaintiff's expense to bear and does not govern whether proper notice is being given.  *See Eisen*, 417 U.S. at 157-158.

Courts have ordered the use of a third-party administrator to protect privacy rights and ensure the integrity of the process.  *See Cannon v. Time Warner NY Cable LLC*, No. 13-CV-02521-RM-MJW, 2014 WL 4401313, at *7 (D. Colo. Sept. 5, 2014), *report and recommendation adopted as modified*, No. 13-CV-02521-RM-MJW, 2014 WL 4980383 (D. Colo. Oct. 6, 2014); *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, No. 06-CV-17430-WYD-CBS, 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009) ("use of a third-party administrator is appropriate to protect the integrity of the process and to protect the confidential information of potential opt-in plaintiffs.").  Here, a third-party administrator should be utilized, particularly given the class size and issuance of notice by email, to protect privacy rights and ensure the integrity of the opt-out process.

**E.      Plaintiff's Notice Proposal Requires Multiple Revisions.**

Multiple revisions are also required to the form of notice itself. Plaintiff's description of Amazon's position in Section 5 of the Notice (without conferral or input from Amazon) is not sufficient.  Plaintiff states that "Amazon denies the Plaintiff's allegations and alleges that it paid the Plaintiff and the Class Members properly."  (Dkt. #26-2 at 2).  However, in Section 4 of the

Notice, Plaintiff describes his allegations as Amazon not including holiday pay in the payment of overtime compensation. *Id.* As a result, the Notice suggests that Amazon is disputing whether holiday pay was included in the calculation of overtime compensation. Amazon's position is that there is no legal requirement to include holiday pay in the regular rate calculation for determining overtime compensation. Therefore, Section 5 of the Notice should be revised as follows: "Amazon denies the Plaintiff's allegations that holiday pay must be included in the calculation of overtime compensation under Colorado law, and further denies that it paid Class Members improperly."

Section 12 of the Notice states as follows: "Colorado law prohibits retaliation against you in any way if you choose to participate in this case. You may be entitled to additional damages should a court determine that any adverse action was taken against you for joining or remaining in this lawsuit." (Dkt. #26-2). The first sentence of that paragraph is more than sufficient. The second sentence appears to be legal advice and reads more like a solicitation with its suggestion of "additional damages." It should not be included in the Notice. *See Furlow v. Bullzeye Oilfield Serv., LLC*, No. SA–15–CA–1156–DAE, 2016 WL 7616704, *2 (W.D. Tex. May 4, 2016) (notice language stating putative class members should contact the court or their attorney if they believe they have been retaliated against was "unnecessary, unwarranted, and constitutes legal advice."); *cf. Sibley v. Sprint Nextel Corp.*, No. CIV.A. 08-2063-KHV, 2009 WL 662630, at *3 (D. Kan. Mar. 13, 2009) (rejecting anti-retaliation language altogether in Rule 23 class notice).

Plaintiff's counsel has their contact information listed six times on the proposed Notice and another four times on the Opt-Out Form. However, the contact information for Amazon's counsel is not listed anywhere. If the Court does not require use of a claims administrator in this case, fairness dictates that the notice should include contact information for Amazon's counsel so that

any individuals not wanting to participate in the lawsuit or considering whether to opt-out who may prefer to contact Amazon's counsel are free to do so. *See Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 4468678, at *3 (N.D. Cal. Dec. 17, 2007); *Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380(LTS)(AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009).

Finally, the Notice should inform putative class members about how they can view or obtain a copy of the Complaint and should be revised for the two-year limitations period to reflect a time period back to January 14, 2020 rather than January 14, 2019.

## CONCLUSION

Amazon opposes class certification because the Complaint fails to state a claim and should be dismissed. To the extent a class is certified, however, no Notice should issue prior to the Court's ruling on the Motion to Dismiss, and the Notice should be limited to a two-year limitations period because Plaintiff cannot show that any violation by Amazon was willful, given that this is a legal issue of first impression. The Court should also require use of a claims administrator and authorize notice by the administrator by U.S. mail and email only, and should make the other revisions to the form of Notice as set forth above.

Dated: June 16, 2022                    Respectfully submitted,

*s/ Sarah K. Watt*
Jennifer S. Harpole
Sarah K. Watt
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
jharpole@littler.com
Telephone:   303.629.6200
Facsimile:   303.629.0200

**Attorneys for Defendant Amazon.com Services LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2022, I electronically filed the foregoing **DEFENDANT AMAZON.COM SERVICES LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY CLASS ACTION** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, CO 80218
Telephone: (303) 551-7667
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
*Attorneys for Plaintiff*

*s/ Vicky Ramirez*
Vicky Ramirez

4877-9437-7765.1 / 096748-1008